IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CATHERINE CALLOWAY and     *
MICHAEL CALLOWAY,     *
    *
    Plaintiffs,     *     CIVIL  ACTION NO.  08-224-SLR
    *
v.     *
    *
GREEN TREE SERVICING, LLC     *
    *
    Defendants.     *
    *
    *

## MOTION TO AMEND COMPLAINT

COME NOW, Plaintiffs CATHERINE and MICHAEL CALLOWAY, by and through their undersigned attorney, and move to amend their complaint in the above captioned action for the reasons more fully set forth in the Opening Brief filed herewith.

LAW OFFICE OF MAGGIE CLAUSELL, LLC

Maggie R. Clausell, Esq. (DE Bar ID # 4532)
9 E. Loockerman Street Ste 205
Dover, DE 19901
302-678-7644 (voice)
maggie@clauselllaw.com
*Attorney for Plaintiffs*

Dated: June 5, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CATHERINE CALLOWAY and          *
MICHAEL CALLOWAY,               *
                                *
        Plaintiffs,             * CIVIL ACTION NO.  08-224-SLR
                                *
v.                              *
                                *
GREEN TREE SERVICING, LLC       *
                                *
        Defendant.              *
                                *
                                *

## CERTIFICATE OF SERVICE

        I, Maggie Clausell, hereby certify that on June 5, 2008, I caused a
copy of the foregoing Motion for Leave to Amend Complaint, Opening Brief in
support of Motion and Order, together with supporting exhibits to be served with
the Clerk of the Court using CM/ECF, with automatic notification of the filing to
Defendant's Counsel:

ALBERT H. MANAWARING, IV
PEPPER HAMILTON LLP
HERCULES PLAZA SUITE 510
1313 MARKET STREET
POST OFFICE BOX 1709
WILMINGTON DE 19899-1709

                                LAW OFFICE OF MAGGIE CLAUSELL, LLC

                                _____
                                        Maggie Clausell
                                        DE Bar ID # 4532
                                9 E. Loockerman Street, Ste. 205
                                        Dover, DE 19901
                                        302-678-7644 (voice)
                                        302-678-0771 (fax)

DATED:  June 5, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CATHERINE CALLOWAY and          *
MICHAEL CALLOWAY,               *
                                *
        Plaintiffs,             * CIVIL ACTION NO.  08-224-SLR
                                *
v.                              *
                                *
GREEN TREE SERVICING, LLC       *
                                *
        Defendant.              *
                                *
                                *

## ORDER

And now, on this _____ day of _____ 2008, upon consideration of

Plaintiffs' Motion for Leave to Amend Complaint and supporting brief, and

responses thereto, it is hereby

ORDERED that the Motion is Granted.

_____
                                                                    J.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CATHERINE CALLOWAY and &ast;
MICHAEL CALLOWAY, &ast;
&ast;
    Plaintiffs, &ast; CIVIL ACTION NO. 08-224-SLR
&ast;
v. &ast; JURY TRIAL DEMANDED
&ast;
GREEN TREE SERVICING, LLC &ast;
&ast;
    Defendant. &ast;
&ast;
&ast;

## CIVIL ACTION-COMPLAINT

Plaintiffs Catherine Calloway and Michael Calloway, by and through their

attorney, Maggie Clausell, hereby bring this Complaint against Defendant Green

Tree Servicing, LLC, and in support aver the following:

## I. INTRODUCTION

1.    Plaintiffs bring this action for damages based upon Defendant's violation

of the Real Estate Settlement Procedures Act, and claims under Delaware law.

Plaintiffs seek actual damages, punitive damages, costs and attorneys fees.

## II.    JURISDICTION

2.    This court has subject matter jurisdiction over this Complaint pursuant to

Real Estate Settlement Procedures Act, 12 U.S.C. §2614.

3.    Jurisdiction lies over state law claims based on the principles of

supplemental jurisdiction as codified at 28 U.S.C. §1367.

## III.    VENUE

4.      All of the claims herein arose within the jurisdiction of the United States

District Court of Delaware.  Venue is proper in the District of Delaware pursuant

to   28 U. S. C  §1391.

## IV.    PARTIES

5.      Catherine and Michael Calloway, are adult individuals, husband and wife,

who are both residents of the State of Delaware, residing at 514 King Street,

Laurel DE 19956.

6.      Green Tree Servicing, LLC   (hereinafter, Green Tree) is a corporation

organized under the laws of the State of Delaware whose principal place of

business is 332 Minnesota Street, St. Paul, MN 55101, whose registered agent is

The Corporation Company, Corporation Trust Center, 1209 Orange Street,

Wilmington, DE 19801, engaged in the business of servicing mortgage loans

within the meaning of 12 U.S.C. 2605(i)(3).  Green Tree is a "servicer" within the

meaning of 12 U. S. C. 2605 (i)(2)

## V.    FACTS

7.      Plaintiffs are the current record owners of the Property at 514 King Street,

Laurel, DE 19956, as evidenced by the deed recorded with the Recorder of

Deeds for Sussex County Delaware at Book 1206, Page 261, a true and correct

copy of which is attached hereto and incorporated herein as Exhibit "A".

8.      Plaintiffs executed a mortgage with Green Tree Financial Services

(hereinafter, "GTFS") on or about October 9, 1996.  A copy of the Mortgage is

attached hereto and incorporated herein as Exhibit "B".

2

9.     On October 9, 1996 Plaintiffs executed a note with Green Tree Financial

Services, agreeing to pay $125,000 plus interest.  A copy of the Note is attached

hereto and incorporated herein as Exhibit "C".

10.     The monthly payment and interest was $1285.98, with the first payment

due on November 14, 1996.

11.     Plaintiff commenced payments under the terms of the note and mortgage

on November 14, 1996.

12.     Green Tree Mortgage, LLC , a subsidiary of GTFS, serviced the note from

October 11, 1996  to 1999 when Conseco Finance Servicing Corporation

(hereinafter, "Conseco") began servicing the loan.

13.     Conseco serviced the loan from serviced the loan from 1999 to June 2003.

14.     Conseco Finance Corporation filed bankruptcy in 2003.  Green Tree

Servicing, LLC acquired servicing rights to Plaintiffs' mortgage on or about June

22, 2003 through a §363 bankruptcy asset sale.

15.     Plaintiffs claims in this complaint arose after the 2003 sale by Conseco

Finance Corporation.

16.     At all times Defendant acted through its authorized agents and employees.

<u>COUNT I</u>

<u>VIOLATION OF THE REAL ESTATE SETTLEMENT AND PROCEDURES ACT</u>

17.     Paragraphs 1-16 are incorporated by reference as if fully set out herein.

18.     Pursuant to RESPA, 12 U. S. C. §2605 (e)(1)(a) and 12 U. S. C. §2605

(e)(1)(b), Plaintiffs issued multiple qualified written requests  (Exhibit D) to Green

Tree Servicing dated December 8, 2005, December 20, 2005, April 17, 2006,

May 4, 2006, September 2, 2006, November 9, 2006, August 13, 2007,

January 3, 2008, and January 17, 2008.

19.    Defendants failed to respond to Plaintiffs' requests, or the responses provided less than full and fair disclosure of information, or failed to address the questions presented in the request.

20.    By failing to respond to the Plaintiffs' request for information regarding the servicing of their mortgage, Green Tree violated RESPA.

21.    As a result of Green Tree's violation, Plaintiffs have been unable to determine the true and correct balance and owing on their mortgage, and have been subjected to repeated collections efforts from Green Tree.

22.    Plaintiffs also believe and aver that Green Tree has assessed unwarranted late fees, forced place insurance from July 2006 to July 2007, and escrow advances to their account.

23.    Without a true and accurate accounting and payment history from Green Tree, Plaintiffs are unable to determine the extent of the actual damages they have incurred because of Green Tree's failure to respond to their qualified written requests.

## COUNT II

## BREACH OF CONTRACT

24.    Paragraphs 1-23 are incorporated by reference as if fully set out herein.

25.    In January 2006 Plaintiffs learned that Green Tree had made major errors in calculating the interest payments reported on the IRS tax Form 1098, creating a significant potential tax liability (Exhibit E).

4

26.    In January 2006 Defendant advised Plaintiffs that all their Form 1098 from 1996 to 2005 would have to be revised after the Plaintiffs had filed their taxes for each of those years.

27.    To the best of the Plaintiffs' knowledge information and belief, Defendant subsequently added the reported interest overpayment of $12000 back into the mortgage of principal (Exhibit F).

28.    Defendant failed to explain to Plaintiffs how the interest was recalculated or to provide an accounting as per Plaintiffs qualified request.

29.    Defendant purchased forced place insurance for Plaintiffs even though Plaintiffs had homeowners insurance at all times (Exhibit G).

30.    Upon information and belief, Defendant has failed and refused to apply the amounts paid by the Plaintiffs accurately and timely.

31.    As a result of Defendant's failure to apply Plaintiffs' payments accurately and timely, Plaintiffs have been subjected to foreclosure notices and additional fees being added to their account.

32.    Green Tree's actions and inactions as outlined above constitute a breach of the contract between the parties and breach of Defendant's duty of good faith and fair dealing.

33.    Green Tree had an obligation under the contract to accept and apply payments as they were paid.

34.    Green Tree's breach was material as it failed to perform a material obligation under the contract.

35.    As a result of said breach, the Plaintiffs have incurred damages for payments and assessments to their account of unwarranted fees, force placed insurance, escrow advances and extension fees.

36.    Plaintiffs' damages were a foreseeable result of Defendant's breach.

37.    In addition to the misapplied payments, and the accrued interest on those funds, without a true accounting and payment history from Green Tree, Plaintiffs are unable to determine the extent of the damages they have incurred as result of Green Trees failure to apply al payments and imposition of unwarranted fees and forced extensions by the Defendant.

## COUNT III
## VIOLATION OF DELAWARE CONSUMER FRAUD ACT

38.    Paragraphs 1-37 are incorporated by reference as if fully set out herein.

39.    Plaintiffs allege that Defendant violated 6 Del. C. § 2513 by failing to respond to Plaintiffs' request for information on their account, by failing to properly credit payments to their account, and by fraudulently representing that they were behind in payments that had not been properly credited.

## COUNT V
## NEGLIGENCE

40.    Paragraphs 1-39 are incorporated by reference as if fully set out herein.

41.    Plaintiffs allege that Defendant had a duty to properly credit all payments made toward the loan.

42.    Plaintiffs allege that Defendant breached that duty when it failed to calculate Plaintiffs' interest payments correctly and wrongfully placing Plaintiffs' in high cost force placed insurance contracts.

6

43.    As a result of Defendant's breach, Plaintiffs incurred late fees, were subjected to abusive debt collection practices, were coerced into expensive extension agreements that added significantly to the cost of the loan, and suffered humiliation and embarrassment because of negative or derogatory information being reported by Green Tree to the credit reporting agencies.

44.    As a result of Defendant's breach, Plaintiffs' rating suffered and Plaintiff has not been able to refinance their home.

## COUNT IV
## COVENANT OF GOOD FAITH AND FAIR DEALING

45.    Paragraphs 1-44 are incorporated by reference as if fully set out herein.

46.    Plaintiffs allege that Defendant breached the covenant of good faith and fair dealing implicit in all Delaware contracts when it failed to properly credit all of the Plaintiffs' payments.

WHEREFORE NOW, the Plaintiffs request the Court to enter judgment in the amount of $125,000 in actual damages, attorney fees, costs, and $2,000,000 in punitive damages.

### JURY TRIAL DEMANDED

LAW OFFICE OF MAGGIE CLAUSELL, LLC

Maggie Clausell, Esq.
Bar ID #4532
9 E. Loockerman Street, Ste. 205
Dover, DE 19901
302-678-7644 (voice)
302-678-0771 (fax)

Date: June 5, 2008

7

<u>IN THE UNITED STATES DISTRICT COURT</u>

<u>FOR THE DISTRICT OF DELAWARE</u>

CATHERINE CALLOWAY and
MICHAEL CALLOWAY,

     Plaintiffs,

v.

GREEN TREE SERVICING, LLC

     Defendant.

\* CIVIL ACTION NO. 08-224-SLR

\* JURY TRIAL DEMANDED

### <u>CIVIL ACTION-COMPLAINT</u>

     Plaintiffs Catherine Calloway and Michael Calloway, by and through their attorney, Maggie Clausell, hereby bring this Complaint against Defendant Green Tree Servicing, LLC, and in support aver the following:

### <u>I.  INTRODUCTION</u>

1.    Plaintiffs bring this action for damages based upon Defendant's violation of the Real Estate Settlement Procedures Act, and claims under Delaware law. Plaintiffs seek actual damages, punitive damages, costs and attorneys fees.

### <u>II.    JURISDICTION</u>

2.    This court has subject matter jurisdiction over this Complaint pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. §2614.

3.    Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction as codified at 28 U.S.C. §1367.

2

### III.    VENUE

4.    All of the claims herein arose within the jurisdiction of the United States District Court of Delaware.  Venue is proper in the District of Delaware pursuant to  28 U. S. C. §1391.

### IV.    PARTIES

5.    Catherine and Michael Calloway, are adult individuals, husband and wife, who are both residents of the State of Delaware, residing at 514 King Street, Laurel DE 19956.

6.    Green Tree Servicing, LLC   (hereinafter, Green Tree) is a corporation organized under the laws of the State of Delaware whose principal place of business is 332 Minnesota Street, St. Paul, MN 55101, whose registered agent is The Corporation Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, engaged in the business of servicing mortgage loans within the meaning of 12 U.S.C. 2605(i)(3).  Green Tree is a "servicer" within the meaning of 12 U. S. C. 2605 (i)(2)

### V.    FACTS

7.    Plaintiffs are the current record owners of the Property at 514 King Street, Laurel, DE 19956, as evidenced by the deed recorded with the Recorder of Deeds for Sussex County Delaware at Book 1206, Page 261, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "A".

8.    Plaintiffs executed a mortgage with Green Tree Financial Services (hereinafter, "GTFS") on or about October 9, 1996.  A copy of the Mortgage is attached hereto and incorporated herein as Exhibit "B".

3

9.      On October 9, 1996 Plaintiffs executed a note with Green Tree Financial Services, agreeing to pay $125,000 plus interest.  A copy of the Note is attached hereto and incorporated herein as Exhibit "C".

10.      The monthly payment and interest was $1285.98, with the first payment due on November 14, 1996.

11.      Plaintiff commenced payments under the terms of the note and mortgage on November 14, 1996.

12.      Green Tree Mortgage, LLC , a subsidiary of GTFS, serviced the note from October 11, 1996  to 1999 when Conseco Finance Servicing Corporation (hereinafter, "Conseco") began servicing the loan.

13.      Conseco serviced the loan from serviced the loan from 1999 to June 2003.

14.      Conseco Finance Corporation filed bankruptcy in 2003.  Green Tree Servicing, LLC acquired servicing rights to Plaintiffs' mortgage on or about June 22, 2003 through a §363 bankruptcy asset sale.

15.      Plaintiffs claims in this complaint arose after the 2003 sale by Conseco Finance Corporation.

16.      At all times Defendant acted through its authorized agents and employees.

COUNT I

VIOLATION OF THE REAL ESTATE SETTLEMENT AND PROCEDURES ACT

17.      Paragraphs 1-16 are incorporated by reference as if fully set out herein.

18.      Pursuant to RESPA, 12 U. S. C. §2605 (e)(1)(a) and 12 U. S. C. §2605 (e)(1)(b), Plaintiffs issued multiple qualified written requests  (Exhibit D) to Green Tree Servicing dated December 8, 2005, December 20, 2005, April 17, 2006, May 4, 2006, September 2, 2006, November 9, 2006, August 13, 2007,

4

January 3, 2008, and January 17, 2008.

19.    Defendants failed to respond to Plaintiffs' requests, or the responses provided less than full and fair disclosure of information, or failed to address the questions presented in the request.

20.    By failing to respond to the Plaintiffs' request for information regarding the servicing of their mortgage, Green Tree violated RESPA.

21.    As a result of Green Tree's violation, Plaintiffs have been unable to determine the true and correct balance and owing on their mortgage, and have been subjected to repeated collections efforts from Green Tree.

22.    Plaintiffs also believe and aver that Green Tree has assessed unwarranted late fees, forced place insurance from July 2006 to July 2007, and escrow advances to their account.

23.    Without a true and accurate accounting and payment history from Green Tree, Plaintiffs are unable to determine the extent of the actual damages they have incurred because of Green Tree's failure to respond to their qualified written requests.

## COUNT II

## BREACH OF CONTRACT

24.    Paragraphs 1-23 are incorporated by reference as if fully set out herein.

21. Paragraphs 1-20 are set out as if fully set out herein.

22. Plaintiffs made mortgage  payments for the months of November 1996, December 1996, January 1997, February, March, April, May, and June 1997.

23. Defendant failed to credit Plaintiffs for any of these payments totaling $10287.64 (Exhibit D)

5

~~24 Defendant failed to credit Plaintiffs mortgage payments of August 1997 and October 1997.~~

~~25. Defendant wrongfully alleged that Plaintiffs were two months behind in their mortgage payments for August and September 1997.~~

~~26. Plaintiffs entered into an extension agreement on October 8, 1997 and paid $424.37 for the extension agreement and $321.46 in late fees.~~

~~27. Defendant failed to credit Plaintiffs' check number 3658 for $1086.27~~

~~28. Defendant failed to credit Plaintiffs' Western Union payment of May 15, 2001.~~

~~29. On May 28, 2001 Plaintiffs executed forbearance agreement with Conseco. Plaintiffs paid an extension charge of $108.00 and late fees totaling $1471.94, and a return check fee of $143.54.~~

~~30. On February 28, 2002 Plaintiffs paid a total of $1962.80 for an extension agreement.~~

25.    In January 2006 Plaintiffs learned that Green Tree had made major errors in calculating the interest payments reported on the IRS tax Form 1098, creating a significant potential tax liability (Exhibit E).

26.    In January 2006 Defendant advised Plaintiffs that all their Form 1098 from 1996 to 2005 would have to be revised after the Plaintiffs had filed their taxes for each of those years.

27.    To the best of the Plaintiffs' knowledge information and belief, Defendant subsequently added the reported interest overpayment of $12000 back into the mortgage of principal (Exhibit F).

28.    Defendant failed to explain to Plaintiffs how the interest was recalculated or to provide an accounting as per Plaintiffs qualified request.

6

29.    Defendant purchased forced place insurance for Plaintiffs even though Plaintiffs had homeowners insurance at all times (Exhibit G).

30.    Upon information and belief, Defendant has failed and refused to apply the amounts paid by the Plaintiffs accurately and timely.

31.    As a result of Defendant's failure to apply Plaintiffs' payments accurately and timely, Plaintiffs have been subjected to foreclosure notices and additional fees being added to their account.

32.    Green Tree's actions and inactions as outlined above constitute a breach of the contract between the parties and breach of Defendant's duty of good faith and fair dealing.

33.    Green Tree had an obligation under the contract to accept and apply payments as they were paid.

34.    Green Tree's breach was material as it failed to perform a material obligation under the contract.

35.    As a result of said breach, the Plaintiffs have incurred damages for payments and assessments to their account of unwarranted fees, force placed insurance, escrow advances and extension fees.

36.    Plaintiffs' damages were a foreseeable result of Defendant's breach.

37.    In addition to the misapplied payments, and the accrued interest on those funds, without a true accounting and payment history from Green Tree, Plaintiffs are unable to determine the extent of the damages they have incurred as result of Green Trees failure to apply al payments and imposition of unwarranted fees and forced extensions by the Defendant.

<u>COUNT III</u>

7

## VIOLATION OF DELAWARE CONSUMER FRAUD ACT

38.    Paragraphs 1-37 are incorporated by reference as if fully set out herein.

39.    Plaintiffs allege that Defendant violated 6 Del. C. § 2513 by failing to respond to Plaintiffs' request for information on their account, by failing to properly credit payments to their account, and by fraudulently representing that they were behind in payments that had not been properly credited.

### COUNT V
### NEGLIGENCE

40.    Paragraphs 1-39 are incorporated by reference as if fully set out herein.

41.    Plaintiffs allege that Defendant had a duty to properly credit all payments made toward the loan.

42.    Plaintiffs allege that Defendant breached that duty when it failed to calculate Plaintiffs' interest payments correctly and wrongfully placing Plaintiffs' in high cost force placed insurance contracts.

43.    As a result of Defendant's breach, Plaintiffs incurred late fees, were subjected to abusive debt collection practices, were coerced into expensive extension agreements that added significantly to the cost of the loan, and suffered humiliation and embarrassment because of negative or derogatory information being reported by Green Tree to the credit reporting agencies.

44.    As a result of Defendant's breach, Plaintiffs' rating suffered and Plaintiff has not been able to refinance their home.

8

COUNT IV
## COVENANT OF GOOD FAITH AND FAIR DEALING

45.    Paragraphs 1-44 are incorporated by reference as if fully set out herein.

46.    Plaintiffs allege that Defendant breached the covenant of good faith and fair dealing implicit in all Delaware contracts when it failed to properly credit all of the Plaintiffs' payments.

WHEREFORE NOW, the Plaintiffs request the Court to enter judgment in the amount of $125,000 in actual damages, attorney fees, costs, and $2,000,000 in punitive damages.

## JURY TRIAL DEMANDED

LAW OFFICE OF MAGGIE CLAUSELL, LLC

Maggie Clausell, Esq.
Bar ID #4532
9 E. Loockerman Street, Ste. 205
Dover, DE 19901
302-678-7644 (voice)
302-678-0771 (fax)

Date: June 5, 2008

9

# EXHIBIT A

5302                                                              BOOK 1206 PAGE 261

# This Deed, Made this _____ 30th _____

day of _____ August _____ in the year of our

Lord one thousand nine hundred and eighty-three,

BETWEEN FRANCES P. HASTINGS and ELLEN P. LANDON, of 123 Sharptown Road, Laurel, Delaware, 19956, parties of the first part,

- AND -

MICHAEL B. CALLOWAY and CATHERINE L. CALLOWAY, his wife, of 514 King Street, Laurel, Delaware, 19956, parties of the second part.

Witnesseth, That the said parties of the first part, for and in consideration of the sum of TWELVE THOUSAND AND NO/100 DOLLARS ($12,000.00)------------- Current Lawful Money of the United States of America and other good and valuable considerations, the receipt whereof is hereby acknowledged, hereby grant and convey unto the said parties of the second part, their heirs and assigns:

ALL that certain lot, piece, or parcel of land lying and being situate in the Town of Laurel, Little Creek Hundred, Sussex County, State of Delaware, lying on the Northwest side of King Street adjoining lands now or formerly of Ellen P. Landon, lands now or formerly of Elsie W. Palmer and lands now or formerly of James E. Young, Jr., and being more particularly described as follows, to wit:

BEGINNING at a pipe set on the Northwesterly right-of-way line of King Street; said pipe being a corner for the lands herein and lands now or formerly of James E. Young, Jr. and being situate 740 feet more or less from the right-of-way of 4th Street; thence along and with the Northwesterly right-of-way line of King Street and the line of the lands herein, South 32 degrees 40 minutes 00 seconds West 50 feet to a concrete monument, said concrete monument being a corner for the lands herein and lands now or formerly of Ellen P. Landon; thence turning and running along and with the line of the lands herein and lands now or formerly of Ellen P. Landon, North 57 degrees 20 minutes 00 seconds West 200 feet to a concrete monument; thence turning and running along and with the line of the lands herein and lands now or formerly of Elsie W. Palmer North 32 degrees 40 minutes 00 seconds East 50 feet to an axle, said axle being a corner for the lands herein and lands now or formerly of James E. Young, Jr.; thence turning and running along and with the lands herein and lands now or formerly of James E. Young, Jr., South 57 degrees 20 minutes 00 seconds East 200 feet to a pipe on the Northwesterly right-of-way of King Street being the point and place of beginning and said to contain 10,000 square feet of land more or less together with all improvements thereon. The description herein was derived from a survey prepared by Hilyer-Lewis, Inc., Registered Land Surveyors, on August 1, 1983.

BEING all of the same lands devised unto Frances P. Hastings, one of the above-named Grantors herein, by Article X of the Last Will and Testament of Howard J. Penuel, which is filed for record in the Office of the Register of Wills, in and for Sussex County, at Georgetown, Delaware, in Will Book 84, page 580. The said Howard J. Penuel died testate on or about March 30, 1977.

ALSO BEING a part of the same lands devised unto the Grantors herein, Frances P. Hastings and Ellen P. Landon, by Article XIII of the Last Will and Testament of Howard J. Penuel which is filed for record aforesaid, in Will Book 84, page 580.



BOOK 1206 PAGE 263

**In Witness Whereof,** the said parties of the first part have hereunto set their hands and seals, the day and year aforesaid.

Signed, Sealed and Delivered
in the presence of:

_Frances P. Hastings_ (SEAL)
Frances P. Hastings

_Ellen P. Landon_ (SEAL)
Ellen P. Landon

WITNESS

Witness

State of Delaware
STATE TAX DEPT · · SUSSEX
REALTY TRANSFER TAX   $240.00

PURCHASERS REPORT MADE
this 31st day of August, 1983
ASSESSMENT DIVISION OF SUSSEX COUNTY

STATE OF DELAWARE    } SS.
COUNTY OF SUSSEX

BE IT REMEMBERED, That on this 30th day of August In the year of our LORD, one thousand nine hundred and eighty-three personally came before me, The Subscriber, a Notary Public for the State and County aforesaid, FRANCES P. HASTINGS and ELLEN P. LANDON

Parties to this Indenture known to me personally to be such, and they acknowledged this Indenture to be their Deed

GIVEN under my Hand and Seal of Office, the day and year aforesaid.

RECEIVED
MARY ANN DIAMOND
1983 AUG 30 PM 3: 13
RECORDER OF DEEDS
SUSSEX COUNTY

_Elizabeth A. Sharp_
NOTARY PUBLIC

LAW OFFICES
TUNNELL & RAYSOR
GEORGETOWN, DEL.

# EXHIBIT B



# GREEN TREE
MORTGAGE                    SERVICES
*A Division of Green Tree Financial Servicing Corporation*

10/14/96

MICHAEL CALLOWAY
514 KING STREET
LAUREL, DE  199560000

RE:    Loan # 10000156
       Subject Property: 514 KING STREET
                         LAUREL,DE

Dear  MICHAEL CALLOWAY / CATHERINE L. CALLOWAY

Green Tree Mortgage Services, of Rapid City, South Dakota, is pleased to welcome you as our new mortgage loan customer.  We are servicing your loan which originated in our Livonia office.

Our records show that the current terms of your loan are as follows:

|  |  |
|---|---|
| Principal balance: | $125,000.00 |
| Payment amount (principal & interest): | $1,285.98 |
| Due date of first payment: | 11/14/96 |

If your records disagree with the above information, please contact our Mortgage Service Center at the toll free number listed below.

We will be experiencing a transition of the servicing of your loan, however, until further notification, please forward all monthly payments to the following address:

GreenTree Mortgage Services
P.O. Box 6150
Rapid City, SD  57709

We will be sending you a monthly statement.  If your statement does not arrive prior to your first due date, please remit your payment to the above address and reference your loan number on your check or money order.

Should you have any questions regarding any of the above, please contact our customer service department at the above address, or call 1-800-330-5183, 8:00am - 6:00pm Central Standard Time.  Again, we welcome you to GreenTree Mortgage.

Sincerely,
Customer Service Department
Green Tree Mortgage Services

| | | Loan Number |
|---|---|---|
| MICHAEL S CALLOWAY | Green Tree Financial | Date 10/09/96 |
| CATHERINE L CALLOWAY | Servicing Corporation | Maturity Date 10/14/16 |
| | 332 Minnesota Street | Loan Amount $ 125000.00 |
| 514 KING ST | Saint Paul, MN 55101 | Renewal Of |
| LAUREL, DE 19956 | | |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, joint and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of _____
One Hundred Twenty Five Thousand and 00/100 _____ Dollars $ 125000.00 .

[X] **Single Advance:** I will receive all of this principal sum on 10/14/96 . No additional advances are contemplated under this note.

[ ] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.

**Conditions:** The conditions for future advances are _____

[ ] **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

[ ] **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 10/14/96 at the rate of 10.950 %
per year until 10/14/16 .

[ ] **Variable Rate:** This rate may then change as stated below.

[ ] **Index Rate:** The future rate will be _____ the following index rate: _____

[ ] **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

[ ] **Frequency and Timing:** The rate on this note may change as often as _____
A change in the interest rate will take effect _____

[ ] **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____% or less than _____%.

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
[ ] The amount of each scheduled payment will change.  [ ] The amount of the final payment will change.
[ ]

**ACCRUAL METHOD:** Interest will be calculated on a 30/360 simple interest basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
[X] on the same fixed or variable rate basis in effect before maturity (as indicated above).
[ ] at a rate equal to _____

[X] **LATE CHARGE:** If a payment is made more than 15 days after it is due, I agree to pay a late charge of 5% OF UNPAID AMT

[ ] **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which [ ] are [ ] are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:
[ ] **Interest:** I agree to pay accrued interest _____

[ ] **Principal:** I agree to pay the principal _____

[X] **Installments:** I agree to pay this note in 240 payments. The first payment will be in the amount of $ 1285.98
and will be due 11/14/96 . A payment of $ 1285.98 will be due
14th day of each month thereafter. The final payment of the entire
unpaid balance of principal and interest will be due 10/14/16 .

**ADDITIONAL TERMS:**

888 - 316 - 8733
ATTN STEFFANI
Tly

1 800 - 330 - 6183

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

*This Notice relates to a consumer credit transaction dated*  10/09/96  , *between the Creditor named below and* MICHAEL S CALLOWAY  and CATHERINE L CALLOWAY  *(Consumer(s))*.

---

**NOTICE OF RIGHT TO CANCEL**

**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ October 9, 1996 ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

Green Tree Financial Servicing Corporation
(Name of Creditor)
34387 PLYMOUTH
LIVONIA, MI  48150
(Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of  10/11/96
(date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____     _____
Consumer's Signature                    Date

---

### RECEIPT

*Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at* _____ 514 KING ST  LAUREL DE 19956

Consumer(s):

Date _____

X _____
MICHAEL S CALLOWAY

X _____
CATHERINE L CALLOWAY

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

*This Notice relates to a consumer credit transaction dated* __10/09/96__ _____ *, between the Creditor named*
*below and* __MICHAEL S CALLOWAY   and CATHERINE L CALLOWAY__ _____ *(Consumer(s))*.

**NOTICE OF RIGHT TO CANCEL**
**Your Right to Cancel**
You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____
___October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**
If you decide to cancel this transaction, you may do so by notifying us in writing, at

Green Tree Financial Servicing Corporation
                    (Name of Creditor)
34387 PLYMOUTH
LIVONIA, MI  48150
                    (Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the

notice no later than midnight of __10/11/96_____
                                              (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____   _____
Consumer's Signature                    Date

---

**RECEIPT**

*Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at* _____
__514 KING ST  LAUREL DE 19956_____

Consumer(s):

Date _____

X _____
   MICHAEL S CALLOWAY

X _____
   CATHERINE L CALLOWAY

| APPLICANT'S NAME: | APPLICATION SUBMITTED TO | Application Number |
|---|---|---|
| MICHAEL S CALLOWAY<br>CATHERINE L CALLOWAY<br>514 KING ST<br>LAUREL, DE  19956 | GREEN TREE FINANCIAL SERV CORP<br>332 MINNESOTA ST.<br>ST. PAUL, MN  55101 | Application Received<br>By ☐ Mail   ☐ In Person<br>Date of Disclosure |

## SERVICING DISCLOSURE STATEMENT

NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. §2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. No later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and Costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimates**

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

A. ☒ We may assign, sell or transfer the servicing of your loan while the loan is outstanding.

   We are able to service your loan, and we   ☒ will  ☐ will not  ☐ haven't decided whether to   service your loan.

   B. ☐ We do not service mortgage loans (☐ and we have not serviced mortgaged loans in the past three years). We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

C. ☐ We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program for which you have applied, we expect to  ☐ sell all of the mortgage servicing  ☐ retain all of the mortgage servicing  ☐ assign, sell or transfer _____ % of the mortgage servicing.

   D. ☐

2. For all the first lien mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:

   ___XX__ 0 to 25%    _____ 26 to 50%    _____ 51 to 75%    _____ 76 to 100%

   This estimate ☒ does  ☐ does not  include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. A. ☐ We have previously assigned, sold, or transferred the servicing of first lien mortgage loans.

   B. ☒ This is our record of transferring the servicing of first lien mortgage loans we have made in the past three years. The percentages have been rounded to the nearest quartile - 0%, 25%, 50%, 75% or 100%.

   ___0___ . ___25___ %        ___0___ . ___25___ %        ___0___ . ___25___ %

   (This information ☒ does  ☐ does not  include assignments, sales or transfers to affiliates or subsidiaries.)

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/we have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/we understand that this acknowledgment is a required part of the mortgage loan application.


_____
APPLICANT  MICHAEL S CALLOWAY


_____                                    _____
CO-APPLICANT  CATHERINE L CALLOWAY                                 DATE

Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341)  Form RESPA-SDS  6/27/05                    (page 1 of 1)

| Green Tree Financial Servicing Corporation 332 Minnesota Street Saint Paul MN 55101 | MICHAEL S CALLOWAY CATHERINE L CALLOWAY 514 KING ST LAUREL, DE   19956 | Loan Number _____ Date __October 9, 1996 Maturity Date October 14, 2016 Loan Amount $ __125000.00 |
|---|---|---|
| **LENDER'S NAME AND ADDRESS** | **BORROWER'S NAME AND ADDRESS** | |

### NOTICE TO BORROWER
### OF PROPERTY IN SPECIAL FLOOD HAZARD AREA

Property Description: 514 KING ST  LAUREL DE 19956

Flood Map Information: AS INDICATED IN APPRAISAL OF SUBJECT PROPERTY
LOCATED IN FLOOD ZONE C
MAP NO. #100040 0001B          DATE :01/16/81

*Complete either Box A or Box B, whichever is applicable.*

A. [X] The improved real estate or mobile home described above has **not** been determined to be located in a special flood hazard area.

B. [ ] Notice is hereby given to _____ that the
*(Borrower)*
improved real estate or mobile home described above is or will be located in an area designated by the Director of the Federal Emergency Management Agency or by the Secretary of the Department of Housing and Urban Development as a special flood hazard area. This area is delineated on _____'s Flood Insurance Rate
*(Community Name)*
Map (FIRM) or, if the FIRM is unavailable, on the Flood Hazard Boundary Map (FHBM). This area has at least a 1% chance of being flooded within any given year. The risk of exceeding the 1% chance increases with time periods longer than one year. For example, during the life of a 30-year mortgage, a structure located in a special flood hazard area has a 26% chance of being flooded.

### NOTICE TO BORROWER
### ABOUT FEDERAL FLOOD DISASTER RELIEF ASSISTANCE

*(Lender Check One)*
[ ] Notice in Participating Communities
The improved real estate or mobile home securing your loan is or will be located in a community that is now participating in the National Flood Insurance Program. If the property is damaged by flooding in a federally declared disaster, Federal disaster relief assistance may be available. However, such assistance will be unavailable if your community has been identified as a flood-prone area for one year or longer and is not participating in the National Flood Insurance Program when the assistance is approved. This assistance, usually in the form of a loan with a favorable interest rate, may be available for damages incurred in excess of your flood insurance.

[ ] Notice in Nonparticipating Communities
The improved real estate or mobile home securing your loan is or will be located in a community that is not participating in the National Flood Insurance Program. This means that the property is not eligible for Federal flood insurance. If the property is damaged by flooding in a federally declared disaster, Federal disaster relief assistance for the property will be unavailable if your community has been identified as a flood-prone area for one year or longer. Such assistance may be available only if, at the time the assistance would be approved, your community is participating in the National Flood Insurance Program or has been identified as a flood-prone area for less than one year.

The undersigned realizes that the property securing the loan described above is or will be located in an area identified as a flood hazard area and that the undersigned has received the required notice regarding Federal disaster relief assistance.

Borrower  MICHAEL S CALLOWAY       Dated _____

Borrower  CATHERINE L CALLOWAY     Dated _____

Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form FIN  6/22/92          *(page 1 of 1)*

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated __10/09/96_____, between the Creditor named below and __MICHAEL S CALLOWAY   and CATHERINE L CALLOWAY_____ (Consumer(s)).

**NOTICE OF RIGHT TO CANCEL**

**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

Green Tree Financial Servicing Corporation
                        (Name of Creditor)
34387 PLYMOUTH
LIVONIA, MI  48150
            (Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of __10/11/96____
                                                                    (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____        _____
Consumer's Signature                              Date

---

### RECEIPT

Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at _____.
514 KING ST  LAUREL DE 19956 _____

Consumer(s):

Date _____

X _____
   MICHAEL S CALLOWAY

X _____
   CATHERINE L CALLOWAY

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated __10/09/96_____ , between the Creditor named below and __MICHAEL S CALLOWAY   and CATHERINE L CALLOWAY_____ (Consumer(s)).

### NOTICE OF RIGHT TO CANCEL
**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ __October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you may offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

Green Tree Financial Servicing Corporation
                          (Name of Creditor)
34387 PLYMOUTH
LIVONIA, MI  48150
              (Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the

notice no later than midnight of __10/11/96_____
                                          (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____    _____
Consumer's Signature                              Date

### RECEIPT

Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at_____ 514 KING ST  LAUREL DE 19956_____

                                          Consumer(s):

Date _____    X_____
                                          MICHAEL S CALLOWAY

                                          X_____
                                          CATHERINE L CALLOWAY

# EXHIBIT C

WHEN RECORDED RETURN TO:
GREEN TREE FINANCIAL SERV CORP
34387 PLYMOUTH
LIVONIA, MI  48150

Parcel Identification Number
Present: _____
Previous: _____

Name and Address of Preparer
KELISHA V HAYES
34387 PLYMOUTH RD
LIVONIA, MI  48150

---

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on .........OCTOBER..9,..1996...................... . The mortgagor
is .MICHAEL..S..CALLOWAY,..A..MARRIED..MAN..AND..CATHERINE..L..CALLOWAY,..A..MARRIED..WOMAN...........
....................................................................................................
("Borrower"). This Security Instrument is given to ...GREEN..TREE..FINANCIAL..SERVICING..CORPORATION...........
........................................................ , which is organized and existing under the laws of .STATE..OF..DELAWARE
.............................................................................................. , and whose address is
.332..MINNESOTA..STREET...SAINT..PAUL,..MN...55101...............................................................
("Lender"). Borrower owes Lender the principal sum of .ONE..HUNDRED..TWENTY-FIVE..THOUSAND..DOLLARS..AND
NO/100...................................................... Dollars (U.S. $.125,000.00..................). This debt is evidenced
by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the
full debt, if not paid earlier, due and payable on .......OCTOBER..14,..2016...................... . This Security Instrument secures
to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications
of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in .............SUSSEX.................................................................. County, Delaware:

SEE ATTACHED LEGAL DESCRIPTION

which has the address of .......514..KING..ST.............................................. , .........LAUREL..............................................., 
                                            [Street]                                                              [City]
Delaware ....19956............... ("Property Address");
                 [Zip Code]

---

DELAWARE---Single Family---Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3008  9/90 *(page 1 of 6 pages)*

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-DE  2/18/91

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which

**Form 3008 9/90** *(page 2 of 6 pages)*

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-DE 2/18/91

may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage

Form 3008 9/90 *(page 3 of 6 pages)*

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the**

Form 3008  9/90  *(page 5 of 6 pages)*

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302  (1-800-397-2341) FORM MD-1-DE  2/18/91

default is not cured on or before the date specified in the not......    .....der at its option may require immediate payment in full of all sums secured by this Security Instrument wi......   further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees of ........N/A.......................... % of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of title evidence.

    22.  Satisfaction.  Upon payment of all sums secured by this Security Instrument, Lender shall cause the entry of satisfaction to be made upon the records of this Security Instrument without charge to Borrower. Borrower shall pay all costs and fees for entering the satisfaction upon the records of this Security Instrument.

    23.  Riders to this Security Instrument.  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1–4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

......................................................................   ...................................................................... (Seal)
                                                                        MICHAEL  S  CALLOWAY                          −Borrower

                                                                        Social Security Number ..............................................................

......................................................................   ...................................................................... (Seal)
                                                                        CATHERINE  L  CALLOWAY                        −Borrower

                                                                        Social Security Number ..............................................................

———————————————————— [Space Below This Line For Acknowledgment] ————————————————————

STATE OF DELAWARE, ..............SUSSEX.................................... County ss:
    BE IT REMEMBERED that on this ..........9th................................... day of .OCTOBER,..1996...........................
.................................... , personally came before me, the..subscriber,..Michael..S..'Calloway.
..and..Catherine..L...Calloway.............................. , part ..ies................................................ to this Mortgage personally known to me to be such, and severally acknowledged this Mortgage to be ...........their......................................
.................................... act and deed.
    Given under my Hand and Seal of Office, the day and year aforesaid.

                                                ......................................................................
                                                Notary Public

                                                ....John..F...Hyde,..Attorney..at..Law................
                                                Name and Title of Notary

                                                ....Indefinite......................................................
                                                Expiration Date

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-DE 2/18/91                         Form 3008 9/90 *(page 6 of 6 pages)*

EXHIBIT D
2 OF 2

# Michael S. Calloway
514 King Street
Laurel, DE 19956

Sept. 2, 2006

Keith Anderson, President
Green Tree Services
1400 Turbine Drive
Rapid City, SD 57709

Account # 88037954

Mr. Anderson:

This letter is in reference to the mail that I received today from the following address:

Green Tree Insurance Agency, Inc.
P. O. Box 6172
Rapid City, SD 57709-6172

Apparently someone from the above address took it upon their self to purchase a Residential Property Policy (Policy Number MSP 6014732 00) from the following company:

American Security Insurance Company
P. O. Box 50355
Atlanta, GA 30302

I do not know who purchased this policy or who gave them the authorization to but it was not me. Therefore, I would strongly recommend that someone cancel this policy or pay it themself because I will not be paying any money on this policy and no money had better not be taken from my monthly payments.

I have homeowner insurance on my property and personal items that has been in effect since before Green Tree became the insured- mortgagee. It has been the same (State Farm) who also handles my autos. It has not changed. Green Tree is named as primary insured-mortgagee.

I have sent this information to Green Tree numerous times, plus State Farm has talked with and sent documentation numerous times. Apparently this is another fine example of the record keeping ability that your company has. Green Tree has been informed at different times that if they need to verify this information that they should contact State Farm.

Also I am advising you that this will be handed over to our attorney who is currently investigating the fraudulent business dealings that Green Tree has pushed on us for the last ten

(10) years. This is just another fine example on how you run your business. It is frightening to think that what has been discovered so far on our account you are probably doing the same to thousands of other accounts.

It also would be nice to get a response from you or Green Tree but history proves differently. Therefore you can add this to the rest of the documentation that you have. That's right, Green Tree doesn't have any documentation. Hey, but I do. I have ten (10) years of "complete" documentation.

By the way, I have written to you numerous times about different discrepancies but as I have stated above, you do not respond back. One time you did have someone contact us, which only proved that we were right. According to the Forensic Accountant that I am currently discussing this account with, this account is not only being mishandled but is in violation of Federal Law. Don't insult me further by having someone who does not have the authority to make decisions concerning this account contact me. You can contact me at the above address or your attorneys can contact my attorney Ms. Maggie Clausell, Dover, Delaware.

Sincerely,

Michael S. Calloway

cc:   Ms. Maggie Clausell

# Fax

| | |
|---|---|
| Name: | GreenTree |
| Fax: | 605-388-7710 |
| | |
| From: | Michael/Catherine Calloway |
| Date: | November 9, 2006 |
| Subject: | Account 880379540 |
| Pages: | 1 |

## SECOND FAX

I received a payoff with $8519.87 in deferred interest fees on it. I would like a complete and detailed breakdown of this figure immediately. When I called about this I was told to fax my request to this number and I would get a responds in 24-48 hours. The first fax was sent November 6, 2006. I have a forensic accountant waiting for this information. Any delays reflect GeenTrees' unwillingness to cooperate in this process. I will expect a fax to 302-875-5378 by the end of Friday November 10, 2006, with the detailed breakdown. If you have a problem with this I can be reached at 302-875-7561.

Thank you,

Cathy Calloway
514 King Street
Laurel, DE 19956

cc: Mr. Keith Anderson, CEO

From the desk of...
Michael S. Calloway

Laurel, DE 19956

August 13, 2007


Green Tree
PO Box 6172
Rapid City, SD 57709-6172

     RE:    Acct. # 880379540

Dear Customer Service:

Please apply all the monthly payments from November 14, 1996, through June 14, 1997, to this
account immediately.

Thank you,

Michael S. Calloway

January 17, 2008

Mr. Keith Anderson
1400 Turbine Dr.
Rapid City, SD 57709

Dear Mr. Anderson:

We are enclosing the third fax we have sent to your customer service since January 3, 2008.
They did send us various papers to 2004 when we asked for a complete history from October
1996 to the present. We do not know how to make it any more clearer.

Please instruct your staff.

Sincerely,

Michael and Catherine Calloway
514 King Street
Laurel, DE 19956

encl

# Fax

| | |
|---|---|
| **Name:** | Greentree |
| **Fax:** | 1-866-870-9919 |
| **Phone:** | 1-800-330-5183 |
| **From:** | Michael and Catherine Calloway |
| **Date:** | January 3, 2008 |
| **Subject:** | Account #880379540 |
| **Pages:** | 1 |

Customer Service:

I would like a complete history of where every dime of my money has gone from November 1996 to the present. I want this information in detail and complete including but not limited to principal, interest, late fees, corporate advance balances and what they mean, insurance, additional charges and what they mean.

Also, after having received more than twenty phone calls from your collections department yesterday, I am putting in writing to you to not call any family, neighbors, employment regarding us or this loan. If you have any further questions please refer them to me or to my attorney, Ms Maggie Clausell at 1-302-678-7644.

Thank you,

*Catherine Calloway*

Michael and Catherine Calloway

From the desk of...
Michael S. Calloway
514 King Street
Laurel, DE 19956

# Fax

| | |
|---|---|
| **Name:** | Greentree |
| **Fax:** | 1-866-870-9919 |
| **Phone:** | 1-800-330-5183 |
| **From:** | Michael and Catherine Calloway |
| **Date:** | January 17, 2008 |
| **Subject:** | Account #880379540 |
| **Pages:** | 1 |

## THIRD REQUEST

Customer Service:

I would like a complete history of where every dime of my money has gone from November 1996 to the present. IN case you do not understand what the present means, it means through today's date or whatever date you run the history. I want this information in detail and complete including but not limited to principal, interest, late fees, corporate advance balances and what they mean, insurance, additional charges and what they mean.

Thank you,

*Michael S. Calloway*
*Catherine Calloway*
Michael and Catherine Calloway

cc: Mr. Keith Anderson, CEO

From the desk of...
Michael S. Calloway
514 King Street
Laurel, DE 19956

# EXHIBIT D

# 1 OF 2

**Michael S. Calloway**
514 King Street
Laurel, DE 19956

December 8, 2005

Mr. Keith Anderson
Green Tree Services
1400 Turbine Drive
Rapid City, SD 5770

Dear Mr. Anderson:

This letter is regarding my account with Greentree. My account number is #6700107318. I must admit that some years ago when my wife went on total and permanent disability I got behind with my payments. This was due to a lost of about $30,000.00 a year income. While keeping in touch with Greentree I was advised that any late charges would be added onto the end of the loan. I have undoubtly tried to make at least a payment and many times over the regular payment. Since that time I have made many attempts to get my due date changed. Not only would this allow me to better manage my bills with their due dates because of my wife's disability checks are not good until the last day of the month but it would also give me time to pay extra so that we can get the outstanding late charges paid off.

I am trying to get it changed to the end of the month. This would allow me to make at least a full monthly payment and not to add anymore to late charges. Of course by moving my due date to the end of the month would also mean that you would not get anymore late charges. Everyone I have talked to just tells me that they cannot do this. I think that if this were done it would greatly benefit your customer and in the long run would benefit Greentree. This would be an account that your collectors would not have to be continuous calling and harassing.

Since all of your collectors keep telling me that this cannot be done, I am asking you to do this. Also I do not agree with the figures on this account so I would like to request a full amortization of this account from the beginning of the loan. I would appreciate your immediate attention in providing this information to me as soon as possible.

Sincerely,

*Michael S. Calloway*

Michael S. Calloway

Michael S. Calloway
514 King Street
Laurel, DE 19956

December 20, 2005

Mr. Keith Anderson
Green Tree Services
1400 Turbine Drive
Rapid City, SD 57709

Dear Mr. Anderson:

I wrote you a letter concerning the changing of my due date of my loan. I am not sure if the first letter even got to you but I did receive a form letter in the mail today with two reasons why our due date cannot be changed.

One is the due date requested is not a valid option. My request for the end of the month could also be on the 1st.

The second reason was that the account is not current. I am not sure what current is suppose to be but I have been told that current means all late fees have to be paid. I cannot pay them and they are just getting higher. I already explained why it is not paid until the end of the month instead of the 14th. The account is paid every month though.

There is a contact number but I know there is no need to call. Every time I have attempted to do something about this, I am given a very hard time by whoever I talk with in Customer Service. They always say they do not have the authority to do anything. I don't understand why I cannot get any help. This is why I have finally contacted you.

Also I requested in my last letter a full amortization of this account from the beginning of the loan. I have heard nothing concerning it. My account number is 6700107318 but the letter I received today has an account number of 88037954. Do I have a different number and have not been told about it?

Sincerely,

Michael S. Calloway

April 4, 2006

To Whom It May Concern:

I would like a copy of all correspondence, extension notes and paperwork, contract, and a full explanation of what "other" is for each month it was applied. I also want a complete history of this account from October 1996 to present. I want to know where every dollar if my money has gone.

Thank you

Michael J Calloway

Catherine A Calloway

Acct # 88037954

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

April 17, 2006

Mr. Keith Anderson
Green Tree Services
1400 Turbine Drive
Rapid City, SD 57709

Dear Mr. Anderson:

I have written you two times and two times you have not responded to my letters. It is becoming clearer to me as to why you will not change my due date therefore eliminating the late fees but we will now deal with that at a later date.

My wife and I have spent the last two months attempting to get a 1098 INT so we could do our taxes. We were finally told that we were in the minus interest for the year. This is when we have paid more than $10,000. in interest to you this past year. We had to insist on getting a 1098 INT for 2005. We were then told you had made mistakes in our 1098 INT's for the entire length of the loan and would have to send us corrected 1098 INT's. After calling many times we finally received the 1098 INT's and they are still wrong. At this time I have talked with a Crystal, Jill, someone who was pretending to be the director of customer services (the director was on vacation), and the director's assistant who was suppose to call me back last week and has not. I attempted to call 800-544-8056 and no one will answer the phone. I know you have caller ID and by this time they all know my phone number. I also asked to speak with you or your assistant and no one would put me through. Is this the way your company handles their customers when they know they are wrong? I finally had to file my taxes with the incorrect 1098 INT.

I also asked for a complete history of this account. The first time I received from 2000 to present so I asked again. This time I received from 1997 to present. My loan originated in 1996. I am now being told you don't have these records so how can you say there are mistakes when you don't have all the records.

After talking with Jill for 45 minutes the other night, Jill was going to return my phone call the next night at 5:30 PM EST to discuss the statements, interests, extensions, etc. Jill finally called after 6:00 PM and left a message that she forgot the time because she was busy and also that the corrected 1098's had been sent. They were finally received and I might add, are incorrect. Jill was also the one that informed me to fax a letter (she provided me with the number) requesting all documentation (loan contract, payment history, correspondence, rate modifications, loan extensions and the correspondence related to the extensions) and any other documentation that you may have so that we can work to get this loan straightened out. Jill stated that I was allowed to have this information, but would have to request it. I faxed this request that night before I got off the phone with Jill. She said that she would be glad to go over it with me after I receive this information. I have not received this information. I know that I am requesting a complete history of every penny that I have paid in and where it went, but you should have record of this

available.

I was offered a great interest rate by another mortgage company last year to refinance but since I know as my wife and I have been saying for years that there are problems with this account, I could not take it. . We have been harassed by you, threatened by you, and have almost lost our home to you but we will not go away until this account is straightened out. We have been treated like trash by your people and quite frankly that is still going on today, just in a different way.

**Again, at this time I am requesting the loan contract, payment history, correspondence, rate modifications, loan extensions and the correspondence related to the extensions, and any other documentation including notes, and phone conversations. In case I have not listed something here, let me say I want a complete copy of this file.**

I hope that 10 days from the date of this letter will be enough time to get this information to me. Additionally since I am going to have to hire an accountant to audit this account, I think you should pay for any and all fees in regards to this. Please let me know to whom and to what address I should send the bill.

Sincerely,

Michael S. Calloway
514 King Street
Laurel, DE 19956
302-875-5378
Acct # 88037954

May 4, 2006

Mr. Keith Anderson, President
Green Tree Services
1400 Turbine Drive
Rapid City, SD 57709

Dear Mr. Anderson:

I wrote on April 17, 2006, requesting information on account number 88037954. I received a call from Jill in the late afternoon of April 26, 2006. She told me she is still investigating this account. She also assured me that I would be getting the information I requested. As of this date I have not received any documents except another change to the 1099-INT that I was told prior to April 15, 2006, was absolutely right. Your accounting department cannot get anything right or are they so busy trying to hide all the mistakes made in this account and I would venture to say in many others. If you have made mistakes in my mortgage, I am sure you have made them in other accounts.

I have spoken with an attorney concerning this matter but I would rather not have to use one unless necessary. At this point you are making it very difficult to continue without a lawsuit. It is your decision.

Sincerely,

Michael S. Calloway
514 King Street
Laurel, DE 19956

# EXHIBIT E

GREEN TREE SERVICING LLC
345 SAINT PETER STREET - L800
SAINT PAUL, MN 55102
1-800-643-0202

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19966

☒ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number<br><br>GREEN TREE SERVICING LLC<br>345 SAINT PETER STREET - L800<br>SAINT PAUL, MN 55102<br>1-800-643-0202 | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901<br><br>**2005**<br><br>Form 1098 | **Mortgage Interest Statement** |
|---|---|---|---|
| RECIPIENT'S Federal identification no.    PAYER'S social security number<br>41-1795888             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 | 1 Mortgage interest received from payer(s)/borrower(s) *<br><br>$7,816.71 | | **Copy B**<br>**For Payer** |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code<br><br>MICHAEL CALLOWAY<br>CATHERINE CALLOWAY<br>514 KING STREET<br>LAUREL, DE 19956 | 2 Points paid on purchase of principal residence (See Box 2 below.) | | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed |
| | 3 Refund of overpaid interest (See Box 3 below.) | | on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage |
| | 4 | | interest or for these points or because you did not report this refund of interest on your return. |
| Account number (see instructions)<br>88037954 | | | |

Form 1098          (keep for your records)          Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a governmental agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

**Account number.** May show an account or other unique number the payer has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are

deductible by you only in certain circumstances. Caution: If you prepaid interest in 2005 that accrued in full by January 15, 2006, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2005 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2005 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

GREEN TREE SERVICING LLC
345 SAINT PETER STREET, L800
SAINT PAUL, MN 55102
1-800-643-0202

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

[X] CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | | |
|---|---|---|---|---|---|
| GREEN TREE SERVICING LLC<br>345 SAINT PETER STREET, L800<br>SAINT PAUL, MN 55102<br>1-800-643-0202 | | | **2005**<br>Form 1098 | **Mortgage Interest Statement** | Copy B<br>For Payer |
| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s)* | | | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| 41-1798968 | 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 | $7,433.70 | | | |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | | 2 Points paid on purchase of principal residence (See Box 2 below.) | | | |
| MICHAEL CALLOWAY<br>CATHERINE CALLOWAY<br>514 KING STREET<br>LAUREL, DE 19956 | | 3 Refund of overpaid interest (See Box 3 below.) | | | |
| | | 4 | | | |
| Account number (see instructions) | | | | | |
| 88037954 | | (keep for your records) | | | |

Form 1098                                      Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

Account number. May show an account or other unique number the payer has assigned to distinguish your account.

Box 1. Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are

deductible by you only in certain circumstances. Caution: If you prepaid interest in 2005 that accrued in full by January 15, 2006, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2005 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

Box 3. Do not deduct this amount. It is a refund for credit(s) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2006 Form 1040. No adjustment to your prior year's tax return is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

Box 4. The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

GREEN TREE SERVICING LLC
345 SAINT PETER STREET- L600
SAINT PAUL, MN 55102
1-800-643-0202

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | | OMB No. 1545-0901 | |
|---|---|---|---|
| GREEN TREE SERVICING LLC 345 SAINT PETER STREET- L600 SAINT PAUL, MN 55102 1-800-643-0202 | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | 2005 Form 1098 | Mortgage Interest Statement |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s)* | $7,433.70 | Copy B For Payer |
|---|---|---|---|---|
| 41-1795588 | 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 | | | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | | 2 Points paid on purchase of principal residence (See Box 2 below.) | | |
| MICHAEL CALLOWAY CATHERINE CALLOWAY 514 KING STREET LAUREL, DE 19956 | | 3 Refund of overpaid interest (See Box 3 below.) | | |
| | | 4 | | |
| Account number (see instructions) 88037954 | | | | |

Form 1098          (keep for your records)          Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

[instructional fine print omitted for legibility]

Green Tree Servicing LLC
345 St Peter Street MS TAX-A
SAINT PAUL, MN 55102-1641
800-330-5183

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

[X] CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was secured by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | Mortgage Interest Statement |
|---|---|---|---|
| Green Tree Servicing LLC 345 St Peter Street MS TAX-A SAINT PAUL, MN 55102-1641 800-330-5183 | | **2004** Form **1098** | |
| RECIPIENT'S Federal identification no.  41-1795888 | PAYER'S social security number  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 | 1 Mortgage interest received from payer(s)/borrower(s) * $10,101.39 | Copy B For Payer This information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | | 2 Points paid on purchase of principal residence (See Box 2 below) | |
| MICHAEL CALLOWAY CATHERINE CALLOWAY 514 KING STREET LAUREL, DE 19956 | | 3 Refund of overpaid interest (See Box 3 below) | |
| | | 4 | |
| Account number (optional)  00000000000700107316 | | (keep for your records) | |

Form 1098                                                                 Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

Box 1. Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2004 that accrued in full by January 15, 2005, this prepaid amount may be included in box 1. However, you cannot deduct the prepaid amount in 2004 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home

equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately) or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

Box 3. Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2004 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustments to your prior year(s) tax returns is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

Box 4. The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

* 8003390 00003720S0 0^67P8 6937P04 0125NR0S

MICHAEL CALLOWAY
514 KING STREET
LAUREL DE 19956-1564

luduldulduluuddulldulluduuddulduldld

SC0104:000

## Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2004 that accrued in full by January 15, 2005, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2004 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the

mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately) or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2004 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as real estate taxes or insurance paid from escrow.

☐ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | 6. Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 2004 Form 1098 | Mortgage Interest Statement |
|---|---|---|---|
| Green Tree Servicing LLC PO Box 6076 Rapid City, SD 57709-6076 1-800-330-5183 | | | |
| RECIPIENT'S Federal identification no. 41-1795868 | PAYER'S social security number 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 | 1 Mortgage interest received from payer(s)/borrower(s)* $ 13,930.13 | Copy B For Payer The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for those points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address (including apt. no.), city, state, and Zip code | | 2 Points paid on purchase of principal residence (See Box 2 on back). $ | |
| MICHAEL CALLOWAY 514 KING STREET LAUREL DE 19956-1564 | | 3 Refund of overpaid interest (See Box 3 on back) $ | |
| | | 4 | |
| | | Account number (optional) 6700107318 | |

Form 1098                    (Keep for your records.)                    Department of the Treasury - Internal Revenue Service

## Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction. Each borrower may have to include in income a share of any amount reported in box 3. If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

Box 1. Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2003 that accrued in full by January 15, 2004, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2003 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the

mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately), or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

Box 3. Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2003 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

Box 4. The interest recipient may use this box to give you other information, such as real estate taxes or insurance paid from escrow.

Pg 2 of 2

☐ CORRECTED (if checked)

CI.SC0111-000

| RECIPIENT'S/LENDER'S name, address, and telephone number | | * Caution. The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest for the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | Mortgage Interest Statement |
|---|---|---|---|---|
| Green Tree<br>345 St. Peter Street TAX-A<br>St. Paul MN  55102-1641<br>1-800-330-5183 | | | **2003**<br>Form **1098** | |
| | | 1 Mortgage interest received from payer(s)/borrower(s)*<br>$  8,725.28 | | **Copy B<br>For Payer** |
| RECIPIENT'S Federal identification no.<br>41-1795868 | PAYER'S social security number<br>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 | 2 Points paid on purchase of principal residence (See Box 2 on back)<br>$ | | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address (including apt. no.), city, state, and ZIP code | | 3 Refund of overpaid interest (See Box 3 on back)<br>$ | | |
| MICHAEL S CALLOWAY<br>CATHERINE L CALLOWAY<br>614 KING STREET<br>LAUREL DE 19956-1564 | | 4 | | |
| | | Account number (optional)<br>6700107310 | | |

(Keep for your records.)                                                                 Department of the Treasury - Internal Revenue Service

Green Tree Servicing LLC
345 St Peter Street MS TAX-A
SAINT PAUL, MN 55102-1641
800-330-5183

CALLOWAY MICHAEL S
CALLOWAY CATHERINE L
514 KING STREET
LAUREL, DE 19956

☒ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was required by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | | Mortgage Interest Statement |
|---|---|---|---|---|
| Green Tree Servicing LLC 345 St Peter Street MS TAX-A SAINT PAUL, MN 55102-1641 800-330-5183 | | 2003 Form 1098 | | |
| RECIPIENT'S Federal identification no. 41-1795868 | PAYER'S social security number 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 | 1 Mortgage interest received from payer(s)/borrower(s) * $6,971.41 | | Copy B For Payer The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | 2 Points paid on purchase of principal residence (See Box 2 below.) | | | |
| CALLOWAY MICHAEL S CALLOWAY CATHERINE L 514 KING STREET LAUREL, DE 19956 | 3 Refund of overpaid interest (See Box 3 below.) | | | |
| | 4 | | | |
| Account number (optional) 0000000000700107318 | | | | |
| Form 1098 | (keep for your records) | | Department of the Treasury - Internal Revenue Service | |

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year, must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payment(s) were subsidized by a governmental agency, you may not be able to deduct the amount of the subsidy.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2003 that accrued in full by January 15, 2004, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2003 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home

equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For examples, if a home equity loan exceeds $100,000 ($50,000 if married filing separately) or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value point), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 1 may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2003 Form 1040. However, do not report this refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

EXHIBIT F

88037954 AMORTIZATION SCHEDULE

| Month | Interest Rate | Payment Amount | Interest | Principal | Curtailment | Curtailment Date | New Balance |
|---|---|---|---|---|---|---|---|
| 6/14/97 | 10.9500% | $1,285.98 | $1,130.03 | $155.95 | | | $123,683.23 |
| 7/14/97 | 10.9500% | $1,285.98 | $1,128.61 | $157.37 | | | $123,525.86 |
| 8/14/97 | 10.9500% | $1,285.98 | $0.00 | $0.00 | | | $123,525.86 |
| 9/14/97 | 10.9500% | $1,285.98 | $0.00 | $0.00 | | | $123,525.86 |
| 10/14/97 | 10.9500% | $1,285.98 | $0.00 | $0.00 | | | $123,525.86 |
| 11/14/97 | 10.9500% | $1,285.98 | $1,127.57 | $158.41 | $438.39 | 11/17/1997 | $122,929.06 |
| 12/14/97 | 10.9500% | $1,285.98 | $1,121.78 | $164.20 | $14.02 | 12/26/1997 | $122,750.84 |
| Partial 1997 Interest | | | $4,507.99 | | | | |

No history available prior to June 1997.  Interest reported was $10,182.91

| Month | Interest Rate | Payment Amount | Interest | Principal | Curtailment | Curtailment Date | New Balance |
|---|---|---|---|---|---|---|---|
| 1/14/98 | 10.9500% | $1,285.98 | $1,120.10 | $165.88 | | | $122,584.96 |
| 2/14/98 | 10.9500% | $1,285.98 | $14.02 | $0.00 | | | $122,584.96 |
| 3/14/98 | 10.9500% | $1,285.98 | $0.00 | $0.00 | | | $122,584.96 |
| 4/14/98 | 3.0210% | $707.28 | $308.61 | $398.67 | | | $122,186.29 |
| 5/14/98 | 3.0210% | $707.28 | $307.59 | $399.69 | $15.00 | 5/2/1998 | $121,771.60 |
| 6/14/98 | 3.0210% | $707.28 | $306.54 | $400.74 | $15.00 | 6/1/1998 | $121,355.86 |
| 7/14/98 | 3.0210% | $707.28 | $305.51 | $401.77 | | | $120,954.09 |
| 8/14/98 | 3.0210% | $707.28 | $304.50 | $402.78 | | | $120,551.31 |
| 9/14/98 | 3.0210% | $707.28 | $303.49 | $403.79 | | | $120,147.52 |
| 10/14/98 | 10.9500% | $1,285.98 | $1,096.35 | $189.63 | | | $119,957.89 |
| 11/14/98 | 10.9500% | $1,285.98 | $1,094.62 | $191.36 | | | $119,766.53 |
| 12/14/98 | | | $6.00 | | | | |
| 1998 Interest | | | $5,167.33 | | | | |

| Month | Interest Rate | Payment Amount | Interest | Principal | Curtailment | Curtailment Date | New Balance |
|---|---|---|---|---|---|---|---|
| 12/14/98 | 10.9500% | $1,285.98 | $1,092.87 | $193.11 | | | $119,573.42 |
| 12/14/98 | | | $1,086.87 | | | | |
| 1/14/99 | 10.9500% | $1,285.98 | $1,091.11 | $194.87 | | | $119,378.55 |
| 2/14/99 | 10.9500% | $1,285.98 | $1,089.33 | $196.65 | | | $119,181.90 |
| 3/14/99 | 10.9500% | $1,285.98 | $1,087.53 | $198.45 | | | $118,983.45 |
| 4/14/99 | 10.9500% | $1,285.98 | $12.02 | $0.00 | | | $118,983.45 |
| 5/14/99 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $118,983.45 |
| 6/14/99 | 8.5000% | $1,086.27 | $842.80 | $243.47 | | | $118,739.98 |
| 7/14/99 | 8.5000% | $1,086.27 | $841.07 | $245.20 | | | $118,494.78 |
| 8/14/99 | 8.5000% | $1,086.27 | $839.34 | $246.93 | | | $118,247.85 |
| 9/14/99 | 8.5000% | $1,086.27 | $837.59 | $248.68 | | | $117,999.17 |
| 10/14/99 | 8.5000% | $1,086.27 | $835.83 | $250.44 | | | $117,748.73 |
| 11/14/99 | 8.5000% | $1,086.27 | $834.05 | $252.22 | | | $117,496.51 |
| 12/14/99 | | | $3.46 | | | | |
| 1999 Interest | | | $9,401.00 | | | | |

| Month | Interest Rate | Payment Amount | Interest | Principal | Curtailment | Curtailment Date | New Balance |
|---|---|---|---|---|---|---|---|
| 12/14/99 | 8.5000% | $1,086.27 | $832.27 | $254.00 | | | $117,242.51 |
| 12/14/99 | | | $828.81 | | | | |
| 1/14/00 | 8.5000% | $1,086.27 | $830.47 | $255.80 | | | $116,986.71 |
| 2/14/00 | 8.5000% | $1,086.27 | $828.66 | $257.61 | | | $116,729.10 |
| 3/14/00 | 8.5000% | $1,086.27 | $826.83 | $259.44 | | | $116,469.66 |
| 4/14/00 | 8.5000% | $1,086.27 | $824.99 | $261.28 | | | $116,208.38 |
| 5/14/00 | 8.5000% | $1,086.27 | $823.14 | $263.13 | | | $115,945.25 |
| 6/14/00 | 8.5000% | $1,086.27 | $821.28 | $264.99 | | | $115,680.26 |
| 7/14/00 | 8.5000% | $1,086.27 | $819.40 | $266.87 | | | $115,413.39 |
| 8/14/00 | 8.5000% | $1,086.27 | $817.51 | $268.76 | | | $115,144.63 |

88037954 AMORTIZATION SCHEDULE

| Month | Interest Rate | Payment Amount | Interest | Principal | Curtailment | Curtailment Date | New Balance |
|---|---|---|---|---|---|---|---|
| 9/14/00 | 8.5000% | $1,086.27 | $815.61 | $270.66 | | | $114,873.97 |
| 10/14/00 | 8.5000% | $1,086.27 | $813.69 | $272.58 | | | $114,601.39 |
| 11/14/00 | 8.5000% | $1,086.27 | $811.76 | $274.51 | | | $114,326.88 |
| 12/14/00 | | | $6.00 | | | | |
| | | | $9,868.15 | | | | |
| | | | | | | | |
| 12/14/00 | 8.5000% | $1,086.27 | $809.82 | $276.45 | | | $114,050.43 |
| | | | | | | | |
| 12/14/00 | | | $803.82 | | | | |
| 1/14/01 | 8.5000% | $1,086.27 | $807.86 | $278.41 | | | $113,772.02 |
| 2/14/01 | 8.5000% | $1,086.27 | $805.89 | $280.38 | | | $113,491.64 |
| 3/14/01 | 8.5000% | $1,086.27 | $803.90 | $282.37 | | | $113,209.27 |
| 4/14/01 | 8.5000% | $1,086.27 | $108.00 | $0.00 | | | $113,209.27 |
| 5/14/01 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $113,209.27 |
| 6/14/01 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $113,209.27 |
| 7/14/01 | 6.1660% | $597.44 | $581.71 | $15.73 | | | $113,193.54 |
| 8/14/01 | 6.1666% | $597.44 | $581.63 | $15.81 | | | $113,177.73 |
| 9/14/01 | 8.5000% | $1,086.27 | $801.68 | $284.59 | | | $112,893.14 |
| 10/14/01 | 8.5000% | $1,086.27 | $799.66 | $286.61 | | | $112,606.53 |
| 11/14/01 | 8.5000% | $1,086.27 | $797.63 | $288.64 | | | $112,317.89 |
| 2001 Interest | | | $6,891.78 | | | | |
| | | | | | | | |
| 12/14/01 | 8.5000% | $1,086.27 | $795.59 | $290.68 | | | $112,027.21 |
| 1/14/02 | 8.5000% | $1,086.27 | $793.53 | $292.74 | | | $111,734.47 |
| 2/14/02 | 8.5000% | $1,086.27 | $13.73 | $0.00 | | | $111,734.47 |
| 3/14/02 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $111,734.47 |
| 4/14/02 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $111,734.47 |
| 5/14/02 | 8.5000% | $1,086.27 | $791.45 | $294.82 | | | $111,439.65 |
| 6/14/02 | 8.5000% | $1,086.27 | $789.36 | $296.91 | | | $111,142.74 |
| 7/14/02 | 8.5000% | $1,086.27 | $163.00 | $0.00 | | | $111,142.74 |
| 8/14/02 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $111,142.74 |
| 9/14/02 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $111,142.74 |
| 10/14/02 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $111,142.74 |
| 11/14/02 | 6.1770% | $597.49 | $572.11 | $25.38 | | | $111,117.36 |
| 12/14/02 | 6.1770% | $597.49 | $571.98 | $25.51 | | | $111,091.85 |
| 2002 Interest | | | $4,490.75 | | | | |
| | | | | | | | |
| 1/14/03 | 6.1770% | $597.49 | $571.85 | $25.64 | | | $111,066.21 |
| 2/14/03 | 6.1770% | $597.49 | $571.71 | $25.78 | | | $111,040.43 |
| 3/14/03 | 6.1770% | $597.49 | $571.58 | $25.91 | | | $111,014.52 |
| 4/14/03 | 6.1770% | $597.49 | $571.45 | $26.04 | | | $110,988.48 |
| 5/14/03 | 8.5000% | $1,086.27 | $786.17 | $300.10 | | | $110,688.38 |
| 6/14/03 | 8.5000% | $1,086.27 | $784.04 | $302.23 | | | $110,386.15 |
| 7/14/03 | 8.5000% | $1,086.27 | $781.90 | $304.37 | | | $110,081.78 |
| 8/14/03 | 8.5000% | $1,086.27 | $779.75 | $306.52 | | | $109,775.26 |
| 9/14/03 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $109,775.26 |
| 10/14/03 | 8.5000% | $1,086.27 | $777.57 | $308.70 | | | $109,466.56 |
| 11/14/03 | 8.5000% | $1,086.27 | $775.39 | $310.88 | | | $109,155.68 |
| 2003 Interest | | | $6,971.41 | | | | |
| | | | | | | | |
| 12/14/03 | 8.5000% | $1,086.27 | $773.19 | $313.08 | | | $108,842.60 |
| 1/14/04 | 8.5000% | $1,086.27 | $770.97 | $315.30 | | | $108,527.30 |
| 2/14/04 | 8.5000% | $1,086.27 | $768.74 | $317.53 | | | $108,209.77 |

88037954 AMORTIZATION SCHEDULE

| Month | Interest Rate | Payment Amount | Interest | Principal | Curtailment | Curtailment Date | New Balance |
|---|---|---|---|---|---|---|---|
| 3/14/04 | 8.5000% | $1,086.27 | $766.49 | $319.78 | | | |
| 4/14/04 | 8.5000% | $1,086.27 | $764.22 | $322.05 | | | $107,889.99 |
| 5/14/04 | 8.5000% | $1,086.27 | $761.94 | $324.33 | | | $107,567.94 |
| 6/14/04 | 8.5000% | $1,086.27 | $759.64 | $326.63 | | | $107,243.61 |
| 7/14/04 | 8.5000% | $1,086.27 | $757.33 | $328.94 | | | $106,916.98 |
| 8/14/04 | 8.5000% | $1,086.27 | $755.00 | $331.27 | | | $106,588.04 |
| 9/14/04 | 8.5000% | $1,086.27 | $752.65 | $333.62 | | | $106,256.77 |
| 10/14/04 | 8.5000% | $1,086.27 | $750.29 | $335.98 | | | $105,923.15 |
| 11/14/04 | 8.5000% | $1,086.27 | $747.91 | $338.36 | | | $105,587.17 |
| 12/14/04 | 8.5000% | $1,086.27 | $745.56 | $340.71 | $13.73 | 12/28/2004 | $105,248.81 |
| | | | $227.46 | | | | $104,894.37 |
| 2004 Interest | | | $10,101.39 | | | | |
| | | | | | | | |
| 1/14/05 | 8.5000% | $1,086.27 | $743.00 | $343.27 | | | |
| | | | | | | | $104,551.10 |
| | | | $515.64 | | | | |
| 2/14/05 | 8.5000% | $1,086.27 | $740.57 | $345.70 | | | |
| 3/14/05 | 8.5000% | $1,086.27 | $738.12 | $348.15 | | | $104,205.40 |
| 4/14/05 | 8.5000% | $1,086.27 | $735.66 | $350.61 | | | $103,857.25 |
| 5/14/05 | 8.5000% | $1,086.27 | $733.17 | $353.10 | | | $103,506.64 |
| 6/14/05 | 8.5000% | $1,086.27 | $730.67 | $355.60 | | | $103,153.54 |
| 7/14/05 | 8.5000% | $1,086.27 | $728.15 | $358.12 | | | $102,797.94 |
| 8/14/05 | 8.5000% | $1,086.27 | $725.62 | $360.65 | | | $102,439.82 |
| 9/14/05 | 8.5000% | $1,086.27 | $723.06 | $363.21 | | | $102,079.17 |
| 10/14/05 | 8.5000% | $1,086.27 | $720.49 | $365.78 | | | $101,715.96 |
| 11/14/05 | 8.5000% | $1,086.27 | $717.90 | $368.37 | | | $101,350.18 |
| 12/14/05 | | | $7.76 | | | | $100,981.81 |
| 2005 Interest | | | $7,816.71 | | | | |
| | | | | | | | |
| 12/14/05 | 8.5000% | $1,086.27 | $715.29 | $370.98 | | | |
| | | | | | | | $100,610.83 |
| 12/14/05 | | | $707.53 | | | | |
| 1/14/06 | | | $712.66 | | | | |
| 2/14/06 | | | $710.01 | | | | |
| 3/14/06 | | | $707.35 | | | | |
| | | | | | | | |
| Partial 2006 interest | | | $2,837.55 | | | | |

| | Calculated | Reported | Variance |
|---|---|---|---|
| 97 Interest | 4,507.99 | 4,507.78 | 0.21 |
| 98 Interest | 5,167.33 | 7,612.89 | (2,445.56) |
| 99 Interest | 9,401.00 | 9,514.68 | (113.68) |
| 00 Interest | 9,868.15 | 10,094.84 | (226.69) |
| 01 Interest | 6,891.78 | 7,779.23 | (887.45) |
| 02 Interest | 4,490.75 | 5,603.90 | (1,113.15) |
| 03 Interest | 6,971.41 | 8,725.26 | (1,753.85) |
| 04 Interest | 10,101.39 | 13,930.13 | (3,828.74) |
| 05 YTD Int | 4,503.57 | 6,338.17 | (1,834.60) |
| TOTAL | 61,903.37 | 74,106.88 | (12,203.51) |

EXHIBIT G

# Michael S. Calloway
514 King Street
Laurel, DE 19956

Sept. 2, 2006

Keith Anderson, President
Green Tree Services
1400 Turbine Drive
Rapid City, SD 57709

Account # 88037954

Mr. Anderson:

This letter is in reference to the mail that I received today from the following address:

Green Tree Insurance Agency, Inc.
P. O. Box 6172
Rapid City, SD 57709-6172

Apparently someone from the above address took it upon their self to purchase a Residential Property Policy (Policy Number MSP 6014732 00) from the following company:

American Security Insurance Company
P. O. Box 50355
Atlanta, GA 30302

I do not know who purchased this policy or who gave them the authorization to but it was not me. Therefore, I would strongly recommend that someone cancel this policy or pay it themself because I will not be paying any money on this policy and no money had better not be taken from my monthly payments.

I have homeowner insurance on my property and personal items that has been in effect since before Green Tree became the insured- mortgagee. It has been the same (State Farm) who also handles my autos. It has not changed. Green Tree is named as primary insured-mortgagee.

I have sent this information to Green Tree numerous times, plus State Farm has talked with and sent documentation numerous times. Apparently this is another fine example of the record keeping ability that your company has. Green Tree has been informed at different times that if they need to verify this information that they should contact State Farm.

Also I am advising you that this will be handed over to our attorney who is currently investigating the fraudulent business dealings that Green Tree has pushed on us for the last ten

(10) years. This is just another fine example on how you run your business. It is frightening to think that what has been discovered so far on our account you are probably doing the same to thousands of other accounts.

It also would be nice to get a response from you or Green Tree but history proves differently. Therefore you can add this to the rest of the documentation that you have. That's right, Green Tree doesn't have any documentation. Hey, but I do. I have ten (10) years of "complete" documentation.

By the way, I have written to you numerous times about different discrepancies but as I have stated above, you do not respond back. One time you did have someone contact us, which only proved that we were right. According to the Forensic Accountant that I am currently discussing this account with, this account is not only being mishandled but is in violation of Federal Law. Don't insult me further by having someone who does not have the authority to make decisions concerning this account contact me. You can contact me at the above address or your attorneys can contact my attorney Ms. Maggie Clausell, Dover, Delaware.

Sincerely,


Michael S. Calloway

cc:  Ms. Maggie Clausell

GREEN TREE

Green Tree Servicing LLC
Customer Service Division
PO Box 6172
Rapid City SD 57709-6172
Fax 605.388.7710

September 8, 2006

GTServicing.com

Michael S. Calloway
514 King St.
Laurel DE 19956

RE: Account Number 88037954

Dear Michael S. Calloway:

This letter is in response to correspondence addressed to Keith Anderson regarding the above referenced loan with Green Tree Servicing LLC* ("Green Tree"). Please be assured Green Tree takes your concerns very seriously, and is pleased to have this opportunity to respond.

Pursuant to the terms of the insurance requirements on your Note, the property must be insured for as long as it is financed. When no proof of insurance coverage is received, a lender's placed policy is added to the loan. Records indicate lender's placed insurance has been provided with effective dates of July 7, 2006 through July 7, 2007. The insurance payments are scheduled over a period of 9 months. The billing is $108.94 for a period of 8 months beginning with the October 14, 2006 payment and a final payment of $108.90 for the 9th month. You have the option of paying the insurance in full or as billed. To remove the lender's placed policy, we must receive proof of insurance from your insurance agent for the dates indicated.

We apologize if you feel your account has been handled in an improper manner. However, we are confident the information provided adequately resolves this matter. Should you require any additional assistance, please feel free to contact Customer Service at (800) 330-5183.

Sincerely,

Dawn DeHaai
Customer Service Correspondence Supervisor

/lfs

*Green Tree Servicing LLC includes: in Alabama, Green Tree-AL LLC; in Minnesota, Green Tree Loan Company; in Pennsylvania, Green Tree Consumer Discount Company; and in New York, Green Tree Credit LLC.

| Trans Date | Eff Date | Amount | Code | Description | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1/3/2006 [1/06] | 1/2/2006 | $0.00 | | | $373.36 | $18.88 | $0.00 | $0.00 | $0.00 |
| 1/31/2006 [1/06] | 1/30/2006 | $1,100.00 | 112 | Pymt: Mellon | $0.00 | $694.05 | $0.00 | $0.00 | $0.00 |
| 1/31/2006 [2/06] | 1/30/2006 | $694.05 | 112 | Pymt: Mellon | $376.00 | $29.95 | $0.00 | $0.00 | $0.00 |
| 2/27/2006 [2/06] | 2/26/2006 | $0.00 | 112 | Pymt: Mellon | $0.00 | $680.32 | $0.00 | $0.00 | $0.00 |
| 2/27/2006 [3/06] | 2/26/2006 | $0.00 | | | $13.73 | $707.60 | $0.00 | $0.00 | $0.00 |
| 4/3/2006 [3/06] | 4/3/2006 | $1,086.27 | 112 | Pymt: Mellon | $364.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/3/2006 [4/06] | 4/3/2006 | $0.00 | | | $13.73 | $704.66 | $0.00 | $0.00 | $0.00 |
| 5/3/2006 [4/06] | 5/2/2006 | $1,086.27 | 112 | Pymt: Mellon | $367.88 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/3/2006 [5/06] | 5/2/2006 | $0.00 | | | $13.73 | $701.96 | $0.00 | $0.00 | $0.00 |
| 6/2/2006 [5/06] | 6/2/2006 | $1,086.27 | 112 | Pymt: Mellon | $370.58 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6/2/2006 [6/06] | 6/2/2006 | $0.00 | | | $13.73 | $699.24 | $0.00 | $0.00 | $0.00 |
| 7/1/2006 [6/06] | 7/1/2006 | $1,086.27 | 112 | Pymt: Mellon | $373.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/1/2006 [7/06] | 7/1/2006 | $0.00 | | | $13.73 | $696.50 | $0.00 | $0.00 | $0.00 |
| 8/4/2006 [7/06] | 8/3/2006 | $1,086.27 | 112 | Pymt: Mellon | $376.04 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/4/2006 [8/06] | 8/3/2006 | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/24/2006 | 8/24/2006 | ($960.42) | 211 | Disb: Insurance Only / Insurance Type: 10 | $0.00 | $0.00 | $0.00 | $0.00 | ($960.42) |
| 8/31/2006 [8/06] | 8/30/2006 | $1,086.27 | 112 | Pymt: Mellon | $378.80 | $693.74 | $0.00 | $0.00 | $0.00 |
| 8/31/2006 [9/06] | 8/30/2006 | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9/30/2006 [9/06] | 9/30/2006 | $1,086.27 | 112 | Pymt: Mellon | $381.58 | $690.98 | $0.00 | $0.00 | $0.00 |
| 9/30/2006 [10/06] | 9/30/2006 | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/3/2006 [10/06] | 11/2/2006 | $1,086.27 | 112 | Pymt: Mellon | $384.38 | $688.16 | $0.00 | $0.00 | $0.00 |
| 11/8/2006 | 10/14/2006 | $0.00 | 209 | Memo: Insurance Cancel | $13.73 | $0.00 | $0.00 | $0.00 | $13.73 |
| 11/8/2006 [11/06] | 11/8/2006 | $13.73 | 101 | Pymt: Cash P&I Only | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/8/2006 | 11/8/2006 | $40.42 | 151 | Pymt: Ins Only-JE / Insurance Type: 10 | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/8/2006 | 11/8/2006 | $0.00 | 150 | Pymt: Ins Only-Cash / Insurance Type: 10 | $0.00 | $0.00 | $0.00 | $0.00 | $40.42 |
| 11/8/2006 | 11/8/2006 | $926.27 | 112 | Pymt: Mellon | $0.00 | $0.00 | $0.00 | $0.00 | $926.27 |
| 11/30/2006 [11/06] | 11/30/2006 | $0.00 | 112 | Pymt: Mellon | $387.20 | $685.34 | $0.00 | $0.00 | $0.00 |
| 11/30/2006 [12/06] | 11/30/2006 | $1,086.27 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/29/2006 [12/06] | 12/29/2006 | $0.00 | 112 | Pymt: Mellon | $390.04 | $682.50 | $0.00 | $0.00 | $0.00 |
| 12/29/2006 [1/07] | 12/29/2006 | $1,086.27 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/3/2007 [1/07] | 2/3/2007 | $0.00 | 112 | Pymt: Mellon | $392.90 | $679.64 | $0.00 | $0.00 | $0.00 |
| 2/3/2007 [2/07] | 2/3/2007 | $1,086.27 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/3/2007 [2/07] | 3/3/2007 | $0.00 | 112 | Pymt: Mellon | $395.78 | $676.76 | $0.00 | $0.00 | $0.00 |
| 3/3/2007 [3/07] | 3/3/2007 | $1,086.27 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/2/2007 [3/07] | 4/1/2007 | $0.00 | 112 | Pymt: Mellon | $398.68 | $673.86 | $0.00 | $0.00 | $0.00 |
| 4/2/2007 [4/07] | 4/1/2007 | $1,086.27 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/3/2007 [4/07] | 5/2/2007 | $1,086.27 | 112 | Pymt: Mellon | $401.61 | $670.93 | $0.00 | $0.00 | $0.00 |

Account History: 88037954   History For All History

| Tran ID | Status | Trn Date | Due Pd | Back Pd | Trn Amt | Trn Code | Tran Desc | Prin Pd | Int Pd | Esc Pd | Late Pd | Other Pd |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1997071J 001 | CONV | 7/14/1997 | 0 | 7/14/1997 | $125,000.00 | 200 | New Loan Setup | $125,000.00 | | | | |
| 1997071J 002 | CONV | 8/14/1997 | N | 7/14/1997 | $1,285.98 | 100 | Pymt: Cash | $155.98 | $1,130.00 | $0.00 | | |
| 1997082J 001 | CONV | 8/14/1997 | N | 8/14/1997 | $1,285.98 | 100 | Pymt: Cash | $157.37 | $1,128.61 | | | |
| 1997091J 001 | CONV | 9/27/1997 | N | 9/27/1997 | $1,285.98 | 100 | Pymt: Cash | $157.37 | $1,128.61 | | | |
| 1997100J 001 | CONV | 9/16/1997 | N | 9/16/1997 | $1,285.98 | 100 | Pymt: Cash | $458.37 | $1,128.61 | | | |
| 1997100J 002 | CONV | 10/8/1997 | N | 10/8/1997 | $1,285.98 | 100 | Pymt: Cash | $128.81 | $1,127.17 | | | |
| 1997107J 002 | CONV | 10/14/1997 | N | 10/14/1997 | $1,285.98 | 100 | Pymt: Cash | $158.81 | $1,127.17 | | | |
| 1997107J 015 | CONV | 10/15/1997 | N | 10/15/1997 | $424.37 | 90 | Dealer Interest | $0.00 | $424.37 | | | |
| 1997101J 012 | CONV | 10/15/1997 | N | 10/15/1997 | $424.37 | 100 | Pymt: Cash | $0.00 | $424.37 | | | |
| 1997101J 011 | CONV | 10/15/1997 | N | 10/15/1997 | $84.29 | 140 | Pymt: Esc Only-Cash | $0.00 | $0.00 | $84.29 | | |
| 1997101J 009 | CONV | 10/15/1997 | N | 10/15/1997 | $84.29 | 140 | Pymt: Esc Only-Cash | $0.00 | $0.00 | $84.29 | | |
| 1997101J 008 | CONV | 10/15/1997 | N | 10/15/1997 | $84.29 | 140 | Pymt: Esc Only-Cash | $0.00 | $0.00 | $84.29 | | |
| 1997101J 010 | CONV | 10/15/1997 | N | 10/15/1997 | $84.29 | 140 | Pymt: Esc Only-Cash | $0.00 | $0.00 | $84.29 | | |
| 1997117J 002 | CONV | 11/17/1997 | N | 11/17/1997 | $861.61 | 120 | Pymt: Prin Only-Cash | $0.00 | $0.00 | | | |
| 1997117J 001 | CONV | 11/17/1997 | N | 11/17/1997 | $1,285.98 | 100 | Pymt: Cash | $155.98 | $702.65 | | | |
| 1997112J 001 | CONV | 12/26/1997 | N | 12/26/1997 | $1,285.98 | 100 | Pymt: Cash | $436.39 | $0.00 | | | |
| 1998020J 001 | CONV | 2/3/1998 | N | 2/3/1998 | $1,235.98 | 120 | Pymt: Cash | $16.88 | $0.00 | | | |
| 1998020J 003 | CONV | 2/3/1998 | N | 2/3/1998 | $14.02 | 120 | Pymt: Prin Only-Cash | $14.02 | $1,122.12 | | | |
| 1998022J 001 | CONV | 2/24/1998 | N | 2/24/1998 | $14.02 | 120 | Pymt: Prin Only-Cash | $14.02 | $1,120.15 | | | |
| 1998022J 004 | CONV | 2/24/1998 | N | 2/24/1998 | $1,285.98 | 100 | Pymt: Cash | $165.83 | ($1,120.15) | | | |
| 1998022J 002 | CONV | 2/24/1998 | N | 2/24/1998 | $14.02 | 120 | Pymt: Prin Only-Cash | $14.00 | $0.00 | | | |
| 1998022J 005 | CONV | 2/28/1998 | N | 2/28/1998 | $1,285.98 | 131 | Interest Increase-JE | ($14.00) | $0.00 | | | |
| 1998002J 008 | CONV | 3/2/1998 | N | 3/2/1998 | $14.02 | 100 | Pymt: Cash | $165.83 | $115.16 | | | |
| 1998040J 001 | CONV | 3/24/1998 | N | 3/24/1998 | $14.02 | 170 | Memo: Extension | $0.00 | $14.02 | | | |
| 1998040J 001 | CONV | 3/20/1998 | N | 3/20/1998 | $670.23 | 851 | Rev. Pymt Interest Only-JE | $0.00 | $0.00 | | | |
| 1998053J 002 | CONV | 5/21/1998 | N | 5/21/1998 | $707.28 | 120 | Pymt: Prin Only-Cash | $0.00 | $670.23 | | | |
| 1998053J 001 | CONV | 5/21/1998 | N | 5/21/1998 | $15.00 | 120 | Pymt: Prin Only-Cash | $15.00 | $707.28 | | | |
| 1998053J 003 | CONV | 5/30/1998 | N | 5/30/1998 | $707.28 | 100 | Pymt: Cash | $0.00 | $707.28 | | | |
| 1998060J 003 | CONV | 5/30/1998 | N | 5/30/1998 | $15.00 | 120 | Pymt: Prin Only-Cash | $15.00 | $0.00 | | | |
| 1998060J 022 | CONV | 7/9/1998 | N | 7/9/1998 | $707.28 | 100 | Pymt: Cash | $0.00 | $707.28 | | | |
| 1998060J 022 | CONV | 7/9/1998 | N | 7/9/1998 | $38.55 | 120 | Pymt: Prin Only-Cash | $38.55 | $707.28 | | | |
| 1998010 J 04 | CONV | 7/9/1998 | N | 7/9/1998 | $4,000.00 | 211 | Disb: Insurance Only | $0.00 | $0.00 | | | |
| 1998010 J 04 | CONV | 7/9/1998 | N | 7/9/1998 | $15.00 | 100 | Pymt: Cash Fee: 15 | $0.00 | $15.00 | | | |
| 1998010 J 002 | CONV | 7/10/1998 | M | 7/10/1998 | $15.00 | 100 | Pymt: Cash | $0.00 | $0.00 | | | |
| 1998010 J 001 | CONV | 7/10/1998 | N | 7/10/1998 | $707.28 | 100 | Pymt: Cash | $0.00 | $707.28 | | | |
| 1998071J 001 | CONV | 7/21/1998 | N | 7/21/1998 | $707.28 | 100 | Pymt: Cash | $0.00 | $707.28 | $23.55 | $15.00 | |
| 1998060J 09 | CONV | 7/21/1998 | N | 7/21/1998 | $38.55 | 120 | Pymt: Prin Only-Cash | $38.55 | $0.00 | | | |
| 1998072J 002 | CONV | 7/21/1998 | M | 7/21/1998 | $15.00 | 100 | Pymt: Cash Fee: 15 | $0.00 | $0.00 | | | |
| 1998072J 001 | CONV | 7/21/1998 | N | 7/21/1998 | $3.00 | 100 | Pymt: Cash | $0.00 | $3.00 | | | |
| | | | | | ($23.55) | | | ($38.55) | $0.00 | | | ($23.55) |
| | | | | | | | | | | | | $15.00 |

| Reference | Date | Flag | Post Date | Description | Amt 1 | Amt 2 | Amt 3 | Amt 4 |
|---|---|---|---|---|---|---|---|---|
| 19980721 004 CONV | 7/21/1998 | [N] | 7/21/1998 | 100 Pymt. Cash | ($707.28) | $0.00 | ($707.28) | |
| 19980721 003 CONV | 7/21/1998 | [N] | 7/21/1998 | 100 Pymt. Cash | $707.28 | $0.00 | $707.28 | |
| 19980721 002 CONV | 7/21/1998 | [N] | 7/21/1998 | 100 Pymt. Cash | $41.55 | $0.00 | $41.55 | |
| 19980721 001 CONV | 7/21/1998 | [N] | 7/21/1998 | 100 Pymt. Cash | ($6.14) | $0.00 | ($6.14) | |
| 19980727 001 CONV | 7/27/1998 | [N] | 7/27/1998 | 231 Interest Increase-JE | $0.00 | $0.00 | $0.00 | $35.00 |
| 19980728 005 CONV | 7/28/1998 | [N] | 7/28/1998 | 211 Disb. Insurance Only | ($3.00) | $0.00 | $0.00 | |
| 19980728 004 CONV | 7/28/1998 | [N] | 7/28/1998 | 100 Pymt. Cash-Fee 15 | $15.00 | $0.00 | $0.00 | |
| 19980728 003 CONV | 7/28/1998 | [N] | 7/28/1998 | 100 Pymt. Cash | $35.00 | $0.00 | $0.00 | |
| 19980728 002 CONV | 7/28/1998 | [N] | 7/28/1998 | 100 Pymt. Cash | $35.36 | $0.00 | $0.00 | $35.36 |
| 19980728 001 CONV | 7/28/1998 | [N] | 7/28/1998 | 100 Pymt. Cash | $35.36 | $0.00 | $0.00 | $35.36 |
| 19980831 001 CONV | 8/31/1998 | [N] | 8/31/1998 | 100 Pymt. Cash | $568.73 | $0.40 | $568.73 | $35.98 |
| 19980928 002 CONV | 9/28/1998 | [N] | 9/28/1998 | 100 Pymt. Cash | $707.28 | $0.00 | $707.28 | |
| 19980928 001 CONV | 9/28/1998 | [N] | 9/28/1998 | 140 Pymt. Cash | $35.36 | $0.00 | $0.00 | $35.36 |
| 19981113 002 CONV | 11/12/1998 | [N] | 11/12/1998 | 211 Disb. Insurance Only | ($3.00) | $0.00 | $0.00 | |
| 19981113 001 CONV | 11/12/1998 | [N] | 11/12/1998 | 100 Pymt. Cash | $3.00 | $0.00 | $0.00 | |
| 19981127 003 CONV | 11/27/1998 | [N] | 11/27/1998 | 100 Pymt. Cash | $1,265.66 | $0.00 | $1,265.66 | |
| 19981127 002 CONV | 11/27/1998 | [N] | 11/27/1998 | 100 Pymt. Cash | $3.00 | $0.00 | $0.00 | |
| 19981127 001 CONV | 11/27/1998 | [N] | 11/27/1998 | 211 Disb. Insurance Only | ($3.00) | $0.00 | $0.00 | |
| 19981217 001 CONV | 12/17/1998 | [N] | 12/17/1998 | 100 Pymt. Cash | $1,265.98 | $0.00 | $1,265.98 | |
| 19981216 003 CONV | 12/15/1998 | [N] | 12/15/1998 | 100 Pymt. Cash | ($3.00) | $0.00 | ($1,265.98) | |
| 19981216 002 CONV | 12/18/1998 | [N] | 12/18/1998 | 211 Disb. Insurance Only | $3.00 | $0.00 | $0.00 | |
| 19981216 001 CONV | 12/18/1998 | [N] | 12/18/1998 | 100 Pymt. Cash | $1,062.98 | $0.00 | $1,762.98 | |
| 19981230 004 CONV | 12/30/1998 | [N] | 12/30/1998 | 211 Disb. Insurance Only | ($3.00) | $0.00 | $0.00 | |
| 19981230 003 CONV | 12/30/1998 | [N] | 12/30/1998 | 100 Pymt. Cash | $3.00 | $0.00 | $0.00 | |
| 19981230 002 CONV | 12/30/1998 | [N] | 12/30/1998 | 100 Pymt. Cash-Fee 6 | $6.00 | $0.00 | $0.00 | |
| 19981230 001 CONV | 12/30/1998 | [N] | 12/30/1998 | 121 Pymt. Prin Only-JE | $507.91 | $0.00 | $1,279.98 | |
| 19990113 002 CONV | 1/12/1999 | [N] | 1/12/1999 | 231 Interest Increase-JE | $507.91 | $507.91 | ($507.91) | |
| 19990113 001 CONV | 1/12/1999 | [N] | 1/12/1999 | 100 Pymt. Cash-Fee 6 | ($5.00) | $0.00 | $0.00 | |
| 19990114 005 CONV | 1/14/1999 | [N] | 1/14/1999 | 100 Pymt. Cash | $1,279.98 | $0.00 | $1,279.98 | |
| 19990114 004 CONV | 1/14/1999 | [N] | 1/14/1999 | 100 Pymt. Cash Fees-6 | $5.00 | $0.00 | $0.00 | |
| 19990114 003 CONV | 1/14/1999 | [N] | 1/14/1999 | 531 REV Pymt Interest Only-JE | $2,476.12 | $0.00 | $2,476.12 | |
| 19990115 001 CONV | 1/15/1999 | [N] | 1/15/1999 | 531 REV Pymt Interest Only-JE | $164.75 | $0.00 | $164.75 | |
| 19990118 002 CONV | 1/18/1999 | [N] | 1/18/1999 | 221 Principal Increase-JE | $170.74 | ($170.74) | $0.00 | ($35.00) |
| 19990118 001 CONV | 1/18/1999 | [N] | 1/18/1999 | 211 Disb. Insurance Only | ($5.00) | $0.00 | $0.00 | |
| 19990125 001 CONV | 1/25/1999 | [N] | 1/25/1999 | 100 Pymt. Cash | $1,265.08 | $170.74 | $1,115.24 | |
| 19990128 001 CONV | 1/28/1999 | [N] | 1/28/1999 | 100 Pymt. Cash | $3.00 | $0.00 | $0.00 | |
| 19990128 001 CONV | 1/28/1999 | [N] | 1/28/1999 | 100 Pymt. Cash | $1,285.98 | $170.74 | $1,115.24 | |
| 19990211 004 CONV | 2/11/1999 | [N] | 2/11/1999 | 100 Pymt. Cash | ($1,285.08) | ($170.74) | ($1,115.24) | |
| 19990211 003 CONV | 2/11/1999 | [N] | 2/11/1999 | 211 Disb. Insurance Only | $3.00 | $0.00 | $3.00 | |
| 19990211 002 CONV | 2/11/1999 | [N] | 2/11/1999 | 100 Pymt. Cash | $3.00 | $0.00 | $0.00 | |
| 19990211 001 CONV | 2/11/1999 | [N] | 2/11/1999 | 100 Pymt. Cash | $3.00 | $70.74 | $1,115.24 | |
| 19990302 002 CONV | 3/2/1999 | [N] | 3/2/1999 | 100 Pymt. Cash | $1,288.98 | $0.00 | $3.00 | |
| 19990302 001 CONV | 3/2/1999 | [N] | 3/2/1999 | 100 Pymt. Cash | $3.00 | $0.00 | $3.02 | |

| Ref | | Date | Date | Amount | Type | | |
|---|---|---|---|---|---|---|---|
| 1998G311.002 | 001 CONV | 3/11/1999 N | 3/11/1999 | $1,232.98 | 100 Pymt: Cash | $244.71 | $438.25 |
| 1998G311.001 | 001 CONV | 3/11/1999 N | 3/11/1999 | $0.00 | 100 Pymt: Cash | | $3.02 |
| 1999G414.002 | 001 CONV | 4/14/1999 N | 4/14/1999 | ($33.00) | 211 Disb: Insurance Only | $0.00 | $0.00 |
| 1999G415.002 | 001 CONV | 4/15/1999 N | 4/15/1999 | $1,242.66 | 100 Pymt: Cash | $177.02 | $1,105.94 |
| 1999G628.002 | 001 CONV | 6/28/1999 N | 6/28/1999 | $0.02 | 100 Pymt: Cash | $0.00 | $0.02 |
| 1998G629.002 | 001 CONV | 6/29/1999 N | 6/29/1999 | $3.00 | 100 Pymt: Cash | $0.00 | $0.00 |
| 1999G629.002 | 001 CONV | 6/29/1999 N | 6/29/1999 | $1,086.27 | 100 Pymt: Cash | $157.94 | $868.23 |
| 1999G730.002 | 001 CONV | 7/30/1999 N | 7/30/1999 | $1,096.00 | 400 Pymt: Cash | $227.36 | $868.61 |
| 1999G900.002 | 001 CONV | 9/2/1999 N | 9/2/1999 | $0.27 | 100 Pymt: Cash | $0.27 | $0.00 |
| 1990G902.001 | 001 CONV | 9/2/1999 N | 9/2/1999 | $7,086.00 | 100 Pymt: Cash | $229.00 | $857.00 |
| 1998G913.001 | 001 CONV | 10/13/1999 N | 10/13/1999 | $0.39 | 100 Pymt: Cash | $0.27 | $0.00 |
| 1999G1013.001 | 001 CONV | 10/13/1999 N | 10/13/1999 | $63.37 | 100 Pymt: Cash | $320.42 | $855.98 |
| 1999G1028.001 | 002 CONV | 10/28/1999 N | 10/28/1999 | $0.27 | 100 Pymt: Cash | ($320.62) | ($855.38) |
| 1999G1028.002 | 001 CONV | 10/28/1999 N | 10/28/1999 | $0.27 | 100 Pymt: Cash | $0.27 | $0.00 |
| 1999G1105.001 | 001 CONV | 11/5/1999 N | 11/5/1999 | $1,066.00 | 100 Pymt: Cash | $230.62 | $855.38 |
| 1998G1105.001 | 001 CONV | 11/5/1999 N | 11/5/1999 | $0.27 | 100 Pymt: Cash | $0.27 | $0.00 |
| 1999G1115.001 | 001 CONV | 11/15/1999 N | 11/15/1999 | $1,066.00 | 100 Pymt: Cash | $230.62 | $855.38 |
| 1999G1207.001 | 001 CONV | 12/7/1999 N | 12/7/1999 | $1,096.27 | 100 Pymt: Cash | $232.29 | $853.74 |
| 1999G1213.001 | 001 CONV | 12/13/1999 N | 12/13/1999 | $44.73 | 100 Pymt: Cash | $0.97 | $0.00 |
| 1999G1213.001 | 121 CONV | 12/13/1999 N | 12/13/1999 | $51.54 | 100 Pymt: Cash | $44.31 | $3.48 |
| 2000G112.001 | 001 CONV | 1/12/2000 N | 1/12/2000 | $3.48 | 100 Pymt: Cash | $0.00 | $0.00 |
| 2000G112.001 | 012 CONV | 1/12/2000 N | 1/12/2000 | $1,003.91 | 100 Pymt: Cash | $235.64 | $845.97 |
| 2000G321.001 | 001 CONV | 2/21/2000 N | 2/21/2000 | $6.46 | 100 Pymt: Cash | $0.00 | $6.46 |
| 2000G321.001 | 051 CONV | 3/21/2000 N | 2/21/2000 | $1,079.81 | 100 Pymt: Cash | $237.51 | $842.30 |
| 2000G325.001 | 051 CONV | 2/23/2000 N | 2/23/2000 | $6.46 | 100 Pymt: Cash | $0.00 | $6.46 |
| 2000G323.001 | 051 CONV | 2/23/2000 N | 2/23/2000 | $1,079.81 | 100 Pymt: Cash | | $0.00 |
| 2000G404.001 | 001 CONV | 4/4/2000 N | 4/4/2000 | $1,096.27 | 001 Pymt: Cash Tier B 46 | $239.19 | $840.62 |
| 2000G502.001 | 001 CONV | 5/2/2000 N | 5/2/2000 | $1,066.27 | 100 Pymt: Cash | $240.68 | $845.36 |
| 2000G603.001 | 001 CONV | 5/3/2000 N | 5/3/2000 | ($33.00) | 211 Disb: Insurance Only | $0.00 | $0.00 |
| 2000G603.001 | 001 CONV | 5/3/2000 N | 5/3/2000 | $0.00 | 100 Pymt: Cash | $0.00 | $343.68 |
| 2000G613.001 | 001 CONV | 6/13/2000 N | 6/13/2000 | $1,083.27 | 100 Pymt: Cash | $244.31 | $0.00 |
| 2000G615.001 | 001 CONV | 6/15/2000 N | 6/15/2000 | $3.30 | 100 Pymt: Cash | $0.00 | $3.06 |
| 2000G630.075 | 001 CONV | 6/30/2000 N | 6/30/2000 | $1,080.00 | 100 Pymt: Cash | $246.04 | $834.23 |
| 2000G630.001 | 051 CONV | 6/30/2000 N | 6/30/2000 | $3.00 | 100 Pymt: Cash | $0.00 | $3.00 |
| 2000G731.003 | 063 CONV | 7/31/2000 N | 7/31/2000 | ($33.00) | 211 Disb: Insurance Only | $0.00 | $0.00 |
| 2000G731.005 | 001 CONV | 7/31/2000 N | 7/31/2000 | $1,083.27 | 100 Pymt: Cash | $247.76 | $835.49 |
| 2000G731.001 | 001 CONV | 7/31/2000 N | 7/31/2000 | $6.00 | 100 Pymt: Cash | $0.00 | $6.00 |
| 2000G906.001 | 001 CONV | 9/6/2000 N | 9/6/2000 | $1,080.27 | 100 Pymt: Cash | $249.54 | $830.73 |
| 2000G920.001 | 001 CONV | 9/20/2000 N | 9/20/2000 | $6.00 | 100 Pymt: Cash | $0.00 | $6.00 |
| 2000G1012.001 | 001 CONV | 10/12/2000 N | 10/12/2000 | $1,080.27 | 100 Pymt: Cash | $249.00 | $828.97 |
| 2000G1012.001 | 001 CONV | 10/12/2000 N | 10/12/2000 | $0.00 | 100 Pymt: Cash | $0.00 | $0.00 |

$8.46

| Reference | Date | | Amount | Description | | | |
|---|---|---|---|---|---|---|---|
| 20001027 003 CONV | 10527/2000 [N] | 10/27/2000 | $1,080.27 | 100 Pymt Cash | $263.08 | $0.00 | $827.19 |
| 20001027 001 CONV | 10527/2000 [N] | 10/27/2000 | $6.00 | 100 Pymt Cash | $0.00 | $0.00 | $6.00 |
| 20001213 002 CONV | 12/13/2000 [N] | 12/13/2000 | $0.00 | 100 Pymt Cash | $854.87 | $826.38 | $828.38 |
| 20001213 001 CONV | 12/13/2000 [N] | 12/13/2000 | $6.00 | 100 Pymt Cash | $0.00 | $6.00 | $6.00 |
| 20010111 002 CONV | 1/11/2001 [N] | 1/11/2001 | $1,080.27 | 100 Pymt Cash | $266.68 | $0.00 | $822.59 |
| 20010111 001 CONV | 1/11/2001 [N] | 1/11/2001 | $0.00 | 100 Pymt Cash | $0.00 | ($223.69) | ($223.69) |
| 20010210 003 CONV | 2/10/2001 [N] | 2/10/2001 | $0.00 | 100 Pymt Cash | $0.00 | ($6.00) | ($6.00) |
| 20010210 002 CONV | 2/10/2001 [N] | 2/10/2001 | $1,080.27 | 100 Pymt Cash | $256.50 | $822.63 | $822.63 |
| 20010216 003 CONV | 2/16/2001 [N] | 2/16/2001 | $1,080.27 | 111 Pymt Western Union | $256.50 | $622.77 | $622.77 |
| 20010216 001 CONV | 2/16/2001 [N] | 2/16/2001 | $6.00 | 111 Pymt Western Union | $0.00 | $6.00 | $6.00 |
| 20010216 002 CONV | 2/16/2001 [N] | 2/16/2001 | $1,080.27 | 113 Pymt Western Union | $260.33 | $89.94 | $89.94 |
| 20010218 001 CONV | 2/18/2001 [N] | 2/18/2001 | $6.00 | 113 Pymt Western Union | $0.00 | $6.00 | $6.00 |
| 20010314 002 CONV | 3/14/2001 [N] | 3/14/2001 | $1,080.27 | 100 Pymt Cash | $262.17 | $0.00 | $6.00 |
| 20010314 001 CONV | 3/14/2001 [N] | 3/14/2001 | $6.00 | 100 Pymt Cash | $0.00 | $6.00 | $6.00 |
| 20010412 002 CONV | 4/12/2001 [N] | 4/12/2001 | $1,080.27 | 100 Pymt Cash | $0.00 | $619.17 | $619.10 |
| 20010412 001 CONV | 4/12/2001 [N] | 4/12/2001 | $6.00 | 100 Pymt Cash | $0.00 | ($619.17) | $6.00 |
| 20010604 003 CONV | 4/12/2001 [N] | 4/12/2001 | ($6.00) | 100 Pymt Cash | $0.00 | $50.00 | $50.00 |
| 20010504 002 CONV | 5/4/2001 [N] | 5/4/2001 | $700.00 | 113 Pymt Western Union | $0.00 | $700.00 | $700.00 |
| 20010512 001 CONV | 5/12/2001 [N] | 5/12/2001 | $80.27 | 113 Pymt Western Union | $322.17 | $118.10 | $118.10 |
| 20010517 002 CONV | 5/17/2001 [N] | 5/17/2001 | $19.73 | 113 Pymt Western Union | $0.00 | $119.73 | $119.73 |
| 20010517 001 CONV | 5/17/2001 [N] | 5/17/2001 | $108.00 | 113 Pymt Western Union | $0.00 | $308.00 | $308.00 |
| 20010531 001 CONV | 5/31/2001 [N] | 5/31/2001 | ($80.27) | 113 Pymt Western Union | ($262.17) | $118.10 | $118.10 |
| 20010618 003 CONV | 6/18/2001 [N] | 6/18/2001 | $118.00 | 113 Pymt Western Union | $0.00 | $118.10 | $118.10 |
| 20010618 004 CONV | 6/18/2001 [N] | 6/18/2001 | $119.70 | 113 Pymt Western Union | $0.00 | $119.73 | $119.73 |
| 20010618 002 CONV | 6/18/2001 [N] | 6/18/2001 | $308.27 | 113 Pymt Western Union | $262.17 | $119.10 | $119.10 |
| 20010618 001 CONV | 6/18/2001 [N] | 6/18/2001 | ($108.00) | 113 Pymt Interest Only-Cash | $0.00 | ($106.00) | ($106.00) |
| 20010627 003 CONV | 6/27/2001 [N] | 6/27/2001 | $108.00 | 135 Pymt Interest Only-Cash | $0.00 | $0.00 | $0.00 |
| 20010627 001 CONV | 6/27/2001 [N] | 6/27/2001 | $98.98 | 531 REV Pymt Interest Only-C | $0.00 | $98.98 | $18.54 |
| 20010718 001 CONV | 8/26/2001 [N] | 8/26/2001 | $119.73 | 100 Pymt Cash Fee 18.54 | $0.00 | $119.73 | $50.00 |
| 20010716 008 CONV | 7/16/2001 [N] | 7/16/2001 | $34.54 | 100 Pymt Cash Fee 30 | $0.00 | $0.00 | $0.00 |
| 20010716 007 CONV | 7/16/2001 [N] | 7/16/2001 | $80.00 | 100 Pymt Cash Fee .25 | $0.00 | $3.00 | $3.00 |
| 20010716 025 CONV | 7/16/2001 [N] | 7/16/2001 | $3.00 | 100 Pymt Cash | $0.00 | $3.00 | $3.00 |
| 20010716 005 CONV | 7/16/2001 [N] | 7/16/2001 | $25.00 | 100 Pymt Cash | $0.00 | $0.00 | $0.00 |
| 20010716 004 CONV | 7/16/2001 [N] | 7/16/2001 | $3.00 | 100 Pymt Cash | $0.00 | $3.00 | $3.00 |
| 20010716 002 CONV | 7/16/2001 [N] | 7/16/2001 | $2.19 | 100 Pymt Cash | $0.00 | $2.19 | $25.00 |
| 20010718 001 CONV | 7/19/2001 [N] | 7/19/2001 | $477.71 | 100 Pymt Cash | $0.94 | $476.73 | |
| 20010827 001 CONV | 8/27/2001 [N] | 8/27/2001 | $597.44 | 100 Pymt Cash | $0.98 | $595.46 | |
| 20010902 001 CONV | 9/6/2001 [N] | 9/6/2001 | $568.27 | 100 Pymt Cash | $0.00 | $566.27 | |
| 20010925 001 CONV | 9/22/2001 [N] | 9/22/2001 | $2,353.09 | 90 Dollar Interest | $27.05 | $0.00 | |
| 20011004 001 CONV | 10/4/2001 [N] | 10/4/2001 | $560.00 | 100 Pymt Cash | $0.00 | $620.95 | |
| 20011025 001 CONV | 10/22/2001 [N] | 10/22/2001 | $500.00 | 100 Pymt Cash | $27.30 | $558.87 | |
| 20011113 001 CONV | 11/13/2001 [N] | 11/13/2001 | $586.27 | 100 Pymt Cash | $0.00 | $558.87 | |
| 20011214 002 CONV | 12/14/2001 [N] | 12/14/2001 | $458.27 | 100 Pymt Cash | $27.55 | $596.27 | |
| 20011222 001 CONV | 12/22/2001 [N] | 12/22/2001 | $500.00 | 100 Pymt Cash | $0.00 | $412.45 | |
| 20020115 001 CONV | 1/18/2002 [N] | 1/18/2002 | $486.27 | 100 Pymt Cash | $27.86 | $600.00 | |
| 20020136 002 CONV | 1/29/2002 [N] | 1/29/2002 | | 100 Pymt Cash | | $458.47 | |

| | | | | | |
|---|---|---|---|---|---|
| 20020728 001 CONV | 12/28/2002 [N] | $13.73 | 100 Pymt. Cash | $0.00 | $13.73 |
| 20020828 002 CONV | 2/28/2003 [N] | $1,072.64 | 100 Pymt. Speedpay | $28.65 | $1,044.45 |
| 20020928 001 CONV | 2/28/2003 [N] | $13.73 | 100 Pymt. Speedpay | $0.00 | $13.73 |
| 20020329 001 CONV | 3/29/2002 [N] | $0.00 | 170 Memo Extension | $0.00 | $0.00 |
| 20020401 001 CONV | 4/1/2002 [N] | $528.70 | 531 REV Pymt Interest Only JE | $0.00 | $528.70 |
| 20020604 001 CONV | 6/4/2002 [N] | $2,101.95 | 60 Defer Interest | $0.00 | $0.00 |
| 20020630 001 CONV | 6/30/2002 [N] | $278.66 | 100 Pymt. Cash | $0.00 | $810.03 |
| 20020831 001 CONV | 8/31/2002 [N] | $1,088.27 | 100 Pymt. Speedpay | $28.47 | $247.12 |
| 20020918 001 CONV | 9/18/2002 [N] | $1,088.27 | 100 Pymt. Speedpay | $28.57 | $1,057.70 |
| 20020920 001 CONV | 9/20/2002 [N] | $103.00 | 100 Pymt. Speedpay | $0.00 | $103.00 |
| 20020923 001 CONV | 9/23/2002 [N] | $76.85 | 531 REV Pymt Interest Only JE | $0.00 | $76.85 |
| 20020926 001 CONV | 9/26/2002 [N] | $3,708.52 | 60 Defer Interest | $0.00 | $0.00 |
| 20021121 001 CONV | 11/21/2002 [N] | $597.49 | 100 Pymt. Cash | $0.00 | $597.49 |
| 20021211 001 CONV | 12/11/2002 [N] | $695.51 | 100 Pymt. Cash | $0.00 | $597.51 |
| 20030128 001 CONV | 1/28/2003 [N] | $597.49 | 100 Pymt. Cash | $3.14 | $596.54 |
| 20030221 001 CONV | 2/21/2003 [N] | $597.49 | 100 Pymt. Cash | $28.09 | $596.50 |
| 20030315 001 CONV | 3/15/2003 [N] | $597.49 | 100 Pymt. Cash | $0.99 | $596.95 |
| 20030414 001 CONV | 4/14/2003 [N] | $597.49 | 100 Pymt. Cash | $1.00 | $597.49 |
| 20030523 001 CONV | 5/23/2003 [N] | $488.73 | 100 Pymt. Cash | $28.87 | $459.91 |
| 20030528 001 CONV | 5/28/2003 [N] | $488.73 | 100 Pymt. Cash | $0.00 | $488.75 |
| 20030630 001 CONV | 6/30/2003 [N] | $597.49 | 100 Pymt. Speedpay | $29.14 | $568.35 |
| 20030731 001 CONV | 7/31/2003 [N] | $1,088.27 | 100 Pymt. Cash | $22.60 | $1,085.67 |
| 20030828 001 CONV | 8/28/2003 [N] | $0.00 | 60 Defer Interest | $0.00 | $0.00 |
| 20030930 001 CONV | 9/30/2003 [N] | $1,056.33 | 100 Pymt. Cash | $0.22 | $1,056.05 |
| 20031013 001 CONV | 10/13/2003 [N] | $1,088.27 | 100 Pymt. Cash | $29.49 | $1,056.18 |
| 20031129 001 CONV | 12/29/2003 [N] | $1,088.27 | 100 Pymt. Cash | $30.49 | $1,055.78 |
| 20040102 001 CONV | 1/2/2004 [N] | $1,088.27 | 100 Pymt. Cash | $30.77 | $1,055.22 |
| 20040301 001 CONV | 3/22/2004 [N] | $1,088.27 | 100 Pymt. Cash | $31.04 | $1,055.33 |
| 20040401 001 CONV | 4/1/2004 [N] | $1,088.27 | 100 Pymt. Cash | $31.34 | $1,054.66 |
| 20040504 001 CONV | 5/4/2004 [N] | $1,088.27 | 100 Pymt. Cash | $31.62 | $1,064.36 |
| 20040604 001 CONV | 6/4/2004 [N] | $1,088.27 | 100 Pymt. Cash | $31.91 | $1,054.07 |
| 20040625 001 CONV | 6/29/2004 [N] | $1,088.27 | 100 Pymt. Cash | $32.20 | $1,064.07 |
| 20040728 001 CONV | 7/8/2004 [N] | $1,088.27 | 100 Pymt. Cash | $32.49 | $1,053.78 |
| 20040806 001 CONV | 8/6/2004 [N] | $600.00 | 100 Pymt. Cash | $32.78 | $1,053.48 |
| 20040630 002 CONV | 9/30/2004 [N] | $485.27 | 100 Pymt. Cash | $0.00 | $600.00 |
| 20040950 003 CONV | 9/30/2004 [N] | $856.81 | 100 Pymt. Cash | $33.08 | $453.19 |
| 20041029 001 CONV | 10/29/2004 [N] | $113.73 | 100 Pymt. Cash | $33.39 | $826.42 |
| 20041029 002 CONV | 10/29/2004 [N] | $227.46 | 100 Pymt. Cash | $0.00 | $227.46 |
| 20041202 002 CONV | 12/2/2004 [N] | $113.73 | 100 Pymt. Cash | $0.00 | $113.73 |
| 20041202 003 CONV | 12/2/2004 [N] | $746.09 | 100 Pymt. Cash | $33.76 | $711.36 |
| 20041202 001 CONV | 12/2/2004 [N] | $227.46 | 100 Pymt. Cash | $0.00 | $227.46 |
| 20041212 001 CONV | 12/2/2004 [N] | $113.73 | 100 Pymt. Cash | $0.00 | $113.73 |

| Reference | Date (N) | Date | Amount | Transaction | Col5 | Col6 | Col7 |
|---|---|---|---|---|---|---|---|
| 2004.1231.001 CONV | 12/31/2004 (N | 12/30/2004 | $858.81 | 100 Pymt Cash | $34.00 | $824.81 | $0.00 |
| 2004.1231.002 CONV | 12/31/2004 (N | 12/31/2004 | $827.46 | 100 Pymt Cash | | $827.46 | $0.00 |
| 2004.1231.003 CONV | 1/3/2005 (N | | $813.73 | 120 Pymt Cash | $13.73 | $800.00 | $0.00 |
| 2005.0131.001 CONV | 1/31/2005 (N | | $972.62 | 120 Pymt Only-Cash | | $972.62 | $0.00 |
| 2005.0131.002 CONV | 1/31/2005 (N | | $261.93 | 100 Pymt Cash | $261.93 | $0.00 | $0.00 |
| 2005.0131.003 CONV | 1/31/2005 (N | | $241.19 | 100 Pymt Cash | | $355.79 | $0.00 |
| 2005.0301.001 CONV | 3/1/2005 (N | | $241.19 | 100 Pymt Cash | $0.00 | $241.19 | $0.00 |
| 2005.0301.002 CONV | 3/1/2005 (N | | $603.80 | 100 Pymt Cash | $0.00 | $603.80 | $0.00 |
| 2005.0301.003 CONV | 3/2/2005 (N | | $254.92 | 100 Pymt Cash | $0.00 | $254.92 | $0.00 |
| 2005.0404.001 CONV | 3/4/2005 (N | | $241.18 | 100 Pymt Cash | $0.00 | $241.18 | $0.00 |
| 2005.0404.002 CONV | 4/4/2005 (N | | $976.43 | 100 Pymt Cash | $0.00 | $976.43 | $0.00 |
| 2005.0404.003 CONV | 4/4/2005 (N | | $208.66 | 100 Pymt Cash | $0.00 | $208.66 | $0.00 |
| 2005.0428.001 CONV | 4/28/2005 (N | | $254.92 | 100 Pymt Cash | $0.00 | $254.92 | $0.00 |
| 2005.0428.002 CONV | 4/28/2005 (N | | $548.97 | 100 Pymt Cash | $0.00 | $548.65 | $0.00 |
| 2005.0428.003 CONV | 4/28/2005 (N | | $286.66 | 100 Pymt Cash | $0.00 | $262.38 | $0.00 |
| 2005.0531.001 CONV | 5/31/2005 (N | | $286.66 | 100 Pymt Cash | $0.00 | $286.65 | $0.00 |
| 2005.0531.002 CONV | 5/31/2005 (N | | $286.11 | 100 Pymt Cash | $0.00 | $286.11 | $0.00 |
| 2005.0701.001 CONV | 7/1/2005 (N | | $262.38 | 100 Pymt Cash | $0.00 | $521.51 | $0.00 |
| 2005.0701.002 CONV | 7/1/2005 (N | | $282.38 | 100 Pymt Cash | $0.00 | $282.38 | $0.00 |
| 2005.0701.003 CONV | 7/1/2005 (N | | $300.84 | 100 Pymt Cash | $0.00 | $494.66 | $0.00 |
| 2005.0726.001 CONV | 7/6/2005 (N | | $208.11 | 100 Pymt Cash | $0.00 | $208.84 | $0.00 |
| 2005.0726.002 CONV | 7/26/2005 (N | $12,206.26 | | 121 Pymt Prin Only-JE | | $0.00 | $0.00 |
| 2005.0726.003 CONV | 7/26/2005 (N | $12,206.28 | | 231 Interest Increase-JE | $72,206.26 | | ($12,206.26) |
| 2005.0728.001 CONV | 7/26/2005 (N | $12,703.39 | | 531 REV Pymt Interest Only-JE | $12,703.39 | | $0.00 |
| 2005.0728.002 CONV | 7/28/2005 (N | $496.39 | | 100 Pymt Cash | $558.32 | $329.57 | $0.00 |
| 2005.0731.001 GTA | 7/28/2005 (N | $323.57 | | 100 Pymt Cash | | $329.57 | $0.00 |
| 2006.0801.001 GTA | 7/31/2005 (N | $12,208.64 | | 121 GTA CONVERSION TRANSACTION | $12,206.26 | $209.84 | $0.00 |
| 2006.0903.001 REV | 8/1/2005 (8/05) | $323.57 | | 111 GTA CONVERSION TRANSACTION | $323.57 | | $0.00 |
| 2006.0903.001 REV | 9/2/2005 (9/05) | $1,100.00 | | 560 REV Pymt Cash | $0.00 | $0.00 | $0.00 |
| 2005.0927.001 GTA | 9/2/2005 (9/05) | | | | $0.00 | $760.18 | $317.50 |
| 2005.0927.001 GTA | 9/27/2005 (9/05) | $1,100.00 | | 100 Pymt Cash | ($2.82) | ($760.18) | ($337.30) |
| 2005.0928.001 GTA | 9/28/2005 (9/05) | | | | $2.82 | $760.18 | $337.30 |
| 2005.0909.001 GTA | 9/9/2005 (9/05) | $1,100.00 | | 112 Pymt Mellon | $237.00 | $723.31 | $0.00 |
| 2005.0909.001 GTA | 10/3/2005 (10/05) | | | | $16.01 | $360.18 | $361.03 |
| 2005.1004.001 REV | 10/4/2005 (10/05) | $1,100.00 | | 500 REV Pymt Cash | $0.00 | $0.00 | $0.00 |
| 2005.1025.001 GTA | 10/4/2005 (10/05) | | | | $52.66 | $0.00 | $351.03 |
| 2005.1026.001 GTA | 10/25/2005 (10/05) | $1,100.00 | | 100 Pymt Cash | $24.66 | $723.31 | $0.00 |
| 2005.1028.001 GTA | 10/28/2005 (10/05) | | | | $351.03 | $0.00 | $0.00 |
| 2005.1028.001 REV | 11/9/2005 (10/05) | | | 112 Pymt Mellon | $14.61 | $720.73 | $0.00 |
| 2005.1109.001 GTA | 11/9/2005 (11/05) | $1,100.00 | | 500 REV Pymt Cash | $984.76 | $984.76 | $0.00 |
| 2005.1109.001 REV | 11/23/2005 (11/05) | | | | $0.00 | ($720.73) | ($720.73) |
| 2005.1123.001 GTA | 11/23/2005 (11/05) | $1,100.00 | | 100 Pymt Cash | $14.51 | $720.73 | $0.00 |
| 2005.1125.001 GTA | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2005/1125 001 GTA | 11/25/2005 [11/05] | 11/25/2005 | | | | $0.00 | $0.00 |
| 2005/1205 001 GTA | 12/05/2005 [11/05] | 12/05/2005 | | $384.76 | $0.00 | $0.00 | $0.00 |
| 2005/1206 001 GTA | 12/06/2005 [12/05] | 12/06/2005 | | $3.36 | $716.15 | $0.00 | $0.00 |
| 2005/0103 001 GTA | 1/03/2006 [12/05] | 1/02/2006 | | $270.73 | $7.76 | $0.00 | $0.00 |
| 2006/0103 001 GTA | 1/03/2006 [1/06] | 1/2/2006 | $1,100.00 | 112 Pymt Mellon | $0.00 | $707.76 | $0.00 | $0.00 |
| 2006/0131 001 GTA | 1/31/2006 [1/06] | 1/30/2006 | | $373.38 | $18.90 | $0.00 | $0.00 |
| 2006/0201 001 GTA | 2/01/2006 [1/06] | 2/1/2006 | $1,100.00 | 112 Pymt Mellon | $0.00 | $694.05 | $0.00 | $0.00 |
| 2006/0227 001 GTA | 2/27/2006 [2/06] | 2/25/2006 | $694.05 | 112 Pymt Mellon | $0.00 | $0.00 | $0.00 | $0.00 |
| 2006/0227 001 GTA | 2/27/2006 [3/06] | 2/25/2006 | $1,086.27 | 112 Pymt Mellon | $328.95 | $384.85 | $0.00 | $0.00 |
| 2006/0403 001 GTA | 4/03/2006 [3/06] | 4/2/2006 | | $13.60 | $0.00 | $0.00 | $0.00 |
| 2006/0409 001 GTA | 4/09/2006 [4/06] | 4/2/2006 | $1,086.27 | 112 Pymt Mellon | $368.94 | $707.60 | $0.00 | $0.00 |
| 2006/0503 001 GTA | 5/03/2006 [4/06] | 5/2/2006 | | $13.73 | $0.06 | $0.00 | $0.00 |
| 2006/0503 001 GTA | 5/03/2006 [5/06] | 5/2/2006 | $1,086.27 | 112 Pymt Mellon | $367.88 | $704.65 | $0.00 | $0.00 |
| 2006/0603 001 GTA | 6/03/2006 [5/06] | 6/2/2006 | | $13.73 | $0.00 | $0.00 | $0.00 |
| 2006/0603 001 GTA | 6/03/2006 [6/06] | 6/2/2006 | $1,086.27 | 112 Pymt Mellon | $370.48 | $701.96 | $0.00 | $0.00 |
| 2006/0701 001 GTA | 7/01/2006 [6/06] | 6/30/2006 | | $13.73 | $0.00 | $0.00 | $0.00 |
| 2006/0701 001 GTA | 7/01/2006 [7/06] | 7/1/2006 | $1,096.27 | 112 Pymt Mellon | $373.30 | $699.24 | $0.00 | $0.00 |
| 2006/0804 001 GTA | 8/04/2006 [7/06] | 7/2/2006 | | $13.73 | $0.00 | $0.00 | $0.00 |
| 2006/0804 001 GTA | 8/04/2006 [8/06] | 8/4/2006 | $1,096.27 | 112 Pymt Mellon | $376.04 | $696.50 | $0.00 | $0.00 |
| 2006/0824 001 GTA | 8/24/2006 | 8/24/2006 | ($960.42) | 211 Disb: Insurance Only  Insurance Type: 10 | $0.00 | $0.00 | ($960.42) | $0.00 |
| 2006/0903 001 GTA | 9/03/2006 [8/06] | 8/30/2006 | | $376.83 | $693.74 | $0.00 | $0.00 |
| 2006/0931 001 GTA | 9/31/2006 [9/06] | 9/30/2006 | $1,086.27 | 112 Pymt Mellon | $13.73 | $0.00 | $0.00 | $0.00 |
| 2006/0930 001 GTA | 9/30/2006 [9/06] | 9/30/2006 | $1,086.27 | 112 Pymt Mellon | $381.65 | $690.96 | $0.00 | $0.00 |
| 2006/1103 001 GTA | 11/03/2006 [10/06] | 11/02/2006 | $1,086.27 | 112 Pymt Mellon  Insurance Type: 10 | $13.73 | $0.00 | $0.00 | $0.00 |
| | | | | | $384.33 | $656.16 | $0.00 | $13.73 |

© Copyright Green Tree Servicing LLC 2005. Proprietary and confidential.
For internal (Green Tree Servicing LLC) use only. Do not copy or distribute without prior written consent.

* Prin Bal is supplied for research purposes only.
GTA should always be checked to the actual Principal Balance for GTA Accounts.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CATHERINE CALLOWAY and      *
MICHAEL CALLOWAY,      *
     *
     Plaintiffs,      * CIVIL ACTION NO. 08-224-SLR
     *
v.      *
     *
GREEN TREE SERVICING, LLC      *
     *
     Defendant.      *
     *
     *

## RULE 7.1.1. CERTIFICATION

This to certify that I made an effort to speak with opposing counsel before filing of the Motion for Leave to Amend Complaint. I was not able to speak with opposing counsel before filing this motion, and cannot represent his position on this filing.

LAW OFFICE OF MAGGIE CLAUSELL, LLC

Maggie Clausell
DE Bar ID # 4532
9 E. Loockerman Street, Ste. 205
Dover, DE 19901
302-678-7644 (voice)
302-678-0771 (fax)

DATED: June 5, 2008