# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CATHERINE CALLOWAY AND<br>MICHAEL CALLOWAY, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. 08-224-SLR |
| | : | |
| v. | : | |
| | : | |
| GREEN TREE SERVICING, LLC, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT GREEN TREE SERVICING, LLC'S [COMBINED] REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AND ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' <u>MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT</u>

Albert H. Manwaring, IV (#4339)
Maria L. Panichelli (#5047)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6514
Facsimile: (302) 421-8390
manwaringa@pepperlaw.com
panichellim@pepperlaw.com

Dated: June 17, 2008

*Attorneys for Defendant Green Tree Servicing, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................ 1

II.   SUMMARY OF ARGUMENT ............................................................................. 2

III.  STATEMENT OF FACTS ................................................................................... 4

IV.   ARGUMENT ....................................................................................................... 6

      A.   Plaintiffs Concede That Their Claims Based on Misconduct Arising Prior to June 22, 2003 are Barred ................................................................. 6

      B.   Plaintiff's Negligence Claim, Plaintiffs' RESPA Claim, and Plaintiffs'Claim Under 6 *Del.* § 2513 are Further Limited to Misconduct Occurring After March 13, 2005 ................................................................. 7

      C.   Because Plaintiff's Proposed Amended Complaint Fails to State Allegations of Misconduct Occurring After June 22, 2003, It Fails to State Claims for Which Relief Can Be Granted ............................................................. 8

            1.   Amendment of Plaintiffs' Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Negligence Claims is Futile ...................... 9

            2.   Amendment of Plaintiffs' RESPA Claim and Plaintiffs' Claim Under the Delaware Consumer Fraud Act is Futile ..................................................... 14

      D.   Because Plaintiffs' Amended Complaint Fails to State Claims for Which Relief Can Be Granted, Amendment Is Futile, and Dismissal Without Leave to Amend is Proper ...................................................................................... 15

V.    CONCLUSION .................................................................................................. 16

#9732307 v1

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Aronow Roofing Co. v. Gilbane Bldg. Co.*,
    902 F.2d 1127 (3d Cir. Del. 1990)....................................................................8

*DiBaiase v. A. & D., Inc.*,
    351 A.2d 865 (Del. Super. 1976)....................................................................8

*Dunleavy v. New Jersey.*,
251 Fed. Appx. 80, 83-84 (3d Cir. 2007)...................................................15

*Elmer v. Tenneco Resins, Inc.*,
    698 F. Supp. 535 (D. Del. 1988).....................................................................7

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*,
    209 F.3d 252 (3d Cir. 2000)............................................................................6

*Knapp v. Berg Chilling Sys. v. Hull Corp.*,
    435 F.3d 455 (3d Cir. 2006)............................................................................7

*Phillips v. County of Allegheny*,
    15 F.3d 224 (3d Cir. 2008)...........................................................................15

*Premier Pork L.L.C. v. Westin, Inc.*,
    2008 U.S. Dist. LEXIS 20532 (D. N.J. Mar. 17, 2008)................................7

*In re TWA*,
    322 F.3d 283 (3d Cir. 2003)............................................................................6

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007).........................................................................15

## STATUTES

11 U.S.C. § 363...............................................................................................*passim*

Delaware Consumer Fraud Act, 6 *Del. C.* § 2513 ..............................................*passim*

## I.   NATURE AND STAGE OF THE PROCEEDINGS

On or about March 13, 2008, Plaintiffs Catherine and Michael Calloway filed a complaint ("the Complaint," attached hereto as Exhibit "1") in the Superior Court of Delaware in and for Sussex County.  In the Complaint, Plaintiffs asserted claims against Defendant Green Tree Servicing, LLC ("Green Tree") for purported violations of The Real Estate Settlement and Procedures Act ("RESPA") (Count I); Breach of Contract (Count II); alleged violations of the Delaware Consumer Fraud Act, 6 *Del. C.* § 2513 (Count III); Conversion (Count IV); Negligence (Count V); and Breach of the Covenant of Good Faith and Fair Dealing (Count VI).  All of Plaintiffs' claims arise out of the servicing of Plaintiffs' mortgage.  (Complaint, Ex. 1).

Defendant Green Tree removed this action to this Court on April 21, 2008 on the basis of federal question jurisdiction.  (Notice of Removal, D.I. # 1).  On April 28, 2008, Defendant Green Tree filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and its Opening Brief in support of the Motion to Dismiss.  (Motion To Dismiss, D.I. # 3; Opening Brief in Support of Motion to Dismiss, D.I. # 4).

On May 12, 2008, and again on May 28, 2008, the parties stipulated to an extension of time for Plaintiffs to file a response to Defendant's Motion to Dismiss.  (Stipulations, D.I. # 6, D.I. # 7).  Plaintiffs filed their Opening Brief in Opposition to Defendant's Motion to Dismiss on June 6, 2008.  (Opening Brief in Opposition to Defendant's Motion to Dismiss, D.I. # 10).  In addition, Plaintiffs are seeking to amend their Complaint.  Plaintiffs filed a Motion for Leave to File an Amended Complaint, and an Opening Brief in Support of the Motion for Leave to File an Amended Complaint on

#9732307 v1

June 6, 2008. (Motion for Leave to File an Amended Complaint D.I. # 8; Opening Brief

in Support of the Motion for Leave to File an Amended Complaint, D.I. # 9). Plaintiffs

attached a proposed Amended Complaint ("Amended Complaint") (Exhibit "5" to D.I. #

8, attached hereto as Exhibit "2"), in which they seek to assert claims against Green Tree

for purported violations of RESPA (Count I); Breach of Contract (Count II); alleged

violations of the Delaware Consumer Fraud Act, 6 Del. C. § 2513 (Count III);

Negligence (Count V),[1] and Breach of the Covenant of Good Faith and Fair Dealing

(Count VI).[2] (Amended Complaint, Ex. 2).

Defendant Green Tree submits this brief in further support of its previous

Motion to Dismiss, and in Opposition to Plaintiffs' Motion for Leave to File an Amended

Complaint.

## II.    SUMMARY OF ARGUMENT

1.    As Plaintiffs concede in their briefs, to survive dismissal, a claim

against Green Tree arising from the servicing of Plaintiffs' mortgage must be premised

on conduct that occurred after June 22, 2003. Because Plaintiffs purchased the right to

service Plaintiffs' mortgage in an approved § 363 bankruptcy sale, the contract servicing

rights were sold "free and clear" of all interests, including any legal claims arising out of

the previous servicing of Plaintiffs' mortgage. Moreover, when Green Tree purchased

---

[1] Plaintiffs' proposed Amended Complaint skips from Count III to Count V. For the purposes of this Brief, Defendant will refer to the Counts as numbered in the Amended Complaint.

[2] Plaintiffs' Amended Complaint lists the Covenant of Good Faith and Fair Dealing as "Count IV." Despite the absence of a Count IV above, we believe this Count was mistakenly labeled, and will refer to the Covenant of Good Faith and Fair Dealing Claim as Count VI.

the right to service Plaintiffs' mortgage in the bankruptcy asset sale, Green Tree did not assume any corresponding liability for the previous improper servicing of the mortgage. Therefore, any claims that are premised on misconduct that occurred prior to the bankruptcy sale on June 22, 2003 fail to state a claim against Green Tree. Plaintiffs concede these points in their Opening Briefs, but now contend that their claims against Green Tree, arising from the servicing of their mortgage, are not premised on pre-June 22, 2003 conduct, but rather are all based on post-June 22, 2003 conduct (i.e. after the bankruptcy sale) that was, for some unspecified reason, not alleged in the original Complaint.

      2.     Because Plaintiffs' Negligence Claim, as well as Plaintiffs' Claims under RESPA and The Delaware Consumer Fraud Act, 6 *Del. C.* § 2513, are each governed by a three-year statute of limitations, those claims must aver conduct that occurred after March 13, 2005, *i.e.* three years before the filing of the Plaintiffs' Complaint on March 13, 2008. Any of the above claims based on conduct that occurred prior to that time are legally insufficient.

      Plaintiffs' claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing are governed by a twenty-year statute of limitations. These claims are, however, limited to conduct occurring after June 22, 2003 due to the § 363 bankruptcy sale bar.

      3.     Because Plaintiffs have just repackaged their allegations of misconduct, which allegedly occurred before June 22, 2003 in the original Complaint, as occurring after June 22, 2003 in the proposed Amended Complaint, Plaintiffs' Amended Complaint is legally insufficient. Although Plaintiffs now generally aver that the claims

contained in the Amended Complaint all arose after June 22, 2003, Plaintiffs make the

very same allegations, supported by essentially the same exhibits, as in their original

Complaint. In short, Plaintiffs have merely repackaged their previous allegations of pre-

June 22, 2003 conduct in the original Complaint as post-June 22, 2003 conduct in their

proposed Amended Complaint in an attempt to circumvent the § 363 bankruptcy sale bar

and the limitations periods on their claims. However, Plaintiffs offer no new or

supplemental support to justify their newly-repackaged allegations. Accordingly,

Plaintiffs' proposed Amended Complaint fails to assert a good faith factual basis to

support the occurrence of the alleged misconduct after June 22, 2003, and thus fails to

state a claim against Green Tree.

       4.     Because Plaintiffs' proposed Amended Complaint would not

survive a renewed motion to dismiss, amendment is futile, and should not be permitted.

In these circumstances, dismissal without leave to amend is proper. Accordingly,

Plaintiffs' Complaint should be dismissed with prejudice and their Motion for Leave to

File an Amended Complaint should be denied.

III.    **STATEMENT OF FACTS**

       Plaintiffs allege that on October 9, 1996, they refinanced their home, and

executed a corresponding note and mortgage with Green Tree Financial Servicing

Corporation ("GTFSC"). (Complaint, ¶¶ 6-7, Ex. 1; Amended Complaint, ¶¶ 8-9, Ex. 2).

GTFSC serviced Plaintiffs' mortgage from 1996 through 1999, at which point GTFSC

changed its name to Conseco Finance Servicing Corp., which continued to service

Plaintiffs' mortgage up to June 22, 2003. (Complaint, ¶¶10-11, Ex. 1; Amended

Complaint, ¶¶ 12-13, Ex. 2).

-4-

Conseco and its affiliated companies filed for bankruptcy on December 17, 2002. On March 14, 2003, an affiliate of Defendant Green Tree purchased certain of Conseco's assets in an approved § 363 bankruptcy sale. Included in the assets purchased under § 363 was the contractual right to service Plaintiffs' mortgage.

On or about March 13, 2008, Plaintiffs Catherine and Michael Calloway filed their Complaint, asserting claims against Green Tree for violation of RESPA (Count I); Breach of Contract (Count II); violations of the Delaware Consumer Fraud Act, 6 *Del. C.* § 2513 (Count III); Conversion (Count IV); Negligence (Count V); and Breach of the Covenant of Good Faith and Fair Dealing (Count VI). (Complaint, Ex. 1). All of the alleged misconduct in the Complaint: improper application of payments and miscalculation of interest, resulting in extension charges, forbearance agreement costs, late fees, return check fees, and forced place insurance, was committed by the prior owners of the contract mortgage servicing rights, and occurred between 1996 and 2002 - according to this Complaint. (Complaint, ¶¶ 22-30, Ex. 1).

Because Green Tree purchased the right to service the Plaintiffs' mortgage "free and clear" of all legal claims on June 22, 2003 in a § 363 bankruptcy sale of assets, and because Plaintiffs could not establish a theory of successor liability under which Green Tree could be held liable for the prior owners' alleged misconduct, Green Tree moved to dismiss Plaintiffs' Complaint. (Motion To Dismiss, D.I # 3).

In response to the Motion to Dismiss, Plaintiffs now concede that those claims against Green Tree that are based on misconduct that occurred prior to June 22, 2003 are barred. (*See* Opening Brief in Support of the Motion for Leave to File and Amended Complaint, p. 2, D.I. #9; Opening Brief in Opposition to Defendant's Motion

-5-

To Dismiss, p. 1, D.I. # 10). However, Plaintiffs are seeking to amend their Complaint to now state that all of this alleged misconduct occurred after June 22, 2003, despite the lack of any new or additional evidence that might provide a good-faith factual basis to justify this amendment.

IV.    **ARGUMENT**

    A.    **Plaintiffs Concede That Their Claims Based on Misconduct Arising Prior to June 22, 2003 are Barred**

In both their Opening Brief in Support of Motion for Leave to Amend, and in their Answering Brief In Opposition to Defendant's Motion to Dismiss, Plaintiffs have essentially conceded that their claims against Green Tree that are based on misconduct that occurred prior to June 22, 2003 are barred. (*See* Opening Brief in Support of the Motion for Leave to File and Amended Complaint, p. 2, D.I. # 9; Opening Brief in Opposition to Defendant's Motion To Dismiss, p. 1, D.I. # 10).

First, as Plaintiffs recognize, Green Tree cannot be held liable for claims arising, from the servicing of Plaintiffs' mortgage prior to June 22, 2003, because Green Tree purchased the right to service the mortgage on June 22, 2003 in a 11 U.S.C. § 363 bankruptcy sale. Therefore, the right to service Plaintiffs' mortgage was sold to Green Tree free and clear of interests, including all legal claims arising from the prior owners' servicing of Plaintiffs' mortgage. 11 U.S.C. § 363(f); *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 257 (3d Cir. 2000); *In re TWA*, 322 F.3d 283, 290 (3d Cir. 2003).

Moreover, even putting aside the time bar imposed by §363, Green Tree cannot be held liable for the alleged wrongdoing of the prior owners before June 22, 2003

-6-

because Plaintiffs cannot allege a theory of successor liability under which Green Tree could possibly be held responsible for such misconduct.  *See Knapp v. Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455, 468 (3d Cir. 2006) (discussing successor liability theories); *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 540 (D. Del. 1988).  Green Tree's affiliate purchased the contract mortgage servicing rights from the prior owner, but did not assume the prior owners' liabilities, arising from the contract mortgage servicing rights.  *See Premier Pork L.L.C. v. Westin, Inc.*, 2008 U.S. Dist. LEXIS 20532, at *12 (D. N.J. Mar. 17, 2008) ("The general rule of successorship liability is really one of nonliability) (Attached hereto as Exhibit "3").  Absent a theory of successor liability, Green Tree cannot be held responsible for the alleged misconduct committed by the prior owner of the contract rights to service Plaintiffs' mortgage, and therefore, claims arising prior to the June 22, 2003 sale are barred.

In sum, the § 363 bankruptcy sale bar, and the absence of successor liability each provide a separate and independent ground to bar claims arising prior to June 22, 2003.  Plaintiffs therefore concede that to state a claim, they must assert misconduct that occurred post-June 22, 2003.

### B.  Plaintiff's Negligence Claim, Plaintiffs' RESPA Claim, and Plaintiffs' Claim Under 6 *Del. C.* § 2513 are Further Limited to Misconduct Occurring After March 13, 2005

Green Tree has asserted, and Plaintiffs concede, that claims under RESPA and claims for Consumer Fraud under 6 *Del. C.* § 2513 both have a three-year statute of limitations.  (Motion to Dismiss, pp. 12-13, D.I. #3; Opening Brief in Opposition to Defendant's Motion to Dismiss, p. 3, D.I. # 10).  Therefore, Plaintiffs' claims under

RESPA and 6 *Del. C* § 2513 are limited to actions occurring after March 13, 2005, *i.e.*, three years before the filing of Plaintiffs' Complaint on March 13, 2008.

Green Tree agrees with Plaintiffs that their claim for Negligence is also governed by a three statute of limitations. (Opening Brief in Opposition to Defendant's Motion to Dismiss, p. 3, D.I. # 10). Accordingly, Plaintiffs' Negligence Claim is also limited to actions occurring after March 13, 2005.

Green Tree agrees that the Mortgage constitutes a document under seal and that actions pertaining to the Mortgage, namely Plaintiffs' claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing, are therefore governed by a twenty-year statute of limitations.[3] Because of the § 363 bankruptcy sale bar, these claims are nonetheless still limited to conduct occurring after the § 363 sale on June 22, 2003.

C.    **Because Plaintiff's Proposed Amended Complaint Fails to State Allegations of Misconduct Occurring After June 22, 2003, It Fails to State Claims for Which Relief Can Be Granted**

Plaintiffs' proposed Amended Complaint fails to state claims for which relief can be granted because the claims are premised on misconduct that occurred prior to June 22, 2003.

---

[3] Defendant does not believe that Plaintiffs' claims constitute an action to recover debt, and therefore Defendant submits that the language of 10 *Del. C.* §8106 cited in Plaintiffs' opening Brief in Opposition to Defendant's Motion to Dismiss is inapposite. (*See* Opening Brief in Opposition to Defendant's Motion to Dismiss on June 6, 2008, p. 4 n. 2, D.I. # 10). Nonetheless, Defendant concedes that Delaware common law provides that a claim based upon a contract under seal is actionable for 20 years. *Aronow Roofing Co. v. Gilbane Bldg. Co.*, 902 F.2d 1127, 1129 (3d Cir. Del. 1990); *DiBaiase v. A. & D., Inc.,* 351 A.2d 865, 867 (Del. Super. 1976).

Plaintiffs' original Complaint contained claims that were premised on conduct occurring prior to June 22, 2003, and the Complaint was therefore legally insufficient. (Complaint, ¶¶ 21-30, Ex. 1). Plaintiffs seek to circumvent dismissal by amending their Complaint, and now contend that all of the misconduct that allegedly occurring prior to June 22, 2003 in their first Complaint actually occurred after June 22, 2003. (Amended Complaint, ¶ 15, Ex. 2). However, examination of the proposed Amended Complaint reveals that Plaintiffs simply repackaged the same allegations in the original Complaint, but without asserting any new or additional evidence that might provide a good faith factual basis to support Plaintiffs' allegations that the misconduct now all occurred after June 22, 2003. Accordingly, the Amended Complaint also fails to state a claim against Green Tree, cannot withstand a renewed motion to dismiss, and thus amendment would be futile.

      1.     Amendment of Plaintiffs' Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Negligence Claims is Futile

In both their original Complaint and their Amended Complaint, Plaintiffs assert claims against Green Tree for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Negligence. (Complaint, ¶¶ 21-41, 46-50, 51, Ex. 1; [4] Amended Complaint, ¶¶ 25-37, 40-44, 45-46, Ex. 2). Each of these claims is premised on Green Tree's alleged misapplication of mortgage payments and miscalculation of interest payments - misconduct which allegedly occurred prior to June 22, 2003 in the

---

[4] The first paragraph of Count VI, Breach of the Covenant of Good Faith and Fair Dealing, in the original Complaint appears to have been incorrectly numbered as a second paragraph 46. In this brief, we will refer to this paragraph as paragraph (¶) 51.

original Complaint. (Complaint, ¶¶ 21-30, 46-50, 51, Ex. 1; Amended Complaint, ¶¶ 25-37, 40-44, 45-46, Ex. 2). Plaintiffs contend that Green Tree misapplied payments and miscalculated interest, causing the imposition of extension charges, forbearance agreement costs, late fees and return check fees, and the improper purchasing of forced place insurance. (Complaint, ¶¶ 39-41, Ex. 1; Amended Complaint, ¶¶ 35-37, Ex. 2).

Plaintiffs now concede that their Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing claims are limited to conduct arising after June 22, 2003, and that their Negligence Claim is limited to conduct occurring after to March 13, 2005. (Opening Brief in Support of the Motion for Leave to File and Amended Complaint, p. 2, D.I. #9; Opening Brief in Opposition to Defendant's Motion To Dismiss, p. 1, D.I. # 10). However, Plaintiffs' proposed Amended Complaint fails to assert any new or additional evidence that the alleged misconduct supporting these claims occurred after June 22, 2003. Rather, the Amended Complaint relies on essentially the same exhibits relied upon in the original Complaint, all of which concern misconduct that Plaintiffs previously alleged occurred prior to June 22, 2003.

In the original Complaint, Plaintiffs did not even assert claims for alleged misapplication of payments occurring post-June 22, 2003. (Complaint, ¶¶ 21-30, Ex. 1). Rather, Plaintiffs produced a spreadsheet detailing Plaintiffs' complete mortgage account history to support the assertion that payments were misapplied between 1996 and 2001. (Complaint, ¶ 23 and Exhibit D, Ex. 1). Although the spreadsheet covers the account history from 1997 through 2006, Plaintiffs' original Complaint did not specify that any misapplication of payments occurred after May 2001, and limited specific allegations of misconduct to the period between 1997 and 2001. (Complaint, ¶¶ 23, 34 and Exhibit D,

-10-

Ex. 1). Because Plaintiffs premised the claims in the original Complaint upon conduct occurring between November 1996 and May 2001 only, and because any claim based on conduct prior to June 22, 2003 is barred, the Complaint failed to state a claim in connection with the alleged misapplication of payments.

Plaintiffs now seek to avoid the applicable time bars by amending their Complaint to assert that their claims are premised on conduct occurring after June 22, 2003 only. (Amended Complaint, ¶ 15, Ex. 2). In the proposed Amended Complaint, Plaintiffs again base their claims on allegations of misapplication of payments, but seek to delete the references to specific dates on which such misapplication allegedly occurred. (Amended Complaint, ¶ 30, Ex. 2). In the Amended Complaint, Plaintiffs now assert that all of the claims therein arose after June 22, 2003. (Amended Complaint, ¶ 15, Ex. 2). However, Plaintiffs produce no new or additional evidence concerning the alleged misapplication of payments after June 22, 2003. Indeed, Plaintiffs now omit any reference to an exhibit to support the proposition that payments were misapplied after June 22, 2003, (Amended Complaint, ¶ 30, Ex. 2), despite the fact that Exhibit "D" to their original Complaint includes account history for the years of 2003-2006.[5] In short, Plaintiffs do not seek to amend their Complaint on the basis of new or additional evidence that indicates that the alleged misconduct supporting their claims arose after

_____

[5] Although not cited to substantiate the allegations concerning misapplication of payments post June 22, 2003, the document containing Plaintiffs' account history from 1997-2006 that constituted Exhibit "D" in Plaintiffs' original Complaint, was filed as part of Exhibit "G" to the Amended Complaint. (See Exhibit "G" to Amended Complaint, pp. 3-12, Ex. 2). Exhibit G is cited in the Amended Complaint to support the proposition that forced placed insurance was purchased for Plaintiffs from 2006-2007. (Amended Complaint, ¶ 29, Ex. 2).

-11-

June 22, 2003. Rather, they seek to repackage the very same information and allegations previously set forth in the original Complaint in more general terms without specifying occurrence times in order to circumvent the time limitations on their claims. With regard to the alleged misapplication of payments, the amended claims are, in actuality, based on the very same alleged misconduct set forth in the original Complaint – all of which occurred prior to June 22, 2003. Because all claims arising from conduct occurring before June 22, 2003 are barred, these claims concerning misapplication of payment are legally insufficient, and would not survive a renewed motion to dismiss.

In their original Complaint, Plaintiffs also allege that Green Tree breached the mortgage contract because interest payments calculated on their Form 1098 tax forms were miscalculated, forcing them to revise their taxes for the years 1996-2005. (Complaint, ¶¶ 31-32, Ex. 1). They allege that they were advised in February 2006 that Green Tree had made errors in their tax forms. (Complaint, ¶¶ 31-32, Ex. 1). To support this proposition, they refer to Exhibit "E," which contains the original and the corrected Form 1098 for the years 1995-2003. (Complaint, ¶ 25 and Exhibit E, Ex. 1). Although Plaintiffs' original Complaint alleged that they did not discover these errors until 2006, the discovery rule does not save Plaintiffs here. In short, the discovery rule does not have any effect upon the bar imposed by the § 363 bankruptcy sale, and thus Plaintiffs' claims remain limited to conduct occurring after June 22, 2003. Thus, Plaintiffs' original Complaint failed to state a claim for Breach of Contract with regard to the miscalculation of interest because the claim was premised on alleged misconduct that occurred prior to June 22, 2003.

In their Amended Complaint, Plaintiffs simply repeat the same allegations concerning the miscalculation of interest that were contained in the original Complaint.[6] (Amended Complaint, ¶¶ 25-26, Ex. 2).  Further, Plaintiffs cite to the very same documents to support their 1098 claim, this time as Exhibit "E" to the Amended Complaint.  (Amended Complaint, ¶¶ 25-26 and Exhibit E, Ex. 2).  In the Amended Complaint, Plaintiffs also allege that Green Tree improperly capitalized the interest on their mortgage, and add Exhibit "F" to support this proposition.  (Amended Complaint, ¶ 27 and Exhibit F, Ex. 2).  However, Exhibit F is an unauthenticated spreadsheet that appears to have been created by Plaintiffs in response to the Motion to Dismiss.  (Exhibit F to the Amended Complaint, Ex. 2).  Plaintiffs provide no explanation of what exactly the spreadsheet is, what it purports to demonstrate, or how it supports their allegations concerning the miscalculation of interest after June 22, 2003.  (See Amended Complaint, ¶ 27 and Exhibit F, Ex. 2).  In short, to the extent the Amended Complaint simply restates the very same allegations made in the original Complaint, it is deficient for the same reasons the original complaint was deficient.  To the extent that the Amended Complaint seeks to add new allegations and so-called new proof of those allegations, it fails to state in good faith that any misconduct occurred, let alone that that misconduct occurred post-June 22, 2003.

---

[6] Although Plaintiffs change the date alleged from February to January of 2006, this change is immaterial because, as stated above, all claims premised on conduct that occurred before June 22, 2003 are barred regardless of when they were discovered. Moreover, Plaintiffs moved the date of their alleged discovery back in time, which is to their disadvantage.

#9732307 v1

In sum, Plaintiffs seek to amend their Complaint simply to circumvent the time limitations imposed on their claims by the applicable statute of limitations and the § 363 bankruptcy sale bar. But the Amended Complaint is based on the same alleged misconduct as the original Complaint. All of that conduct occurred prior to June 22, 2003. Thus, the Amended Complaint fails to state a good faith factual basis to support Plaintiffs' allegations that the misconduct occurred after June 22, 2003. Because all claims arising from conduct occurring before June 22, 2003 are barred, Plaintiffs' proposed amendment to the Complaint is legally insufficient. Accordingly, Plaintiffs' proposed amendment is futile, and should not be permitted.

      2.    Amendment of Plaintiffs' RESPA Claim and Plaintiffs' Claim Under the Delaware Consumer Fraud Act is Futile

Plaintiffs seek to set forth claims against Green Tree for a purported violation of RESPA, and a purported violation of the Delaware Consumer Fraud Act, specifically 6 *Del. C.* § 2513. (Complaint, ¶¶ 14-20, 42-43, Ex. 1, Amended Complaint, ¶¶ 17-23, 38-39, Ex. 2). In both the original Complaint and the proposed Amended Complaint, each of these claims are premised on Green Tree's alleged failure to respond to Plaintiffs' demand for information regarding Plaintiffs' mortgage account. (Complaint, ¶¶ 14-20, 42-42, Ex. 1, Amended Complaint, ¶¶ 17-23, 38-39, Ex. 2). In their Amended Complaint, Plaintiffs simply restate the allegations previously set forth in their original Complaint and just add references to dates in 2005 or later. (Complaint, ¶¶ 14-20, 42-42, Ex. 1, Amended Complaint, ¶¶ 17-23, 38-39, Ex. 2). In addition, Plaintiffs now seek to attach letters purportedly sent to Green Tree to substantiate these allegations. (Amended Complaint, ¶ 18 and Exhibit D, Ex. 2). Although these letters were

-14-

purportedly written between 2005 and the present, Plaintiffs fail to offer any explanation

of why these letters were not attached to support the original Complaint, and have now

suddenly appeared in an attempt to circumvent the statute of limitations periods for their

claims. (Amended Complaint, ¶ 18 and Exhibit D, Ex. 2). In sum, Plaintiffs' Amended

Complaint fails to state a good faith factual basis to support a claim under RESPA or The

Delaware Consumer Fraud Act, 6 *Del. C.* § 2513.

> D.    **Because Plaintiffs' Amended Complaint Fails to State Claims for
> Which relief Can Be Granted, Amendment Is Futile, and Dismissal
> Without Leave to Amend is Proper**

A Court should not grant a plaintiff leave to amend a complaint when such

amendment would be futile. *E.g.*, *Winer Family Trust v. Queen*, 503 F.3d 319, 330 (3d

Cir. 2007); *Dunleavy v. New Jersey*, 251 Fed. Appx. 80, 83-84 (3d Cir. 2007).

Amendment is considered futile if the amended complaint could not withstand a renewed

motion to dismiss. *Dunleavy*, 251 Fed. Appx. at 83-84 (citing *Jablonski v. Pan American

World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)). Where amendment of the

plaintiff's complaint would be futile, a Court may dismiss a case without granting a

plaintiff leave to amend. *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).

Here, Plaintiffs' Amended Complaint is based on the same conduct as the

original Complaint, all of which occurred prior to June 22, 2003. All claims premised on

misconduct occurring prior to June 22, 2003 are barred. Therefore, the proposed

Amended Complaint fails to state claims for which relief can be granted, and could not

survive a renewed motion to dismiss. Accordingly, because Plaintiffs cannot in good

faith allege any post-June 22, 2003 misconduct, permitting Plaintiffs to amend their

Complaint would be futile, and this Court may properly dismiss the Complaint without allowing leave to amend.

## V.    CONCLUSION

For the foregoing reasons, the Defendant Green Tree Servicing, Inc. respectfully requests that this Court deny Plaintiffs' Motion for Leave to File an Amended Complaint, and grant Green Tree's Motion to Dismiss all of Plaintiffs' claims with prejudice.

Respectfully submitted,

/s/ *Albert H. Manwaring, IV*
Albert H. Manwaring, IV (#4339)
Maria L. Panichelli (#5047)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6514
Facsimile: (302) 421-8390
manwaringa@pepperlaw.com
panichellim@pepperlaw.com

*Attorneys for Defendant Green Tree Servicing, LLC*

Dated: June 17, 2008

-16-

## CERTIFICATE OF SERVICE

I, Albert H. Manwaring, IV hereby certify that on June 17, 2008, I caused a copy of the foregoing Defendant Green Tree Servicing, LLC's [Combined] Reply Brief in Further Support of its Motion to Dismiss and Answering Brief in Opposition to Plaintiffs' Motion for Leave to Amend Complaint to be served with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

> Maggie Clausell
> Law Office of Maggie Clausell
> 9 E. Lockerman Street
> Suite 205
> Dover, DE  19901
> *Attorney for Plaintiffs*

/s/  *Albert H. Manwaring, IV*
Albert H. Manwaring, IV

#9732307 v1

# EXHIBIT "1"

EFiled: Mar 13 2008 6:00PM EDT
Transaction ID 18983427
Case No. 08C-03-011 RFS

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND
FOR SUSSEX COUNTY

| | |
|---|---|
| CATHERINE CALLOWAY and<br>MICHAEL CALLOWAY, | *<br>* C.A. No. |
| | * |
| Plaintiffs, | * Non Arbitration |
| v. | * Jury Trial Demanded |
| GREEN TREE SERVICING, LLC | *PLAINTIFF REQUIRES THAT DEFENDANT |
| Defendants. | *ANSWER ALL ALLEGATIONS OF THE<br>*COMPLAINT*BY AFFIDAVIT SETTING<br>*FORTH THE SPECIFIC<br>*NATURE AND CHARACTER OF ANY<br>*DEFENSE AND THE FACTUAL BASIS<br>*THEREFORE PURSUANT TO<br>*10 <u>DEL</u>. <u>C</u>. §3901 |

### COMPLAINT

COME NOW, the Plaintiffs, CATHERINE CALLOWAY and MICHAEL CALLOWAY, by and through their attorney Maggie Clausell, to make the following complaint:

1. Catherine and Michael Calloway, are adult individuals, husband and wife, who are both residents of the State of Delaware, residing at 514 King Street, Laurel DE 19956.

2. Greentree Servicing LLC is a corporation organized under the laws of the State of Delaware whose principal place of business is 332 Minnesota Street, St. Paul, MN 55101, whose registered agent is The Corporation Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

3. Greentree Servicing LCC (hereinafter, "Green Tree") is a loan servicing company which conducts business nationwide, including services provided in the State of Delaware.

4. Plaintiffs refinanced their residence at 514 King Street (hereinafter, "the Residence") on or about October 9, 1996.

5. Plaintiffs are the current record owners of the Property as evidence by the deed recorded with the Recorder of Deeds for Sussex County Delaware at Book 1206, Page 261, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "A".

6. On October 9, 1996 Plaintiffs executed a note with Green Tree Financial Services (hereinafter "Green Tree Mortgage"), agreeing to pay $125,000 plus interest. A copy of the Note is attached hereto and incorporated herein as Exhibit "B".

7.    Additionally, Plaintiffs executed a mortgage (hereinafter, "Mortgage") with Green Tree on or about October 9, 1996.  A copy of the Mortgage is attached hereto and incorporated herein as Exhibit "C".

8.    The monthly payment and interest was $1285.98 with the first payment due on November 14, 1996.

9.    Plaintiff commenced payments under the terms of the note and mortgage on November 14, 1996.

10.   Green Tree Servicing LLC serviced the note from October 11, 1996  to 1999 when Conseco began servicing the loan.

11.   Conseco serviced the loan from serviced the loan from 1999 to June 2003.

12.   Green Tree resumed servicing the loan from 2003 to present.

13.   At all times Defendant acted through its authorized agents and employees.

COUNT I<br>VIOLATION OF THE REAL ESTATE SETTLEMENT AND PROCEDURES ACT

14.   Paragraphs 1-13 are incorporated by reference as if fully set out herein.

15.   The Plaintiffs issued written requests to Green Tree on several occasions including information in compliance with the Real Estate Settlement Procedures Action (hereinafter, "RESPA").

16.   The Defendants either failed to response to Plaintiffs or the responses provided less than full and fair disclosure of information, or failed to address the questions presented in the request.

17.   By failing to respond to the Plaintiffs' request for information regarding the servicing of their mortgage, Green Tree violated RESPA.

18.   As a result of Green Tree's violation, Plaintiffs have been unable to determine the true and correct balance and owing on their mortgage and have been subjected to repeated collections efforts from Green Tree.

19.   Plaintiffs also believe and aver that Green Tree has assessed unwarranted late fees, forced place insurance, and escrow advances to their account.

20.   Without a true and accurate accounting and payment history from Green Tree, Plaintiffs are unable to determine the extent of the actual damages they have incurred as a result of Green Tree's failure to respond to their qualified written requests.

COUNT II
BREACH OF CONTRACT

21. Paragraphs 1-20 are set out as if fully set out herein.

22. Plaintiffs made mortgage  payments for the months of November 1996, December 1996, January 1997, February, March, April, May, and June 1997.

23. Defendant failed to credit Plaintiffs for any of these payments totaling $10287.64 (Exhibit D)

24 Defendant failed to credit Plaintiffs mortgage payments of August  1997 and October 1997.

25. Defendant wrongfully alleged that Plaintiffs were two months behind in their mortgage payments for August and September 1997.

26. Plaintiffs entered into an extension agreement on October 8, 1997 and paid $424.37 for the extension agreement and $321.46 in late fees.

27. Defendant failed to credit Plaintiff's check number 3658 for $1086.27

28. Defendant failed to credit Plaintiffs' Western Union payment of May 15, 2001.

29. On May 28, 2001 Plaintiffs executed forbearance agreement with Conseco. Plaintiffs paid an extension charge of $108.00 and late fees totaling $1471.94, and a return check fee of $143.54.

30. On February 28, 2002 Plaintiffs paid a total of $1962.80 for an extension agreement.

31. In February 2006 Plaintiffs learned that Green Tree had major errors in calculating the interest payments reported on the Form 1098 creating a significant potential tax liability (Exhibit E).

32. In February 2006 Defendant advised Plaintiffs that all their Form 1098 from 1996 to 2005 would have to be revised after the Plaintiffs had filed their taxes for each of those years..

33. Defendant purchased forced place insurance for Plaintiffs even though Plaintiffs had insurance at all times.

34. Upon information and belief, Defendant has failed and refused to apply the amounts paid by the Plaintiffs accurately and timely.

35. As a result of Defendant's failure to accurately and timely apply payment made, the Plaintiffs have been subjected to foreclosure notices and additional fees being added to their account.

36. Green Tree's actions and inactions as outlined above constitute a breach of the contract

3

between the parties.

37.    Green Tree had an obligation under the contract to accept and apply payments as they became due.

38.    Green Tree's breach was material as it failed to perform a material obligation under the contract.

39.    As a result of said breach, the Plaintiff's have incurred damages for payments and assessments to their account of unwarranted fees, foreplaced insurance, escrow advances and extension fees.

40.    Plaintiff's damages were foreseeable as a result of Defendant's breach.

41.    In addition to the missing payments, and the accrued interest on those funds, without a true accounting and payment history from Green Tree, Plaintiffs are unable to determine the extent of the damages they have incurred as result of Green Trees failure to apply al payments and imposition of unwarranted fees and forced extensions by the Defendant.

COUNT III
VIOLATION OF DELAWARE CONSUMER FRAUD ACT

42.    Paragraphs 1-41 are incorporated by reference as if fully set out herein.

43.    Plaintiffs allege that Defendant violated 6 Del. C. § 2513 by failing to respond to Plaintiffs' request for information on their account, by failing to properly credit payments to their account, and by fraudulently representing that they were behind in payments that had not been properly credited.

COUNT IV
CONVERSION

44.    Paragraphs 1-43 are incorporated by reference as if fully set out herein.

45.    Plaintiffs allege that Defendant wrongfully converted its mortgage payments to its own use when it failed to properly apply those payments to Plaintiff account after Plaintiffs made such a demand on the Defendant.

## COUNT V
## NEGLIGENCE

46.    Paragraphs 1-45 are incorporated by reference as if fully set out herein.

47.    Plaintiffs allege that Defendant had a duty to properly credit all payments made toward the loan.

48.    Plaintiffs allege that Defendant breached that duty when it failed to credit all the payments made by Plaintiffs.

49.    As a result of Defendant's breach, Plaintiffs incurred late fees, were subjected to abusive debt collection practices, were coerced into expensive extension agreements which added significantly to the cost of the loan, and suffered humiliation and embarrassment as a result of negative or derogatory information being reported by Green Tree to the credit reporting agencies.

50.    As a result of Defendant's breach, Plaintiffs' rating suffered and Plaintiff has not been able to refinance their home.

## COUNT VI
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

46.    Plaintiffs allege that Defendant breached the covenant of good faith and fair dealing implicit in all Delaware contracts when it failed to properly credit all of the Plaintiffs' payments.

WHEREFORE NOW, the Plaintiffs request the Court to enter judgment in the amount of $125,000 in actual damages, attorney fees, costs, and $2,000,000 in punitive damages.

LAW OFFICE OF MAGGIE CLAUSELL, LLC
/s / Maggie Clausell

_____

Maggie Clausell, Esq.
Bar ID #4532
9 E. Loockerman Street, Ste. 205
Dover, DE 19901
302-678-7644 (voice)
302-678-0771 (fax)

Date: March 13, 2008

5



EFiled: Mar 13 2008 6:00 EDT
Transaction ID 18983427
Case No. 08C-03-011 RFS

# EXHIBIT A

5302

BOOK 1206 PAGE 261

# This Deed, Made this _____ 3rd _____ day of _____ August _____ in the year of our Lord one thousand nine hundred and eighty-three,

BETWEEN FRANCES P. HASTINGS and ELLEN P. LANDON, of 123 Sharptown Road, Laurel, Delaware, 19956, parties of the first part,

- A N D -

MICHAEL B. CALLOWAY and CATHERINE L. CALLOWAY, his wife, of 514 King Street, Laurel, Delaware, 19956, parties of the second part.

**Witnesseth,** That the said parties of the first part, for and in consideration of the sum of TWELVE THOUSAND AND NO/100 DOLLARS ($12,000.00) Current Lawful Money of the United States of America and other good and valuable considerations, the receipt whereof is hereby acknowledged, hereby grant and convey unto the said parties of the second part, their heirs and assigns:

ALL that certain lot, piece, or parcel of land lying and being situate in the Town of Laurel, Little Creek Hundred, Sussex County, State of Delaware, lying on the Northwest side of King Street adjoining lands now or formerly of Ellen P. Landon, lands now or formerly of Elsie W. Palmer and lands now or formerly of James R. Young, Jr., and being more particularly described as follows, to wit:

BEGINNING at a pipe set on the Northwesterly right-of-way line of King Street, said pipe being a corner for the lands herein and lands now or formerly of James R. Young, Jr. and being situate 740 feet more or less from the right-of-way of 4th Street; thence along and with the Northwesterly right-of-way line of King Street and the line of the lands herein, South 32 degrees 40 minutes 00 seconds West 50 feet to a concrete monument, said concrete monument being a corner for the lands herein and running lands now or formerly of Ellen P. Landon; thence turning and running along and with the line of the lands herein and lands now or formerly of Ellen P. Landon, North 57 degrees 20 minutes 00 seconds West 200 feet to a concrete monument; thence turning and running along and with the line of the lands herein and lands now or formerly of Elsie W. Palmer North 32 degrees 40 minutes 00 seconds East 50 feet to an axle, said axle being a corner for the lands herein and lands now or formerly of James R. Young, Jr.; thence turning and running along and with the lands herein and lands now or formerly of James R. Young, Jr., South 57 degrees 20 minutes 00 seconds East 200 feet to a pipe on the Northwesterly right-of-way of King Street being the point and place of beginning and said to contain 10,000 square feet of land more or less together with all improvements thereon. The description herein was derived from a survey prepared by Wilbur-Lewis, Inc., Registered Land Surveyors, on August 1, 1983.

BEING all of the same lands devised unto Frances P. Hastings, one of the above-named Grantors herein, by Article X of the Last Will and Testament of Howard J. Penuel, which is filed for record in the Office of the Register of Wills, in and for Sussex County, at Georgetown, Delaware, in Will Book 84, page 580. The said Howard J. Penuel died testate on or about March 30, 1977.

ALSO BEING a part of the same lands devised unto the Grantors herein, Frances P. Hastings and Ellen P. Landon, by Article XIII of the Last Will and Testament of Howard J. Penuel which is filed for record aforesaid, in Will Book 84, page 580.



BOOK 1206 PAGE 263

**In Witness Whereof,** the said parties of the first part ha ve hereunto set their hands and seal the day and year aforesaid.

Signed, Sealed and Delivered
in the presence of:

_Margaret South_ ............................................. _Frances P H Kings_ (SEAL)
WITNESS                                                    Frances P. Hastings

_Frances A South_ ............................................ _Ellen P Landon_ (SEAL)
WITNESS                                                     Ellen P. Landon

State of Delaware
STATE TAX DEPT. • SUSSEX
REALTY TRANSFER TAX  2 4 0.00

FOUNDATION REPORT MADE
this 31st DAY OF August, 1983
ASSESSMENT DIVISION OF SUSSEX COUNTY

STATE OF DELAWARE    ) SS.
COUNTY OF SUSSEX     )

BE IT REMEMBERED, That on this 30th day of August in the year of our LORD, one thousand nine hundred and eighty-three personally came before me. The Subscriber, a Notary Public for the State and County aforesaid. FRANCES P. HASTINGS and ELLEN P. LANDON

Parties to this Indenture known to me personally to be such, and they acknowledged this Indenture to be their Deed
GIVEN under my Hand and Seal of Office, the day and year aforesaid.

RECEIVED
MARY ANN EDMONDS
1983 AUG 30 PM 3: 13
RECORDER OF DEEDS
SUSSEX COUNTY

_Elizabeth A Short_
NOTARY PUBLIC



EFiled: Mar 13 2008 6:00 EDT
Transaction ID 18983427
Case No. 08C-03-011 RFS

# EXHIBIT B



**GREEN TREE**

MORTGAGE                    SERVICES

*A Division of Green Tree Financial Servicing Corporation*

10/14/96

MICHAEL CALLOWAY
514 KING STREET
LAUREL, DE  199560000

RE:   Loan # 10000156
      Subject Property: 514 KING STREET
                        LAUREL,DE

Dear  MICHAEL CALLOWAY / CATHERINE L. CALLOWAY

Green Tree Mortgage Services, of Rapid City, South Dakota, is pleased to welcome you as our new mortgage loan customer.  We are servicing your loan which originated in our Livonia office.

Our records show that the current terms of your loan are as follows:

| | |
|---|---|
| Principal balance: | $125,000.00 |
| Payment amount (principal & interest): | $1,285.98 |
| Due date of first payment: | 11/14/96 |

If your records disagree with the above information, please contact our Mortgage Service Center at the toll free number listed below.

We will be experiencing a transition of the servicing of your loan, however, until further notification, please forward all monthly payments to the following address:

GreenTree Mortgage Services
P.O. Box 6150
Rapid City, SD  57709

We will be sending you a monthly statement.  If your statement does not arrive prior to your first due date, please remit your payment to the above address and reference your loan number on your check or money order.

Should you have any questions regarding any of the above, please contact our customer service department at the above address, or call 1-800-330-5183, 8:00am - 6:00pm Central Standard Time.  Again, we welcome you to GreenTree Mortgage.

Sincerely,
Customer Service Department
Green Tree Mortgage Services

| | | |
|---|---|---|
| MICHAEL S CALLOWAY<br>CATHERINE L CALLOWAY<br><br>514 KING ST<br>LAUREL, DE 19956 | Green Tree Financial<br>Servicing Corporation<br>332 Minnesota Street<br>Saint Paul, MN 55101 | Loan Number<br>Date  10/09/96<br>Maturity Date  10/14/16<br>Loan Amount $  125000.00<br>Renewal Of |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, joint and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of

One Hundred Twenty Five Thousand and 00/100 _____ Dollars $ ___125000.00___ . No additional advances are contemplated under this note.

[X] **Single Advance:** I will receive all of this principal sum on  10/14/96 _____

[ ] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____

    _____ I will receive the amount of $ _____ and future principal advances are contemplated.

    Conditions: The conditions for future advances are _____

    [ ] **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to

      all other conditions and expires on _____

    [ ] **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from  10/14/96 _____ at the rate of  10.950  %

per year until  10/14/16 _____

[ ] **Variable Rate:** This rate may then change as stated below.

    [ ] **Index Rate:** The future rate will be _____ the following index rate: _____

    [ ] **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

    [ ] **Frequency and Timing:** The rate on this note may change as often as _____

      A change in the interest rate will take effect _____

    [ ] **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than

    _____ %.

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:

    [ ] The amount of each scheduled payment will change.    [ ] The amount of the final payment will change.

    [ ]

**ACCRUAL METHOD:** Interest will be calculated on a  30/360 simple interest  basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid principal of this note owing after maturity, and until paid in full, as stated below:

    [X] on the same fixed or variable rate basis in effect before maturity (as indicated above).

    [ ] at a rate equal to _____

[X] **LATE CHARGE:** If a payment is made more than  15  days after it is due, I agree to pay a late charge of  5% OF UNPAID AMT

[ ] **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which [ ] are [ ] are not included in the principal amount

above: _____

**PAYMENTS:** I agree to pay this note as follows:

[ ] **Interest:** I agree to pay accrued interest _____

[ ] **Principal:** I agree to pay the principal _____

[X] **Installments:** I agree to pay this note in  240  payments. The first payment will be in the amount of $  1285.98

and will be due  11/14/96 _____ . A payment of $  1285.98  will be due

 14th day of each month  thereafter. The final payment of the entire

unpaid balance of principal and interest will be due  10/14/16 _____

**ADDITIONAL TERMS:**

*888 - 316 - 8733*

*ATTN Steffani*

*Tily*

*1 800 - 730 - 6183*

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated __10/09/96_____, between the Creditor named below and _MICHAEL S CALLOWAY_ and _CATHERINE L CALLOWAY_____ (Consumer(s)).

---

**NOTICE OF RIGHT TO CANCEL**

**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ __October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

_Green Tree Financial Servicing Corporation_
                        (Name of Creditor)
34387 PLYMOUTH
LIVONIA, MI   48150
                 (Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _10/11/96_____
                                    (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____   _____
Consumer's Signature                      Date

---

**RECEIPT**

Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at _____
_514 KING ST   LAUREL DE 19956_____

                                    Consumer(s):

Date _____       X_____
                                        MICHAEL S CALLOWAY

                                        X_____
                                        CATHERINE L CALLOWAY

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated __10/09/96_____, between the Creditor named below and __MICHAEL S CALLOWAY   and CATHERINE L CALLOWAY_____ (Consumer(s)).

**NOTICE OF RIGHT TO CANCEL**

Your Right to Cancel

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ __October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

Green Tree Financial Servicing Corporation
(Name of Creditor)
34387 PLYMOUTH
LIVONIA, MI  48150
(Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the

notice no later than midnight of __10/11/96_____
(date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____     _____
Consumer's Signature                              Date

---

### RECEIPT

Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at_____ __514 KING ST  LAUREL DE 19956_____

Consumer(s):

Date _____     X _____
                                             MICHAEL S CALLOWAY

                                          X _____
                                             CATHERINE L CALLOWAY

MICHAEL S CALLOWAY
CATHERINE L CALLOWAY
514 KING ST
LAUREL, DE  19956

GREEN TREE FINANCIAL SERV CORP
332 MINNESOTA ST.
ST. PAUL, MN  55101

Number
Application
Received
By ☐ Mail  ☐ In Person
Date of
Disclosure

## SERVICING DISCLOSURE STATEMENT

NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. §2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**

Section 6 of RESPA (12 U.S.C. §2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and Costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimates**

1.  The following is the best estimate of what will happen to the servicing of your mortgage loan:

    A. ☒ We may assign, sell or transfer the servicing of your loan while the loan is outstanding.
    We are able to service your loan, and we  ☒ will ☐ will not ☐ haven't decided whether to    service your loan.

    B. ☐ We do not service mortgage loans (☐ and we have not serviced mortgaged loans in the past three years). We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

    C. ☐ We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program for which you have applied, we expect to  ☐ sell all of the mortgage servicing  ☐ retain all of the mortgage servicing  ☐ assign, sell or transfer
    _____ % of the mortgage servicing.

    D. ☐

2.  For all the first lien mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:

    __XX_ 0 to 25%     _____ 26 to 50%     _____ 51 to 75%     _____ 76 to 100%

    This estimate ☒ does ☐ does not   include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3.  A. ☐ We have previously assigned, sold, or transferred the servicing of first lien mortgage loans.

    B. ☒ This is our record of transferring the servicing of the first lien mortgage loans we have made in the past three years. The percentages have been rounded to the nearest quartile - 0%, 25%, 50%, 75% or 100%.

    __0__ . __25__ %     __0__ . __25__ %     __0__ . __25__ %

    (This information ☒ does ☐ does not   include assignments, sales or transfers to affiliates or subsidiaries.)

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/we have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/we understand that this acknowledgment is a required part of the mortgage loan application.

APPLICANT  MICHAEL S CALLOWAY

CO-APPLICANT  CATHERINE L CALLOWAY

DATE

(page 1 of 1)

Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form RESPA SDS 6/27/95                         (page 1 of 1)

| Green Tree Financial<br>Servicing Corporation<br>332 Minnesota Street<br>Saint Paul MN 55101 | MICHAEL S CALLOWAY<br>CATHERINE L CALLOWAY<br>514 KING ST<br>LAUREL, DE  19956 | Loan Number _____<br>Date __October 9, 1996__<br>Maturity Date _October 14, 2016_<br>Loan Amount $ __125000.00__ |
|---|---|---|
| **LENDER'S NAME AND ADDRESS** | **BORROWER'S NAME AND ADDRESS** | |

### NOTICE TO BORROWER
### OF PROPERTY IN SPECIAL FLOOD HAZARD AREA

Property Description: 514 KING ST  LAUREL DE 19956

Flood Map Information: AS INDICATED IN APPRAISAL OF SUBJECT PROPERTY
LOCATED IN FLOOD ZONE C
MAP NO. #100040 0001B            DATE :01/16/81

*Complete either Box A or Box B, whichever is applicable.*

A. [X] The improved real estate or mobile home described above has **not** been determined to be located in a special flood hazard area.

B. [ ] Notice is hereby given to _____ that the
improved real estate or mobile home described above is or will be located in an area designated by the Director of the Federal Emergency Management Agency or by the Secretary of the Department of Housing and Urban Development as a special flood hazard area. This area is delineated on _____'s Flood Insurance Rate
Map (FIRM) or, if the FIRM is unavailable, on the Flood Hazard Boundary Map (FHBM). This area has at least a 1% chance of being flooded within any given year. The risk of exceeding the 1% chance increases with time periods longer than one year. For example, during the life of a 30-year mortgage, a structure located in a special flood hazard area has a 26% chance of being flooded.

### NOTICE TO BORROWER
### ABOUT FEDERAL FLOOD DISASTER RELIEF ASSISTANCE

*(Lender Check One)*

[ ] Notice in Participating Communities
The improved real estate or mobile home securing your loan is or will be located in a community that is now participating in the National Flood Insurance Program. If the property is damaged by flooding in a federally declared disaster, Federal disaster relief assistance may be available. However, such assistance will be unavailable if your community has been identified as a flood-prone area for one year or longer and is not participating in the National Flood Insurance Program when the assistance is approved. This assistance, usually in the form of a loan with a favorable interest rate, may be available for damages incurred in excess of your flood insurance.

[ ] Notice in Nonparticipating Communities
The improved real estate or mobile home securing your loan is or will be located in a community that is not participating in the National Flood Insurance Program. This means that the property is not eligible for Federal flood insurance. If the property is damaged by flooding in a federally declared disaster, Federal disaster relief assistance for the property will be unavailable if your community has been identified as a flood-prone area for one year or longer. Such assistance may be available only if, at the time the assistance would be approved, your community is participating in the National Flood Insurance Program or has been identified as a flood-prone area for less than one year.

The undersigned realizes that the property securing the loan described above is or will be located in an area identified as a flood hazard area and that the undersigned has received the required notice regarding Federal disaster relief assistance.

_____          Dated _____

Borrower   MICHAEL S CALLOWAY

_____          Dated _____

Borrower   CATHERINE L CALLOWAY

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

*This Notice relates to a consumer credit transaction dated* __10/09/96__ *, between the Creditor named*
*below and* __MICHAEL S CALLOWAY   and CATHERINE L CALLOWAY__
_____ *(Consumer(s)).*

### NOTICE OF RIGHT TO CANCEL
#### Your Right to Cancel
You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ __October 9, 1996__ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

#### How to Cancel
If you decide to cancel this transaction, you may do so by notifying us in writing, at

__Green Tree Financial Servicing Corporation__
(Name of Creditor)
34387 PLYMOUTH
__LIVONIA, MI  48150__
(Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the

notice no later than midnight of __10/11/96__
(date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____   _____
Consumer's Signature                              Date

### RECEIPT

*Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at* _____
__514 KING ST  LAUREL DE 19956__ _____

Consumer(s):

Date _____          X _____
                                        MICHAEL S CALLOWAY

                                        X _____
                                        CATHERINE L CALLOWAY

## NOTICE OF RIGHT OF RESCISSION
**(FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)**

*This Notice relates to a consumer credit transaction dated* __10/09/96__ *, between the Creditor named below and* __MICHAEL S CALLOWAY__ *and* __CATHERINE L CALLOWAY__ _____ *(Consumer(s)).*

**NOTICE OF RIGHT TO CANCEL**
**Your Right to Cancel**
You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ __October 9, 1996__ _____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**
If you decide to cancel this transaction, you may do so by notifying us in writing, at

<u>Green Tree Financial Servicing Corporation</u>
<span style="font-size:small">(Name of Creditor)</span>
34387 PLYMOUTH
LIVONIA, MI  48150
<span style="font-size:small">(Creditor's Business Address)</span>

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the

notice no later than midnight of __10/11/96__
<span style="font-size:small">(date)</span>

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____   _____
Consumer's Signature                              Date

---

### RECEIPT

*Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at* _____
__514 KING ST  LAUREL, DE 19956__ _____                    *Consumer(s):*

Date _____          X _____
                                                                  MICHAEL S CALLOWAY

                                                          X _____
                                                                  CATHERINE L CALLOWAY



EFiled: Mar 13 2008 6:00PM EDT
Transaction ID 18983427
Case No. 08C-03-011 RFS

# EXHIBIT C

Parcel Identification Number
Present: _____
Previous: _____

Name and Address of Preparer
_KELISHA V HAYES_____
_34387 PLYMOUTH RD_____
_LIVONIA, MI  48150_____

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on .........OCTOBER..9,..1996..................... . The mortgagor is .MICHAEL..S..CALLOWAY,..A..MARRIED..MAN..AND..CATHERINE..L..CALLOWAY,..A..MARRIED..WOMAN.............
....................................................................................................................................................
("Borrower"). This Security Instrument is given to ...GREEN..TREE..FINANCIAL..SERVICING..CORPORATION............
................................................................................ , which is organized and existing under the laws of .STATE..OF..DELAWARE
..................................................................................................................... , and whose address is
.332..MINNESOTA..STREET...SAINT..PAUL,..MN..55101.....................................................................
("Lender"). Borrower owes Lender the principal sum of .ONE..HUNDRED..TWENTY-FIVE..THOUSAND..DOLLARS..AND
NO/100————————————————————————————— Dollars (U.S. $.125,000.00..................). This debt is evidenced
by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on ........OCTOBER..14,..2016.................... . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in .............SUSSEX................................................................................... County, Delaware:

SEE ATTACHED LEGAL DESCRIPTION

which has the address of .......514..KING..ST................................................. , ........LAUREL...................................... ,
                                      [Street]                                                 [City]

Delaware ...19956............... ("Property Address");
          [Zip Code]

**DELAWARE**—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**             Form 3008  9/90  *(page 1 of 6 pages)*

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-DE  2/18/91

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which

Form 3008 9/90 *(page 2 of 6 pages)*

may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

   5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

   All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

   Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

   Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

   6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security. interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

   Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

   8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage

Form 3008 9/90 *(page 3 of 6 pages)*

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-DE 2/18/91

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the

Form 3008 9/90 *(page 5 of 6 pages)*

default is not cured on or before the date specified in the not.......... .....der at its option may require immediate payment in full of all sums secured by this Security Instrument wi........ further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees of ........N/A........ % of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of title evidence.

**22. Satisfaction.** Upon payment of all sums secured by this Security Instrument, Lender shall cause the entry of satisfaction to be made upon the records of this Security Instrument without charge to Borrower. Borrower shall pay all costs and fees for entering the satisfaction upon the records of this Security Instrument.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ 1-4 Family Rider
☐ Graduated Payment Rider        ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider                  ☐ Rate Improvement Rider         ☐ Second Home Rider
☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

.................................................    ..................................................................... (Seal)
                                                      MICHAEL  S  CALLOWAY                      —Borrower

                                                      Social Security Number ......................................................

.................................................    ..................................................................... (Seal)
                                                      CATHERINE L CALLOWAY                     —Borrower

                                                      Social Security Number ......................................................

———————————————— [Space Below This Line For Acknowledgment] ————————————————

STATE OF DELAWARE, ............SUSSEX................................ County ss:
    BE IT REMEMBERED that on this ..........9th................................ day of ..OCTOBER, 1996............................
........................................................., personally came before me, the subscriber, Michael S. Calloway
and Catherine L. Calloway................................, part ies............................................... to this Mortgage
personally known to me to be such, and severally acknowledged this Mortgage to be ..........their...............................
........................................ act and deed.
    Given under my Hand and Seal of Office, the day and year aforesaid.

                                                      ...................................................................
                                                      Notary Public

                                                      ....John F. Hyde, Attorney at Law...............
                                                      Name and Title of Notary

                                                      ...Indefinite...............................................
                                                      Expiration Date

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-DE 2/18/91          Form 3008 9/90 *(page 6 of 6 pages)*



EFiled: Mar 13 2008 6:00PM EDT
Transaction ID 18983427
Case No. 08C-03-011 RFS

# EXHIBIT D

Account History : 88037954   History For All History

| Tran ID | Status | Trm Date | Due Pd | Back Dt | Trm Amt | Trm Code | Tran Desc | Prin Pd | Int Pd | Esc Pd | Late Pd | Other Pd |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19970713.001 | CONV | 7/13/1997 | [0] | 7/14/1997 | $125,000.00 | 200 New Loan Setup | | $125,000.00 | | | | |
| 19970714.002 | CONV | 7/14/1997 | [N] | 7/14/1997 | $1,285.98 | 100 Pymt, Cash | | $155.95 | $1,130.03 | | | |
| 19970814.002 | CONV | 8/14/1997 | [N] | 8/14/1997 | $1,285.98 | 100 Pymt, Cash | | $157.37 | $1,128.61 | | | |
| 19970827.002 | CONV | 8/27/1997 | [N] | 8/14/1997 | $1,285.98 | 100 Pymt, Cash | | ($157.37) | $1,128.61) | | | |
| 19970916.001 | CONV | 9/16/1997 | [N] | 8/14/1997 | ($1,285.98) | 100 Pymt, Cash | | $157.37 | $1,128.61 | | | |
| 19971008.001 | CONV | 10/8/1997 | [N] | 9/16/1997 | $1,285.98 | 100 Pymt, Cash | | $158.96 | $1,127.17 | | | |
| 19971014.002 | CONV | 10/14/1997 | [N] | 10/8/1997 | ($1,285.98) | 100 Pymt, Cash | | ($158.81) | $1,127.17) | | | |
| 19971015.013 | CONV | 10/15/1997 | [N] | 10/8/1997 | $1,285.98 | 100 Pymt, Cash | | $158.81 | $1,127.17 | | | |
| 19971015.012 | CONV | 10/15/1997 | [N] | 10/15/1997 | $424.37 | 140 Pymt, Esc Only-Cash | | $0.00 | $424.37 | | | |
| 19971015.011 | CONV | 10/15/1997 | [N] | 10/15/1997 | $64.30 | 140 Pymt, Esc Only-Cash | | $0.00 | $0.00 | $64.30 | | |
| 19971015.010 | CONV | 10/15/1997 | [N] | 10/15/1997 | $64.29 | 140 Pymt, Esc Only-Cash | | $0.00 | $0.00 | $64.29 | | |
| 19971015.009 | CONV | 10/15/1997 | [N] | 10/15/1997 | $64.29 | 140 Pymt, Esc Only-Cash | | $0.00 | $0.00 | $64.29 | | |
| 19971015.008 | CONV | 10/15/1997 | [N] | 10/15/1997 | $64.29 | 140 Pymt, Esc Only-Cash | | $0.00 | $0.00 | $64.29 | | |
| 19971015.000 | CONV | 10/15/1997 | [N] | 10/15/1997 | $64.29 | 140 Pymt, Esc Only-Cash | | $0.00 | $0.00 | $64.29 | | |
| 19971117.002 | CONV | 11/17/1997 | [N] | 10/15/1997 | $861.61 | 100 Pymt, Cash | | $0.00 | $0.00 | | | |
| 19971117.001 | CONV | 11/17/1997 | [N] | 11/17/1997 | $64.29 | 140 Pymt, Esc Only-Cash | | $0.00 | $0.00 | $64.29 | | |
| 19971117.000 | CONV | 11/17/1997 | [N] | 11/17/1997 | $438.39 | 120 Pymt, Prin Only-Cash | | $158.96 | $702.65 | | | |
| 19971226.002 | CONV | 12/26/1997 | [N] | 11/17/1997 | $438.39 | 120 Pymt, Prin Only-Cash | | $438.39 | | | | |
| 19971226.001 | CONV | 12/26/1997 | [N] | 12/26/1997 | $14.02 | 100 Pymt, Cash | | $163.86 | $1,122.12 | | | |
| 19960203.002 | CONV | 2/3/1998 | [N] | 12/26/1997 | $0.00 | 140 Pymt, Esc Only-Cash | | $0.00 | $0.00 | | | |
| 19980203.001 | CONV | 2/3/1998 | [N] | 2/3/1998 | $1,285.98 | 120 Pymt, Prin Only-Cash | | $163.86 | $424.37 | | | |
| 19980203.000 | CONV | 2/3/1998 | [N] | 2/3/1998 | $14.02 | 120 Pymt, Prin Only-Cash | | $165.83 | $1,120.15 | | | |
| 19980224.003 | CONV | 2/24/1998 | [N] | 2/3/1998 | $1,285.98 | 100 Pymt, Cash | | $14.02 | $1,120.15 | | | |
| 19980224.002 | CONV | 2/24/1998 | [N] | 2/3/1998 | ($1,285.98) | 100 Pymt, Cash | | $165.83 | $1,120.15 | | | |
| 19980224.001 | CONV | 2/24/1998 | [N] | 2/3/1998 | ($14.02) | 120 Pymt, Prin Only-Cash | | ($14.02) | | | | |
| 19980224.000 | CONV | 2/24/1998 | [N] | 2/3/1998 | ($0.09) | 231 Interest Increase-JE | | ($165.83) | ($1,120.15) | | | |
| 19980228.004 | CONV | 2/28/1998 | [N] | 2/24/1998 | $1,285.98 | 100 Pymt, Cash | | $0.00 | $0.00 | | | |
| 19980228.003 | CONV | 2/28/1998 | [N] | 2/24/1998 | $14.02 | 120 Pymt, Prin Only-Cash | | $165.83 | $1,120.15 | | | |
| 19980302.002 | CONV | 3/2/1998 | [N] | 2/28/1998 | $14.02 | 100 Pymt, Cash | | $14.02 | ($30.00) | | | |
| 19980302.001 | CONV | 3/2/1998 | [N] | 3/2/1998 | $0.00 | 170 Memo Extension | | $0.00 | $14.02 | | | |
| 19980302.000 | CONV | 3/2/1998 | [N] | 3/2/1998 | $670.23 | 531 REV Pymt Interest Only-JE | | $0.00 | $670.23 | | | |
| 19980502.002 | CONV | 5/2/1998 | [N] | 5/2/1998 | $707.28 | 120 Pymt, Prin Only-Cash | | $0.00 | $707.28 | | | |
| 19980502.001 | CONV | 5/2/1998 | [N] | 5/2/1998 | $15.00 | 120 Pymt, Prin Only-Cash | | $15.00 | $707.28 | | | |
| 19980530.003 | CONV | 5/30/1998 | [N] | 5/2/1998 | $15.00 | 120 Pymt, Prin Only-Cash | | $0.00 | $707.28 | | | |
| 19980530.002 | CONV | 5/30/1998 | [N] | 5/30/1998 | $707.28 | 100 Pymt, Cash | | $15.00 | $707.28 | | | |
| 19980530.001 | CONV | 5/30/1998 | [N] | 5/30/1998 | $15.00 | 120 Pymt, Prin Only-Cash | | $0.00 | $707.28 | | | |
| 19980709.003 | CONV | 7/9/1998 | [N] | 7/9/1998 | $38.55 | 120 Pymt, Cash | | $38.55 | $707.28 | | | |
| 19980709.002 | CONV | 7/9/1998 | [N] | 7/9/1998 | $707.28 | 100 Pymt, Cash | | $15.00 | $707.28 | | | |
| 19980709.001 | CONV | 7/9/1998 | [N] | 7/9/1998 | $38.55 | 211 Disb: Insurance Only | | $38.55 | | | | |
| 19980710.004 | CONV | 7/10/1998 | [N] | 7/10/1998 | ($3.00) | 120 Pymt, Cash Fee Only | | $0.00 | | | | $3.00 |
| 19980710.003 | CONV | 7/10/1998 | [N] | 7/10/1998 | $15.00 | 120 Pymt, Prin Only-Cash | | $0.00 | $0.00 | | | |
| 19980710.002 | CONV | 7/10/1998 | [N] | 7/10/1998 | $23.55 | 100 Pymt, Cash Fee - 15 | | $0.00 | $0.00 | $23.55 | | |
| 19980710.001 | CONV | 7/10/1998 | [N] | 7/10/1998 | $3.00 | 100 Pymt, Cash | | $0.00 | $3.00 | | | |
| 19980710.000 | CONV | 7/10/1998 | [N] | 7/9/1998 | $707.28 | 100 Pymt, Cash | | $0.00 | $707.28 | | | |
| 19980721.009 | CONV | 7/21/1998 | [N] | 7/9/1998 | ($707.28) | 100 Pymt, Cash | | $0.00 | ($707.28) | | | |
| 19980721.008 | CONV | 7/21/1998 | [N] | 7/9/1998 | ($38.55) | 120 Pymt, Prin Only-Cash | | ($38.55) | $0.00 | | | |
| 19980721.007 | CONV | 7/21/1998 | [N] | 7/10/1998 | ($15.00) | 120 Pymt, Prin Only-Cash | | $0.00 | $0.00 | | | $15.00 |
| 19980721.006 | CONV | 7/21/1998 | [N] | 7/10/1998 | ($23.55) | 100 Pymt, Cash | | $0.00 | $0.00 | ($23.55) | | |
| 19980721.005 | CONV | 7/21/1998 | [N] | 7/10/1998 | ($3.00) | 100 Pymt, Cash | | $0.00 | ($3.00) | | | |

| ID | Type | Date | Flag | Post Date | Amount | Description | Col1 | Col2 | Col3 |
|---|---|---|---|---|---|---|---|---|---|
| 19980721 004 | CONV | 7/21/1998 | N | 7/10/1998 | ($707.28) | 100 Pymt Cash | | $0.00 | ($707.28) |
| 19980721 003 | CONV | 7/21/1998 | N | 7/10/1998 | $707.28 | 100 Pymt Cash | | $0.00 | $707.28 |
| 19980721 002 | CONV | 7/21/1998 | N | 7/10/1998 | $41.55 | 100 Pymt Cash | | $0.00 | $41.55 |
| 19980727 001 | CONV | 7/27/1998 | N | 7/10/1998 | ($0.14) | 231 Interest Increase-JE | | $0.00 | ($0.14) |
| 19980728 005 | CONV | 7/28/1998 | N | 7/27/1998 | ($3.00) | 211 Disb Insurance Only | | $0.00 | $0.00 |
| 19980728 004 | CONV | 7/28/1998 | N | 7/28/1998 | $15.00 | 211 Pymt Cash Fee .15 | | $0.00 | | $15.00 |
| 19980728 003 | CONV | 7/28/1998 | N | 7/28/1998 | $35.36 | 100 Pymt Cash | | $0.00 | $35.36 |
| 19980728 002 | CONV | 7/28/1998 | N | 7/28/1998 | $35.36 | 100 Pymt Cash | | $0.00 | $35.36 |
| 19980728 001 | CONV | 7/28/1998 | N | 7/28/1998 | $38.36 | 100 Pymt Cash | | $0.00 | $35.36 |
| 19980831 001 | CONV | 8/31/1998 | N | 7/28/1998 | $668.73 | 100 Pymt Cash | | $0.00 | $668.73 |
| 19980928 002 | CONV | 9/28/1998 | N | 8/31/1998 | $707.28 | 100 Pymt Cash | | $0.00 | $707.28 |
| 19980928 001 | CONV | 9/28/1998 | N | 9/28/1998 | $35.35 | 140 Pymt Esc Only-Cash | | $0.00 | |
| 19981112 001 | CONV | 11/12/1998 | N | 9/28/1998 | ($3.00) | 211 Disb Insurance Only | | $0.00 | $0.00 |
| 19981113 002 | CONV | 11/13/1998 | N | 11/12/1998 | $1,286.98 | 100 Pymt Cash | | $0.00 | $1,286.98 |
| 19981113 001 | CONV | 11/13/1998 | N | 11/13/1998 | $3.00 | 211 Pymt Cash | | $0.00 | $3.00 |
| 19981127 003 | CONV | 11/27/1998 | N | 11/13/1998 | ($3.00) | 211 Disb Insurance Only | | $0.00 | $0.00 |
| 19981127 002 | CONV | 11/27/1998 | N | 11/27/1998 | $1,285.98 | 100 Pymt Cash | | $0.00 | $1,285.98 |
| 19981127 001 | CONV | 11/27/1998 | N | 11/27/1998 | $3.00 | 211 Pymt Cash | | $0.00 | $3.00 |
| 19981217 003 | CONV | 12/17/1998 | N | 11/27/1998 | ($3.00) | 211 Disb Insurance Only | | $0.00 | $0.00 |
| 19981217 002 | CONV | 12/17/1998 | N | 12/17/1998 | ($83.00) | 100 Pymt Cash | | $0.00 | ($3.00) |
| 19981218 005 | CONV | 12/18/1998 | N | 12/17/1998 | $1,285.98 | 100 Pymt Cash | | $0.00 | $1,285.98 |
| 19981218 004 | CONV | 12/18/1998 | N | 12/18/1998 | ($3.00) | 211 Disb Insurance Only | | $0.00 | ($3.00) |
| 19981218 003 | CONV | 12/18/1998 | N | 12/18/1998 | $1,282.98 | 100 Pymt Cash | | $0.00 | $1,282.98 |
| 19981218 002 | CONV | 12/18/1998 | N | 12/18/1998 | $6.00 | 211 Pymt Cash | | $0.00 | $6.00 |
| 19981230 005 | CONV | 12/30/1998 | N | 12/18/1998 | ($6.00) | 211 Disb Insurance Only | | $0.00 | $0.00 |
| 19981230 004 | CONV | 12/30/1998 | N | 12/30/1998 | $3.00 | 211 Pymt Cash | | $0.00 | $3.00 |
| 19981230 003 | CONV | 12/30/1998 | N | 12/30/1998 | ($3.00) | 211 Disb Insurance Only | | $0.00 | $0.00 |
| 19981230 002 | CONV | 12/30/1998 | N | 12/30/1998 | $6.00 | 211 Pymt Cash Fee .6 | | $0.00 | $6.00 |
| 19981230 001 | CONV | 12/30/1998 | N | 12/30/1998 | $1,279.98 | 100 Pymt Cash | | $0.00 | $1,279.98 |
| 19990113 002 | CONV | 1/13/1999 | N | 12/30/1998 | $507.91 | 121 REV Pymt Prin Only-JE | | $507.91 | $507.91 |
| 19990113 001 | CONV | 1/13/1999 | N | 1/13/1999 | ($507.91) | 231 Interest Increase-JE | | $0.00 | ($507.91) |
| 19990114 006 | CONV | 1/14/1999 | N | 1/13/1999 | ($3.00) | 100 Pymt Cash | | $0.00 | ($3.00) |
| 19990114 005 | CONV | 1/14/1999 | N | 1/14/1999 | $1,285.98 | 100 Pymt Cash | | $0.00 | $1,285.98 |
| 19990114 004 | CONV | 1/14/1999 | N | 1/14/1999 | ($6.00) | 211 Disb Insurance Only | | $0.00 | ($3.00) |
| 19990114 003 | CONV | 1/14/1999 | N | 1/14/1999 | $1,282.98 | 100 Pymt Cash | | $0.00 | $1,282.98 |
| 19990114 002 | CONV | 1/14/1999 | N | 1/14/1999 | $6.00 | 211 Pymt Cash | | $0.00 | $6.00 |
| 19990114 001 | CONV | 1/14/1999 | N | 1/14/1999 | ($6.00) | 211 Disb Insurance Only | | $0.00 | ($6.00) |
| 19990130 004 | CONV | 1/30/1999 | N | 1/14/1999 | $2,476.12 | 531 REV Pymt Interest Only-JE | | $2,476.12 | $2,476.12 |
| 19990115 001 | CONV | 1/15/1999 | N | 1/30/1999 | $164.75 | 531 REV Pymt Interest Only-JE | | $164.75 | $164.75 |
| 19990118 002 | CONV | 1/18/1999 | N | 1/15/1999 | ($170.74) | 221 Principal Increase-JE | | ($170.74) | ($170.74) |
| 19990125 001 | CONV | 1/25/1999 | N | 1/18/1999 | ($3.00) | 211 Disb Insurance Only | | $0.00 | $0.00 |
| 19990126 002 | CONV | 1/26/1999 | N | 1/25/1999 | $1,285.98 | 100 Pymt Cash | | $0.00 | $1,285.98 |
| 19990126 001 | CONV | 1/26/1999 | N | 1/26/1999 | $3.00 | 100 Pymt Cash | | $0.00 | $3.00 |
| 19990129 005 | CONV | 1/26/1999 | N | 1/26/1999 | ($3.00) | 211 Disb Insurance Only | | $0.00 | ($3.00) |
| 19990129 004 | CONV | 1/26/1999 | N | 1/26/1999 | $1,285.98 | 100 Pymt Cash | | $0.00 | $1,285.98 |
| 19990211 006 | CONV | 2/11/1999 | N | 1/26/1999 | ($3.00) | 211 Disb Insurance Only | | $0.00 | ($3.00) |
| 19990211 005 | CONV | 2/11/1999 | N | 2/11/1999 | $1,285.98 | 100 Pymt Cash | | $0.00 | $1,285.98 |
| 19990211 004 | CONV | 2/11/1999 | N | 2/11/1999 | ($170.74) | 211 Disb Insurance Only | | ($170.74) | ($170.74) |
| 19990211 003 | CONV | 2/11/1999 | N | 2/11/1999 | $3.00 | 100 Pymt Cash | | $0.00 | $3.00 |
| 19990211 002 | CONV | 2/11/1999 | N | 2/11/1999 | $1,115.24 | 100 Pymt Cash | | $0.00 | $1,115.24 |
| 19990211 001 | CONV | 2/11/1999 | N | 2/11/1999 | $1,115.24 | 100 Pymt Cash | | $0.00 | $1,115.24 |
| 19990302 003 | CONV | 3/2/1999 | N | 2/11/1999 | $1,282.98 | 100 Pymt Cash | | $172.30 | $1,110.68 |
| 19990302 002 | CONV | 3/2/1999 | N | 3/2/1999 | $3.00 | 100 Pymt Cash | | $0.00 | $3.02 |
| 19990302 001 | CONV | 3/2/1999 | N | 3/2/1999 | $3.02 | 100 Pymt Cash | | $0.00 | $3.02 |

| Reference | Type | N | Date | Amount | Qty / Description | Balance | Balance 2 |
|---|---|---|---|---|---|---|---|
| 19990311 002 CONV | | [N] | 3/11/1999 | $1,282.96 | 100 Pymt Cash | $344.71 | $938.25 |
| 19990311 001 CONV | | [N] | 3/11/1999 | $3.02 | 100 Pymt Cash | $0.00 | $3.02 |
| 19990414 002 CONV | | [N] | 4/14/1999 | ($3.00) | 100 Pymt Cash | $0.00 | |
| 19990415 002 CONV | | [N] | 4/15/1999 | $1,282.96 | 211 Disb Insurance Only | $177.02 | $1,105.94 |
| 19990415 002 CONV | | [N] | 4/15/1999 | $6.02 | 100 Pymt Cash | | $6.02 |
| 19990415 001 CONV | | [N] | 4/15/1999 | $3.00 | 100 Pymt Cash | | $3.00 |
| 19990629 004 CONV | | [N] | 6/29/1999 | $6.02 | 100 Pymt Cash | | $6.02 |
| 19990629 003 CONV | | [N] | 6/29/1999 | $3.00 | 100 Pymt Cash | | $943.23 |
| 19990629 002 CONV | | [N] | 6/29/1999 | $1,066.27 | 100 Pymt Cash | $137.04 | $942.23 |
| 19990629 002 CONV | | [N] | 6/29/1999 | ($3.00) | 100 Pymt Cash | | $3.00 |
| 19990730 002 CONV | | [N] | 7/30/1999 | $1,066.00 | 100 Pymt Cash | $227.39 | $858.61 |
| 19990730 001 CONV | | [N] | 7/30/1999 | $1,066.00 | 100 Pymt Cash | | |
| 19990902 002 CONV | | [N] | 9/2/1999 | $1,086.00 | 100 Pymt Cash | $229.00 | $857.00 |
| 19990902 001 CONV | | [N] | 9/2/1999 | $0.27 | 100 Pymt Cash | $0.27 | |
| 19991013 002 CONV | | [N] | 10/13/1999 | $1,086.00 | 100 Pymt Cash | $230.62 | $855.38 |
| 19991013 001 CONV | | [N] | 10/13/1999 | $0.27 | 100 Pymt Cash | $0.27 | |
| 19991028 002 CONV | | [N] | 10/28/1999 | ($1,086.00) | 100 Pymt Cash | ($230.62) | ($855.38) |
| 19991028 002 CONV | | [N] | 10/28/1999 | $1,086.00 | 100 Pymt Cash | $230.62 | $855.38 |
| 19991105 002 CONV | | [N] | 11/5/1999 | $0.27 | 100 Pymt Cash | $0.27 | |
| 19991105 001 CONV | | [N] | 11/5/1999 | $1,086.00 | 100 Pymt Cash | $232.25 | $865.74 |
| 19991115 002 CONV | | [N] | 11/15/1999 | $0.27 | 100 Pymt Cash | $0.27 | $0.00 |
| 19991115 002 CONV | | [N] | 11/15/1999 | $0.27 | 211 Disb Insurance Only | $0.27 | |
| 19991115 001 CONV | | [N] | 11/15/1999 | $1,086.00 | 100 Pymt Cash | $234.18 | $865.97 |
| 19991207 002 CONV | | [N] | 12/7/1999 | $544.73 | 100 Pymt Cash | $307.36 | |
| 19991207 001 CONV | | [N] | 12/7/1999 | $541.56 | 100 Pymt Cash | $234.73 | $845.46 |
| 19991213 002 CONV | | [N] | 12/13/1999 | $3.46 | 100 Pymt Cash | $3.46 | $3.46 |
| 19991213 001 CONV | | [N] | 12/13/1999 | ($3.00) | 100 Pymt Cash | $0.00 | |
| 19991231 001 CONV | | [N] | 12/31/1999 | $1,082.81 | 211 Disb Insurance Only | $235.84 | $846.97 |
| 20000112 003 CONV | | [N] | 1/12/2000 | $6.46 | 100 Pymt Cash | $0.00 | $6.46 |
| 20000112 002 CONV | | [N] | 1/12/2000 | $1,079.81 | 100 Pymt Cash | $237.51 | $842.30 |
| 20000112 002 CONV | | [N] | 1/12/2000 | $6.46 | 211 Pymt Cash Fee  6.46 | $0.00 | $6.46 | $6.46 |
| 20000221 002 CONV | | [N] | 2/21/2000 | $6.46 | 100 Pymt Cash | $0.00 | $6.46 |
| 20000221 002 CONV | | [N] | 2/21/2000 | $1,079.81 | 100 Pymt Cash | $0.00 | |
| 20000223 003 CONV | | [N] | 2/23/2000 | $6.46 | 100 Pymt Cash | $0.00 | |
| 20000223 002 CONV | | [N] | 2/23/2000 | $1,086.27 | 100 Pymt Cash | $239.19 | $840.62 |
| 20000223 002 CONV | | [N] | 2/23/2000 | ($3.00) | 100 Pymt Cash | $0.00 | |
| 20000404 001 CONV | | [N] | 4/4/2000 | $1,086.27 | 211 Disb Insurance Only | $240.88 | $845.39 |
| 20000500 001 CONV | | [N] | 5/22/2000 | ($3.00) | 100 Pymt Cash | $0.00 | |
| 20000503 002 CONV | | [N] | 5/3/2000 | $1,086.27 | 100 Pymt Cash | $0.00 | |
| 20000503 001 CONV | | [N] | 5/3/2000 | $3.00 | 100 Pymt Cash | $242.59 | $843.68 |
| 20000613 002 CONV | | [N] | 6/13/2000 | $3.00 | 100 Pymt Cash | $0.00 | $3.00 |
| 20000613 001 CONV | | [N] | 6/13/2000 | $1,083.27 | 100 Pymt Cash | $244.31 | $838.96 |
| 20000630 003 CONV | | [N] | 6/30/2000 | $3.00 | 100 Pymt Cash | $0.00 | $3.00 |
| 20000630 002 CONV | | [N] | 6/30/2000 | $1,080.27 | 100 Pymt Cash | $246.04 | $834.23 |
| 20000630 001 CONV | | [N] | 6/30/2000 | $3.00 | 100 Pymt Cash | $0.00 | $3.00 |
| 20000630 002 CONV | | [N] | 6/30/2000 | $3.00 | 100 Pymt Cash | $0.00 | |
| 20000731 003 CONV | | [N] | 7/31/2000 | $1,083.27 | 100 Pymt Cash | $247.78 | $835.49 |
| 20000731 002 CONV | | [N] | 7/31/2000 | ($3.00) | 100 Pymt Cash | $0.00 | |
| 20000731 001 CONV | | [N] | 7/31/2000 | $6.00 | 100 Pymt Cash | $0.00 | $6.00 |
| 20000905 002 CONV | | [N] | 9/5/2000 | $1,080.27 | 100 Pymt Cash | $249.54 | $830.73 |
| 20000905 001 CONV | | [N] | 9/5/2000 | $6.00 | 100 Pymt Cash | $0.00 | $6.00 |
| 20000905 002 CONV | | [N] | 9/5/2000 | $6.00 | 100 Pymt Cash | $0.00 | |
| 20001012 003 CONV | | [N] | 10/12/2000 | $1,080.27 | 100 Pymt Cash | $251.30 | $828.97 |
| 20001012 002 CONV | | [N] | 10/12/2000 | $3.00 | 100 Pymt Cash | $0.00 | |
| 20001012 001 CONV | | [N] | 10/12/2000 | $6.00 | 100 Pymt Cash | $0.00 | $6.00 |

| ID | CONV | Date | Date | Amount | Qty | Type | Balance | | |
|---|---|---|---|---|---|---|---|---|---|
| 20001027 002 | CONV | 10/27/2000 | 10/27/2000 | $1,080.27 | 100 | Pymt Cash | $253.08 | $827.19 | |
| 20001027 001 | CONV | 10/27/2000 | 10/27/2000 | $6.00 | 100 | Pymt Cash | $0.00 | $6.00 | |
| 20001213 002 | CONV | 12/13/2000 | 12/13/2000 | $1,080.27 | 100 | Pymt Cash | $254.88 | $825.39 | |
| 20001213 001 | CONV | 12/13/2000 | 12/13/2000 | $6.00 | 100 | Pymt Cash | $0.00 | $6.00 | |
| 20010111 002 | CONV | 1/11/2001 | 1/11/2001 | $1,080.27 | 100 | Pymt Cash | $256.68 | $823.59 | |
| 20010111 001 | CONV | 1/11/2001 | 1/11/2001 | $6.00 | 100 | Pymt Cash | $0.00 | $6.00 | |
| 20010210 003 | CONV | 2/10/2001 | 1/11/2001 | ($1,080.27) | 100 | Pymt Cash | ($256.68) | ($823.59) | |
| 20010210 002 | CONV | 2/10/2001 | 2/10/2001 | ($56.00) | 113 | Pymt Western Union | $256.68 | $823.59 | |
| 20010210 001 | CONV | 2/10/2001 | 2/10/2001 | $1,080.27 | 113 | Pymt Western Union | $256.50 | $827.77 | |
| 20010216 002 | CONV | 2/16/2001 | 2/16/2001 | $1,086.27 | 113 | Pymt Western Union | $0.00 | $6.00 | |
| 20010216 001 | CONV | 2/16/2001 | 2/16/2001 | $6.00 | 113 | Pymt Western Union | $0.00 | $6.00 | |
| 20010314 003 | CONV | 3/14/2001 | 3/14/2001 | $1,080.27 | 113 | Pymt Western Union | $260.33 | $819.94 | |
| 20010314 002 | CONV | 3/14/2001 | 3/14/2001 | $6.00 | 100 | Pymt Cash | $0.00 | $6.00 | |
| 20010412 003 | CONV | 4/12/2001 | 3/14/2001 | $1,080.27 | 100 | Pymt Cash | $262.17 | $818.10 | |
| 20010412 002 | CONV | 4/12/2001 | 4/12/2001 | $6.00 | 100 | Pymt Cash | $0.00 | $6.00 | |
| 20010412 001 | CONV | 4/12/2001 | 4/12/2001 | ($1,080.27) | 100 | Pymt Cash | ($262.17) | ($818.10) | |
| 20010504 003 | CONV | 5/4/2001 | 4/12/2001 | ($5.00) | 100 | Pymt Cash | ($5.00) | | |
| 20010504 002 | CONV | 5/4/2001 | 4/12/2001 | $5.00 | 100 | Pymt Cash | $0.00 | ($6.00) | |
| 20010512 001 | CONV | 5/12/2001 | 5/4/2001 | $700.00 | 113 | Pymt Western Union | $0.00 | $700.00 | |
| 20010517 002 | CONV | 5/17/2001 | 5/15/2001 | $380.27 | 113 | Pymt Western Union | $262.17 | $118.10 | |
| 20010517 001 | CONV | 5/17/2001 | 5/15/2001 | $119.73 | 113 | Pymt Western Union | $0.00 | $119.73 | |
| 20010531 002 | CONV | 5/31/2001 | 5/15/2001 | $108.00 | 113 | Pymt Western Union | $0.00 | $108.00 | |
| 20010531 001 | CONV | 5/31/2001 | 5/15/2001 | ($380.27) | 113 | Pymt Western Union | ($262.17) | ($118.10) | |
| 20010618 005 | CONV | 6/18/2001 | 5/15/2001 | ($119.73) | 113 | Pymt Western Union | $0.00 | ($119.73) | |
| 20010618 004 | CONV | 6/18/2001 | 6/18/2001 | $119.73 | 100 | Pymt Cash | $262.17 | $118.10 | |
| 20010618 003 | CONV | 6/18/2001 | 6/18/2001 | $380.27 | 113 | Pymt Western Union | $0.00 | $108.00 | |
| 20010618 002 | CONV | 6/18/2001 | 5/31/2001 | ($119.73) | 113 | Pymt Western Union | ($262.17) | ($118.10) | |
| 20010618 001 | CONV | 6/18/2001 | 6/18/2001 | ($108.00) | 113 | Pymt Western Union | ($108.00) | ($108.00) | |
| 20010628 001 | CONV | 6/28/2001 | 6/27/2001 | $108.00 | 531 | REV Pymt Interest Only-Cash | $0.00 | $108.00 | |
| 20010627 001 | CONV | 6/27/2001 | 6/27/2001 | $88.98 | 135 | Pymt Interest Only-JE | $0.00 | $88.98 | |
| 20010628 002 | CONV | 6/28/2001 | 6/28/2001 | $119.73 | 135 | Pymt Interest Only-JE | $0.00 | $119.73 | |
| 20010716 007 | CONV | 7/16/2001 | 6/28/2001 | $24.54 | 100 | Pymt Cash Fee  18.54 | $0.00 | $6.00 | $18.54 |
| 20010716 006 | CONV | 7/16/2001 | 7/16/2001 | $59.00 | 100 | Pymt Cash Fee  50 | $0.00 | $9.00 | $50.00 |
| 20010716 005 | CONV | 7/16/2001 | 7/16/2001 | $3.00 | 100 | Pymt Cash | $0.00 | $3.00 | |
| 20010716 004 | CONV | 7/16/2001 | 7/16/2001 | $3.00 | 100 | Pymt Cash | $0.00 | $3.00 | |
| 20010716 003 | CONV | 7/16/2001 | 7/16/2001 | $25.00 | 100 | Pymt Cash Fee  25 | $0.00 | $3.00 | $25.00 |
| 20010716 002 | CONV | 7/16/2001 | 7/16/2001 | $3.00 | 100 | Pymt Cash | $0.00 | $3.00 | |
| 20010716 001 | CONV | 7/16/2001 | 7/16/2001 | $2.19 | 100 | Pymt Cash | $2.19 | $2.19 | |
| 20010716 002 | CONV | 7/16/2001 | 7/16/2001 | $477.71 | 100 | Pymt Cash | $0.98 | $476.73 | |
| 20010716 001 | CONV | 7/16/2001 | 7/18/2001 | $597.44 | 100 | Pymt Cash | $0.98 | $596.46 | |
| 20010827 001 | CONV | 8/27/2001 | 8/27/2001 | $586.27 | 100 | Pymt Cash | $0.00 | $586.27 | |
| 20010915 001 | CONV | 9/15/2001 | 9/15/2001 | $27,353.09 | 80 | Defer Interest | $27.05 | $472.95 | |
| 20010922 001 | CONV | 9/22/2001 | 9/22/2001 | $500.00 | 100 | Pymt Cash | $27.30 | $472.30 | |
| 20011004 001 | CONV | 10/4/2001 | 9/15/2001 | $500.00 | 100 | Pymt Cash | $27.03 | $558.97 | |
| 20011027 001 | CONV | 10/27/2001 | 10/27/2001 | $586.27 | 100 | Pymt Cash | $0.00 | $586.27 | |
| 20011113 001 | CONV | 11/13/2001 | 11/13/2001 | $586.27 | 100 | Pymt Cash | $0.00 | $586.27 | |
| 20011214 002 | CONV | 12/14/2001 | 12/14/2001 | $586.27 | 100 | Pymt Cash | $27.55 | $472.45 | |
| 20011222 001 | CONV | 12/22/2001 | 12/22/2001 | $500.00 | 100 | Pymt Cash | $27.30 | $500.00 | |
| 20011222 002 | CONV | 12/22/2001 | 12/22/2001 | $500.00 | 100 | Pymt Cash | $0.00 | $600.00 | |
| 20020115 001 | CONV | 1/15/2002 | 1/15/2002 | $600.00 | 100 | Pymt Cash | $0.00 | $600.00 | |
| 20020128 002 | CONV | 1/28/2002 | 1/28/2002 | $486.27 | 100 | Pymt Cash | $27.80 | $458.47 | |

| Reference | Date | Flag | Date | Amount | Transaction | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 20020128 001 CONV | 1/28/2002 | [N] | 1/28/2002 | $13.73 | 100 Pymt Cash | $0.00 | $13.73 |
| 20020228 002 CONV | 2/28/2002 | [N] | 2/28/2002 | $1,072.54 | 109 Pymt Speedpay | $28.05 | $1,044.49 |
| 20020228 002 CONV | 2/28/2002 | [N] | 2/28/2002 | $13.73 | 109 Pymt Speedpay | $0.00 | $13.73 |
| 20020228 001 CONV | 2/28/2002 | [N] | 2/28/2002 | $0.00 | 1/0 Memo Extension | $0.00 | $0.00 |
| 20020329 002 CONV | 3/29/2002 | [N] | 3/29/2002 | $528.70 | 531 REV Pymt Interest Only–JE | $0.00 | $528.70 |
| 20020329 001 CONV | 3/29/2002 | [N] | 3/29/2002 | $2,101.93 | 531 REV Pymt Interest Only–JE | $0.00 | $0.00 |
| 20020401 001 CONV | 4/1/2002 | [N] | 4/1/2002 | $810.68 | 80 Defer Interest | $0.00 | $810.68 |
| 20020604 001 CONV | 6/4/2002 | [N] | 6/4/2002 | $275.59 | 100 Pymt Cash | $28.47 | $247.12 |
| 20020630 001 CONV | 6/30/2002 | [N] | 6/30/2002 | $1,096.27 | 109 Pymt Speedpay | $0.00 | $810.68 |
| 20020831 002 CONV | 8/31/2002 | [N] | 8/31/2002 | $1,096.27 | 109 Pymt Speedpay | $0.00 | $1,057.70 |
| 20020918 001 CONV | 9/18/2002 | [N] | 9/18/2002 | $163.00 | 109 Pymt Speedpay | $0.00 | $163.00 |
| 20020920 001 CONV | 9/20/2002 | [N] | 9/20/2002 | $76.85 | 80 Defer Interest | $0.00 | $76.85 |
| 20020923 001 CONV | 9/23/2002 | [N] | 9/23/2002 | $3,008.52 | 531 REV Pymt Interest Only–JE | $0.00 | $0.00 |
| 20021121 001 CONV | 11/21/2002 | [N] | 11/21/2002 | $597.49 | 100 Pymt Cash | $0.00 | $597.49 |
| 20021211 001 CONV | 12/11/2002 | [N] | 12/11/2002 | $597.49 | 100 Pymt Cash | $1.95 | $595.54 |
| 20021230 001 CONV | 12/30/2002 | [N] | 12/30/2002 | $596.51 | 100 Pymt Cash | $0.99 | $595.51 |
| 20030129 001 CONV | 1/29/2003 | [N] | 1/29/2003 | $597.49 | 100 Pymt Cash | $0.99 | $596.50 |
| 20030221 001 CONV | 2/21/2003 | [N] | 2/21/2003 | $597.49 | 100 Pymt Cash | $0.99 | $596.50 |
| 20030315 001 CONV | 3/15/2003 | [N] | 3/15/2003 | $597.49 | 100 Pymt Cash | $1.00 | $596.50 |
| 20030414 002 CONV | 4/14/2003 | [N] | 4/14/2003 | $597.49 | 100 Pymt Cash | $0.99 | $597.49 |
| 20030414 002 CONV | 4/14/2003 | [N] | 4/14/2003 | $597.49 | 100 Pymt Cash | $0.99 | $597.49 |
| 20030523 001 CONV | 5/23/2003 | [N] | 5/23/2003 | $597.49 | 100 Pymt Cash | $0.00 | $597.49 |
| 20030528 001 CONV | 5/28/2003 | [N] | 5/28/2003 | $488.78 | 100 Pymt Cash | $28.87 | $488.78 |
| 20030530 002 CONV | 5/30/2003 | [N] | 5/30/2003 | $597.49 | 100 Pymt Cash | $0.00 | $597.49 |
| 20030630 002 CONV | 6/30/2003 | [N] | 6/30/2003 | $488.78 | 531 Speedpay | $0.00 | $488.78 |
| 20030630 001 CONV | 6/30/2003 | [N] | 6/30/2003 | $597.49 | 100 Pymt Cash | $29.14 | $568.35 |
| 20030731 001 CONV | 7/31/2003 | [N] | 7/31/2003 | $1,086.27 | 100 Pymt Cash | $29.40 | $568.35 |
| 20030828 001 CONV | 8/28/2003 | [N] | 8/28/2003 | $1,086.27 | 100 Pymt Cash | $29.67 | $1,056.67 |
| 20030930 001 CONV | 9/30/2003 | [N] | 9/30/2003 | $1,056.33 | 80 Defer Interest | $0.00 | $1,056.60 |
| 20031001 001 CONV | 10/1/2003 | [N] | 10/1/2003 | $1,086.27 | 100 Pymt Cash | $0.00 | $0.00 |
| 20031201 001 CONV | 12/1/2003 | [N] | 12/1/2003 | $1,086.27 | 100 Pymt Cash | $30.22 | $1,056.05 |
| 20040101 001 CONV | 1/3/2004 | [N] | 1/3/2004 | $1,086.27 | 100 Pymt Cash | $30.09 | $1,056.18 |
| 20040202 001 CONV | 2/2/2004 | [N] | 2/2/2004 | $1,086.27 | 100 Pymt Cash | $30.49 | $1,055.78 |
| 20040301 001 CONV | 3/1/2004 | [N] | 3/1/2004 | $1,086.27 | 100 Pymt Cash | $30.77 | $1,055.50 |
| 20040401 001 CONV | 4/1/2004 | [N] | 4/1/2004 | $1,086.27 | 100 Pymt Cash | $31.05 | $1,055.22 |
| 20040504 001 CONV | 5/4/2004 | [N] | 5/4/2004 | $1,086.27 | 100 Pymt Cash | $31.34 | $1,064.93 |
| 20040505 001 CONV | 5/4/2004 | [N] | 5/4/2004 | $1,086.27 | 100 Pymt Cash | $31.62 | $1,054.65 |
| 20040604 001 CONV | 6/4/2004 | [N] | 6/4/2004 | $1,086.27 | 100 Pymt Cash | $31.91 | $1,054.36 |
| 20040708 001 CONV | 7/8/2004 | [N] | 7/8/2004 | $1,086.27 | 100 Pymt Cash | $32.20 | $1,054.07 |
| 20040806 001 CONV | 8/6/2004 | [N] | 8/6/2004 | $1,086.27 | 100 Pymt Cash | $32.49 | $1,053.78 |
| 20040830 003 CONV | 9/30/2004 | [N] | 9/30/2004 | $1,086.27 | 100 Pymt Cash | $32.79 | $1,053.48 |
| 20040830 002 CONV | 9/30/2004 | [N] | 9/30/2004 | $600.00 | 100 Pymt Cash | $33.09 | $600.00 |
| 20040930 001 CONV | 9/30/2004 | [N] | 9/30/2004 | $486.27 | 100 Pymt Cash | $33.09 | $453.18 |
| 20041029 001 CONV | 10/29/2004 | [N] | 10/29/2004 | $13.73 | 100 Pymt Cash | $33.39 | $825.42 |
| 20041029 002 CONV | 10/29/2004 | [N] | 10/29/2004 | $858.81 | 100 Pymt Cash | $33.39 | $113.73 |
| 20041029 003 CONV | 10/29/2004 | [N] | 10/29/2004 | $227.46 | 100 Pymt Cash | $0.00 | $227.46 |
| 20041202 001 CONV | 12/22/2004 | [N] | 12/22/2004 | $113.73 | 100 Pymt Cash | $33.70 | $711.38 |
| 20041202 002 CONV | 12/22/2004 | [N] | 12/22/2004 | $745.08 | 100 Pymt Cash | $0.00 | $227.46 |
| 20041202 003 CONV | 12/22/2004 | [N] | 12/22/2004 | $227.46 | 100 Pymt Cash | $0.00 | $113.73 |
| 20041202 001 CONV | 12/22/2004 | [N] | 12/22/2004 | $113.73 | 100 Pymt Cash | $0.00 | $113.73 |

| ID | Type | Date | Code | Date | Amount | Description | | | |
|---|---|---|---|---|---|---|---|---|---|
| 20041231 003 | CONN | 12/31/2004 | [N] | 12/31/2004 | $658.81 | 100 Pymt Cash | $824.81 | $0.00 | $0.00 |
| 20041231 002 | CONV | 12/31/2004 | [N] | 12/31/2004 | $227.46 | 100 Pymt Cash | $34.00 | $227.46 | $0.00 |
| 20041231 001 | CONV | 12/31/2004 | | 12/31/2004 | $13.73 | 120 Pymt Prin Only-Cash | $13.73 | $0.00 | $0.00 |
| 20050131 003 | CONV | 1/31/2005 | [N] | 1/31/2005 | $617.62 | 100 Pymt Cash | $261.83 | $355.79 | $0.00 |
| 20050131 002 | CONV | 1/31/2005 | [N] | 1/31/2005 | $241.19 | 100 Pymt Cash | $0.00 | $241.19 | $0.00 |
| 20050131 001 | GTA | 1/31/2005 | [N] | 1/31/2005 | $355.79 | 100 Pymt Cash | $0.00 | $241.19 | $0.00 |
| 20050301 003 | CONV | 3/1/2005 | [N] | 3/1/2005 | $603.89 | 100 Pymt Cash | $0.00 | $603.89 | $0.00 |
| 20050301 002 | CONV | 3/1/2005 | [N] | 3/1/2005 | $254.92 | 100 Pymt Cash | $0.00 | $254.92 | $0.00 |
| 20050301 001 | CONV | 3/1/2005 | [N] | 3/1/2005 | $241.19 | 100 Pymt Cash | $0.00 | $241.19 | $0.00 |
| 20050404 003 | CONV | 4/4/2005 | [N] | 4/4/2005 | $576.43 | 100 Pymt Cash | $0.00 | $576.43 | $0.00 |
| 20050404 002 | CONV | 4/4/2005 | [N] | 4/4/2005 | $268.65 | 100 Pymt Cash | $0.00 | $268.65 | $0.00 |
| 20050404 001 | CONV | 4/4/2005 | [N] | 4/4/2005 | $254.92 | 100 Pymt Cash | $0.00 | $254.92 | $0.00 |
| 20050428 003 | CONV | 4/28/2005 | [N] | 4/28/2005 | $548.97 | 100 Pymt Cash | $0.00 | $548.97 | $0.00 |
| 20050428 002 | CONV | 4/28/2005 | [N] | 4/28/2005 | $282.38 | 100 Pymt Cash | $0.00 | $282.38 | $0.00 |
| 20050428 001 | CONV | 4/28/2005 | [N] | 4/28/2005 | $268.65 | 100 Pymt Cash | $0.00 | $268.65 | $0.00 |
| 20050533 003 | CONV | 5/31/2005 | [N] | 5/31/2005 | $521.51 | 100 Pymt Cash | $0.00 | $521.51 | $0.00 |
| 20050533 002 | CONV | 5/31/2005 | [N] | 5/31/2005 | $296.11 | 100 Pymt Cash | $0.00 | $296.11 | $0.00 |
| 20050533 001 | CONV | 5/31/2005 | [N] | 5/31/2005 | $282.38 | 100 Pymt Cash | $0.00 | $282.38 | $0.00 |
| 20050703 003 | CONV | 7/1/2005 | [N] | 7/1/2005 | $494.05 | 100 Pymt Cash | $0.00 | $494.05 | $0.00 |
| 20050703 001 | CONV | 7/1/2005 | [N] | 7/1/2005 | $309.84 | 100 Pymt Cash | $0.00 | $309.84 | $0.00 |
| 20050707 001 | CONV | 7/1/2005 | [N] | 7/1/2005 | $296.11 | 100 Pymt Cash | $0.00 | $296.11 | $0.00 |
| 20050726 002 | CONV | 7/26/2005 | [N] | 7/26/2005 | $236.11 | 121 Pymt Prin Only-JE | $0.00 | $0.00 | $0.00 |
| 20050726 001 | CONV | 7/26/2005 | [N] | 7/26/2005 | $309.84 | 100 Pymt Cash | $12,209.26 | $309.84 | $0.00 |
| 20050726 002 | CONV | 7/26/2005 | [N] | 7/26/2005 | $12,209.26 | 231 Interest Increase-JE | $0.00 | $0.00 | $0.00 |
| 20050726 001 | CONV | 7/26/2005 | [N] | 7/26/2005 | $236.11 | 100 Pymt Cash | $0.00 | $236.11 | $0.00 |
| 20050729 002 | CONV | 7/29/2005 | [N] | 7/29/2005 | $12,703.39 | 531 REV Pymt Interest Only-JE | $12,703.39 | $0.00 | $0.00 |
| 20050729 001 | CONV | 7/29/2005 | [N] | 7/29/2005 | $466.59 | 100 Pymt Cash | $108.47 | $0.00 | $0.00 |
| 20050733 001 | GTA | 7/14/2005 | | 7/14/2005 | $323.57 | 100 Pymt Cash | $358.12 | $323.57 | $0.00 |
| 20050801 001 | GTA | 8/1/2005 | [8/05] | 8/1/2005 | $309.84 | 121 GTA CONVERSION TRANSACTION | $12,209.26 | $309.84 | $0.00 |
| 20050900 001 | REV | 9/3/2005 | [9/05] | 9/3/2005 | $12,209.26 | 111 GTA CONVERSION TRANSACTION | $12,209.26 | $323.57 | $0.00 |
| 20050900 001 | REV | 9/3/2005 | [9/05] | 9/3/2005 | $323.57 | 121 GTA CONVERSION TRANSACTION | $323.57 | $0.00 | $0.00 |
| 20050827 001 | GTA | 9/27/2005 | [9/05] | 9/27/2005 | ($12,209.26) | 531 REV Pymt Interest Only-JE | $0.00 | $0.00 | $0.00 |
| 20050827 001 | GTA | 9/3/2005 | [9/05] | 9/3/2005 | $466.59 | 112 Pymt Mellon | $52.52 | $0.00 | $0.00 |
| 20050928 001 | GTA | 9/28/2005 | [8/05] | 9/28/2005 | $323.57 | 100 Pymt Cash | ($2.52) | $0.00 | $0.00 |
| 20050928 001 | GTA | 9/3/2005 | [9/05] | 9/3/2005 | $309.84 | 500 REV Pymt-Cash | ($760.18) | $0.00 | ($337.30) |
| 20051004 001 | REV | 10/3/2005 | [10/05] | 10/3/2005 | $1,100.00 | 112 Pymt Mellon | $337.30 | $760.18 | $0.00 |
| 20051004 001 | REV | 10/4/2005 | [10/05] | 10/4/2005 | $1,100.00 | 100 Pymt Cash | $25.66 | $723.31 | $0.00 |
| 20051026 001 | GTA | 10/26/2005 | [10/05] | 10/26/2005 | ($1,100.00) | 500 REV Pymt-Cash | $25.66 | ($723.31) | $0.00 |
| 20051026 001 | GTA | 10/4/2005 | [9/05] | 10/4/2005 | $1,100.00 | 100 Pymt Cash | $723.31 | $0.00 | $0.00 |
| 20051028 001 | GTA | 10/28/2005 | [10/05] | 10/28/2005 | $1,100.00 | 112 Pymt Mellon | $351.03 | $0.00 | $0.00 |
| 20051028 001 | REV | 10/4/2005 | [9/05] | 10/4/2005 | ($1,100.00) | 100 Pymt Cash | $351.03 | $0.00 | ($351.03) |
| 20051109 001 | REV | 11/9/2005 | [10/05] | 11/9/2005 | $1,100.00 | 100 Pymt Cash | $351.03 | $0.00 | $0.00 |
| 20051109 001 | REV | 11/9/2005 | [10/05] | 11/9/2005 | $1,100.00 | 112 Pymt Mellon | $14.51 | $0.00 | $0.00 |
| 20051123 001 | GTA | 11/23/2005 | [11/05] | 11/23/2005 | $241.19 | 100 Pymt Cash | $14.51 | $20.73 | $0.00 |
| 20051123 001 | GTA | 11/6/2005 | [11/05] | 11/6/2005 | ($1,100.00) | 500 REV Pymt-Cash | ($14.51) | $0.00 | $364.76 |
| 20051125 001 | GTA | 11/25/2005 | [10/05] | 11/9/2005 | $1,100.00 | 100 Pymt Cash | $14.51 | ($20.73) | ($364.76) |

| Account | Date | Period | Trans Date | Amount | Description | | | |
|---|---|---|---|---|---|---|---|---|
| 20051125 001 GTA | 11/25/2005 | [11/05] | 11/9/2005 | | 112 Pymt Mellon | $364.76 | $0.00 | $0.00 |
| 20051205 001 GTA | 12/5/2005 | [11/05] | 12/5/2005 | | | $3.36 | $718.15 | $0.00 |
| 20051205 001 GTA | 12/5/2005 | [12/05] | 12/5/2005 | $1,100.00 | 112 Pymt Mellon | $370.73 | $7.76 | $0.00 |
| 20060103 001 GTA | 1/3/2006 | [12/05] | 1/2/2006 | | | $0.00 | $707.78 | $0.00 |
| 20060103 001 GTA | 1/3/2006 | [12/05] | 1/2/2006 | $1,100.00 | 112 Pymt Mellon | $373.36 | $18.96 | $0.00 |
| 20060131 001 GTA | 1/31/2006 | [1/06] | 1/30/2006 | | | $0.00 | $694.05 | $0.00 |
| 20060131 001 GTA | 1/31/2006 | [1/06] | 1/20/2006 | | 112 Pymt Mellon | $376.00 | $0.00 | $0.00 |
| 20060131 001 GTA | 1/31/2006 | [2/06] | 1/20/2006 | | | $13.73 | $680.32 | $0.00 |
| 20060227 001 GTA | 2/27/2006 | [2/06] | 2/25/2006 | $894.05 | 112 Pymt Mellon | $364.94 | $29.35 | $0.00 |
| 20060227 001 GTA | 2/27/2006 | [2/06] | 2/26/2006 | | | $13.73 | $707.60 | $0.00 |
| 20060227 001 GTA | 2/27/2006 | [3/06] | 2/26/2006 | | 112 Pymt Mellon | $354.73 | $13.73 | $0.00 |
| 20060403 001 GTA | 4/3/2006 | [3/06] | 4/2/2006 | | | $13.73 | $0.00 | $0.00 |
| 20060403 001 GTA | 4/3/2006 | [3/06] | 4/3/2006 | $1,086.27 | 112 Pymt Mellon | $367.88 | $13.73 | $0.00 |
| 20060403 001 GTA | 4/3/2006 | [4/06] | 4/3/2006 | | | $13.73 | $0.00 | $0.00 |
| 20060503 001 GTA | 5/3/2006 | [4/06] | 5/2/2006 | | 112 Pymt Mellon | $370.58 | $13.73 | $0.00 |
| 20060503 001 GTA | 5/3/2006 | [5/06] | 5/2/2006 | $1,086.27 | | $13.73 | $0.00 | $0.00 |
| 20060603 001 GTA | 6/3/2006 | [5/06] | 6/2/2006 | | 112 Pymt Mellon | $373.30 | $13.73 | $0.00 |
| 20060603 001 GTA | 6/3/2006 | [6/06] | 6/3/2006 | $1,086.27 | | $13.73 | $699.24 | $0.00 |
| 20060603 001 GTA | 6/3/2006 | [6/06] | 6/3/2006 | | 112 Pymt Mellon | $376.04 | $0.00 | $0.00 |
| 20060701 001 GTA | 7/1/2006 | [6/06] | 7/1/2006 | $1,086.27 | | $13.73 | $696.50 | $0.00 |
| 20060701 001 GTA | 7/1/2006 | [7/06] | 7/1/2006 | | 112 Pymt Mellon | $376.04 | $0.00 | $0.00 |
| 20060701 001 GTA | 7/1/2006 | [7/06] | 7/1/2006 | $1,086.27 | | $13.73 | $0.00 | $0.00 |
| 20060804 001 GTA | 8/4/2006 | [7/06] | 8/2/2006 | | 211 Disb Insurance Only | $373.30 | $701.96 | $0.00 |
| 20060804 001 GTA | 8/4/2006 | [8/06] | 8/3/2006 | | Insurance Type 10 | $13.73 | $0.00 | $0.00 |
| 20060804 001 GTA | 8/4/2006 | [8/06] | 8/4/2006 | $1,086.27 | 112 Pymt Mellon | $13.73 | $704.66 | $0.00 |
| 20060824 001 GTA | 8/24/2006 | | 8/24/2006 | ($980.42) | Insurance Type 10 | $13.73 | $0.00 | ($980.42) |
| 20060824 001 GTA | 8/24/2006 | | 8/24/2006 | | | $0.00 | $0.00 | $0.00 |
| 20060831 001 GTA | 8/31/2006 | [8/06] | 8/30/2006 | $1,086.27 | 112 Pymt Mellon | $378.80 | $693.74 | $0.00 |
| 20060831 001 GTA | 8/31/2006 | [9/06] | 8/31/2006 | | | $13.73 | $0.00 | $0.00 |
| 20060930 001 GTA | 9/30/2006 | [9/06] | 9/30/2006 | $1,086.27 | 112 Pymt Mellon | $381.58 | $690.96 | $0.00 |
| 20060930 001 GTA | 9/30/2006 | [10/06] | 9/30/2006 | | | $13.73 | $0.00 | $0.00 |
| 20061103 001 GTA | 11/3/2006 | [10/06] | 11/2/2006 | $1,086.27 | 112 Pymt Mellon | $384.38 | $688.16 | $0.00 |
| 20061103 001 GTA | 11/3/2006 | [10/06] | 11/3/2006 | | | $13.73 | $0.00 | $13.73 |

© Copyright Green Tree Servicing LLC 2006. Proprietary and confidential. For internal (Green Tree Servicing LLC) use only. Do not copy or distribute without prior written consent.

* Prin Bal is supplied for research purposed only.
GTA should always be checked for the actual Principal Balance for GTA Accounts.



EFiled: Mar 13 2008 6:00PM EDT
Transaction ID 18983427
Case No. 08C-03-011 RFS

# EXHIBIT E

GREEN TREE SERVICING LLC
345 SAINT PETER STREET- L800
SAINT PAUL, MN 55102
1-800-643-0202

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

☒ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * **Caution:** The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | |
|---|---|---|---|
| GREEN TREE SERVICING LLC 345 SAINT PETER STREET- L800 SAINT PAUL, MN 55102 1-800-643-0202 | | **2005** Form 1098 | **Mortgage Interest Statement** |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s) * | | **Copy B For Payer** |
|---|---|---|---|---|
| 41-1795868 | 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 | | $7,816.71 | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | | 2 Points paid on purchase of principal residence (See Box 2 below.) | | |
| MICHAEL CALLOWAY CATHERINE CALLOWAY 514 KING STREET LAUREL, DE 19956 | | 3 Refund of overpaid interest (See Box 3 below.) | | |
| | | 4 | | |
| Account number (see instructions) | | | | |
| 88037954 | | (keep for your records) | | Department of the Treasury - Internal Revenue Service |

Form 1098

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represents his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

**Account number.** May show an account or other unique number the payer has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. **Caution:** If you prepaid interest in 2005 that accrued in full by January 15, 2006, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2005 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 2 may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3. Do not deduct this amount.** It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2005 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

GREEN TREE SERVICING LLC
345 SAINT PETER STREET- L800
SAINT PAUL, MN 55102
1-800-643-0202

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

[X] CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | Mortgage Interest Statement |
|---|---|---|---|
| GREEN TREE SERVICING LLC 345 SAINT PETER STREET- L800 SAINT PAUL, MN 55102 1-800-643-0202 | | **2005** Form 1098 | |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s) * | Copy B For Payer |
|---|---|---|---|
| 41-1795868 | 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 | $7,433.70 | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |

PAYER'S/BORROWER'S name, street address, city, state, and ZIP code

2 Points paid on purchase of principal residence (See Box 2 below.)

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

3 Refund of overpaid interest (See Box 3 below.)

4

Account number (see instructions)

88037954

(keep for your records)

Form **1098**

Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

**Account number.** May show an account or other unique number the payer has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2005 that accrued in full by January 15, 2006, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2006 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2005 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

GREEN TREE SERVICING LLC
345 SAINT PETER STREET- L800
SAINT PAUL, MN 55102
1-800-643-0202

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

☐ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | |
|---|---|---|---|
| GREEN TREE SERVICING LLC 345 SAINT PETER STREET- L800 SAINT PAUL, MN 55102 1-800-643-0202 | | **2005** Form 1098 | **Mortgage Interest Statement** |

| RECIPIENT'S Federal identification no. 41-1795868 | PAYER'S social security number 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 | 1 Mortgage interest received from payers/borrower(s) $7,433.70 | Copy B For Payer |
|---|---|---|---|
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | | 2 Points paid on purchase of principal residence (See Box 2 below.) | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| MICHAEL CALLOWAY CATHERINE CALLOWAY 514 KING STREET LAUREL, DE 19956 | | 3 Refund of overpaid interest (See Box 3 below.) | |
| | | 4 | |
| Account number (see instructions) 88037954 | | | |

Form **1098**    (keep for your records)    Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

Account number. May show an account or other unique number the payer has assigned to distinguish your account.

Box 1. Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are

deductible by you only in certain circumstances. Caution: If you prepaid interest in 2005 that accrued in full by January 15, 2006, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2005 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 2 may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

Box 3. Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2005 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

Box 4. The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

Green Tree Servicing LLC
345 St Peter Street MS TAX-A
SAINT PAUL, MN 55102-1641
800-330-5183


MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

| | [X] CORRECTED (if checked) | |
|---|---|---|

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | |
|---|---|---|---|
| Green Tree Servicing LLC<br>345 St Peter Street MS TAX-A<br>SAINT PAUL, MN 55102-1641<br>800-330-5183 | | **2004**<br>Form **1098** | **Mortgage Interest Statement** |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s) * | Copy B<br>For Payer |
|---|---|---|---|
| 41-1795888 | 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 | $10,101.39 | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | | 2 Points paid on purchase of principal residence (See Box 2 below.) | |
| MICHAEL CALLOWAY<br>CATHERINE CALLOWAY<br>514 KING STREET<br>LAUREL, DE 19956 | | 3 Refund of overpaid interest (See Box 3 below.) | |
| | | 4 | |
| Account number (optional) | | | |
| 0000000006700107318 | | | |

Form 1098          (keep for your records)          Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. **Caution:** If you prepaid interest in 2004 that accrued in full by January 15, 2005, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2004 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see **Form 8396,** Mortgage Interest Credit. If the interest was paid on a mortgage, home

equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately) or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see **Pub. 936,** Home Mortgage Interest Deduction.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See **Pub. 936** or Schedule A (Form 1040) instructions.

**Box 3. Do not deduct this amount.** It is a refund (or credit for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2004 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see **Pub. 936** and "Recoveries" in **Pub. 525,** Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

+ 0003340 000017080 0?6TP8 0?37?06 01252005

MICHAEL CALLOWAY
514 KING STREET
LAUREL DE 19956-1564

SC0104-000

## Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. *Caution: If you prepaid interest in 2004 that accrued in box 1. However, you cannot deduct the prepaid amount in 2004 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the*

mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately), or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence. Other points are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2004 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as real estate taxes or insurance paid from escrow.

☐ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | | ★ Caution: *The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.* | OMB No. 1545-0901 **2004** Form **1098** | Mortgage Interest Statement |
|---|---|---|---|---|
| Green Tree Servicing LLC<br>PO Box 6076<br>Rapid City, SD 57709-6076<br>1-800-330-5183 | | | | |
| RECIPIENT'S Federal identification no.<br>41-1795868 | PAYER'S social security number<br>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 | 1 Mortgage interest received from payer(s)/borrower(s)*<br>$ 13,930.13 | | Copy B For Payer |
| PAYER'S/BORROWER'S name, street address (including apt no.), city, state, and Zip code | | 2 Points paid on purchase of principal residence (See Box 2 on back).<br>$ | | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| MICHAEL CALLOWAY<br>514 KING STREET<br>LAUREL DE 19956-1564 | | 3 Refund of overpaid interest (See Box 3 on back).<br>$ | | |
| | | 4 | | |
| | | Account number (optional)<br>6700107318 | | |

Form **1098**                    (Keep for your records.)                    Department of the Treasury - Internal Revenue Service

## Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3. If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. **Caution:** *If you prepaid interest in 2003 that accrued in full by January 15, 2004, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2003 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the*

mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately), or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2003 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as real estate taxes or insurance paid from escrow.

Pg 2 of 2

☐ CORRECTED (if checked)

◻ SC0111-000

| RECIPIENT'S/LENDER'S name, address, and telephone number | ▪ **Caution:** The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 **2003** Form **1098** | Mortgage Interest Statement |
|---|---|---|---|
| Green Tree 345 St. Peter Street TAX-A St. Paul MN 55102-1641 1-800-330-5183 | | | |
| RECIPIENT'S Federal identification no. 41-1795868 | PAYER'S social security number 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 | 1 Mortgage interest received from payer(s)/borrower(s)* $ 8,725.26 | Copy B For Payer The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| | | 2 Points paid on purchase of principal residence (See Box 2 on back). | |
| PAYER'S/BORROWER'S name, street address (including apt. no.), city, state, and Zip code MICHAEL S CALLOWAY CATHERINE L CALLOWAY 514 KING STREET LAUREL DE 19956-1564 | | 3 (Refund of overpaid interest (See Box 3 on back). $ | |
| | | 4 | |
| | Account number (optional) 6700107318 | | |

(Keep for your records.)         Department of the Treasury - Internal Revenue Service

* 0004610 000002583 09CYF1 0056509

Green Tree Servicing LLC
345 St Peter Street MS TAX-A
SAINT PAUL, MN 55102-1641
800-330-5183

CALLOWAY MICHAEL S
CALLOWAY CATHERINE L
514 KING STREET
LAUREL, DE 19956

[X] CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | Mortgage Interest Statement |
|---|---|---|---|
| Green Tree Servicing LLC 345 St Peter Street MS TAX-A SAINT PAUL, MN 55102-1641 800-330-5183 | | **2003** Form 1098 | |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s) * | | Copy B For Payer |
|---|---|---|---|---|
| 41-1795868 | 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 | | $6,971.41 | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | | 2 Points paid on purchase of principal residence (See Box 2 below.) | | |
| CALLOWAY MICHAEL S CALLOWAY CATHERINE L 514 KING STREET LAUREL, DE 19956 | | 3 Refund of overpaid interest (See Box 3 below.) | | |
| | | 4 | | |
| Account number (optional) 00000000006700107318 | | | | |

Form 1098                (keep for your records)        Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. **Caution:** If you prepaid interest in 2003 that accrued in full by January 15, 2004, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2003 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home

equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately) or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3. Do not deduct this amount.** It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2003 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year's tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Conseco Finance Servicing Corp
345 St Peter Street MS L604A
SAINT PAUL, MN 55102-1641
800-330-5183

CALLOWAY MICHAEL S
CALLOWAY CATHERINE L
514 KING STREET
LAUREL, DE 19956

| | [X] CORRECTED (if checked) | |
|---|---|---|

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 |
|---|---|---|
| Conseco Finance Servicing Corp 345 St Peter Street MS L604A SAINT PAUL, MN 55102-1641 800-330-5183 | | 2002 Form 1098 |

Mortgage Interest Statement

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s) * | Copy B For Payer |
|---|---|---|---|
| 41-1795868 | 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 | $4,490.75 | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | | 2 Points paid on purchase of principal residence (See Box 2 below.) | |
| CALLOWAY MICHAEL S CALLOWAY CATHERINE L 514 KING STREET LAUREL, DE 19956 | | 3 Refund of overpaid interest (See Box 3 below.) | |
| | | 4 | |
| Account number (optional) 00000000006700107318 | | | |

Form 1098                    (keep for your records)                    Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

Box 1. Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2002 that accrued in full by January 15, 2003, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2002 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home

equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately) or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

Box 3. Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2002 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

Box 4. The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

RECIPIENT'S/LENDER'S name, address and telephone number

Conseco Finance Servicing Corp
345 St Peter Street MS L604A
St Paul MN  55102

1-800-330-5183

* Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.

OMB No. 1545-0901

**2002**

Form **1098**

**Mortgage Interest Statement**

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s)* |
|---|---|---|
| 41-1795868 | 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 | $   5603.90 |

PAYER'S/BORROWER'S name, street address (including apt. no.), city, state, and Zip code

Calloway Michael S
Calloway Catherine L
514 King Street
Laurel DE 19956-1564

2 Points paid on purchase of principal residence (See **Box 2** on back).

$

3 Refund of overpaid interest (See **Box 3** on back).

$          .00

4

**Copy B**
**For Payer**
The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an understatement of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

Account number (optional)  8700107318

Form **1098**    057443 5673 1098A 372    (Keep for your records.)    Department of the Treasury - Internal Revenue Service

---

☐ CORRECTED (if checked)

RECIPIENT'S/LENDER'S name, address, and telephone number

CONSECO FINANCE SERVICING CORP.
345 ST. PETER STREET, MS L604A
ST. PAUL MN  55102

1-800-330-5183

* Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.

OMB No. 1545-0901

**2001**

Form **1098**

**Mortgage Interest Statement**

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s)* |
|---|---|---|
| 41-1795868 | 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 | $   7779.23 |

PAYER'S/BORROWER'S name, street address (including apt. no.), city, state, and Zip code

Calloway Michael S
Calloway Catherine L
514 King Street
Laurel DE 19956-1564

2 Points paid on purchase of principal residence (See **Box 2** on back).

$          .00

3 Refund of overpaid interest (See **Box 3** on back).

$          .00

4

**Copy B**
**For Payer**
The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

Account number (optional)
0000000000006700107318

Form **1098**    064258 6531 1098A 372    (Keep for your records.)    Department of the Treasury - Internal Revenue Service

Conseco Finance Servicing Corp
345 St Peter Street MS L604A
SAINT PAUL, MN 55102-1641
800-330-5183

CALLOWAY MICHAEL S
CALLOWAY CATHERINE L
514 KING STREET
LAUREL, DE 19956

[X] CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * **Caution:** The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | Copy B |
|---|---|---|---|
| Conseco Finance Servicing Corp 345 St Peter Street MS L604A SAINT PAUL, MN 55102-1641 800-330-5183 | | **2001** Form 1098 | **Mortgage Interest Statement** |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s) * | For Payer |
|---|---|---|---|
| 41-1795868 | 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 | $6,891.78 | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal |

| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | 2 Points paid on purchase of principal residence (See **Box 2** below.) | Revenue Service. If you are required to file a return, a |
|---|---|---|
| CALLOWAY MICHAEL S CALLOWAY CATHERINE L 514 KING STREET LAUREL, DE 19956 | 3 Refund of overpaid interest (See **Box 3** below.) | negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results |
| | 4 | because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest |
| Account number (see instructions) 00000000006700107318 | | on your return. |

Form 1098          (keep for your records)          Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

**Account number.** May show an account or other unique number the payer has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are

deductible by you only in certain circumstances. **Caution:** If you prepaid interest in 2001 that accrued in full by January 15, 2002, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2001 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2001 Form 1040. No adjustment to your prior year's tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Conseco Finance Servicing Corp.
600 Landmark Towers
345 St. Peter Street
St. Paul, MN 55102
(651)602-3945


CALLOWAY MICHAEL S
CALLOWAY CATHERINE L
514 KING STREET
LAUREL, DE 19956


[X] CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | | Mortgage Interest Statement |
|---|---|---|---|---|
| Conseco Finance Servicing Corp. 600 Landmark Towers 345 St. Peter Street St. Paul, MN 55102 (651)602-3945 | | **2000** Form 1098 | | |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s) * | Copy B For Payer |
|---|---|---|---|
| 41-1795868 | 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 | $9,868.15 | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |

| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | 2 Points paid on purchase of principal residence (See Box 2 below.) | |
|---|---|---|
| CALLOWAY MICHAEL S CALLOWAY CATHERINE L 514 KING STREET LAUREL, DE 19956 | 3 Refund of overpaid interest (See Box 3 below.) | |
| | 4 | |

Account number (see instructions)

00000000006700107318

Form 1098    (keep for your records)    Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

**Account number.** May show an account or other unique number the payer has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. **Caution:** If you prepaid interest in 2000 that accrued in full by January 15, 2001, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2000 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2000 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

Conseco Finance Servicing Corp
345 St. Peter Street L604
St. Paul, MN 55102-1641
800-643-0202

MICHAEL S CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

☒ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | |
|---|---|---|---|
| Conseco Finance Servicing Corp<br>345 St. Peter Street L604<br>St. Paul, MN 55102-1641<br>800-643-0202 | | **1999**<br>Form 1098 | **Mortgage Interest Statement** |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payers/borrower(s)* | | Copy B |
|---|---|---|---|---|
| 41-1795868 | 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 | | $9,401.00 | For Payer |

PAYER'S/BORROWER'S name, street address, city, state, and ZIP code

MICHAEL S CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

2 Points paid on purchase of principal residence (See Box 2 below.)

3 Refund of overpaid interest (See Box 3 below.)

4

The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

Account number (see instructions)

880379540

Form 1098                    (keep for your records)                    Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

**Account number.** May show an account or other unique number the payer has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. **Caution:** If you prepaid interest in 1999 that accrued in full by January 15, 2000, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 1999 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 2 may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3. Do not deduct this amount.** It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 1999 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

Green Tree Financial Corp
345 St Peter St 500 landmark towers
St Paul, MN 55102

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

☒ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | |
|---|---|---|---|
| Green Tree Financial Corp<br>345 St Peter St 500 landmark towers<br>St Paul, MN 55102 | | **1998**<br>Form 1098 | **Mortgage Interest Statement** |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s) * | Copy B |
|---|---|---|---|
| 41-1807858 | 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 | $5,167.33 | **For Payer** |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | | 2 Points paid on purchase of principal residence (See Box 2 below.) | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| MICHAEL CALLOWAY<br>CATHERINE CALLOWAY<br>514 KING STREET<br>LAUREL, DE 19956 | | 3 Refund of overpaid interest (See Box 3 below.) | |
| | | 4 | |
| Account number (see instructions) | | | |
| 880379540 | | | |
| Form 1098 | (keep for your records) | Department of the Treasury - Internal Revenue Service | |

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936. Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

**Account number.** May show an account or other unique number the payer has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. **Caution:** If you prepaid interest in 1998 that accrued in full by January 15, 1999, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 1998 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3. Do not deduct this amount.** It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 1998 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

||ı·ıllıdılıllı111lllıll·ıllıılllılılıdılıılllıllılılıl

[X] CORRECTED

| PAYER'S name (first, middle, last) | | * the amount shown may not be fully deductible by you on your Federal income tax return. Limitations based on the cost and value of the secured property may apply. In addition, you may only deduct an amount of mortgage interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | Mortgage Interest Statement |
| Michael S. Calloway<br>514 King Street<br>Laurel DE 19956-1564 | | | 1998 | |
| | | | | CALENDAR YEAR |
| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s)* | | 1998 |
| 411795868 | 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 | $ 7612.89 | | The information in Box 1 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if the IRS determines that an underpayment of tax results because you failed to properly show this amount on your return. |
| RECIPIENT'S name, street, address, city, state, and ZIP code | | 2 Points 0.00 | | |
| Green Tree Financial Servicing Corporation<br>332 Minnesota St. Suite 600<br>St. Paul MN 55101<br>Phone No. 1-800-330-5183 | | 3 Refund of Overpaid Interest<br>0.25- | | |
| Account number 6700107318 | | Department of the Treasury - Internal Revenue Service | | |

Form **1098**

### Instructions for Payer/Borrower

Person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers entitled to a deduction for this interest, please furnish each of the other borrowers with information about the proper distribution of the amounts shown on this form. Each borrower is entitled to deduct only the amount he or she paid that represents his or her share of the amount allowable as a mortgage interest deduction.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

Box 1.-Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation (including a home equity, line of credit, or credit card loan) secured by real property. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: *If you prepaid interest in this calendar year that accrued in full by January 15, next year, this prepaid interest may be included in Box 1. However, even though the prepaid amount may be included in Box 1, you cannot deduct the prepaid amount in this calendar year.* For more information, see Pub. 545, Interest Expense. If you can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage secured by your personal residence, it may be subject to a deduction limitation. See the instructions for Schedule A (Form 1040).

Box 2.-This box is for use by the interest recipient to furnish other information to you, such as real estate taxes or insurance paid from escrow.

DEFINITION OF: This calendar year, this is the year printed on the face of this form.

A0802

ılıllhılıdılıdıllınıılllıdılluhıdıduhılhılhıl

| PAYER'S name (first, middle, last) | * The amount shown may not be fully deductible by you on your Federal income tax return. Limitations based on the cost and value of the secured property may apply. In addition, you may only deduct an amount of mortgage interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | Mortgage Interest Statement |
|---|---|---|---|
| Michael S. Calloway<br>514 King Street<br>Laurel DE 19956-1564 | | **1998** | |
| | | CALENDAR YEAR **1998** | |

| RECIPIENT'S Federal identification no. 411795868 | PAYER'S social security number 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 | 1 Mortgage interest received from payer(s)/borrower(s) $ **8131.22** | The information in Box 1 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if the IRS determines that an underpayment of tax results because you failed to properly show this amount on your return. |
|---|---|---|---|
| RECIPIENT'S name, street, address, city, state, and ZIP code<br><br>**Green Tree Financial Servicing Corporation**<br>332 Minnesota St. Suite 600<br>St. Paul MN 55101<br>Phone No. 1-800-330-5183 | | 2    Points 0.00 | |
| | | 3    Refund of Overpaid Interest<br><br>0.00 | |

Account number    6700107318

Department of the Treasury - Internal Revenue Service

Form **1098**

**Instructions for Payer/Borrower**

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers entitled to a deduction for the interest and points shown on this form, please furnish each of the other borrowers with information about the proper distribution of these amounts. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

**Box 1–** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. *Caution: If you prepaid interest in 1998 that accrued in full by January 15, 1999, this prepaid interest may be included in box 1. However, even though the prepaid amount may be included in*

box 1, *you cannot deduct the prepaid amount in 1998.* For more information, see Pub. 936, Home Mortgage Interest Deduction. If you are a mortgage credit certificate holder who can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation as explained in the instructions for Schedule A (Form 1040).

**Box 2–** Not all points are reportable to you. This form shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally these points are fully deductible in the year paid, but you must subtract seller paid points from the basis of your residence. Other points not reported in this box may be deductible. See Pub. 936. Also see your Form 1040 instructions.

**Box 3–** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. Generally, list the total amount shown in box 3 on the "Other income" line on your 1998 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 525, Taxable and Nontaxable Income.

**Box 4–** This box is for use by the interest recipient to furnish other information to you, such as real estate taxes or insurance paid from escrow.

**DEFINITION OF:** This calendar year, this is the year printed on the face of this form.

F0650

8181    ☐ VOID    ☒ CORRECTED

| RECIPIENT'S/LENDER'S name, address, and telephone number | | OMB No. 1545-0901 | |
|---|---|---|---|
| Conseco Finance Servicing Corp<br>345 St. Peter Street MS L604A<br>St. Paul, MN 55102-1641 | | 1997<br><br>Form 1098 | Mortgage<br>Interest<br>Statement |

| RECIPIENT'S Federal identification no.<br>41-1795868 | PAYER'S social security number<br>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 | 1 Mortgage interest received from payer(s)/borrower(s)<br>$ 4507.99 | Copy A<br>For |
|---|---|---|---|
| PAYER'S/BORROWER'S name<br>Michael Calloway<br>514 King Street<br>Laurel DE 19956 | | 2 Points paid on purchase of principal residence<br><br>$ | Internal Revenue<br>Service Center<br>File with Form 1096. |
| Street address (including apt. no.) | | 3 Refund of overpaid interest<br>$ | For Paperwork<br>Reduction Act |
| City, state, and ZIP code | | 4 | Notice and<br>instructions for<br>completing this form, |
| Account number (optional)<br>880379540 | | | see **Instructions for**<br>**Forms 1099, 1098,**<br>**5498, and W-2G.** |

Form **1098**                    Cat. No. 14402K                    Department of the Treasury - Internal Revenue Service

**Do NOT Cut or Separate Forms on This Page**

|..||||..|||..|.|..|.|.|..||..||.|.||..|..|.|..|||.||.|.|.||

**[X] CORRECTED**

| PAYER'S name (first, middle, last) | | * The amount shown may not be fully deductible by you on your Federal income tax return. Limitations based on the cost and value of the secured property may apply. In addition, you may only deduct an amount of mortgage interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901. | Mortgage Interest Statement |
|---|---|---|---|---|
| Michael S. Calloway<br>514 King Street<br>Laurel DE 19956-1564 | | | **1997** | |
| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s)* | | CALENDAR YEAR |
| 411795868 | 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 | $    10182.91 | | 1997 |
| RECIPIENT'S name, street, address, city, state, and ZIP code | | 2    Points    0.00 | | The information in Box 1 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if the IRS determines that an underpayment of tax results because you failed to properly show this amount on your return. |
| Green Tree Financial Servicing Corporation<br>332 Minnesota St. Suite 600<br>St. Paul MN 55101<br>Phone No. 1-800-330-5183 | | | | |
| Account number       6700107318 | | | | |

Form **1098**                                                        Department of the Treasury - Internal Revenue Service

**Instructions for Payer/Borrower**

Box 1.-Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation (including a home equity, line of credit, or credit card loan) secured by real property. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. *Caution: If you prepaid interest in this calendar year that accrued in full by January 15, next year, this prepaid interest may be included in Box 1. However, even though the prepaid amount may be included in Box 1, you cannot deduct the prepaid amount in this calendar year.* For more information, see Pub. 545, Interest Expense. If you can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage secured by your personal residence, it may be subject to a deduction limitation. See the Instructions for Schedule A (Form 1040).

Person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers entitled to a deduction for this interest, please furnish each of the other borrowers with information about the proper distribution of the amounts shown on this form. Each borrower is entitled to deduct only the amount he or she paid that represents his or her share of the amount allowable as a mortgage interest deduction.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

Box 2.-This box is for use by the interest recipient to furnish other information to you, such as real estate taxes or insurance paid from escrow.

DEFINITION OF: This calendar year, this is the year printed on the face of this form.                    C22

IıııllIIıIıIıIıIıIıIıııIIIIIıIıIıIıIıIıIıIıIIııIIıIıIıI

| PAYER'S name (first, middle, last)<br><br>**Michael S. Calloway**<br>**514 King Street**<br>**Laurel DE 19956-1564** | * The amount shown may not be fully deductible by you on your Federal income tax return. Limitations based on the cost and value of the secured property may apply. In addition, you may only deduct an amount of mortgage interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901<br><br>**1997** | | Mortgage Interest Statement |
|---|---|---|---|---|
| RECIPIENT'S Federal identification no.<br>**411795868** | PAYER'S social security number<br>**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** | 1 Mortgage interest received from payer(s)/borrower(s)<br>$      **13560.06** | | CALENDAR YEAR<br>**1997** |
| RECIPIENT'S name, street, address, city, state, and ZIP code<br><br>**Green Tree Financial Servicing Corporation**<br>**332 Minnesota St. Suite 600**<br>**St. Paul MN 55101**<br>**Phone No. 1-800-330-5183** | 2   Points   0.00 | | | The information in Box 1 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if the IRS determines that an underpayment of tax results because you failed to properly show this amount on your return. |
| ccount number   **6700107318** | | | | |

rm 1098

**structions for Payer/Borrower**

erson (including a financial institution, a governmental unit, and a cooperative housing poration) who is engaged in a trade or business and, in the course of such trade or siness, received from you at least $600 of mortgage interest on any one mortgage in the ender year must furnish this statement to you.

you received this statement as the payer of record on a mortgage on which there are er borrowers entitled to a deduction for this interest, please furnish each of the other rowers with information about the proper distribution of the amounts shown on this form. ch borrower is entitled to deduct only the amount he or she paid that represents his or her re of the amount allowable as a mortgage interest deduction. your mortgage payments were subsidized by a government agency, you may not be able deduct the amount of the subsidy.

Department of the Treasury - Internal Revenue Service

Box 1.-Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation (including a home equity, line of credit, or credit card loan) secured by real property. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: *If you prepaid interest in this calendar year that accrued in full by January 15, next year, this prepaid interest may be included in Box 1. However, even though the prepaid amount may be included in Box 1, you cannot deduct the prepaid amount in this calendar year.* For more information, see Pub. 545, Interest Expense. If you can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage secured by your personal residence, it may be subject to a deduction limitation. See the instructions for Schedule A (Form 1040). Box 2.-This box is for use by the interest recipient to furnish other information to you, such as real estate taxes or insurance paid from escrow.

DEFINITION OF: This calendar year, this is the year printed on the face of this form.

C37

| | | | | SOCIAL SECURITY NUMBER 216 56 0402 | |
|---|---|---|---|---|---|
| PHONE: 800 330 5183 | 000 000 0000 | | | AMOUNTS COLLECTED | |
| FEDERAL ID NUMBER: 52 0948399 | | | | INTEREST APPLIED | 2,279 93 |
| BEGINNING BALANCE 1/01/96 | | | | PRINCIPAL REDUCTION | 292 03 |
| PRINCIPAL 125,000 00 | | | | FHA SUBSIDY | |
| ESCROW 0 00 | | | | ESCROW APPLIED | |
| ENDING BALANCE 12/31/96 | OPEN DATE 10/09/96 | | INTEREST POINTS | | |
| PRINCIPAL 124,707 97 | AVERAGE BALANCE | | | | |
| ESCROW 0 00 | 124,853.98 | | AMOUNTS DISBURSED | | |
| | | | TAXES | | |
| | | | HAZARD INSURANCE | | |
| MICHAEL S. CALLOWAY | | | FLOOD INSURANCE | | |
| CATHERINE L. CALLOWAY | | | MI OR FHA INSURANCE | | |
| 514 KING STREET | | | OTHER ESCROW | | |
| LAUREL | DE 199560000 | | SEE BELOW FOR AN IMPORTANT MESSAGE CONCERNING IRS REPORTING | | |
| | | | BOX 3 Δ INT. ADJUSTMENT | | |
| | | | BOX 2 Δ POINTS TO IRS | | |
| | | | BOX 1 Δ INT. REP. TO IRS | 2,279.93 | |

## SUBSTITUTE FORM 1098 – COPY B

THIS INFORMATION IS BEING REPORTED TO THE INTERNAL REVENUE SERVICE. THE INTEREST AMOUNT, POINTS PAID DIRECTLY/INTEREST POINTS AND REFUND OF OVERPAID INTEREST AS SHOWN ABOVE IS IMPORTANT TAX INFORMATION AND IS BEING REPORTED TO THE IRS. THE AMOUNT SHOWN MAY NOT BE FULLY DEDUCTIBLE BY YOU ON YOUR FEDERAL INCOME TAX RETURN. LIMITATIONS BASED ON THE COST AND VALUE OF THE SECURED PROPERTY MAY APPLY. IN ADDITION, YOU MAY ONLY DEDUCT AN AMOUNT OF MORTGAGE INTEREST TO THE EXTENT IT WAS INCURRED BY YOU, ACTUALLY PAID BY YOU, AND NOT REIMBURSED BY ANOTHER PERSON.

IF YOU ARE REQUIRED TO FILE A RETURN, A NEGLIGENCE PENALTY OR OTHER SANCTION WILL BE IMPOSED ON YOU IF THE IRS DETERMINES THAT AN UNDERPAYMENT OF TAX RESULTS BECAUSE YOU OVERSTATED A DEDUCTION FOR THIS MORTGAGE INTEREST ON YOUR RETURN.

### INSTRUCTIONS FOR PAYER/BORROWER

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers entitled to a deduction for the interest and points shown on this form, please furnish each of the other borrowers with information about the proper distribution of these amounts. Each borrower is entitled to deduct only the amount he or she paid that represents his or her share of the amount allowable as a deduction for mortgage interest and points.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

BOX 1 Δ INTEREST PAID (YTD) - Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments or seller payments on a "buydown" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest that accrued in full by January 15, this prepaid interest may be included in. However, even though the prepaid amount may be included you cannot deduct the prepaid amount.

For more information, see Pub. 936, Home Mortgage Interest Deduction. If you are a mortgage credit certificate holder who can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation as explained in the instructions for Schedule A (Form 1040).

BOX 2 Δ POINTS PAID DIRECTLY/INTEREST POINTS - Shows points you paid directly this year for the purchase of your principal residence. Generally, these points are fully deductible in the year paid. Other points not reported in this box may be deductible. See Pub. 936. Also see your Form 1040 instructions.

BOX 3 Δ REFUND OF OVERPAID INTEREST - Do not deduct this amount. It is a refund (or credit) from the interest recipient/lender for overpayment(s) of interest you made in a prior year or years. You should also receive information showing the year(s) you made the overpayment(s) and, it the refund is for more than 1 year, the amount for each year. Generally, report the total amount shown on your Form 1040 if you itemize deductions in the year(s) shown and the interest was used to reduce your tax for that year(s). Report it on the line for "Other Income" on your Form 1040 and label it "Interest Refund". Do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustments to your prior year(s) tax return(s) is necessary. For more information, see Pub. 525, Taxable and Nontaxable Income.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CATHERINE CALLOWAY and      *
MICHAEL CALLOWAY,      *
     *
        Plaintiffs,      * CIVIL ACTION NO. 08-224-SLR
     *
v.      * JURY TRIAL DEMANDED
     *
GREEN TREE SERVICING, LLC      *
     *
        Defendant.      *
     *
     *

CIVIL ACTION-COMPLAINT

Plaintiffs Catherine Calloway and Michael Calloway, by and through their attorney, Maggie Clausell, hereby bring this Complaint against Defendant Green Tree Servicing, LLC, and in support aver the following:

I. INTRODUCTION

1. Plaintiffs bring this action for damages based upon Defendant's violation of the Real Estate Settlement Procedures Act, and claims under Delaware law. Plaintiffs seek actual damages, punitive damages, costs and attorneys fees.

II. JURISDICTION

2. This court has subject matter jurisdiction over this Complaint pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. §2614.

3. Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction as codified at 28 U.S.C. §1367.

2

### III.    VENUE

4.    All of the claims herein arose within the jurisdiction of the United States District Court of Delaware.  Venue is proper in the District of Delaware pursuant to  28 U. S. C  §1391.

### IV.    PARTIES

5.    Catherine and Michael Calloway, are adult individuals, husband and wife, who are both residents of the State of Delaware, residing at 514 King Street, Laurel DE 19956.

6.    Green Tree Servicing, LLC   (hereinafter, Green Tree) is a corporation organized under the laws of the State of Delaware whose principal place of business is 332 Minnesota Street, St. Paul, MN 55101, whose registered agent is The Corporation Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, engaged in the business of servicing mortgage loans within the meaning of 12 U.S.C. 2605(i)(3).  Green Tree is a "servicer" within the meaning of 12 U. S. C. 2605 (i)(2)

### V.    FACTS

7.    Plaintiffs are the current record owners of the Property at 514 King Street, Laurel, DE 19956, as evidenced by the deed recorded with the Recorder of Deeds for Sussex County Delaware at Book 1206, Page 261, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "A".

8.    Plaintiffs executed a mortgage with Green Tree Financial Services (hereinafter, "GTFS") on or about October 9, 1996.  A copy of the Mortgage is attached hereto and incorporated herein as Exhibit "B".

3

9.    On October 9, 1996 Plaintiffs executed a note with Green Tree Financial Services, agreeing to pay $125,000 plus interest. A copy of the Note is attached hereto and incorporated herein as Exhibit "C".

10.    The monthly payment and interest was $1285.98, with the first payment due on November 14, 1996.

11.    Plaintiff commenced payments under the terms of the note and mortgage on November 14, 1996.

12.    Green Tree Mortgage, LLC , a subsidiary of GTFS, serviced the note from October 11, 1996  to 1999 when Conseco Finance Servicing Corporation (hereinafter, "Conseco") began servicing the loan.

13.    Conseco serviced the loan from serviced the loan from 1999 to June 2003.

14.    Conseco Finance Corporation filed bankruptcy in 2003.  Green Tree Servicing, LLC acquired servicing rights to Plaintiffs' mortgage on or about June 22, 2003 through a §363 bankruptcy asset sale.

15.    Plaintiffs claims in this complaint arose after the 2003 sale by Conseco Finance Corporation.

16.    At all times Defendant acted through its authorized agents and employees.

<u>COUNT I</u>

<u>VIOLATION OF THE REAL ESTATE SETTLEMENT AND PROCEDURES ACT</u>

17.    Paragraphs 1-16 are incorporated by reference as if fully set out herein.

18.    Pursuant to RESPA, 12 U. S. C. §2605 (e)(1)(a) and 12 U. S. C. §2605 (e)(1)(b), Plaintiffs issued multiple qualified written requests  (Exhibit D) to Green Tree Servicing dated December 8, 2005, December 20, 2005, April 17, 2006, May 4, 2006, September 2, 2006, November 9, 2006, August 13, 2007,

4

January 3, 2008, and January 17, 2008.

19.     Defendants failed to respond to Plaintiffs' requests, or the responses provided less than full and fair disclosure of information, or failed to address the questions presented in the request.

20.     By failing to respond to the Plaintiffs' request for information regarding the servicing of their mortgage, Green Tree violated RESPA.

21.     As a result of Green Tree's violation, Plaintiffs have been unable to determine the true and correct balance and owing on their mortgage, and have been subjected to repeated collections efforts from Green Tree.

22.     Plaintiffs also believe and aver that Green Tree has assessed unwarranted late fees, forced place insurance from July 2006 to July 2007, and escrow advances to their account.

23.     Without a true and accurate accounting and payment history from Green Tree, Plaintiffs are unable to determine the extent of the actual damages they have incurred because of Green Tree's failure to respond to their qualified written requests.

## COUNT II

## BREACH OF CONTRACT

24.     ~~Paragraphs 1-23 are incorporated by reference as if fully set out herein.~~

~~21. Paragraphs 1-20 are set out as if fully set out herein.~~

~~22. Plaintiffs made mortgage  payments for the months of November 1996, December 1996, January 1997, February, March, April, May, and June 1997.~~

~~23. Defendant failed to credit Plaintiffs for any of these payments totaling $10287.64 (Exhibit D)~~

5

~~24 Defendant failed to credit Plaintiffs mortgage payments of August 1997 and October 1997.~~

~~25. Defendant wrongfully alleged that Plaintiffs were two months behind in their mortgage payments for August and September 1997.~~

~~26. Plaintiffs entered into an extension agreement on October 8, 1997 and paid $424.37 for the extension agreement and $321.46 in late fees.~~

~~27. Defendant failed to credit Plaintiffs' check number 3658 for $1086.27~~

~~28. Defendant failed to credit Plaintiffs' Western Union payment of May 15, 2001.~~

~~29. On May 28, 2001 Plaintiffs executed forbearance agreement with Conseco. Plaintiffs paid an extension charge of $108.00 and late fees totaling $1471.94, and a return check fee of $143.54.~~

~~30. On February 28, 2002 Plaintiffs paid a total of $1962.80 for an extension agreement.~~

25.    In January 2006 Plaintiffs learned that Green Tree had made major errors in calculating the interest payments reported on the IRS tax Form 1098, creating a significant potential tax liability (Exhibit E).

26.    In January 2006 Defendant advised Plaintiffs that all their Form 1098 from 1996 to 2005 would have to be revised after the Plaintiffs had filed their taxes for each of those years.

27.    To the best of the Plaintiffs' knowledge information and belief, Defendant subsequently added the reported interest overpayment of $12000 back into the mortgage of principal (Exhibit F).

28.    Defendant failed to explain to Plaintiffs how the interest was recalculated or to provide an accounting as per Plaintiffs qualified request.

6

29.     Defendant purchased forced place insurance for Plaintiffs even though Plaintiffs had homeowners insurance at all times (Exhibit G).

30.     Upon information and belief, Defendant has failed and refused to apply the amounts paid by the Plaintiffs accurately and timely.

31.     As a result of Defendant's failure to apply Plaintiffs' payments accurately and timely, Plaintiffs have been subjected to foreclosure notices and additional fees being added to their account.

32.     Green Tree's actions and inactions as outlined above constitute a breach of the contract between the parties and breach of Defendant's duty of good faith and fair dealing.

33.     Green Tree had an obligation under the contract to accept and apply payments as they were paid.

34.     Green Tree's breach was material as it failed to perform a material obligation under the contract.

35.     As a result of said breach, the Plaintiffs have incurred damages for payments and assessments to their account of unwarranted fees, force placed insurance, escrow advances and extension fees.

36.     Plaintiffs' damages were a foreseeable result of Defendant's breach.

37.     In addition to the misapplied payments, and the accrued interest on those funds, without a true accounting and payment history from Green Tree, Plaintiffs are unable to determine the extent of the damages they have incurred as result of Green Trees failure to apply al payments and imposition of unwarranted fees and forced extensions by the Defendant.

<u>COUNT III</u>

7

## VIOLATION OF DELAWARE CONSUMER FRAUD ACT

38.    Paragraphs 1-37 are incorporated by reference as if fully set out herein.

39.    Plaintiffs allege that Defendant violated 6 Del. C. § 2513 by failing to respond to Plaintiffs' request for information on their account, by failing to properly credit payments to their account, and by fraudulently representing that they were behind in payments that had not been properly credited.

## COUNT V
## NEGLIGENCE

40.    Paragraphs 1-39 are incorporated by reference as if fully set out herein.

41.    Plaintiffs allege that Defendant had a duty to properly credit all payments made toward the loan.

42.    Plaintiffs allege that Defendant breached that duty when it failed to calculate Plaintiffs' interest payments correctly and wrongfully placing Plaintiffs' in high cost force placed insurance contracts.

43.    As a result of Defendant's breach, Plaintiffs incurred late fees, were subjected to abusive debt collection practices, were coerced into expensive extension agreements that added significantly to the cost of the loan, and suffered humiliation and embarrassment because of negative or derogatory information being reported by Green Tree to the credit reporting agencies.

44.    As a result of Defendant's breach, Plaintiffs' rating suffered and Plaintiff has not been able to refinance their home.

8

## COUNT IV
## COVENANT OF GOOD FAITH AND FAIR DEALING

45.     Paragraphs 1-44 are incorporated by reference as if fully set out herein.

46.     Plaintiffs allege that Defendant breached the covenant of good faith and fair dealing implicit in all Delaware contracts when it failed to properly credit all of the Plaintiffs' payments.

WHEREFORE NOW, the Plaintiffs request the Court to enter judgment in the amount of $125,000 in actual damages, attorney fees, costs, and $2,000,000 in punitive damages.

### JURY TRIAL DEMANDED

LAW OFFICE OF MAGGIE CLAUSELL, LLC

Maggie Clausell, Esq.
Bar ID #4532
9 E. Loockerman Street, Ste. 205
Dover, DE 19901
302-678-7644 (voice)
302-678-0771 (fax)

Date: June 5, 2008

9

# EXHIBIT A

5302                    BOOK 1206 PAGE 261

# This Deed, Made this _____ 10th

_____ day of _____ August _____ in the year of our

Lord one thousand nine hundred and eighty-three,

BETWEEN FRANCES P. HASTINGS and ELLEN P. LANDON, of 123

Sharptown Road, Laurel, Delaware, 19956, parties of the first part,

- A N D -

MICHAEL B. CALLOWAY and CATHERINE L. CALLOWAY, his

wife, of 514 King Street, Laurel, Delaware, 19956, parties of the second

part,

**Witnesseth,** That the said parties       of the first part, for and in consideration of

the sum of TWELVE THOUSAND AND NO/100 DOLLARS ($12,000.00)

Current Lawful Money of the United States of America and other good and valuable considerations,

the receipt whereof is hereby acknowledged, hereby grant       and convey       unto the said parties

of the second part, their heirs and assigns:

ALL that certain lot, piece, or parcel of land lying and being
situate in the Town of Laurel, Little Creek Hundred, Sussex County, State
of Delaware, lying on the Northwest side of King Street adjoining lands
now or formerly of Ellen P. Landon, lands now or formerly of Elsie W.
Palmer and lands now or formerly of James E. Young, Jr., and being more
particularly described as follows, to wit:

BEGINNING at a pipe set on the Northwesterly right-of-way line of
King Street, said pipe being a corner for the lands herein and lands now
or formerly of James E. Young, Jr. and being situate 760 feet more or
less from the right-of-way line of 6th Street; thence along and with the
Northwesterly right-of-way line of King Street and the line of the lands
herein, South 32 degrees 40 minutes 00 seconds West 50 feet to a concrete
monument, said concrete monument being a corner for the lands herein and
lands now or formerly of Ellen P. Landon; thence turning and running
along and with the line of the lands herein and lands now or formerly of
Ellen P. Landon, North 57 degrees 20 minutes 00 seconds West 200 feet to
a concrete monument; thence turning and running along and with the line of the
lands herein and lands now or formerly of Elsie W. Palmer North 32
degrees 40 minutes 00 seconds East 50 feet to an axle, said axle being a
corner for the lands herein and lands now or formerly of James E. Young,
Jr.; thence turning and running along and with the lands herein and
lands now or formerly of James E. Young, Jr., South 57 degrees 20 minutes
00 seconds East 200 feet to a pipe on the Northwesterly right-of-way of
King Street being the point and place of beginning and said to contain
10,000 square feet of land more or less together with all improvements
thereon. The description herein was derived from a survey prepared by
Miller-Lewis, Inc., Registered Land Surveyors, on August 1, 1983.

BEING all of the same lands devised unto Frances P. Hastings, one
of the above-named Grantors herein, by Article X of the Last Will and
Testament of Howard J. Penuel, which is filed for record in the Office
of the Register of Wills, in and for Sussex County, at Georgetown, Delaware,
in Will Book 84, page 580. The said Howard J. Penuel died testate on
or about March 30, 1977.

ALSO BEING a part of the same lands devised unto the Grantors herein,
Frances P. Hastings and Ellen P. Landon, by Article XIII of the Last Will
and Testament of Howard J. Penuel which is filed for record aforesaid, in
Will Book 84, page 580.

LAW OFFICES
PENUEL & HAVENS
GEORGETOWN, DEL



BOOK 1206 PAGE 263

**In Witness Whereof**, the said parties of the first part have hereunto set their hands and seals the day and year aforesaid.

Signed, Sealed and Delivered
in the presence of:

_Lawrence R. Smith_
WITNESS

_Lawrence R. Smith_
Witness

_Frances P. Hastings_ (SEAL)
Frances P. Hastings

_Ellen P. Landon_ (SEAL)
Ellen P. Landon

State of Delaware
STATE TAX DEPT • • • SUSSEX
REALTY TRANSFER TAX  2 6 0 . 0 0

PURCHASER'S REPORT MADE
Dec. 31st DAY OF August, 1983
ASSESSMENT DIVISION OF SUSSEX COUNTY

STATE OF DELAWARE
COUNTY OF SUSSEX }  SS.

BE IT REMEMBERED, That on this 30th day of August In the year of our LORD, one thousand nine hundred and eighty-three personally came before me, The Subscriber, a Notary Public for the State and County aforesaid, FRANCES P. HASTINGS and ELLEN P. LANDON

Parties to this Indenture known to me personally to be such, and they acknowledged this Indenture to be their Deed.
GIVEN under my Hand and Seal of Office, the day and year aforesaid.

RECEIVED
MARY ANN (ZIMMOND)
1983 AUG 30  PM 3: 13
RECORDER OF DEEDS
SUSSEX COUNTY

_Elizabeth A. Brown_
NOTARY PUBLIC

LAW OFFICES
TUNNELL & RAYSOR
GEORGETOWN DEL.

_Tunnell v Raysor_
_9.12.83_

# EXHIBIT B



# GREEN TREE
## MORTGAGE                    SERVICES
*A Division of Green Tree Financial Servicing Corporation*

10/14/96

MICHAEL CALLOWAY
514 KING STREET
LAUREL, DE  199560000

RE:    Loan # 10000156
       Subject Property: 514 KING STREET
                         LAUREL,DE

Dear  MICHAEL CALLOWAY / CATHERINE L. CALLOWAY

Green Tree Mortgage Services, of Rapid City, South Dakota, is pleased to welcome you as our new mortgage loan customer.  We are servicing your loan which originated in our Livonia office.

Our records show that the current terms of your loan are as follows:

| | |
|---|---|
| Principal balance: | $125,000.00 |
| Payment amount (principal & interest): | $1,285.98 |
| Due date of first payment: | 11/14/96 |

If your records disagree with the above information, please contact our Mortgage Service Center at the toll free number listed below.

We will be experiencing a transition of the servicing of your loan, however, until further notification, please forward all monthly payments to the following address:

GreenTree Mortgage Services
P.O. Box 6150
Rapid City, SD  57709

We will be sending you a monthly statement.  If your statement does not arrive prior to your first due date, please remit your payment to the above address and reference your loan number on your check or money order.

Should you have any questions regarding any of the above, please contact our customer service department at the above address, or call 1-800-330-5183, 8:00am - 6:00pm Central Standard Time.  Again, we welcome you to GreenTree Mortgage.

Sincerely,
Customer Service Department
Green Tree Mortgage Services

662-293-3434 —   1800-330-5183

| | | Loan Number _____ |
|---|---|---|
| MICHAEL S CALLOWAY<br>CATHERINE L CALLOWAY | Green Tree Financial<br>Servicing Corporation<br>332 Minnesota Street<br>Saint Paul, MN 55101 | Date 10/09/96 |
| | | Maturity Date 10/14/16 |
| 514 KING ST<br>LAUREL, DE 19956 | | Loan Amount $ 125000.00 |
| | | Renewal Of _____ |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, joint and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of

One Hundred Twenty Five Thousand and 00/100 _____ Dollars $ 125000.00

[X] **Single Advance:** I will receive all of this principal sum on 10/14/96 . No additional advances are contemplated under this note.

[ ] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
     I will receive the amount of $ _____ and future principal advances are contemplated.
     **Conditions:** The conditions for future advances are _____

     [ ] **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
     all other conditions and expires on _____
     [ ] **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 10/14/96 _____ at the rate of 10.950 %
per year until 10/14/16 .

[ ] **Variable Rate:** This rate may then change as stated below.
     [ ] **Index Rate:** The future rate will be _____ the following index rate: _____

     [X] **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
     [ ] **Frequency and Timing:** The rate on this note may change as often as _____
         A change in the interest rate will take effect _____
     [ ] **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
         _____ %.

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
     [ ] The amount of each scheduled payment will change.      [ ] The amount of the final payment will change.
     [ ] _____

**ACCRUAL METHOD:** Interest will be calculated on a 30/360 simple interest basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
     [X] on the same fixed or variable rate basis in effect before maturity (as indicated above).
     [ ] at a rate equal to _____

[X] **LATE CHARGE:** If a payment is made more than 15 days after it is due, I agree to pay a late charge of 5% OF UNPAID AMT

[ ] **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which [ ] are [ ] are not included in the principal amount
above: _____

**PAYMENTS:** I agree to pay this note as follows:
     [ ] **Interest:** I agree to pay accrued interest _____

     [ ] **Principal:** I agree to pay the principal _____

     [X] **Installments:** I agree to pay this note in 240 payments. The first payment will be in the amount of $ 1285.98
     and will be due 11/14/96 . A payment of $ 1285.98 will be due
     14th day of each month thereafter. The final payment of the entire
     unpaid balance of principal and interest will be due 10/14/16 .

**ADDITIONAL TERMS:**

888-316-8733
ATTN STEFFANI
Judy

1 800-330-5183

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated __10/09/96_____ , between the Creditor named below and __MICHAEL S CALLOWAY__ and __CATHERINE L CALLOWAY_____
(Consumer(s)).

**NOTICE OF RIGHT TO CANCEL**
**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ __October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

__Green Tree Financial Servicing Corporation__
(Name of Creditor)
__34387 PLYMOUTH__
__LIVONIA, MI 48150__
(Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of __10/11/96_____ (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____   _____
Consumer's Signature                    Date

---

### RECEIPT

Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at _____ .
__514 KING ST  LAUREL DE 19956__

Consumer(s):

Date _____          X _____
                                           MICHAEL S CALLOWAY

                                       X _____
                                           CATHERINE L CALLOWAY

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated ___10/09/96___, between the Creditor named below and __MICHAEL S CALLOWAY   and CATHERINE L CALLOWAY___ _____ (Consumer(s)).

**NOTICE OF RIGHT TO CANCEL**
**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____
    __October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

__Green Tree Financial Servicing Corporation__
            (Name of Creditor)
__34387 PLYMOUTH__
__LIVONIA, MI  48150__
            (Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of __10/11/96___
                                              (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____        _____
Consumer's Signature                   Date

---

### RECEIPT

Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at _____
__514 KING ST  LAUREL, DE 19956_____

Consumer(s):

Date _____        X _____
                                      MICHAEL S CALLOWAY

                                   X _____
                                      CATHERINE L CALLOWAY

APPLICANT'S NAME AND CURRENT ADDRESS
MICHAEL S CALLOWAY
CATHERINE L CALLOWAY
514 KING ST
LAUREL, DE  19956

APPLICATION SUBMITTED TO
GREEN TREE FINANCIAL SERV CORP
332 MINNESOTA ST.
ST. PAUL, MN  55101

Application
Number

Application
Received

Date of
Disclosure

By ☐ Mail  ☐ In Person

## SERVICING DISCLOSURE STATEMENT

NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. §2601 et seq.) you have certain rights under this Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains these procedures.

**Transfer Practices and Requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll free or collect telephone number of the new servicer, and toll free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**

Section 6 of RESPA (12 U.S.C. §2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and Costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimates**

1.  The following is the best estimate of what will happen to the servicing of your mortgage loan:

    A. ☒ We may assign, sell or transfer the servicing of your loan while the loan is outstanding.
    We are able to service your loan, and we   ☒ will  ☐ will not  ☐ haven't decided whether to   service your loan.

    B. ☐ We do not service mortgage loans (☐ and we have not serviced mortgaged loans in the past three years). We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

    C. ☐ We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program for which you have applied, we expect to   ☐ sell all of the mortgage servicing   ☐ retain all of the mortgage servicing   ☐ assign, sell or transfer
    _____ % of the mortgage servicing.

    D. ☐

2.  For all the first lien mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:
    __XX__ 0 to 25%   _____ 26 to 50%   _____ 51 to 75%   _____ 76 to 100%

    This estimate ☒ does  ☐ does not  include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3.  A. ☐ We have previously assigned, sold, or transferred the servicing of first lien mortgage loans.

    B. ☒ This is our record of transferring the servicing of the first lien mortgage loans we have made in the past three years. The percentages have been rounded to the nearest quartile - 0%, 25%, 50%, 75% or 100%.

    __0__ . __25__ %      __0__ . __25__ %      __0__ . __25__ %

    (This information ☒ does  ☐ does not  include assignments, sales or transfers to affiliates or subsidiaries.)

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/we have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/we understand that this acknowledgment is a required part of the mortgage loan application.

APPLICANT  MICHAEL S CALLOWAY

CO-APPLICANT  CATHERINE L CALLOWAY

DATE

Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form RESPA-SDS 6/27/95                    (page 1 of 1)

| Green Tree Financial<br>Servicing Corporation<br>332 Minnesota Street<br>Saint Paul MN 55101 | MICHAEL S CALLOWAY<br>CATHERINE L CALLOWAY<br>514 KING ST<br>LAUREL, DE 19956 | Loan Number _____<br>Date   October 9, 1996<br>Maturity Date October 14, 2016<br>Loan Amount $   125000.00 |
|---|---|---|
| LENDER'S NAME AND ADDRESS | BORROWER'S NAME AND ADDRESS | |

## NOTICE TO BORROWER
## OF PROPERTY IN SPECIAL FLOOD HAZARD AREA

Property Description: 514 KING ST  LAUREL DE 19956

Flood Map Information: AS INDICATED IN APPRAISAL OF SUBJECT PROPERTY
LOCATED IN FLOOD ZONE C
MAP NO. #100040 0001B          DATE :01/16/81

*Complete either Box A or Box B, whichever is applicable.*

A. ☒ The improved real estate or mobile home described above has **not** been determined to be located in a special flood hazard area.

B. ☐ Notice is hereby given to _____ that the
                                                                *(Borrower)*
improved real estate or mobile home described above is or will be located in an area designated by the Director of the Federal Emergency Management Agency or by the Secretary of the Department of Housing and Urban Development as a special flood hazard area. This area is delineated on _____'s Flood Insurance Rate
                                                                                                          *(Community Name)*
Map (FIRM) or, if the FIRM is unavailable, on the Flood Hazard Boundary Map (FHBM). This area has at least a 1% chance of being flooded within any given year. The risk of exceeding the 1% chance increases with time periods longer than one year. For example, during the life of a 30-year mortgage, a structure located in a special flood hazard area has a 26% chance of being flooded.

## NOTICE TO BORROWER
## ABOUT FEDERAL FLOOD DISASTER RELIEF ASSISTANCE

*(Lender Check One)*
☐ Notice in Participating Communities
The improved real estate or mobile home securing your loan is or will be located in a community that is now participating in the National Flood Insurance Program. If the property is damaged by flooding in a federally declared disaster, Federal disaster relief assistance may be available. However, such assistance will be unavailable if your community has been identified as a flood-prone area for one year or longer and is not participating in the National Flood Insurance Program when the assistance is approved. This assistance, usually in the form of a loan with a favorable interest rate, may be available for damages incurred in excess of your flood insurance.

☐ Notice in Nonparticipating Communities
The improved real estate or mobile home securing your loan is or will be located in a community that is not participating in the National Flood Insurance Program. This means that the property is not eligible for Federal flood insurance. If the property is damaged by flooding in a federally declared disaster, Federal disaster relief assistance for the property will be unavailable if your community has been identified as a flood-prone area for one year or longer. Such assistance may be available only if, at the time the assistance would be approved, your community is participating in the National Flood Insurance Program or has been identified as a flood-prone area for less than one year.

The undersigned realizes that the property securing the loan described above is or will be located in an area identified as a flood hazard area and that the undersigned has received the required notice regarding Federal disaster relief assistance.

Dated _____

Borrower   MICHAEL S CALLOWAY

Dated _____

Borrower   CATHERINE L CALLOWAY

Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form FIN 6/22/92

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated __10/09/96_____, between the Creditor named below and __MICHAEL S CALLOWAY   and CATHERINE L CALLOWAY_____ (Consumer(s)).

---

**NOTICE OF RIGHT TO CANCEL**

**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ __October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

__Green Tree Financial Servicing Corporation__
                    (Name of Creditor)
__34387 PLYMOUTH__
__LIVONIA, MI  48150__
          (Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of __10/11/96_____
                                                              (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____  _____
Consumer's Signature                        Date

---

### RECEIPT

Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at_____.
__514 KING ST  LAUREL DE 19956__

Consumer(s):

Date _____        X _____
                                          MICHAEL S CALLOWAY

                                       X _____
                                          CATHERINE L CALLOWAY

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

*This Notice relates to a consumer credit transaction dated* __10/09/96__ *, between the Creditor named below and* __MICHAEL S CALLOWAY   and CATHERINE L CALLOWAY__ *(Consumer(s)).*

**NOTICE OF RIGHT TO CANCEL**
**Your Right to Cancel**
You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ October 9, 1996 _____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**
If you decide to cancel this transaction, you may do so by notifying us in writing, at

__Green Tree Financial Servicing Corporation__
(Name of Creditor)
__34387 PLYMOUTH__
__LIVONIA, MI   48150__
(Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of __10/11/96__
(date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____   _____
Consumer's Signature                Date

---

## RECEIPT

*Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at* _____ __514 KING ST   LAUREL DE 19956__ _____

Consumer(s):

Date _____

X _____
MICHAEL S CALLOWAY

X _____
CATHERINE L CALLOWAY

# EXHIBIT C

WHEN RECORDED RETURN TO:
GREEN TREE FINANCIAL SERV CORP
34387 PLYMOUTH
LIVONIA, MI  48150

Parcel Identification Number
Present: _____
Previous: _____

Name and Address of Preparer
KELISHA V HAYES
34387 PLYMOUTH RD
LIVONIA, MI  48150

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on ........OCTOBER..9,..1996..................... . The mortgagor is ..MICHAEL..S..CALLOWAY,..A..MARRIED..MAN..AND..CATHERINE..L..CALLOWAY,..A..MARRIED..WOMAN..........
............................................................................................................................................
("Borrower"). This Security Instrument is given to ...GREEN..TREE..FINANCIAL..SERVICING..CORPORATION............
......................................................... , which is organized and existing under the laws of .STATE..OF..DELAWARE.................................................................... , and whose address is
.332..MINNESOTA..STREET..SAINT..PAUL,..MN..55101........................................................................
("Lender"). Borrower owes Lender the principal sum of .ONE..HUNDRED..TWENTY-FIVE..THOUSAND..DOLLARS..AND..NO/100------------------------------------ Dollars (U.S. $.125,000.00.................). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on ........OCTOBER..14,..2016..................... . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in ...........SUSSEX............................................................... County, Delaware:

SEE ATTACHED LEGAL DESCRIPTION

which has the address of .......514..KING..ST......................................... , .......LAUREL....................................... ,
                                         [Street]                               [City]
Delaware ....19956............. ("Property Address");
         [Zip Code]

DELAWARE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT             Form 3008 9/90 *(page 1 of 6 pages)*

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-DE 2/18/91

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which

Form 3008  9/90  *(page 2 of 6 pages)*

may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage

Form 3008  9/90  *(page 3 of 6 pages)*

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the

Form 3008  9/90  *(page 5 of 6 pages)*

default is not cured on or before the date specified in the not......... .der at its option may require immediate payment in full of all sums secured by this Security Instrument wi.. ... further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees of ......... N/A ..................... % of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of title evidence.

**22. Satisfaction.** Upon payment of all sums secured by this Security Instrument, Lender shall cause the entry of satisfaction to be made upon the records of this Security Instrument without charge to Borrower. Borrower shall pay all costs and fees for entering the satisfaction upon the records of this Security Instrument.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ 1–4 Family Rider
☐ Graduated Payment Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider ☐ Rate Improvement Rider ☐ Second Home Rider
☐ Other(s) [specify]

By SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

.................................................................... ................................................................ (Seal)
MICHAEL S CALLOWAY                              –Borrower

Social Security Number .......................................................

.................................................................... ................................................................ (Seal)
CATHERINE L CALLOWAY                           –Borrower

Social Security Number .......................................................

————————————— [Space Below This Line For Acknowledgment] —————————————

STATE OF DELAWARE, ............. SUSSEX ................................. County ss:

BE IT REMEMBERED that on this ......... 9th ................................. day of .OCTOBER,. 1996 ............................
.................................................. , personally came before me, the subscriber, Michael S. Calloway
and Catherine L. Calloway ................................. , part .ies.............................................. to this Mortgage
personally known to me to be such, and severally acknowledged this Mortgage to be ........... their...............................
................................. act and deed.

Given under my Hand and Seal of Office, the day and year aforesaid.

..................................................................
Notary Public

....John F. Hyde, Attorney at Law..............
Name and Title of Notary

....Indefinite..................................................
Expiration Date

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-DE  2/18/91                Form 3008  9/90 (page 6 of 6 pages)

EXHIBIT D

**Michael S. Calloway**
514 King Street
Laurel, DE 19956

December 8, 2005

Mr. Keith Anderson
Green Tree Services
1400 Turbine Drive
Rapid City, SD 5770

Dear Mr. Anderson:

This letter is regarding my account with Greentree. My account number is #6700107318. I must admit that some years ago when my wife went on total and permanent disability I got behind with my payments. This was due to a lost of about $30,000.00 a year income. While keeping in touch with Greentree I was advised that any late charges would be added onto the end of the loan. I have undoubtly tried to make at least a payment and many times over the regular payment. Since that time I have made many attempts to get my due date changed. Not only would this allow me to better manage my bills with their due dates because of my wife's disability checks are not good until the last day of the month but it would also give me time to pay extra so that we can get the outstanding late charges paid off.

I am trying to get it changed to the end of the month. This would allow me to make at least a full monthly payment and not to add anymore to late charges. Of course by moving my due date to the end of the month would also mean that you would not get anymore late charges. Everyone I have talked to just tells me that they cannot do this. I think that if this were done it would greatly benefit your customer and in the long run would benefit Greentree. This would be an account that your collectors would not have to be continuous calling and harassing.

Since all of your collectors keep telling me that this cannot be done, I am asking you to do this. Also I do not agree with the figures on this account so I would like to request a full amortization of this account from the beginning of the loan. I would appreciate your immediate attention in providing this information to me as soon as possible.

Sincerely,

*Michael S. Calloway*

Michael S. Calloway

Michael S. Calloway
514 King Street
Laurel, DE 19956

December 20, 2005

Mr. Keith Anderson
Green Tree Services
1400 Turbine Drive
Rapid City, SD 57709

Dear Mr. Anderson:

I wrote you a letter concerning the changing of my due date of my loan. I am not sure if the first letter even got to you but I did receive a form letter in the mail today with two reasons why our due date cannot be changed.

One is the due date requested is not a valid option. My request for the end of the month could also be on the 1st.

The second reason was that the account is not current. I am not sure what current is suppose to be but I have been told that current means all late fees have to be paid. I cannot pay them and they are just getting higher. I already explained why it is not paid until the end of the month instead of the 14th. The account is paid every month though.

There is a contact number but I know there is no need to call. Every time I have attempted to do something about this, I am given a very hard time by whoever I talk with in Customer Service. They always say they do not have the authority to do anything. I don't understand why I cannot get any help. This is why I have finally contacted you.

Also I requested in my last letter a full amortization of this account from the beginning of the loan. I have heard nothing concerning it. My account number is 6700107318 but the letter I received today has an account number of 88037954. Do I have a different number and have not been told about it?

Sincerely,

Michael S. Calloway

April 4, 2006

To Whom It May Concern:

I would like a copy of all correspondence, extension notes and paperwork, contract, and a full explanation of what "other" is for each month it was applied. I also want a complete history of this account from October 1996 to present. I want to know where every dollar if my money has gone.

Thank you

*Michael J Calloway*

*Catherine R Calloway*

Acct # 88037954

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

April 17, 2006


Mr. Keith Anderson
Green Tree Services
1400 Turbine Drive
Rapid City, SD 57709

Dear Mr. Anderson:

I have written you two times and two times you have not responded to my letters. It is becoming clearer to me as to why you will not change my due date therefore eliminating the late fees but we will now deal with that at a later date.

My wife and I have spent the last two months attempting to get a 1098 INT so we could do our taxes. We were finally told that we were in the minus interest for the year. This is when we have paid more than $10,000. in interest to you this past year. We had to insist on getting a 1098 INT for 2005. We were then told you had made mistakes in our 1098 INT's for the entire length of the loan and would have to send us corrected 1098 INT's. After calling many times we finally received the 1098 INT's and they are still wrong. At this time I have talked with a Crystal, Jill, someone who was pretending to be the director of customer services (the director was on vacation), and the director's assistant who was suppose to call me back last week and has not. I attempted to call 800-544-8056 and no one will answer the phone. I know you have caller ID and by this time they all know my phone number. I also asked to speak with you or your assistant and no one would put me through. Is this the way your company handles their customers when they know they are wrong? I finally had to file my taxes with the incorrect 1098 INT.

I also asked for a complete history of this account. The first time I received from 2000 to present so I asked again. This time I received from 1997 to present. My loan originated in 1996. I am now being told you don't have these records so how can you say there are mistakes when you don't have all the records.

After talking with Jill for 45 minutes the other night, Jill was going to return my phone call the next night at 5:30 PM EST to discuss the statements, interests, extensions, etc. Jill finally called after 6:00 PM and left a message that she forgot the time because she was busy and also that the corrected 1098's had been sent. They were finally received and I might add, are incorrect. Jill was also the one that informed me to fax a letter (she provided me with the number) requesting all documentation (loan contract, payment history, correspondence, rate modifications, loan extensions and the correspondence related to the extensions) and any other documentation that you may have so that we can work to get this loan straightened out. Jill stated that I was allowed to have this information, but would have to request it. I faxed this request that night before I got off the phone with Jill. She said that she would be glad to go over it with me after I receive this information. I have not received this information. I know that I am requesting a complete history of every penny that I have paid in and where it went, but you should have record of this

available.

I was offered a great interest rate by another mortgage company last year to refinance but since I know as my wife and I have been saying for years that there are problems with this account, I could not take it. . We have been harassed by you, threatened by you, and have almost lost our home to you but we will not go away until this account is straightened out. We have been treated like trash by your people and quite frankly that is still going on today, just in a different way.

**Again, at this time I am requesting the loan contract, payment history, correspondence, rate modifications, loan extensions and the correspondence related to the extensions, and any other documentation including notes, and phone conversations. In case I have not listed something here, let me say I want a complete copy of this file.**

I hope that 10 days from the date of this letter will be enough time to get this information to me. Additionally since I am going to have to hire an accountant to audit this account, I think you should pay for any and all fees in regards to this. Please let me know to whom and to what address I should send the bill.

Sincerely,

Michael S. Calloway
514 King Street
Laurel, DE 19956
302-875-5378
Acct # 88037954

May 4, 2006


Mr. Keith Anderson, President
Green Tree Services
1400 Turbine Drive
Rapid City, SD 57709

Dear Mr. Anderson:

I wrote on April 17, 2006, requesting information on account number 88037954. I received a call from Jill in the late afternoon of April 26, 2006. She told me she is still investigating this account. She also assured me that I would be getting the information I requested. As of this date I have not received any documents except another change to the 1099-INT that I was told prior to April 15, 2006, was absolutely right. Your accounting department cannot get anything right or are they so busy trying to hide all the mistakes made in this account and I would venture to say in many others. If you have made mistakes in my mortgage, I am sure you have made them in other accounts.

I have spoken with an attorney concerning this matter but I would rather not have to use one unless necessary. At this point you are making it very difficult to continue without a lawsuit. It is your decision.

Sincerely,

Michael S. Calloway
514 King Street
Laurel, DE 19956

**Michael S. Calloway**
514 King Street
Laurel, DE 19956

Sept. 2, 2006

Keith Anderson, President
Green Tree Services
1400 Turbine Drive
Rapid City, SD 57709

Account # 88037954

Mr. Anderson:

This letter is in reference to the mail that I received today from the following address:

Green Tree Insurance Agency, Inc.
P. O. Box 6172
Rapid City, SD 57709-6172

Apparently someone from the above address took it upon their self to purchase a Residential Property Policy (Policy Number MSP 6014732 00) from the following company:

American Security Insurance Company
P. O. Box 50355
Atlanta, GA 30302

I do not know who purchased this policy or who gave them the authorization to but it was not me. Therefore, I would strongly recommend that someone cancel this policy or pay it themself because I will not be paying any money on this policy and no money had better not be taken from my monthly payments.

I have homeowner insurance on my property and personal items that has been in effect since before Green Tree became the insured- mortgagee. It has been the same (State Farm) who also handles my autos. It has not changed. Green Tree is named as primary insured-mortgagee.

I have sent this information to Green Tree numerous times, plus State Farm has talked with and sent documentation numerous times. Apparently this is another fine example of the record keeping ability that your company has. Green Tree has been informed at different times that if they need to verify this information that they should contact State Farm.

Also I am advising you that this will be handed over to our attorney who is currently investigating the fraudulent business dealings that Green Tree has pushed on us for the last ten

(10) years. This is just another fine example on how you run your business. It is frightening to think that what has been discovered so far on our account you are probably doing the same to thousands of other accounts.

It also would be nice to get a response from you or Green Tree but history proves differently. Therefore you can add this to the rest of the documentation that you have. That's right, Green Tree doesn't have any documentation. Hey, but I do. I have ten (10) years of "complete" documentation.

By the way, I have written to you numerous times about different discrepancies but as I have stated above, you do not respond back. One time you did have someone contact us, which only proved that we were right. According to the Forensic Accountant that I am currently discussing this account with, this account is not only being mishandled but is in violation of Federal Law. Don't insult me further by having someone who does not have the authority to make decisions concerning this account contact me. You can contact me at the above address or your attorneys can contact my attorney Ms. Maggie Clausell, Dover, Delaware.

Sincerely,

Michael S. Calloway

cc:   Ms. Maggie Clausell

# Fax

| | |
|---|---|
| Name: | GreenTree |
| Fax: | 605-388-7710 |
| | |
| From: | Michael/Catherine Calloway |
| Date: | November 9, 2006 |
| Subject: | Account 880379540 |
| Pages: | 1 |

# SECOND FAX

I received a payoff with $8519.87 in deferred interest fees on it. I would like a complete and detailed breakdown of this figure immediately. When I called about this I was told to fax my request to this number and I would get a responds in 24-48 hours. The first fax was sent November 6, 2006. I have a forensic accountant waiting for this information. Any delays reflect GeenTrees' unwillingness to cooperate in this process. I will expect a fax to 302-875-5378 by the end of Friday November 10, 2006, with the detailed breakdown. If you have a problem with this I can be reached at 302-875-7561.

Thank you,

Cathy Calloway
514 King Street
Laurel, DE 19956

cc: Mr. Keith Anderson, CEO

From the desk of...
Michael S. Calloway

Laurel, DE 19956

August 13, 2007

Green Tree
PO Box 6172
Rapid City, SD 57709-6172

    RE:   Acct. # 880379540

Dear Customer Service:

Please apply all the monthly payments from November 14, 1996, through June 14, 1997, to this account immediately.

Thank you,

*Michael S. Calloway*

Michael S. Calloway

January 17, 2008

Mr. Keith Anderson
1400 Turbine Dr.
Rapid City, SD 57709

Dear Mr. Anderson:

We are enclosing the third fax we have sent to your customer service since January 3, 2008.
They did send us various papers to 2004 when we asked for a complete history from October
1996 to the present.  We do not know how to make it any more clearer.

Please instruct your staff.

Sincerely,

*Michael J. Calloway*

*Catherine Calloway*

Michael and Catherine Calloway
514 King Street
Laurel, DE 19956

encl

# Fax



| | |
|---|---|
| **Name:** | Greentree |
| **Fax:** | 1-866-870-9919 |
| **Phone:** | 1-800-330-5183 |
| **From:** | Michael and Catherine Calloway |
| **Date:** | January 3, 2008 |
| **Subject:** | Account #880379540 |
| **Pages:** | 1 |

Customer Service:

I would like a complete history of where every dime of my money has gone from November 1996 to the present. I want this information in detail and complete including but not limited to principal, interest, late fees, corporate advance balances and what they mean, insurance, additional charges and what they mean.

Also, after having received more than twenty phone calls from your collections department yesterday, I am putting in writing to you to not call any family, neighbors, employment regarding us or this loan. If you have any further questions please refer them to me or to my attorney, Ms Maggie Clausell at 1-302-678-7644.

Thank you,

*Catherine Calloway*

Michael and Catherine Calloway

From the desk of...
Michael S. Calloway
514 King Street
Laurel, DE 19956

# Fax

| | |
|---|---|
| Name: | Greentree |
| Fax: | 1-866-870-9919 |
| Phone: | 1-800-330-5183 |
| From: | Michael and Catherine Calloway |
| Date: | January 17, 2008 |
| Subject: | Account #880379540 |
| Pages: | 1 |

## THIRD REQUEST

Customer Service:

I would like a complete history of where every dime of my money has gone from November 1996 to the present. IN case you do not understand what the present means, it means through today's date or whatever date you run the history. I want this information in detail and complete including but not limited to principal, interest, late fees, corporate advance balances and what they mean, insurance, additional charges and what they mean.

Thank you,

*Michael S Calloway*
*Catheryn Calloway*
Michael and Catherine Calloway

cc: Mr. Keith Anderson, CEO

From the desk of...
Michael S. Calloway
514 King Street
Laurel, DE 19956

# EXHIBIT E

GREEN TREE SERVICING LLC
345 SAINT PETER STREET - 1,800
SAINT PAUL, MN 55102
1-800-643-0202

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

[X] CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | |
|---|---|---|---|
| GREEN TREE SERVICING LLC 345 SAINT PETER STREET - L800 SAINT PAUL, MN 55102 1-800-643-0202 | | **2005** Form 1098 | **Mortgage Interest Statement** |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s)* | Copy B |
|---|---|---|---|
| 41-1795868 | 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 | $7,816.71 | **For Payer** |

2 Points paid on purchase of principal residence (See Box 2 below.)

The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

PAYER'S/BORROWER'S name, street address, city, state, and ZIP code

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

3 Refund of overpaid interest (See Box 3 below.)

4

Account number (see instructions)

88037964

Form 1098                          (keep for your records)          Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

Account number. May show an account or other unique number the payer has assigned to distinguish your account.

Box 1. Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are

deductible by you only in certain circumstances. Caution: If you prepaid interest in 2005 that accrued in full by January 15, 2006, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2005 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 2 may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

Box 3. Do not deduct this amount. It is a refund (or credit for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2005 Form 1040. No adjustment to your prior year tax is required. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

Box 4. The interest recipient may use this box to give you other information, such as the address of the property that secured the debt, real estate taxes, or insurance paid from escrow.

GREEN TREE SERVICING LLC
345 SAINT PETER STREET, L800
SAINT PAUL, MN 55102
1-800-643-0202

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

| | | |
|---|---|---|
| [X] CORRECTED (if checked) | | |
| RECIPIENT'S/LENDER'S name, address, and telephone number<br>GREEN TREE SERVICING LLC<br>345 SAINT PETER STREET, L800<br>SAINT PAUL, MN 55102<br>1-800-643-0202 | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901<br>**2005**<br>Form 1098<br>**Mortgage Interest Statement** |
| | | Copy B<br>For Payer |
| RECIPIENT'S federal identification no. **41-1795968** | PAYER'S social security number **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** | 1 Mortgage interest received from payer(s)/borrower(s)* **$7,433.70** | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code<br>MICHAEL CALLOWAY<br>CATHERINE CALLOWAY<br>514 KING STREET<br>LAUREL, DE 19956 | 2 Points paid on purchase of principal residence (See Box 2 below.) | Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an |
| | 3 Refund of overpaid interest (See Box 3 below.) | underpayment of tax results because you overstated a deduction for this mortgage |
| | 4 | interest or for these points or because you did not report this refund of interest on your return. |
| Account number (see instructions)<br>88037954 | | |
| Form 1098 | (keep for your records) | Department of the Treasury - Internal Revenue Service |

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

**Account number.** May show an account or other unique number the payer has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, governmental subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2005 that accrued in full by January 15, 2006, this prepaid amount may be included in box 1. However, you cannot deduct the prepaid amount in 2006 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 2 may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2005 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

GREEN TREE SERVICING LLC
345 SAINT PETER STREET- L800
SAINT PAUL, MN 55102
1-800-643-0202

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

| | CORRECTED (if checked) | | |
|---|---|---|---|
| RECIPIENT'S/LENDER'S name, address, and telephone number<br>GREEN TREE SERVICING LLC<br>345 SAINT PETER STREET- L800<br>SAINT PAUL, MN 55102<br>1-800-643-0202 | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901<br><br>**2005**<br><br>Form 1098 | **Mortgage Interest Statement** |
| RECIPIENT'S Federal identification no.<br>41-1795888 | PAYER'S social security number<br>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 | 1 Mortgage interest received from payer(s)/borrower(s)*<br>$7,433.70 | **Copy B**<br>**For Payer**<br>The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code<br>MICHAEL CALLOWAY<br>CATHERINE CALLOWAY<br>514 KING STREET<br>LAUREL, DE 19956 | | 2 Points paid on purchase of principal residence (See Box 2 below.) | |
| | | 3 Refund of prepaid interest (See Box 3 below.) | |
| | | 4 | |
| Account number (see instructions)<br>88037954 | | (keep for your records) | Department of the Treasury - Internal Revenue Service |

Form 1098

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a governmental agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

Account number. May show an account or other unique number the payer has assigned to distinguish your account.

Box 1. Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are

deductible by you only in certain circumstances. Caution: If you prepaid interest in 2005 that accrued in full by January 15, 2006, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2005 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in box 2 may also be deductible. See Pub. 936, or Schedule A (Form 1040) instructions.

Box 3. Do not deduct this amount. It is a refund (or credit for overpayment(s)) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2005 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

Box 4. This interest recipient may use this box to give you other information, such as the balance of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

Green Tree Servicing LLC
345 St Peter Street MS TAX-A
SAINT PAUL, MN 55102-1641
800-330-6183

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

[X] CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | OMB No. 1545-0901 | | |
|---|---|---|---|
| Green Tree Servicing LLC<br>345 St Peter Street MS TAX-A<br>SAINT PAUL, MN 55102-1641<br>800-330-6183 | **2004**<br>Form **1098** | **Mortgage Interest Statement** | |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s) * | Copy B |
|---|---|---|---|
| 41-1795868 | 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 | $10,101.39 | For Payer |

* Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.

This information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

PAYER'S/BORROWER'S name, street address, city, state, and ZIP code

MICHAEL CALLOWAY
CATHERINE CALLOWAY
514 KING STREET
LAUREL, DE 19956

2 Points paid on purchase of principal residence (See Box 2 below)

3 Refund of overpaid interest (See Box 3 below)

4

Account number (optional)
0000000000700107318

(keep for your records)

Form **1098**                 Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

Box 1. Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. Total amount does not include points, government subsidy payments, or seller payments on a "buy down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2004, that accrued in full by January 15, 2005, this prepaid amount may be included in box 1. However, you cannot deduct the prepaid amount in 2004 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home

equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately) or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

Box 3. Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2004 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

Box 4. The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

+ 000339G0 00001708G 0Y6749 0Y37901 01252N103
MICHAEL CALLOWAY
514 KING STREET
LAUREL DE 19956-1564

SCO104-000  B

## Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2004 that accrued in full by January 15, 2005, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2004 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the

mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately), or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2004 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as real estate taxes or insurance paid from escrow.

☐ **CORRECTED (if checked)**

| RECIPIENT'S/LENDER'S name, address, and telephone number | Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | Mortgage Interest Statement |
|---|---|---|---|
| Green Tree Servicing LLC<br>PO Box 6076<br>Rapid City, SD  57709-6076<br>1-800-390-5183 | | **2004**<br>Form **1098** | |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s)* | Copy B For Payer |
|---|---|---|---|
| 41-1795988 | 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 | $  13,830.13 | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for those points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address (including apt. no.), city, state, and Zip code | | 2 Points paid on purchase of principal residence (See Box 2 on back) | |
| | | $ | |
| MICHAEL CALLOWAY<br>514 KING STREET<br>LAUREL DE 19956-1564 | | 3 Refund of overpaid interest (See Box 3 on back) | |
| | | $ | |
| | | 4 | |
| | | $ | |
| | Account number (optional) | 6700107318 | |

Form **1098**                    (Keep for your records)                    Department of the Treasury - Internal Revenue Service

## Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year, must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction. for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3. If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

Box 1. Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2003 that accrued in full by January 15, 2004, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2003 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the

mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately), or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

Box 2. Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

Box 3. Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include the total amount shown in box 3 on the "Other income" line of your 2003 Form 1040. However, do not report the refund as income if you did not itemize deductions on the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

Box 4. The interest recipient may use this box to give you other information, such as real estate taxes or insurance paid from escrow.

Pg 2 of 2                                                                                 CI SC0111-000

☐ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution. The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | Mortgage Interest Statement |
|---|---|---|---|
| Green Tree<br>345 St. Peter Street TAX-A<br>St. Paul MN 55102-1641<br>1-800-330-5163 | | 2003<br>Form 1098 | |
| | 1 Mortgage interest received from payers/borrowers* | | Copy B<br>For Payer |
| RECIPIENT'S Federal identification no. | PAYER'S social security number | $ 8,725.26 | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal |
| 41-1795868 | 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 | 2 Points paid on purchase of principal residence (See Box 2 on back) | Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that |
| PAYER'S/BORROWER'S name, street address (including apt. no.), city, state, and zip code | | $ | an underpayment of tax results because you overstated a deduction for |
| MICHAEL S CALLOWAY<br>CATHERINE L CALLOWAY<br>614 KING STREET<br>LAUREL DE 19956-1564 | | 3 Refund of overpaid interest (See Box 3 on back) | this mortgage interest or for these points or because you did not report the refund of interest on your return. |
| | | $ | |
| | | 4 | |
| | Account number (optional) | | |
| | 6700107010 | | |
| (Keep for your records.) | | | Department of the Treasury - Internal Revenue Service |

Green Tree Servicing LLC
345 St Peter Street MS TAX-A
SAINT PAUL, MN 55102-1641
800-330-5183

CALLOWAY MICHAEL S
CALLOWAY CATHERINE L
514 KING STREET
LAUREL, DE 19956

| | | |
|---|---|---|
| | [X] CORRECTED (if checked) | |

| RECIPIENT'S/LENDER'S name, address, and telephone number | * Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | 2003 Form 1098 | Mortgage Interest Statement |
|---|---|---|---|---|
| Green Tree Servicing LLC<br>345 St Peter Street MS TAX-A<br>SAINT PAUL, MN 55102-1641<br>800-330-5183 | | | | |

| RECIPIENT'S Federal identification no. | PAYER'S social security number | 1 Mortgage interest received from payer(s)/borrower(s)* | 96,971.41 | Copy B For Payer |
|---|---|---|---|---|
| 41-1795868 | 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 | | | The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return. |
| PAYER'S/BORROWER'S name, street address, city, state, and ZIP code | | 2 Points paid on purchase of principal residence (See Box 2 below.) | | |
| CALLOWAY MICHAEL S<br>CALLOWAY CATHERINE L<br>514 KING STREET<br>LAUREL, DE 19956 | | 3 Refund of overpaid interest (See Box 3 below.) | | |
| | | 4 | | |

| Account number (optional) | | | |
|---|---|---|---|
| 00000000000700107318 | | | |

Form 1098                    (keep for your records)                    Department of the Treasury - Internal Revenue Service

## 1098 Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by that seller that represent his or her share of the amount allowable as a deduction for mortgage interest and points. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2003 that accrued in full by January 15, 2004, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2003 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home

equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation. For example, if a home equity loan exceeds $100,000 ($50,000 if married filing separately) or, together with other home loans, exceeds the fair market value of your home (such as in a high loan-to-value loan), your interest deduction may be limited. For more information, see Pub. 936, Home Mortgage Interest Deduction.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must contract seller paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, include this total amount shown in box 3 on the "Other income" line of your 2003 Form 1040. However, do not report the refund as income if you did not itemize deductions in the year(s) you paid the interest. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Page 1 of 1

EXHIBIT F

88037954 AMORTIZATION SCHEDULE

| Month | Interest Rate | Payment Amount | Interest | Principal | Curtailment | Curtailment Date | New Balance |
|---|---|---|---|---|---|---|---|
| 6/14/97 | 10.9500% | $1,285.98 | $1,130.03 | $155.95 | | | $123,683.23 |
| 7/14/97 | 10.9500% | $1,285.98 | $1,128.61 | $157.37 | | | $123,525.86 |
| 8/14/97 | 10.9500% | $1,285.98 | $0.00 | $0.00 | | | $123,525.86 |
| 9/14/97 | 10.9500% | $1,285.98 | $0.00 | $0.00 | | | $123,525.86 |
| 10/14/97 | 10.9500% | $1,285.98 | $0.00. | $0.00 | | | $123,525.86 |
| 11/14/97 | 10.9500% | $1,285.98 | $1,127.57 | $158.41 | $438.39 | 11/17/1997 | $122,929.06 |
| 12/14/97 | 10.9500% | $1,285.98 | $1,121.78 | $164.20 | $14.02 | 12/26/1997 | $122,750.84 |
| Partial 1997 interest | | | $4,507.99 | | | | |
| No history available prior to June 1997.  Interest reported was $10,182.91 | | | | | | | |
| | | | | | | | |
| 1/14/98 | 10.9500% | $1,285.98 | $1,120.10 | $165.88 | | | $122,584.96 |
| 2/14/98 | 10.9500% | $1,285.98 | $14.02 | $0.00 | | | $122,584.96 |
| 3/14/98 | 10.9500% | $1,285.98 | $0.00 | $0.00 | | | $122,584.96 |
| 4/14/98 | 3.0210% | $707.28 | $308.61 | $398.67 | | | $122,186.29 |
| 5/14/98 | 3.0210% | $707.28 | $307.59 | $399.69 | $15.00 | 5/2/1998 | $121,771.60 |
| 6/14/98 | 3.0210% | $707.28 | $306.54 | $400.74 | $15.00 | 6/1/1998 | $121,355.86 |
| 7/14/98 | 3.0210% | $707.28 | $305.51 | $401.77 | | | $120,954.09 |
| 8/14/98 | 3.0210% | $707.28 | $304.50 | $402.78 | | | $120,551.31 |
| 9/14/98 | 3.0210% | $707.28 | $303.49 | $403.79 | | | $120,147.52 |
| 10/14/98 | 10.9500% | $1,285.98 | $1,096.35 | $189.63 | | | $119,957.89 |
| 11/14/98 | 10.9500% | $1,285.98 | $1,094.62 | $191.36 | | | $119,766.53 |
| 12/14/98 | | | $6.00 | | | | |
| 1998 Interest | | | $5,167.33 | | | | |
| | | | | | | | |
| 12/14/98 | 10.9500% | $1,285.98 | $1,092.87 | $193.11 | | | $119,573.42 |
| | | | | | | | |
| 12/14/98 | | | $1,086.87 | | | | |
| 1/14/99 | 10.9500% | $1,285.98 | $1,091.11 | $194.87 | | | $119,378.55 |
| 2/14/99 | 10.9500% | $1,285.98 | $1,089.33 | $196.65 | | | $119,181.90 |
| 3/14/99 | 10.9500% | $1,285.98 | $1,087.53 | $198.45 | | | $118,983.45 |
| 4/14/99 | 10.9500% | $1,285.98 | $12.02 | $0.00 | | | $118,983.45 |
| 5/14/99 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $118,983.45 |
| 6/14/99 | 8.5000% | $1,086.27 | $842.80 | $243.47 | | | $118,739.98 |
| 7/14/99 | 8.5000% | $1,086.27 | $841.07 | $245.20 | | | $118,494.78 |
| 8/14/99 | 8.5000% | $1,086.27 | $839.34 | $246.93 | | | $118,247.85 |
| 9/14/99 | 8.5000% | $1,086.27 | $837.59 | $248.68 | | | $117,999.17 |
| 10/14/99 | 8.5000% | $1,086.27 | $835.83 | $250.44 | | | $117,748.73 |
| 11/14/99 | 8.5000% | $1,086.27 | $834.05 | $252.22 | | | $117,496.51 |
| 12/14/99 | | | $3.46 | | | | |
| 1999 Interest | | | $9,401.00 | | | | |
| | | | | | | | |
| 12/14/99 | 8.5000% | $1,086.27 | $832.27 | $254.00 | | | $117,242.51 |
| | | | | | | | |
| 12/14/99 | | | $828.81 | | | | |
| 1/14/00 | 8.5000% | $1,086.27 | $830.47 | $255.80 | | | $116,986.71 |
| 2/14/00 | 8.5000% | $1,086.27 | $828.66 | $257.61 | | | $116,729.10 |
| 3/14/00 | 8.5000% | $1,086.27 | $826.83 | $259.44 | | | $116,469.66 |
| 4/14/00 | 8.5000% | $1,086.27 | $824.99 | $261.28 | | | $116,208.38 |
| 5/14/00 | 8.5000% | $1,086.27 | $823.14 | $263.13 | | | $115,945.25 |
| 6/14/00 | 8.5000% | $1,086.27 | $821.28 | $264.99 | | | $115,680.26 |
| 7/14/00 | 8.5000% | $1,086.27 | $819.40 | $266.87 | | | $115,413.39 |
| 8/14/00 | 8.5000% | $1,086.27 | $817.51 | $268.76 | | | $115,144.63 |

88037954 AMORTIZATION SCHEDULE

| Month | Interest Rate | Payment Amount | Interest | Principal | Curtailment | Curtailment Date | New Balance |
|---|---|---|---|---|---|---|---|
| 9/14/00 | 8.5000% | $1,086.27 | $815.61 | $270.66 | | | $114,873.97 |
| 10/14/00 | 8.5000% | $1,086.27 | $813.69 | $272.58 | | | $114,601.39 |
| 11/14/00 | 8.5000% | $1,086.27 | $811.76 | $274.51 | | | $114,326.88 |
| 12/14/00 | | | $6.00 | | | | |
| | | | $9,868.15 | | | | |
| | | | | | | | |
| 12/14/00 | 8.5000% | $1,086.27 | $809.82 | $276.45 | | | $114,050.43 |
| | | | | | | | |
| 12/14/00 | | | $803.82 | | | | |
| 1/14/01 | 8.5000% | $1,086.27 | $807.86 | $278.41 | | | $113,772.02 |
| 2/14/01 | 8.5000% | $1,086.27 | $805.89 | $280.38 | | | $113,491.64 |
| 3/14/01 | 8.5000% | $1,086.27 | $803.90 | $282.37 | | | $113,209.27 |
| 4/14/01 | 8.5000% | $1,086.27 | $108.00 | $0.00 | | | $113,209.27 |
| 5/14/01 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $113,209.27 |
| 6/14/01 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $113,209.27 |
| 7/14/01 | 6.1660% | $597.44 | $581.71 | $15.73 | | | $113,193.54 |
| 8/14/01 | 6.1666% | $597.44 | $581.63 | $15.81 | | | $113,177.73 |
| 9/14/01 | 8.5000% | $1,086.27 | $801.68 | $284.59 | | | $112,893.14 |
| 10/14/01 | 8.5000% | $1,086.27 | $799.66 | $286.61 | | | $112,606.53 |
| 11/14/01 | 8.5000% | $1,086.27 | $797.63 | $288.64 | | | $112,317.89 |
| 2001 Interest | | | $6,891.78 | | | | |
| | | | | | | | |
| 12/14/01 | 8.5000% | $1,086.27 | $795.59 | $290.68 | | | $112,027.21 |
| 1/14/02 | 8.5000% | $1,086.27 | $793.53 | $292.74 | | | $111,734.47 |
| 2/14/02 | 8.5000% | $1,086.27 | $13.73 | $0.00 | | | $111,734.47 |
| 3/14/02 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $111,734.47 |
| 4/14/02 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $111,734.47 |
| 5/14/02 | 8.5000% | $1,086.27 | $791.45 | $294.82 | | | $111,439.65 |
| 6/14/02 | 8.5000% | $1,086.27 | $789.36 | $296.91 | | | $111,142.74 |
| 7/14/02 | 8.5000% | $1,086.27 | $163.00 | $0.00 | | | $111,142.74 |
| 8/14/02 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $111,142.74 |
| 9/14/02 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $111,142.74 |
| 10/14/02 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $111,142.74 |
| 11/14/02 | 6.1770% | $597.49 | $572.11 | $25.38 | | | $111,117.36 |
| 12/14/02 | 6.1770% | $597.49 | $571.98 | $25.51 | | | $111,091.85 |
| 2002 Interest | | | $4,490.75 | | | | |
| | | | | | | | |
| 1/14/03 | 6.1770% | $597.49 | $571.85 | $25.64 | | | $111,066.21 |
| 2/14/03 | 6.1770% | $597.49 | $571.71 | $25.78 | | | $111,040.43 |
| 3/14/03 | 6.1770% | $597.49 | $571.58 | $25.91 | | | $111,014.52 |
| 4/14/03 | 6.1770% | $597.49 | $571.45 | $26.04 | | | $110,988.48 |
| 5/14/03 | 8.5000% | $1,086.27 | $786.17 | $300.10 | | | $110,688.38 |
| 6/14/03 | 8.5000% | $1,086.27 | $784.04 | $302.23 | | | $110,386.15 |
| 7/14/03 | 8.5000% | $1,086.27 | $781.90 | $304.37 | | | $110,081.78 |
| 8/14/03 | 8.5000% | $1,086.27 | $779.75 | $306.52 | | | $109,775.26 |
| 9/14/03 | 8.5000% | $1,086.27 | $0.00 | $0.00 | | | $109,775.26 |
| 10/14/03 | 8.5000% | $1,086.27 | $777.57 | $308.70 | | | $109,466.56 |
| 11/14/03 | 8.5000% | $1,086.27 | $775.39 | $310.88 | | | $109,155.68 |
| 2003 Interest | | | $6,971.41 | | | | |
| | | | | | | | |
| 12/14/03 | 8.5000% | $1,086.27 | $773.19 | $313.08 | | | $108,842.60 |
| 1/14/04 | 8.5000% | $1,086.27 | $770.97 | $315.30 | | | $108,527.30 |
| 2/14/04 | 8.5000% | $1,086.27 | $768.74 | $317.53 | | | $108,209.77 |

| Month | Interest Rate | Payment Amount | Interest | Principal | Curtailment | Curtailment Date | New Balance |
|---|---|---|---|---|---|---|---|
| 3/14/04 | 8.5000% | $1,086.27 | $766.49 | $319.78 | | | |
| 4/14/04 | 8.5000% | $1,086.27 | $764.22 | $322.05 | | | $107,889.99 |
| 5/14/04 | 8.5000% | $1,086.27 | $761.94 | $324.33 | | | $107,567.94 |
| 6/14/04 | 8.5000% | $1,086.27 | $759.64 | $326.63 | | | $107,243.61 |
| 7/14/04 | 8.5000% | $1,086.27 | $757.33 | $328.94 | | | $106,916.98 |
| 8/14/04 | 8.5000% | $1,086.27 | $755.00 | $331.27 | | | $106,588.04 |
| 9/14/04 | 8.5000% | $1,086.27 | $752.65 | $333.62 | | | $106,256.77 |
| 10/14/04 | 8.5000% | $1,086.27 | $750.29 | $335.98 | | | $105,923.15 |
| 11/14/04 | 8.5000% | $1,086.27 | $747.91 | $338.36 | | | $105,587.17 |
| 12/14/04 | 8.5000% | $1,086.27 | $745.56 | $340.71 | $13.73 | 12/28/2004 | $105,248.81 |
| | | | $227.46 | | | | $104,894.37 |
| 2004 Interest | | | $10,101.39 | | | | |
| 1/14/05 | 8.5000% | $1,086.27 | $743.00 | $343.27 | | | |
| | | | | | | | $104,551.10 |
| | | | $515.64 | | | | |
| 2/14/05 | 8.5000% | $1,086.27 | $740.57 | $345.70 | | | $104,205.40 |
| 3/14/05 | 8.5000% | $1,086.27 | $738.12 | $348.15 | | | $103,857.25 |
| 4/14/05 | 8.5000% | $1,086.27 | $735.66 | $350.61 | | | $103,506.64 |
| 5/14/05 | 8.5000% | $1,086.27 | $733.17 | $353.10 | | | $103,153.54 |
| 6/14/05 | 8.5000% | $1,086.27 | $730.67 | $355.60 | | | $102,797.94 |
| 7/14/05 | 8.5000% | $1,086.27 | $728.15 | $358.12 | | | $102,439.82 |
| 8/14/05 | 8.5000% | $1,086.27 | $725.62 | $360.65 | | | $102,079.17 |
| 9/14/05 | 8.5000% | $1,086.27 | $723.06 | $363.21 | | | $101,715.96 |
| 10/14/05 | 8.5000% | $1,086.27 | $720.49 | $365.78 | | | $101,350.18 |
| 11/14/05 | 8.5000% | $1,086.27 | $717.90 | $368.37 | | | $100,981.81 |
| 12/14/05 | | | $7.76 | | | | |
| 2005 Interest | | | $7,816.71 | | | | |
| 12/14/05 | 8.5000% | $1,086.27 | $715.29 | $370.98 | | | $100,610.83 |
| 12/14/05 | | | $707.53 | | | | |
| 1/14/06 | | | $712.66 | | | | |
| 2/14/06 | | | $710.01 | | | | |
| 3/14/06 | | | $707.35 | | | | |
| Partial 2006 interest | | | $2,837.55 | | | | |

| | Calculated | Reported | Variance |
|---|---|---|---|
| 97 Interest | 4,507.99 | 4,507.78 | 0.21 |
| 98 Interest | 5,167.33 | 7,612.89 | (2,445.56) |
| 99 Interest | 9,401.00 | 9,514.68 | (113.68) |
| 00 Interest | 9,868.15 | 10,094.84 | (226.69) |
| 01 Interest | 6,891.78 | 7,779.23 | (887.45) |
| 02 Interest | 4,490.75 | 5,603.90 | (1,113.15) |
| 03 Interest | 6,971.41 | 8,725.26 | (1,753.85) |
| 04 Interest | 10,101.39 | 13,930.13 | (3,828.74) |
| 05 YTD Int | 4,503.57 | 6,338.17 | (1,834.60) |
| TOTAL | 61,903.37 | 74,106.88 | (12,203.51) |

EXHIBIT G

# Michael S. Calloway
514 King Street
Laurel, DE 19956

Sept. 2, 2006

Keith Anderson, President
Green Tree Services
1400 Turbine Drive
Rapid City, SD 57709

Account # 88037954

Mr. Anderson:

This letter is in reference to the mail that I received today from the following address:

Green Tree Insurance Agency, Inc.
P. O. Box 6172
Rapid City, SD 57709-6172

Apparently someone from the above address took it upon their self to purchase a Residential Property Policy (Policy Number MSP 6014732 00) from the following company:

American Security Insurance Company
P. O. Box 50355
Atlanta, GA 30302

I do not know who purchased this policy or who gave them the authorization to but it was not me. Therefore, I would strongly recommend that someone cancel this policy or pay it themself because I will not be paying any money on this policy and no money had better not be taken from my monthly payments.

I have homeowner insurance on my property and personal items that has been in effect since before Green Tree became the insured- mortgagee. It has been the same (State Farm) who also handles my autos. It has not changed. Green Tree is named as primary insured-mortgagee.

I have sent this information to Green Tree numerous times, plus State Farm has talked with and sent documentation numerous times. Apparently this is another fine example of the record keeping ability that your company has. Green Tree has been informed at different times that if they need to verify this information that they should contact State Farm.

Also I am advising you that this will be handed over to our attorney who is currently investigating the fraudulent business dealings that Green Tree has pushed on us for the last ten

(10) years. This is just another fine example on how you run your business. It is frightening to think that what has been discovered so far on our account you are probably doing the same to thousands of other accounts.

It also would be nice to get a response from you or Green Tree but history proves differently. Therefore you can add this to the rest of the documentation that you have. That's right, Green Tree doesn't have any documentation. Hey, but I do. I have ten (10) years of "complete" documentation.

By the way, I have written to you numerous times about different discrepancies but as I have stated above, you do not respond back. One time you did have someone contact us, which only proved that we were right. According to the Forensic Accountant that I am currently discussing this account with, this account is not only being mishandled but is in violation of Federal Law. Don't insult me further by having someone who does not have the authority to make decisions concerning this account contact me. You can contact me at the above address or your attorneys can contact my attorney Ms. Maggie Clausell, Dover, Delaware.

Sincerely,


Michael S. Calloway

cc:   Ms. Maggie Clausell

GREEN TREE

Gree Tree Servicing LLC
Customer Service Division

PO Box 6172
Rapid City SD 57709-6172
Fax 605.388.7710

GTServicing.com

September 8, 2006

Michael S. Calloway
514 King St.
Laurel DE 19956

RE: Account Number 88037954

Dear Michael S. Calloway:

This letter is in response to correspondence addressed to Keith Anderson regarding the above referenced loan with Green Tree Servicing LLC* ("Green Tree"). Please be assured Green Tree takes your concerns very seriously, and is pleased to have this opportunity to respond.

Pursuant to the terms of the insurance requirements on your Note, the property must be insured for as long as it is financed. When no proof of insurance coverage is received, a lender's placed policy is added to the loan. Records indicate lender's placed insurance has been provided with effective dates of July 7, 2006 through July 7, 2007. The insurance payments are scheduled over a period of 9 months. The billing is $108.94 for a period of 8 months beginning with the October 14, 2006 payment and a final payment of $108.90 for the 9th month. You have the option of paying the insurance in full or as billed. To remove the lender's placed policy, we must receive proof of insurance from your insurance agent for the dates indicated.

We apologize if you feel your account has been handled in an improper manner. However, we are confident the information provided adequately resolves this matter. Should you require any additional assistance, please feel free to contact Customer Service at (800) 330-5183.

Sincerely,

Dawn DeHaai
Customer Service Correspondence Supervisor

/lfs

*Green Tree Servicing LLC includes: in Alabama, Green Tree-AL LLC; in Minnesota, Green Tree Loan Company; in Pennsylvania, Green Tree Consumer Discount Company; and in New York, Green Tree Credit LLC.

| Date | Amount | Code | Description | Amount | | Amount | | Amount |
|---|---|---|---|---|---|---|---|---|
| 1/3/2006 [1/06] | $0.00 | | | $373.36 | $0.00 | $18.86 | $0.00 | $0.00 |
| 1/31/2006 [1/06] | $1,100.00 | 112 | Pymt: Mellon | $0.00 | $0.00 | $894.05 | $0.00 | $0.00 |
| 1/31/2006 [2/06] | $0.00 | | | $376.00 | $0.00 | $29.95 | $0.00 | $0.00 |
| 2/27/2006 [2/06] | $694.05 | 112 | Pymt: Mellon | $0.00 | $0.00 | $880.32 | $0.00 | $0.00 |
| 2/27/2006 [3/06] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/28/2006 [3/06] | $1,086.27 | 112 | Pymt: Mellon | $364.94 | $0.00 | $707.60 | $0.00 | $0.00 |
| 4/3/2006 [3/06] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/3/2006 [4/06] | $1,086.27 | 112 | Pymt: Mellon | $367.88 | $0.00 | $704.66 | $0.00 | $0.00 |
| 5/3/2006 [4/06] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/3/2006 [5/06] | $1,086.27 | 112 | Pymt: Mellon | $370.58 | $0.00 | $701.96 | $0.00 | $0.00 |
| 6/3/2006 [5/06] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6/2/2006 [6/06] | $1,086.27 | 112 | Pymt: Mellon | $373.30 | $0.00 | $699.24 | $0.00 | $0.00 |
| 7/1/2006 [6/06] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7/1/2006 [7/06] | $1,086.27 | 112 | Pymt: Mellon | $376.04 | $0.00 | $696.50 | $0.00 | $0.00 |
| 8/4/2006 [7/06] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/4/2006 [8/06] | $1,086.27 | 112 | Pymt: Mellon | $378.80 | $0.00 | $693.74 | $0.00 | $0.00 |
| 8/24/2006 | ($980.42) | 211 | Disb: Insurance Only — Insurance Type: 10 | $0.00 | $0.00 | $0.00 | $0.00 | ($980.42) |
| 8/31/2006 [8/06] | $1,086.27 | 112 | Pymt: Mellon | $13.73 | $0.00 | $690.98 | $0.00 | $0.00 |
| 8/31/2006 [9/06] | $0.00 | | | $381.58 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9/30/2006 [9/06] | $1,086.27 | 112 | Pymt: Mellon | $13.73 | $0.00 | $690.96 | $0.00 | $0.00 |
| 9/30/2006 [10/06] | $0.00 | | | $384.38 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/3/2006 [10/06] | $1,086.27 | 112 | Pymt: Mellon | $0.00 | $0.00 | $698.16 | $0.00 | $0.00 |
| 11/8/2006 | $0.50 | 209 | Memo: Insurance Cancel — Insurance Type: 10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/8/2006 [11/06] | $13.73 | 101 | Pymt: Cash P&I Only | $13.73 | $0.00 | $0.00 | $0.00 | $13.73 |
| 11/8/2006 | $40.42 | 151 | Pymt: Ins Only-JE | $0.00 | $0.00 | $0.00 | $0.00 | $40.42 |
| 11/8/2006 | $0.00 | 150 | Pymt: Ins Only-Cash — Insurance Type: 10 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/30/2006 [11/06] | $926.27 | 112 | Pymt: Mellon | $387.20 | $0.00 | $685.34 | $0.00 | $926.27 |
| 11/30/2006 [12/06] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/29/2006 [12/06] | $1,086.27 | 112 | Pymt: Mellon | $390.04 | $0.00 | $682.50 | $0.00 | $0.00 |
| 12/29/2006 [1/07] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/3/2007 [1/07] | $1,086.27 | 112 | Pymt: Mellon | $392.90 | $0.00 | $679.84 | $0.00 | $0.00 |
| 2/3/2007 [2/07] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/3/2007 [2/07] | $1,086.27 | 112 | Pymt: Mellon | $395.78 | $0.00 | $676.76 | $0.00 | $0.00 |
| 3/3/2007 [3/07] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/2/2007 [3/07] | $1,086.27 | 112 | Pymt: Mellon | $398.68 | $0.00 | $673.86 | $0.00 | $0.00 |
| 4/2/2007 [4/07] | $0.00 | | | $13.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/3/2007 [4/07] | $1,086.27 | 112 | Pymt: Mellon | $401.61 | $0.00 | $670.93 | $0.00 | $0.00 |

Account History: 88037954  History For: All History

| Tran ID | Status | Trn Date | Due Pd | Back Dt | Trn Amt | Trn Code | Tran Desc | Prin Pd | Int Pd | Esc Pd | Late Pd | Other Pd |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1998/0715.001 | CONV | 7/10/1997 | 0 | 7/10/1997 | $125,000.00 | 200 | New Loan Setup | $125,000.00 | $0.00 | | | |
| 1997/0714.009 | CONV | 7/14/1997 | N | 7/14/1997 | $1,295.38 | 100 | Pymt, Cash | $155.96 | $1,130.00 | | | |
| 1997/0814.002 | CONV | 8/14/1997 | N | 8/14/1997 | $1,285.98 | 100 | Pymt, Cash | $157.37 | $1,128.61 | | | |
| 1997/0827.002 | CONV | 8/14/1997 | N | 8/14/1997 | $1,285.98 | 100 | Pymt, Cash | $157.37 | $1,128.61 | | | |
| 1997/0918.001 | CONV | 9/16/1997 | N | 9/16/1997 | $1,285.98 | 100 | Pymt, Cash | $157.37 | $1,128.61 | | | |
| 1997/1008.001 | CONV | 10/6/1997 | N | 10/6/1997 | $1,285.98 | 100 | Pymt, Cash | $158.81 | $1,127.17 | | | |
| 1997/1014.002 | CONV | 10/14/1997 | N | 10/14/1997 | $1,284.98 | 100 | Pymt, Cash | ($158.81) | ($1,127.17) | | | |
| 1997/1016.013 | CONV | 10/15/1997 | N | 10/15/1997 | $424.37 | 970 | Defer Interest | $0.00 | $424.37 | | | |
| 1997/1016.012 | CONV | 10/15/1997 | N | 10/15/1997 | $424.37 | 970 | Defer Interest | $0.00 | $424.37 | | | |
| 1997/1016.011 | CONV | 10/15/1997 | N | 10/15/1997 | $61.30 | 140 | Pymt, Esc Only-Cash | $0.00 | $0.00 | $64.30 | | |
| 1997/0709.008 | CONV | 10/15/1997 | N | 10/15/1997 | $64.29 | 140 | Pymt, Esc Only-Cash | $0.00 | $0.00 | $64.29 | | |
| 1997/0915.007 | CONV | 10/15/1997 | N | 10/15/1997 | $64.29 | 140 | Pymt, Esc Only-Cash | $0.00 | $0.00 | $64.29 | | |
| 1997/1016.008 | CONV | 10/15/1997 | N | 10/15/1997 | $64.29 | 140 | Pymt, Esc Only-Cash | $0.00 | $0.00 | $64.29 | | |
| 1997/1016.007 | CONV | 10/15/1997 | N | 10/15/1997 | $64.29 | 140 | Pymt, Esc Only-Cash | $0.00 | $0.00 | $64.29 | | |
| 1997/1117.002 | CONV | 11/17/1997 | N | 11/17/1997 | $86.01 | 100 | Pymt, Prin Only-Cash | $86.01 | $0.00 | | | |
| 1997/1117.001 | CONV | 11/17/1997 | N | 11/17/1997 | $433.33 | 100 | Pymt, Prin Only-Cash | $433.33 | $0.00 | | | |
| 1997/1226.002 | CONV | 12/26/1997 | N | 12/26/1997 | $1,285.98 | 100 | Pymt, Cash | $436.10 | $702.35 | | | |
| 1997/1226.001 | CONV | 12/26/1997 | N | 12/26/1997 | $14.02 | 100 | Pymt, Cash | $163.86 | $1,122.12 | | | |
| 1998/0203.003 | CONV | 2/3/1998 | N | 2/3/1998 | $14.02 | 100 | Pymt, Cash | $14.02 | $0.00 | | | |
| 1998/0203.002 | CONV | 2/3/1998 | N | 2/3/1998 | $165.63 | 100 | Pymt, Cash | $165.63 | $0.00 | | | |
| 1998/0224.001 | CONV | 2/24/1998 | N | 2/24/1998 | $1,285.98 | 100 | Pymt, Prin Only-Cash | $436.10 | $1,120.15 | | | |
| 1998/0228.002 | CONV | 2/24/1998 | N | 2/24/1998 | ($14.02) | 100 | Pymt, Cash | ($14.02) | $0.00 | | | |
| 1998/0228.001 | CONV | 2/24/1998 | N | 2/24/1998 | $1,285.98 | 100 | Pymt, Cash | $165.83 | $1,120.15 | | | |
| 1998/0226.004 | CONV | 2/26/1998 | N | 2/26/1998 | $7,285.98 | 120 | Pymt, Prin-Cash | $165.83 | $1,120.15 | | | |
| 1998/0226.003 | CONV | 2/26/1998 | N | 2/26/1998 | $14.92 | 131 | Interest Increase-JE | $0.00 | $80.09 | | | |
| 1998/0226.001 | CONV | 2/26/1998 | N | 2/26/1998 | $80.09 | 120 | Pymt, Cash | $165.83 | $1,120.15 | | | |
| 1998/0309.002 | CONV | 3/2/1998 | N | 3/2/1998 | $0.00 | 170 | Memo, Extension | $0.00 | $14.02 | | | |
| 1998/0309.001 | CONV | 3/2/1998 | N | 3/2/1998 | $670.23 | 931 | REV, Pymt Interest Only-JE | $0.00 | $670.23 | | | |
| 1998/0302.001 | CONV | 5/20/1998 | N | 5/20/1998 | $670.23 | 100 | Pymt, Cash | $0.00 | $670.23 | | | |
| 1998/0530.035 | CONV | 5/20/1998 | N | 5/20/1998 | $15.00 | 100 | Pymt, Cash | $15.00 | $0.00 | | | |
| 1998/0530.003 | CONV | 5/20/1998 | N | 5/20/1998 | $702.28 | 100 | Pymt, Cash | $0.00 | $707.28 | | | |
| 1998/0706.003 | CONV | 7/8/1998 | N | 7/8/1998 | $707.28 | 100 | Pymt, Cash | $0.00 | $707.28 | | | |
| 1998/0706.002 | CONV | 7/8/1998 | N | 7/8/1998 | $33.55 | 120 | Pymt, Prin Only-Cash | $0.00 | $707.28 | | | |
| 1998/0706.001 | CONV | 7/8/1998 | N | 7/8/1998 | ($4.00) | 100 | Pymt, Cash | $28.55 | $0.00 | | | |
| 1998/0710.005A | CONV | 7/10/1998 | N | 7/10/1998 | $16.00 | 701 | Disp, Insurance Only | $28.55 | $0.00 | | | |
| 1998/0710.005 | CONV | 7/10/1998 | N | 7/10/1998 | $16.00 | 211 | Disp, Insurance Only | $0.00 | $0.00 | | | |
| 1998/0710.004 | CONV | 7/10/1998 | N | 7/10/1998 | $23.55 | 100 | Pymt, Cash Fee, 15 | $0.00 | $0.00 | $23.55 | | |
| 1998/0710.003 | CONV | 7/10/1998 | N | 7/10/1998 | $5.00 | 100 | Pymt, Cash | $0.00 | $0.00 | | $15.00 | |
| 1998/0710.002 | CONV | 7/10/1998 | N | 7/10/1998 | $702.28 | 100 | Pymt, Cash | $0.00 | $707.28 | | | |
| 1998/0721.009 | CONV | 7/21/1998 | N | 7/21/1998 | $15.00 | 100 | Pymt, Cash | $0.00 | $0.00 | | | |
| 1998/0721.008 | CONV | 7/21/1998 | N | 7/21/1998 | $707.28 | 100 | Pymt, Prin Only-Cash | $0.00 | $707.28 | | | |
| 1998/0721.007 | CONV | 7/21/1998 | N | 7/21/1998 | ($36.55) | 100 | Pymt, Prin Only-Cash | ($36.55) | $0.00 | | | |
| 1998/0721.001 | CONV | 7/21/1998 | N | 7/21/1998 | ($22.55) | 100 | Pymt, Cash Fee, -15 | $0.00 | $0.00 | | ($23.55) | |
| 1998/0721.025 | CONV | 7/21/1998 | N | 7/10/1998 | ($3.00) | 100 | Pymt, Cash | $0.00 | ($3.00) | | | ($15.00) |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 19980721 004 CONV [N] | 7/21/1998 [N] | 7/20/1998 | 100 Pymt: Cash | ($707.28) | $0.00 | ($707.28) | |
| 19980721 003 CONV [N] | 7/21/1998 [N] | 7/10/1998 | 100 Pymt: Cash | $707.28 | $0.00 | $707.28 | |
| 19980721 002 CONV [N] | 7/10/1998 [N] | 7/10/1998 | 100 Pymt: Cash | $41.55 | $0.00 | $41.55 | |
| 19980727 001 CONV [N] | 7/27/1998 [N] | 7/27/1998 | 231 Interest Increase-JE | ($15.00) | $0.00 | $0.00 | $15.00 |
| 19980727 005 CONV [N] | 7/27/1998 [N] | 7/27/1998 | 211 Disb: Insurance Only | $15.00 | $0.00 | $0.00 | |
| 19980728 005 CONV [N] | 7/28/1998 [N] | 7/28/1998 | 100 Pymt: Cash Fee: 15 | $15.00 | $0.00 | $0.00 | |
| 19980728 004 CONV [N] | 7/28/1998 [N] | 7/28/1998 | 100 Pymt: Cash | $35.36 | $0.00 | $0.00 | $35.36 |
| 19980728 003 CONV [N] | 7/28/1998 [N] | 7/28/1998 | 100 Pymt: Cash | $35.36 | $0.00 | $0.00 | $35.36 |
| 19980728 002 CONV [N] | 7/28/1998 [N] | 7/28/1998 | 100 Pymt: Cash | $35.36 | $0.00 | $0.00 | $35.36 |
| 19980728 001 CONV [N] | 7/28/1998 [N] | 7/28/1998 | 100 Pymt: Cash | $658.73 | $0.00 | $658.73 | |
| 19980801 001 CONV [N] | 9/28/1998 [N] | 9/28/1998 | 100 Pymt: Cash | $707.28 | $0.00 | $707.28 | |
| 19980808 002 CONV [N] | 9/28/1998 [N] | 9/28/1998 | 106 Disb: Esc Only-Cash | $707.28 | $0.00 | $0.00 | |
| 19980808 001 CONV [N] | 9/28/1998 [N] | 9/28/1998 | 211 Disb: Insurance Only | $35.36 | $0.00 | $0.00 | $35.36 |
| 19980928 001 CONV [N] | 9/28/1998 [N] | 9/28/1998 | 100 Pymt: Cash | $35.36 | $0.00 | $0.00 | |
| 19981112 001 CONV [N] | 11/12/1998 [N] | 11/12/1998 | 231 Interest Increase Only | $3.00 | $0.00 | $0.00 | $3.00 |
| 19981113 002 CONV [N] | 11/13/1998 [N] | 11/13/1998 | 100 Pymt: Cash | $1,285.98 | $0.00 | $1,285.98 | |
| 19981113 001 CONV [N] | 11/13/1998 [N] | 11/13/1998 | 100 Pymt: Cash | $3.00 | $0.00 | $0.00 | |
| 19981127 005 CONV [N] | 11/27/1998 [N] | 11/27/1998 | 211 Disb: Insurance Only | $3.00 | $0.00 | $0.00 | |
| 19981127 002 CONV [N] | 11/27/1998 [N] | 11/27/1998 | 100 Pymt: Cash | $3.00 | $0.00 | $0.00 | |
| 19981127 001 CONV [N] | 12/7/1998 [N] | 12/7/1998 | 100 Pymt: Cash | $1,285.98 | $0.00 | $1,285.98 | |
| 19981217 003 CONV [N] | 12/17/1998 [N] | 12/17/1998 | 100 Pymt: Cash | ($3.00) | $0.00 | $0.00 | |
| 19981217 002 CONV [N] | 12/18/1998 [N] | 12/18/1998 | 100 Pymt: Cash | ($3.00) | $0.00 | $0.00 | |
| 19981228 003 CONV [N] | 12/18/1998 [N] | 12/18/1998 | 100 Pymt: Insurance Only | $0.00 | $0.00 | $0.00 | |
| 19981228 002 CONV [N] | 12/18/1998 [N] | 12/18/1998 | 100 Pymt: Cash | $1,262.98 | $0.00 | $1,262.98 | |
| 19981228 001 CONV [N] | 12/18/1998 [N] | 12/18/1998 | 211 Disb: Insurance Only | $0.05 | $0.00 | $0.00 | |
| 19981230 005 CONV [N] | 12/30/1998 [N] | 12/30/1998 | 100 Pymt: Cash | $3.00 | $0.00 | $0.00 | |
| 19981230 006 CONV [N] | 12/30/1998 [N] | 12/30/1998 | 100 Pymt: Cash | $3.00 | $0.00 | $0.00 | |
| 19990112 007 CONV [N] | 1/11/1999 [N] | 1/11/1999 | 100 Pymt: Cash | $1,259.98 | $0.00 | $1,279.98 | |
| 19990113 001 CONV [N] | 1/14/1999 [N] | 1/14/1999 | 231 Interest Increase-JE | ($507.91) | $507.91 | $507.91 | |
| 19990114 005 CONV [N] | 1/14/1999 [N] | 1/14/1999 | 100 Pymt: Cash | ($507.91) | $0.00 | ($507.91) | |
| 19990114 004 CONV [N] | 1/14/1999 [N] | 1/14/1999 | 100 Pymt: Cash Fee: -6 | ($6.00) | $0.00 | $0.00 | ($6.00) |
| 19990114 003 CONV [N] | 1/20/1999 [N] | 1/20/1999 | 100 Pymt: Cash | $1,279.98 | $0.00 | $1,279.98 | |
| 19990115 002 CONV [N] | 1/14/1999 [N] | 1/14/1999 | 531 REV: Pymt Interest Only-JE | $2,476.12 | $0.00 | $2,476.12 | |
| 19990116 001 CONV [N] | 1/16/1999 [N] | 1/16/1999 | 531 REV: Pymt Interest Only-JE | $164.75 | $0.00 | $164.75 | |
| 19990118 002 CONV [N] | 1/19/1999 [N] | 1/19/1999 | 221 Principal Increase-JE | ($170.74) | ($170.74) | $0.00 | |
| 19990125 001 CONV [N] | 1/25/1999 [N] | 1/25/1999 | 211 Disb: Insurance Only | $1,285.98 | $0.00 | $0.00 | |
| 19990126 002 CONV [N] | 1/25/1999 [N] | 1/25/1999 | 100 Pymt: Cash | $1,285.98 | $170.74 | $1,115.24 | |
| 19990126 001 CONV [N] | 1/26/1999 [N] | 1/26/1999 | 100 Pymt: Cash | ($7,285.98) | $0.00 | $0.00 | |
| 19990211 006 CONV [N] | 2/11/1999 [N] | 2/11/1999 | 100 Pymt: Cash | $53.00 | ($170.74) | ($58.00) | ($58.00) |
| 19990211 004 CONV [N] | 2/11/1999 [N] | 2/11/1999 | 100 Pymt: Cash | ($3.00) | $0.00 | $0.00 | |
| 19990211 002 CONV [N] | 2/11/1999 [N] | 2/11/1999 | 211 Disb: Insurance Only | $1,285.98 | $0.00 | $0.00 | |
| 19990211 001 CONV [N] | 3/21/1999 [N] | 3/21/1999 | 100 Pymt: Cash | $1,285.98 | $170.74 | $1,115.24 | |
| 19990329 002 CONV [N] | 3/21/1999 [N] | 3/21/1999 | 100 Pymt: Cash | $3.00 | $0.00 | $3.00 | |
| 19990329 001 CONV [N] | 3/21/1999 [N] | 3/21/1999 | 100 Pymt: Cash | $1,285.98 | $175.30 | $1,110.68 | |

| Account | Date [N] | Date | Amount | Type | | | |
|---|---|---|---|---|---|---|---|
| 1999C311 002 CONV | 3/11/1999 [N] | 3/11/1999 | $1,242.59 | 100 Pymt, Cash | $344.71 | $888.25 | |
| 1999C414 002 CONV | 9/17/1999 [N] | 9/17/1999 | $3.02 | 100 Pymt, Cash | $0.00 | $3.02 | |
| 1999C415 002 CONV | 4/14/1999 [N] | 4/14/1999 | $3.00 | 211 Disb, Insurance Only | $0.00 | $0.00 | |
| 1999C415 002 CONV | 4/15/1999 [N] | 4/16/1999 | $1,242.59 | 100 Pymt, Cash | $177.02 | $1,105.94 | |
| 1999C603 003 CONV | 6/24/1999 [N] | 6/24/1999 | $6.02 | 100 Pymt, Cash | $0.00 | $6.02 | |
| 1998C909 003 CONV | 6/23/1998 [N] | 6/23/1998 | $3.03 | 100 Pymt, Cash | $0.00 | $3.03 | |
| 1999C909 002 CONV | 6/23/1999 [N] | 6/23/1999 | $1,066.27 | 100 Pymt, Cash | $137.04 | $949.23 | |
| 1998C736 002 CONV | 7/29/1998 [N] | 7/29/1998 | $0.00 | 100 Pymt, Cash | $0.00 | $0.00 | |
| 1999C902 001 CONV | 9/27/1999 [N] | 9/27/1999 | $1,066.27 | 100 Pymt, Cash | $227.39 | $838.61 | |
| 1999C860 001 CONV | 9/27/1999 [N] | 9/27/1999 | $0.27 | 100 Pymt, Cash | $0.27 | $0.00 | |
| 1999C919 001 CONV | 10/13/1999 [N] | 10/13/1999 | $1,086.00 | 100 Pymt, Cash | $229.00 | $857.00 | |
| 1999C919 002 CONV | 10/13/1999 [N] | 10/13/1999 | $0.27 | 100 Pymt, Cash | $0.27 | $0.00 | |
| 1999C103 001 CONV | 10/19/1999 [N] | 10/19/1999 | $1,086.00 | 100 Pymt, Cash | $230.62 | $855.38 | |
| 1999C1028 001 CONV | 10/28/1999 [N] | 10/28/1999 | ($0.27) | 100 Pymt, Cash | ($0.27) | $0.00 | |
| 1999C103 002 CONV | 11/5/1999 [N] | 11/5/1999 | ($1,086.00) | 100 Pymt, Cash | ($230.62) | $855.38 | |
| 1999C116 001 CONV | 11/15/1999 [N] | 11/15/1999 | $0.27 | 100 Pymt, Cash | $0.27 | $855.38 | |
| 1999C1115 002 CONV | 11/15/1999 [N] | 11/15/1999 | $1,086.00 | 100 Pymt, Cash | $230.62 | $855.38 | |
| 1999C1207 001 CONV | 12/7/1999 [N] | 12/7/1999 | $0.27 | 100 Pymt, Cash | $0.27 | $853.74 | |
| 1999C1207 002 CONV | 12/7/1999 [N] | 12/7/1999 | $0.27 | 100 Pymt, Cash | $0.27 | $0.00 | |
| 1999C1215 001 CONV | 12/15/1999 [N] | 12/15/1999 | $544.73 | 100 Pymt, Cash | $0.00 | $544.73 | |
| 1999C1215 002 CONV | 12/15/1999 [N] | 12/14/1999 | $3.46 | 100 Pymt, Cash | $3.46 | $0.00 | |
| 2000C112 001 CONV | 1/12/2000 [N] | 1/12/2000 | $3.00 | 211 Disb, Insurance Only | $0.00 | $0.00 | |
| 2000C112 002 CONV | 1/12/2000 [N] | 11/22/2000 | $6.46 | 100 Pymt, Cash | $0.00 | $6.46 | |
| 2000C221 001 CONV | 2/17/2000 [N] | 2/17/2000 | $6.44 | 100 Pymt, Cash | $0.00 | $6.44 | |
| 2000C221 002 CONV | 2/21/2000 [N] | 2/21/2000 | $1,078.81 | 100 Pymt, Cash | $235.84 | $842.30 | |
| 2000C224 001 CONV | 2/24/2000 [N] | 2/24/2000 | $0.27 | 100 Pymt, Cash | $0.27 | $6.44 | |
| 2000C223 002 CONV | 2/23/2000 [N] | 2/23/2000 | $5.46 | 100 Pymt, Cash | $0.27 | $5.48 | |
| 2000C404 001 CONV | 4/4/2000 [N] | 4/4/2000 | $1,079.81 | 100 Pymt, Cash Fee $.46 | $237.51 | $842.30 | |
| 2000C530 002 CONV | 5/2/2000 [N] | 5/2/2000 | $1,086.27 | 100 Pymt, Cash | $240.69 | $845.62 | |
| 2000C530 002 CONV | 5/2/2000 [N] | 5/2/2000 | $0.27 | 100 Pymt, Cash | $240.69 | $845.62 | |
| 2000C613 001 CONV | 6/13/2000 [N] | 6/13/2000 | $3.27 | 100 Pymt, Cash | $242.59 | $843.68 | |
| 2000C613 002 CONV | 6/13/2000 [N] | 6/13/2000 | $3.00 | 211 Disb, Insurance Only | $0.00 | $0.00 | |
| 2000C603 001 CONV | 6/30/2000 [N] | 6/30/2000 | $1,088.27 | 100 Pymt, Cash | $244.51 | $835.90 | |
| 2000C630 002 CONV | 6/30/2000 [N] | 6/30/2000 | $3.00 | 100 Pymt, Cash | $3.00 | $3.00 | |
| 2000C630 001 CONV | 6/30/2000 [N] | 6/30/2000 | $0.07 | 100 Pymt, Cash | $248.04 | $834.23 | |
| 2000C731 005 CONV | 7/31/2000 [N] | 7/31/2000 | $0.00 | 100 Pymt, Cash | $0.00 | $0.00 | |
| 2000C731 001 CONV | 7/31/2000 [N] | 7/31/2000 | $1,093.27 | 100 Pymt, Cash | $247.70 | $835.49 | |
| 2000C966 002 CONV | 9/6/2000 [N] | 9/6/2000 | $0.27 | 211 Disb, Insurance Only | $0.00 | $8.00 | |
| 2000C966 001 CONV | 9/6/2000 [N] | 9/6/2000 | $1,090.27 | 100 Pymt, Cash | $249.54 | $830.73 | |
| 2000C1012 001 CONV | 10/12/2000 [N] | 10/12/2000 | $1,090.27 | 100 Pymt, Cash | $251.30 | $828.97 | |
| 2000C1012 001 CONV | 10/12/2000 [N] | 10/12/2000 | $6.00 | 100 Pymt, Cash | $0.00 | $6.00 | |

| Reference | Date | Date | Amount | Type | Amount | Balance | Fee |
|---|---|---|---|---|---|---|---|
| 2001027 001 CONV | 10/27/2000 [N] | 10/27/2000 | $1,080.27 | 100 Pymt. Cash | $243.08 | $827.10 | |
| 2001027 001 CONV | 10/27/2000 [N] | 10/27/2000 | $6.00 | 100 Pymt. Cash | $0.00 | $6.00 | |
| 2001213 001 CONV | 12/13/2000 [N] | 12/13/2000 | $1,080.27 | 100 Pymt. Cash | $854.48 | $28.30 | |
| 2001213 001 CONV | 12/13/2000 [N] | 12/13/2000 | $0.00 | 100 Pymt. Cash | $0.09 | $8.39 | |
| 2001011 002 CONV | 1/11/2001 [N] | 1/11/2001 | $1,080.27 | 100 Pymt. Cash | $256.68 | $823.59 | |
| 2001011 001 CONV | 1/11/2001 [N] | 1/11/2001 | $0.00 | 100 Pymt. Cash | $0.00 | $0.00 | |
| 2001210 003 CONV | 2/10/2001 [N] | 2/10/2001 | ($1,080.27) | 100 Pymt. Cash | ($256.68) | ($823.59) | |
| 2001216 002 CONV | 2/16/2001 [N] | 2/16/2001 | $36.00 | 113 Pymt. Western Union | $0.00 | $36.00 | |
| 2001216 002 CONV | 2/16/2001 [N] | 2/16/2001 | $1,080.27 | 113 Pymt. Western Union | $256.68 | $823.59 | |
| 2001216 001 CONV | 2/16/2001 [N] | 2/16/2001 | $1,080.27 | 113 Pymt. Western Union | $256.68 | $823.59 | |
| 2001314 002 CONV | 3/14/2001 [N] | 3/14/2001 | $1,080.27 | 100 Pymt. Cash | $260.33 | $819.94 | |
| 2001314 002 CONV | 3/14/2001 [N] | 3/14/2001 | $6.00 | 100 Pymt. Cash | $0.00 | $6.00 | |
| 2001314 002 CONV | 3/14/2001 [N] | 3/14/2001 | $6.00 | 100 Pymt. Cash | $0.00 | $6.00 | |
| 2001412 002 CONV | 4/12/2001 [N] | 4/12/2001 | $1,080.27 | 100 Pymt. Cash | $262.17 | $818.10 | |
| 2001412 001 CONV | 4/12/2001 [N] | 4/12/2001 | $0.00 | 100 Pymt. Cash | $0.00 | $0.00 | |
| 2001094 003 CONV | 5/4/2001 [N] | 5/4/2001 | $1,080.27 | 100 Pymt. Cash | ($262.17) | ($818.10) | |
| 2001094 003 CONV | 5/4/2001 [N] | 5/4/2001 | $60.00 | 100 Pymt. Cash | $0.00 | $60.00 | |
| 2001047 002 CONV | 5/4/2001 [N] | 5/4/2001 | $50.00 | 113 Pymt. Western Union | $0.00 | $50.00 | |
| 2001517 002 CONV | 5/17/2001 [N] | 5/17/2001 | $100.00 | 113 Pymt. Western Union | $0.00 | $100.00 | |
| 2001517 001 CONV | 5/17/2001 [N] | 5/17/2001 | $119.73 | 113 Pymt. Western Union | $0.00 | $119.73 | |
| 2001031 001 CONV | 5/31/2001 [N] | 5/31/2001 | $118.10 | 113 Pymt. Western Union | $0.00 | $118.10 | |
| 2001618 004 CONV | 6/18/2001 [N] | 6/18/2001 | $119.73 | 100 Pymt. Cash | ($262.17) | ($518.73) | |
| 2001618 003 CONV | 6/18/2001 [N] | 6/18/2001 | $118.10 | 113 Pymt. Western Union | $0.00 | $118.10 | |
| 2001618 004 CONV | 6/18/2001 [N] | 6/18/2001 | $108.00 | 113 Pymt. Western Union | $0.00 | $108.00 | |
| 2001618 003 CONV | 6/18/2001 [N] | 6/18/2001 | $108.00 | 113 Pymt. Western Union | $0.00 | $108.00 | |
| 2001618 001 CONV | 6/18/2001 [N] | 6/18/2001 | $998.98 | 100 Pymt. Cash | ($262.17) | $998.98 | |
| 2001826 002 CONV | 6/27/2001 [N] | 6/27/2001 | $110.73 | 180 Pymt. Interest Chrg-Cash | $282.17 | $110.73 | |
| 2001826 001 CONV | 8/28/2001 [N] | 8/28/2001 | $18.98 | 831 REV Pymt Interest Conv-IE | $0.00 | $998.98 | |
| 2001716 006 CONV | 7/16/2001 [N] | 7/16/2001 | $34.54 | 100 Pymt. Cash Fee .18.54 | $0.00 | $9.00 | $16.54 |
| 2001716 005 CONV | 7/16/2001 [N] | 7/16/2001 | $9.00 | 100 Pymt. Cash Fee .50 | $0.00 | $9.00 | $50.00 |
| 2001716 004 CONV | 7/16/2001 [N] | 7/16/2001 | $3.00 | 100 Pymt. Cash | $0.00 | $3.00 | |
| 2001716 003 CONV | 7/16/2001 [N] | 7/16/2001 | $3.00 | 100 Pymt. Cash | $0.00 | $3.00 | |
| 2001716 002 CONV | 7/16/2001 [N] | 7/16/2001 | $25.00 | 100 Pymt. Cash Fee .25 | $0.00 | $0.00 | $25.00 |
| 2001716 001 CONV | 7/16/2001 [N] | 7/16/2001 | $3.00 | 100 Pymt. Cash | $0.00 | $0.00 | |
| 2001716 002 CONV | 7/16/2001 [N] | 7/16/2001 | $2.19 | 100 Pymt. Cash | $9.96 | $9.96 | |
| 2001716 001 CONV | 7/6/2001 [N] | 7/6/2001 | $477.71 | 100 Pymt. Cash | $0.96 | $596.48 | |
| 2001927 001 CONV | 8/27/2001 [N] | 8/27/2001 | $597.44 | 100 Pymt. Cash | $0.98 | $596.27 | |
| 2001915 001 CONV | 9/15/2001 [N] | 9/15/2001 | $333.00 | 100 Pymt. Cash | $0.00 | $596.27 | |
| 2001922 004 CONV | 9/22/2001 [N] | 9/22/2001 | $560.00 | 40 Defer Interest | $27.00 | $0.00 | |
| 2001004 001 CONV | 10/2/2001 [N] | 10/2/2001 | $500.00 | 100 Pymt. Cash | $27.00 | $560.00 | |
| 2001067 001 CONV | 11/13/2001 [N] | 11/13/2001 | $556.27 | 100 Pymt. Cash | $57.30 | $584.97 | |
| 2001214 002 CONV | 12/14/2001 [N] | 12/14/2001 | $586.27 | 100 Pymt. Cash | $57.30 | $584.97 | |
| 2001222 001 CONV | 12/22/2001 [N] | 12/22/2001 | $600.00 | 100 Pymt. Cash | $27.45 | $472.45 | |
| 2002018 001 CONV | 1/28/2002 [N] | 1/28/2002 | $446.27 | 100 Pymt. Cash | $27.80 | $458.47 | |

| Account / Trans | Date | Amount | Description | | |
|---|---|---|---|---|---|
| 20020728 001 001 CONV [N] | 1/28/2002 | $13.73 | 100 Pymt. Cash | $0.00 | $13.73 |
| 20020828 002 CONV [N] | 2/28/2002 | $1,072.54 | 100 Pymt. Speedpay | $28.05 | $1,044.49 |
| 20020928 001 CONV [N] | 2/28/2002 | $13.73 | 100 Pymt. Speedpay | $0.00 | $13.73 |
| 20020928 002 CONV [N] | 3/28/2002 | $0.00 | 170 Memo- Extension | $0.00 | $0.00 |
| 20020401 001 CONV [N] | 4/1/2002 | $810.68 | 531 REV-Pymt Interest Only-JE | $0.00 | $525.70 |
| 20020404 001 CONV [N] | 5/4/2002 | $810.68 | 80 Defer Interest | $0.04 | $810.68 |
| 20020630 001 CONV [N] | 6/30/2002 | $275.66 | 100 Pymt. Cash | $28.47 | $247.19 |
| 20020830 001 CONV [N] | 8/31/2002 | $1,086.27 | 100 Pymt. Speedpay | $0.00 | $1,057.70 |
| 20020918 001 CONV [N] | 9/18/2002 | $163.00 | 100 Pymt. Speedpay | $0.00 | $0.00 |
| 20020920 001 CONV [N] | 9/20/2002 | $76.88 | 531 REV-Pymt Interest Only-JE | $0.00 | $76.88 |
| 20020920 002 CONV [N] | 9/20/2002 | $3,008.32 | 531 REV-Pymt Interest Only-JE | $0.00 | $0.00 |
| 20021127 001 CONV [N] | 11/27/2002 | $597.49 | 80 Defer Interest | $0.00 | $597.49 |
| 20021211 001 CONV [N] | 12/11/2002 | $597.49 | 100 Pymt. Cash | $0.00 | $995.51 |
| 20021230 001 CONV [N] | 12/30/2002 | $597.49 | 531 REV-Pymt Interest Only-JE | $0.00 | $597.43 |
| 20030215 001 CONV [N] | 2/21/2003 | $597.49 | 90 Pymt. Cash | $1.94 | $595.51 |
| 20030321 001 CONV [N] | 3/4/2003 | $597.49 | 90 Pymt. Cash | $0.99 | $596.55 |
| 20030320 001 CONV [N] | 3/28/2003 | $597.49 | 100 Pymt. Cash | $0.00 | $596.49 |
| 20030328 001 CONV [N] | 4/14/2003 | $597.49 | 100 Pymt. Cash | $1.00 | $597.49 |
| 20030414 001 CONV [N] | 4/14/2003 | $438.75 | 100 Pymt. Cash | $0.00 | $459.91 |
| 20030526 001 CONV [N] | 5/26/2003 | $597.49 | 120 Pymt. Cash | $28.87 | $459.91 |
| 20030626 001 CONV [N] | 6/30/2003 | $1,086.27 | 100 Pymt. Speedpay | $29.00 | $489.75 |
| 20030731 001 CONV [N] | 7/31/2003 | $1,058.33 | 100 Pymt. Cash | $29.31 | $366.55 |
| 20030828 001 CONV [N] | 8/28/2003 | $1,086.27 | 80 Defer Interest | $0.00 | $1,096.67 |
| 20030930 001 CONV [N] | 9/30/2003 | $1,086.27 | 100 Pymt. Cash | $0.00 | $0.00 |
| 20031031 001 CONV [N] | 10/31/2003 | $1,086.27 | 100 Pymt. Cash | $30.22 | $1,096.05 |
| 20031219 001 CONV [N] | 12/19/2003 | $1,086.27 | 100 Pymt. Cash | $30.49 | $1,055.78 |
| 20040103 001 CONV [N] | 1/3/2004 | $1,086.27 | 100 Pymt. Cash | $30.17 | $1,055.50 |
| 20040202 001 CONV [N] | 2/2/2004 | $1,086.27 | 100 Pymt. Cash | $31.00 | $1,055.22 |
| 20040301 001 CONV [N] | 3/1/2004 | $1,086.27 | 100 Pymt. Cash | $31.24 | $1,054.93 |
| 20040401 001 CONV [N] | 4/1/2004 | $1,086.27 | 100 Pymt. Cash | $31.62 | $1,054.65 |
| 20040504 001 CONV [N] | 6/4/2004 | $1,086.27 | 100 Pymt. Cash | $31.94 | $1,054.36 |
| 20040604 001 CONV [N] | 6/29/2004 | $1,086.27 | 100 Pymt. Cash | $32.19 | $1,054.07 |
| 20040729 001 CONV [N] | 7/6/2004 | $1,086.27 | 100 Pymt. Cash | $22.49 | $1,063.78 |
| 20040906 001 CONV [N] | 8/6/2004 | $1,086.27 | 100 Pymt. Cash | $32.73 | $1,063.48 |
| 20040906 001 CONV [N] | 9/3/2004 | $985.00 | 100 Pymt. Cash | $0.00 | $500.00 |
| 20040903 001 CONV [N] | 9/3/2004 | $113.73 | 100 Pymt. Cash | $33.89 | $463.18 |
| 20041029 003 CONV [N] | 10/29/2004 | $658.81 | 100 Pymt. Cash | $33.38 | $113.73 |
| 20041029 005 CONV [N] | 10/29/2004 | $27.46 | 100 Pymt. Cash | $33.33 | $828.47 |
| 20041202 001 CONV [N] | 12/2/2004 | $113.73 | 100 Pymt. Cash | $0.00 | $113.73 |
| 20041202 002 CONV [N] | 12/29/2004 | $746.98 | 100 Pymt. Cash | $33.70 | $711.88 |
| 20041202 001 CONV [N] | 12/29/2004 | $272.46 | 100 Pymt. Cash | $0.00 | $227.46 |
| 20041202 001 CONV [N] | 12/27/2004 | $113.73 | 100 Pymt. Cash | $0.00 | $113.73 |

| | | Date | Description | | | | |
|---|---|---|---|---|---|---|---|
| 2004 1231 003 | CONV | 12/31/2004 (N) | 100 Pymt Cash | $588.81 | $834.00 | $824.81 | $0.00 |
| 2004 1231 002 | CONV | 12/31/2004 (N) | 100 Pymt Cash | $227.46 | | $227.46 | $0.00 |
| 2004 1231 001 | CONV | 12/31/2004 (N) | 100 Pymt Pmt-Only-Cash | $13.73 | $13.73 | $0.00 | |
| 2005 0131 003 | CONV | 1/31/2005 (N) | 100 Pymt Pmt-Only-Cash | $611.72 | $255.93 | $355.79 | |
| 2005 0131 002 | CONV | 1/31/2005 (N) | 100 Pymt Cash | $261.83 | $261.83 | | $0.00 |
| 2005 0131 001 | CONV | 1/31/2005 (N) | 100 Pymt Cash | $241.19 | | $241.19 | $0.00 |
| 2005 0228 003 | CONV | 3/1/2006 (N) | 100 Pymt Cash | $603.89 | $0.00 | $603.89 | $0.00 |
| 2005 0228 002 | CONV | 3/1/2006 (N) | 100 Pymt Cash | $241.19 | $0.00 | $241.19 | $0.00 |
| 2005 0228 001 | CONV | 3/1/2006 (N) | 100 Pymt Cash | $254.92 | $0.00 | $254.92 | $0.00 |
| 2005 0404 003 | CONV | 3/23/2005 (N) | 100 Pymt Cash | $271.19 | $0.00 | $254.92 | $0.00 |
| 2005 0404 002 | CONV | 4/4/2006 (N) | 100 Pymt Cash | $578.43 | $0.00 | $578.43 | $0.00 |
| 2005 0404 001 | CONV | 4/4/2006 (N) | 100 Pymt Cash | $258.86 | $0.00 | $258.86 | $0.00 |
| 2005 0428 003 | CONV | 4/28/2006 (N) | 100 Pymt Cash | $254.97 | $0.00 | $264.97 | $0.00 |
| 2005 0428 002 | CONV | 4/28/2006 (N) | 100 Pymt Cash | $543.97 | $0.00 | $546.97 | $0.00 |
| 2005 0428 001 | CONV | 4/28/2006 (N) | 100 Pymt Cash | $282.38 | $0.00 | $282.38 | $0.00 |
| 2005 0531 003 | CONV | 5/31/2005 (N) | 100 Pymt Cash | $255.65 | $0.00 | $255.65 | $0.00 |
| 2005 0531 002 | CONV | 5/31/2005 (N) | 100 Pymt Cash | $221.51 | $0.00 | $221.51 | $0.00 |
| 2005 0531 001 | CONV | 5/31/2005 (N) | 100 Pymt Cash | $236.51 | $0.00 | $236.51 | $0.00 |
| 2005 0701 003 | CONV | 6/30/2005 (N) | 100 Pymt Cash | $282.38 | $0.00 | $282.38 | $0.00 |
| 2005 0701 002 | CONV | 7/1/2005 (N) | 100 Pymt Cash | $494.66 | $0.00 | $494.66 | $0.00 |
| 2005 0701 001 | CONV | 7/1/2005 (N) | 100 Pymt Cash | $309.84 | $0.00 | $309.84 | $0.00 |
| 2005 0728 003 | CONV | 7/26/2005 (N) | 100 Pymt Cash | $296.11 | $0.00 | $296.11 | $0.00 |
| 2005 0728 002 | CONV | 7/26/2005 | 201 Pymt Pmt-Only-JE | $12,206.29 | $12,209.28 | | $0.00 |
| 2005 0729 003 | CONV | 7/26/2005 | 231 Interest Increase-JE | $12,209.00 | $0.00 | ($12,209.28) | $0.00 |
| 2005 0729 002 | CONV | 7/28/2005 | 531 Interest Interest-Only-JE | $12,706.39 | | $12,706.39 | $0.00 |
| 2005 0729 001 | CONV | 7/28/2005 | 100 Pymt Cash | $495.56 | $358.12 | $137.44 | |
| 2005 5289 003 | CONV | 7/28/2005 | 100 Pymt Cash | $323.57 | | $329.57 | $0.00 |
| 2005 0701 001 | CONV | 7/4/2005 | 100 Pymt Cash | $309.84 | | $309.84 | $0.00 |
| 2005 0728 002 | GTA | 7/26/2005 | 172 GTA CONVERSION TRANSACTION | $12,206.29 | $12,209.28 | $0.00 | $0.00 |
| 2005 0801 001 | GTA | 8/1/2005 | 172 GTA CONVERSION TRANSACTION | $323.57 | $323.57 | $0.00 | $0.00 |
| 2005 0630 003 | GTA | 9/2/2006 (805) | 172 Pymt Mellon | $1,100.00 | $2.32 | $760.18 | $337.50 |
| 2005 0632 002 | GTA | 9/2/2006 (905) | 500 REV Pymt-Cash | ($1,100.00) | $2.32 | ($337.50) | ($337.50) |
| 2005 0632 001 | GTA | 9/9/2006 | 500 REV Pymt-Cash | | $0.00 | $0.00 | $0.00 |
| 2005 0627 001 | GTA | 9/9/2005 | 100 Pymt Cash | $1,100.00 | $2.82 | $760.18 | $337.50 |
| 2005 0626 001 | GTA | 9/9/2005 | 500 REV Pymt-Cash | | ($2.82) | ($760.18) | ($337.50) |
| 2005 0628 001 | REV | 10/2/2006 | 112 Pymt Mellon | $1,100.00 | $337.50 | $0.00 | $0.00 |
| 2005 1004 001 | REV | 10/42/2006 | 500 REV Pymt-Cash | | $26.86 | $723.31 | $351.03 |
| 2005 1026 005 | GTA | 10/26/2005 (10d5) | 100 Pymt Cash | $1,100.00 | $0.00 | $760.18 | $351.03 |
| 2005 1026 003 | GTA | 10/26/2005 (905) | 500 REV Pymt-Cash | ($1,100.00) | $0.00 | ($723.31) | ($351.03) |
| 2005 0927 001 | GTA | 9/27/2005 (905) | 100 Pymt Cash | $1,100.00 | ($26.86) | $723.31 | $351.03 |
| 2005 0926 001 | GTA | 9/28/2005 (905) | 500 REV Pymt-Cash | | ($2.32) | ($760.18) | ($351.03) |
| 2005 1004 001 | REV | 10/4/2006 | 112 Pymt Mellon | $1,100.00 | $337.50 | $760.18 | $0.00 |
| 2005 1108 001 | REV | 11/9/2006 | 500 REV Pymt-Cash | | $14.51 | $723.51 | $0.00 |
| 2005 1123 001 | GTA | 11/22/2005 (1105) | 100 Pymt Mellon | | $14.81 | $720.73 | $0.00 |
| 2005 1123 001 | GTA | 11/22/2005 (Lt105) | 500 REV Pymt-Cash | | $0.00 | $0.00 | $0.00 |
| 2005 1125 001 | GTA | 11/25/2005 (1105) | 100 Pymt-Cash | ($1,100.00) | ($14.61) | ($720.73) | ($364.76) |

| Account | Date | Amount | Type | | | | |
|---|---|---|---|---|---|---|---|
| 2006112600 001 GTA | 11/26/2005 [11/05] | | | $694.76 | $0.00 | $0.00 | $0.00 |
| 2006120500 001 GTA | 12/05/2005 [12/05] | | | $3.36 | $0.00 | $0.00 | $0.00 |
| 2005120600 001 GTA | 12/06/2005 [12/05] | $1,100.00 | 112 Pymt. Mellon | $718.15 | $0.00 | $0.00 | $0.00 |
| 2006010300 001 GTA | 1/03/2006 [01/06] | | | $7.76 | $0.00 | $0.00 | $0.00 |
| 2006010300 001 GTA | 1/03/2006 [01/06] | $1,100.00 | 112 Pymt. Mellon | $707.73 | $0.00 | $0.00 | $0.00 |
| 2006013100 001 GTA | 1/31/2006 [01/06] | | | $0.00 | $707.73 | $0.00 | $0.00 |
| 2006013100 001 GTA | 1/31/2006 [02/06] | $1,100.00 | 112 Pymt. Mellon | $18.96 | $0.00 | $0.00 | $0.00 |
| 2006022700 001 GTA | 1/30/2006 [02/06] | | | $656.06 | $656.06 | $0.00 | $0.00 |
| 2006022700 001 GTA | 2/27/2006 [02/06] | $694.05 | 112 Pymt. Mellon | $0.00 | $0.00 | $0.00 | $0.00 |
| 2006022700 001 GTA | 2/27/2006 [02/06] | | | $690.32 | $690.32 | $0.00 | $0.00 |
| 2006040400 001 GTA | 2/26/2006 [03/06] | | | $0.00 | $0.00 | $0.00 | $0.00 |
| 2006040600 001 GTA | 4/3/2006 [04/06] | | | $13.73 | $0.00 | $0.00 | $0.00 |
| 2006040600 001 GTA | 4/3/2006 [04/06] | $1,086.27 | 112 Pymt. Mellon | $304.04 | $707.80 | $0.00 | $0.00 |
| 2006050200 001 GTA | 5/2/2006 [04/06] | | | $13.73 | $0.00 | $0.00 | $0.00 |
| 2006050200 001 GTA | 5/2/2006 [05/06] | $1,086.27 | 112 Pymt. Mellon | $287.68 | $707.73 | $0.00 | $0.00 |
| 2006060600 001 GTA | 5/32/2006 [05/06] | | | $13.73 | $0.00 | $0.00 | $0.00 |
| 2006060600 001 GTA | 6/2/2006 [06/06] | $1,086.27 | 112 Pymt. Mellon | $704.66 | $704.66 | $0.00 | $0.00 |
| 2006080100 001 GTA | 6/2/2006 [06/06] | | | $0.00 | $0.00 | $0.00 | $0.00 |
| 2006070100 001 GTA | 6/22/2006 [07/06] | | | $701.96 | $701.96 | $0.00 | $0.00 |
| 2006070100 001 GTA | 7/1/2006 [07/06] | $1,086.27 | 112 Pymt. Mellon | $13.73 | $0.00 | $0.00 | $0.00 |
| 2006070100 001 GTA | 7/1/2006 [07/06] | | | $370.04 | $0.00 | $0.00 | $0.00 |
| 2006080400 001 GTA | 8/2/2006 [08/06] | | | $373.30 | $0.00 | $0.00 | $0.00 |
| 2006080400 001 GTA | 8/4/2006 [08/06] | $1,084.27 | 112 Pymt. Mellon | $13.73 | $0.00 | $0.00 | $0.00 |
| 2006082400 001 GTA | 8/4/2006 [08/06] | | | $676.04 | $696.50 | $0.00 | $0.00 |
| 2006082400 001 GTA | 8/24/2006 | | 210 Disb: Insurance Only, Insurance Type: 10 | $696.50 | $0.00 | $0.00 | $0.00 |
| 2006083100 001 GTA | | $(690.42) | | $0.00 | $0.00 | $0.00 | $(690.42) |
| 2006083100 001 GTA | 8/31/2006 [09/06] | $1,086.27 | 112 Pymt. Mellon | $13.73 | $0.00 | $0.00 | $0.00 |
| 2006083100 001 GTA | 8/30/2006 [09/06] | | | $0.00 | $0.00 | $0.00 | $0.00 |
| 2006093000 001 GTA | 9/30/2006 [09/06] | $576.60 | | $893.74 | $893.74 | $0.00 | $0.00 |
| 2006093000 001 GTA | 9/30/2006 [10/06] | $1,086.27 | 112 Pymt. Mellon | $570.68 | $0.00 | $0.00 | $0.00 |
| 2006103100 001 GTA | 9/30/2006 [10/06] | | | $317.59 | $0.00 | $0.00 | $0.00 |
| 2006103100 001 GTA | 11/30/2006 [10/06] | $1,085.27 | 197 Pymt. Mellon | $896.96 | $896.96 | $0.00 | $0.00 |
| 2006103100 001 GTA | | | Insurance Type: 10 | $13.73 | $0.00 | $0.00 | $13.73 |
| | | | | $856.10 | $0.00 | $0.00 | |

© Copyright Green Tree Servicing LLC 2005. Proprietary and confidential.
For internal (Green Tree Servicing LLC) use only. Do not copy or distribute without prior written consent.

* Paid Bills supplied for research purposes only.
GTA should always be checked to the actual Principal Balance for GTA Accounts.

# EXHIBIT "3"

LEXSEE 2008 US DIST LEXIS 20532

**PREMIER PORK L.L.C., Plaintiff, v. WESTIN, INC., WESTIN PACKAGED MEATS L.L.C., f/k/a COOK COUNTY COOKERS L.L.C., PREMIUM PROTEIN PRODUCTS L.L.C., ALMA FOODS L.L.C., f/k/a FLINT HILLS FOODS L.L.C., LASALLE NATIONAL BANK, BRETT ELLIOT, BRAD POPPEN, BERNARD HANSEN, & TODD HANSEN, Defendants.**

Civil Action No. 07-1661

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*2008 U.S. Dist. LEXIS 20532*

March 17, 2008, Decided
March 17, 2008, Filed

**NOTICE:**   NOT FOR PUBLICATION

**COUNSEL:**   [*1] For **PREMIER PORK, L.L.C., Plaintiff: ALBERT A. CIARDI, III, THOMAS H. CHIACCHIO, JR.,** *LEAD ATTORNEYS,* **KEVIN GORDON MCDONALD,** CIARDI & CIARDI, P.C., PHILADELPHIA, PA.

For **WESTIN PACKAGED MEATS L.L.C.,** *formerly known as* COOK COUNTY COOKERS L.L.C., **BRETT ELLIOT, BRAD POPPEN, WESTIN, INC., Defendants:** RONALD L. GLICK, *LEAD ATTORNEY,* STEVENS & LEE, PC, PRINCETON, NJ.

For **LASALLE NATIONAL BANK, Defendant:** JONATHAN M. KORN, *LEAD ATTORNEY,* BLANK ROME, LLP, CHERRY HILL, NJ.

**JUDGES:** Joseph H. Rodriguez, United States District Judge.

**OPINION BY:** Joseph H. Rodriguez

**OPINION**

RODRIGUEZ, Senior District Judge:

This matter comes before the Court on two motions: First, Defendant LaSalle Bank National Association ("LaSalle")[1] moves to dismiss Counts II, IV, V, and VI of the Amended Complaint pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*. Second, Defendants Westin, Inc., Westin Packaged Meats, Inc. ("WPM"),[2] Brett Elliot ("Elliot"), and Brad Poppen ("Poppen")[3] move to dismiss all counts of the Amended Complaint under Federal *Rule 12(b)(6)*. For the reasons stated below, the Court will grant LaSalle's motion. Additionally, it will grant in part and deny in part the Westin Defendants' motion.

> 1   LaSalle was incorrectly [*2] identified in the Amended Complaint as LaSalle National Bank.
> 2   WPM was incorrectly identified in the Amended Complaint as a limited liability company, rather than as a corporation.
> 3   The Court will frequently refer to Westin, Inc., WPM, Elliot, and Poppen collectively as the "Westin Defendants."

I. BACKGROUND

Plaintiff in this case is Premier Pork ("Plaintiff"). It is a New Jersey limited liability company that is in the business of supplying various clients with pork bellies. It is also a creditor of an insolvent company. It is suing various individuals and entities in order to obtain compensation for pork bellies it sold to that company.

There are several defendants in this action and their relationship with one another is somewhat convoluted. Cook County Cookers ("CCC") is a now-defunct Illinois limited liability company that purchased pork bellies from Plaintiff and had its assets foreclosed upon by its senior secured creditor without ever having paid Plaintiff

for the bellies it purchased. CCC was allegedly owned by a Kansas-based limited liability company known as Flint Hills Foods. [4] Premium Protein Products is a Nebraska limited liability company, which is allegedly majority owned [*3] by Flint Hills Foods. WPM is a Nebraska corporation, and is allegedly CCC's successor in interest. Westin, Inc., also a Nebraska corporation, is the corporate parent of WPM. LaSalle is an Illinois corporation and was CCC's senior secured creditor. Brad Poppen is a domiciliary of Nebraska who allegedly served as the chief financial officer of CCC and now serves in the same position for Westin, Inc. He is also allegedly a "contractor" for WPM, although there is no further allegation concerning what exactly this means. Brett Elliot is a domiciliary of Kansas. He was the president of CCC and is now the president of a non-party company called Anytime Foods, which is allegedly a joint venture between Westin, Inc. and Flint Hills Foods. Elliot is also, in some unspecified fashion, an employee of Westin, Inc. (See Westin Br., p. 5.) Bernard Hansen and Todd Hansen are domiciled in Nebraska and Kansas, respectively. The Amended Complaint is ambiguous regarding who these individuals are in relation to the other defendants. Ultimately, however, this ambiguity is unimportant to the disposition of the instant motions.

> 4 Flint Hills Foods apparently changed its name recently to Alma Foods. The Court [*4] will nonetheless refer to this entity as "Flint Hill Foods."

The substance of Plaintiff's factual allegations can be succinctly reduced to the following brief summary: Plaintiff alleges that CCC and its senior creditor, LaSalle, entered into a "friendly foreclosure" [5] that resulted in LaSalle holding a fraudulent auction of CCC's assets. (See, e.g., Am. Compl., PP 5, 23.) The winning bid at the auction came from Flint Hills Foods, which, again, was CCC's parent company. (Id., PP 6, 26.) Thereafter, Flint Hills Foods sold its newly-acquired assets to WPM, which was allegedly incorporated by its parent, Westin, Inc., for the specific purpose of buying CCC's assets from Flint Hills Foods and moving them to a facility in Nebraska owned by Premium Protein Products. (Id., P 27.) Importantly, Premium Protein Products is allegedly "majority controlled" by Flint Hills Foods, which, according to Plaintiff, has been linked to Westin, Inc. through a "series of convoluted deals for over a year." (Id., P 11.) Thus, the wrong about which Plaintiff complains is that the parties' dealings permitted Flint

Hills Foods, and its partner, Westin, Inc., to essentially shield CCC's assets from its creditors.

> 5 The [*5] Amended Complaint does not explain what Plaintiff means when it uses the phrase "friendly foreclosure." This phrase appears to have been borrowed from a news article about the defendants' various dealings with one another. (See Am. Compl., Exh. A.)

Because Plaintiff was one of those creditors, it initiated this action on April 9, 2007. Subject matter jurisdiction is premised on both the presence of a federal question and the complete diversity of the parties' citizenship. (See id., PP 1, 2.) On July 30, 2007, Plaintiff filed an Amended Complaint in which it asserts causes of action against all defendants, except LaSalle, for breach of contract (Count I) and fraudulent misrepresentation (Count III) relating to statements allegedly made about the payment of CCC's debt to Plaintiff. Additionally, Plaintiff asserts causes of action against all defendants, including LaSalle, for two violations of the Packers and Stockyards Act ("PSA" or the "Act"), 7 U.S.C. § 181, et seq. (Count II), fraud related to the so-called "friendly foreclosure" (Count IV), unjust enrichment (Count V), and civil conspiracy (Count VI).

LaSalle now moves to dismiss Counts II, IV, V, and VI of the Amended Complaint for [*6] failure to state a claim. Likewise, the Westin Defendants move to dismiss the Amended Complaint in its entirety for the same reason. [6] The Court will analyze both motions together.

> 6 In moving to dismiss the Amended Complaint, the Westin Defendants attached a certification that potentially required the Court to convert their motion to dismiss to one for summary judgment. See Fed. R. Civ. P. 12(d). However, this certification is referenced in the Westin Defendants' moving papers only in the course of attacking Plaintiff's unjust enrichment claim. As discussed in section II.B.4., infra, of this Opinion, the Court will dismiss this claim because of a variety of pleading defects, all of which are unrelated to the issues raised in the certification. Thus, the Court finds it unnecessary to refer to the certification and, by extension, unnecessary to convert the Westin Defendants' motion to dismiss. See Trans Hudson Express, Inc. v. Nova Bus Co., Civil No. 06-4092, 2007 U.S. Dist. LEXIS 26724, at *1 n.1 (D.N.J. Apr. 10, 2007) (declining to

convert a motion filed pursuant to *Rule 12(b)(6)* to a motion for summary judgment notwithstanding the parties' submission of affidavits because conversion [*7] was unnecessary).

## II. DISCUSSION

### A. Standard on a Motion to Dismiss Under *Rule 12(b)(6)*

A complaint should be dismissed pursuant to *Rule 12(b)(6)* if the alleged facts, taken as true, fail to state a claim. *Fed. R. Civ. P. 12(b)(6)*; see *In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000)*. "While a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)* (internal citations omitted). Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Id. at 1965* (internal citations omitted).

When deciding a motion to dismiss pursuant to *Rule 12(b)(6)*, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. *Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)*. [*8] A district court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. See *Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994)*. Moreover, these allegations and inferences must be viewed in the light most favorable to the plaintiff. Id. However, a court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)* (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness," *Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006)* (citing *Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)*); see also *Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)* (quoting *Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005)*) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.").

It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977)*. The question before the court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp., 478 F.3d 144, 150 (2007)*. [*9] Instead, the court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Twombly, 127 S. Ct. at 1974*.

### B. Analysis

#### 1. Count I: Breach of Contract

In Count I, Plaintiff alleges that CCC breached its sales agreement contracts when it failed to pay for the pork bellies it purchased. It attempts to hold all defendants, except LaSalle, liable for this breach "because of their disregard of corporate entities." (Am. Compl., P 35.) The Westin Defendants contend that Count I must be dismissed because Plaintiff does not sufficiently allege that WPM is the successor in interest to CCC. As such, neither WPM, nor any other Westin Defendant, can be held liable for CCC's breaches of contract. The Court, however, finds that Plaintiff's breach of contract claim is properly pled, though only as to WPM and not the other Westin Defendants.

##### a. Allegations Regarding WPM's Liability for CCC's Breach of Contract

In order to properly plead a claim for a breach of contract, a plaintiff must allege "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002)*. [*10] A claim for a breach of contract is subject to the liberal notice pleading requirements found in *Rule 8(a) of the Federal Rules of Civil Procedure*. [7] See, e.g., *St.-Val v. Domino's Pizza, LLC, Civil No. 06-4273, 2007 U.S. Dist. LEXIS 50518, at *4-5 (D.N.J. July 12, 2007)* (applying *Rule 8(a)* to a plaintiff's breach of contract claim).

> [7]  *Rule 8(a)* provides, in relevant part: "A pleading that states a claim for relief must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."

In interpreting *Rule 8*, the Supreme Court has

previously indicated that it does not demand fact pleading nor that a plaintiff's legal theories be set out in particularity. *Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), abrogated in part by Twombly, 127 S. Ct. at 1968-69.* Even in the more recent case of Twombly, the Court reiterated that *Rule 8(a)* "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *127 S. Ct. at 1973-74.* Ultimately, *Rule 8* is satisfied where the complaint provides a "statement sufficient to put the opposing party on notice of the claim." *Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001)* [*11] (citations omitted).

In this case, Plaintiff has sufficiently alleged a breach of contract by CCC. It plausibly claims that: (1) contracts existed between it and CCC, (Am. Compl., P 31,); (2) it performed under those contracts by supplying CCC with pork bellies, (see id.,P 33,); (3) CCC failed to pay for the pork bellies it received, thereby breaching those contracts, (id., P 32,); and (4) it suffered resulting damages to the extent of CCC's failure to pay, (see id., PP 32, 34.)

The Westin Defendants do not challenge the sufficiency of these allegations. Instead, they argue that Plaintiff has not adequately alleged that WPM is CCC's successor in interest and, as such, WPM cannot be held liable for CCC's breaches. This assertion is contradicted, however, by the Amended Complaint, which clearly alleges that WPM is CCC's successor. (Am. Compl., PP 4, 11, 15.) Other courts have recognized that a plaintiff's claim of successorship liability is satisfied by general allegations of successorship. See, e.g., *Napolitano v. BAE Sys. N. Am., 2005 U.S. Dist. LEXIS 45272, at *8, 10 (D.N.J. July 20, 2005)* (holding that a plaintiff stated a claim for breach of contract on a successor liability theory [*12] where the complaint alleged the elements necessary for a breach of contract and further alleged that the defendant was liable for the breach as a successor in interest); *Sealy Conn., Inc. v. Litton Indus., Inc., 989 F. Supp. 120, 122-23 (D. Conn. 1997)* (holding that a successor liability claim will be adequately pled even when only a bare allegation is made that the defendant is a successor in interest); see also *Kuhns Bros. v. Fushi Int'l, Inc., Civil No. 06-1917, 2007 U.S. Dist. LEXIS 51461, at *14-15 (D. Conn. July 16, 2007)* (reaffirming the approach taken in the Sealy Connecticut case even after the Supreme Court's decision in *Twombly, 127 S. Ct. 1955,* was handed down). The Westin Defendants cite no

authority suggesting that more factual specificity is required under *Rule 8(a)*. Thus, the Court is satisfied that Plaintiff has sufficiently pled its breach of contract claim and its related theory that WPM is CCC's successor in interest.

Moreover, even if Plaintiff had an obligation to plead particular facts supporting its successor liability theory, the Court is satisfied that it has done so in this case. The general rule of successorship liability is really one of nonliability. [8] [*13] Most jurisdictions adhere to the doctrine that a company which purchases the assets of another company will not ordinarily be held liable for the debts of the seller. *Vernon v. Schuster, 179 Ill. 2d 338, 688 N.E.2d 1172, 1175, 228 Ill. Dec. 195 (Ill. 1997); Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 431 A.2d 811, 815 (N.J. 1981).* This rule "'developed as a response to the need to protect bonafide purchasers from unassumed liability' and was 'designed to maximize the fluidity of corporate assets.'" *Vernon, 688 N.E.2d at 1175* (citations omitted).

8   The Westin Defendants argue that Illinois law should govern the question of whether WPM is a successor to CCC. (Westin Br., pp. 13-15.) "Before a choice of law question arises, however, there must actually be a conflict between the potentially applicable bodies of law." *Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994).* "Where there is no difference between the laws of the forum state and those of the foreign jurisdiction, there is a 'false conflict' and the court need not decide the choice of law issue." *Id.* Instead, the court should resolve the matter before it by reference to each state's law. Id.

In this case, the Westin Defendants do not identify any differences between the [*14] laws of Illinois and New Jersey concerning successorship liability. Indeed, both states adhere to the same general rule of nonliability and the same limited exceptions, with one difference that is irrelevant to this case. For the purposes of evaluating the sufficiency of the Amended Complaint, it therefore appears that there is no actual conflict that requires a choice of law analysis. Accordingly, the Court will refer to both states' law in this Opinion, but will permit the parties to revisit the issue in the future should they decide to do so.

There are four widely recognized exceptions to the general rule, however: (1) where there is an express or implied agreement that the buyer will assume the liabilities of the seller; (2) where the transaction amounts to a consolidation or merger of the buyer and seller; (3) where the buyer is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Id. at 1175-76*; *Ramirez, 431 A.2d at 815*. In the few cases where courts have reviewed the factual allegations upon which successor liability is premised, they have done so under the liberal notice pleading standards [*15] of *Rule 8(a)*, even where a plaintiff bases its successorship claim on a fraudulent transfer theory. See, e.g., *Adani Exps. Ltd. v. AMCI (Export) Corp., Civil No. 05-0304, 2006 U.S. Dist. LEXIS 42986, at *3-4 (W.D. Pa. June 26, 2006)*.

In this case, Plaintiff has alleged enough facts to support its successorship theory. It claims that CCC, through LaSalle's foreclosure, sold its assets to its own parent company, Flint Hills Foods. (See Am. Compl., PP 5, 6, 23, 26.) In turn, Flint Hills Foods allegedly sold those assets to WPM so that WPM could move those assets to a facility run by Premium Protein Products, (id., P 27,) which is controlled by Flint Hills Foods, (id., P 11.) Taking these allegations as true and viewing them in the light most favorable to Plaintiff, it is plausible that WPM is CCC's successor in interest under at least the fraudulent transfer exception to the general rule of nonliability.

It is possible that facts gleaned through discovery and revealed at the summary judgment stage of this litigation may support the Westin Defendants' contention that WPM is not CCC's successor. Until that time, the Court concludes that Plaintiff may maintain its action for breach of contract [*16] against WPM. As discussed in the paragraphs that follow, however, the remaining Westin Defendants require a different approach.

b.    Allegations Regarding the Other Westin Defendants' Liability: Piercing WPM's Corporate Veil

Having determined that Plaintiff can maintain its breach of contract claim against WPM, there remains the additional question of which of the other Westin Defendants, if any, can also be held liable under Count I. Plaintiff asserts that "all of the Defendants (except LaSalle Bank) are liable for this breach of contract because of their disregard of corporate entities." (Am. Compl., P 35; see id., PP 8, 10.) Presumably, Plaintiff is

attempting to pierce WPM's corporate veil in order to hold its parent, Westin, Inc., and its parent's employees, Brad Poppen and Brett Elliot, liable for this breach. For the reasons discussed below, however, these allegations fail to state a claim.

It is a fundamental proposition under New Jersey law 9 that a corporation is a separate entity from its corporate principals. *State of New Jersey, Dep't of Environmental Protection v. Ventron Corp., 94 N.J. 473, 468 A.2d 150, 164 (N.J. 1983)*. Indeed, "a primary reason for incorporation is the insulation of [*17] shareholders from the liabilities of the corporate enterprise." Id. Thus, limited liability will normally not be abrogated, even in the case of a parent corporation and its wholly-owned subsidiary. Id.

> 9    In challenging the sufficiency of the pleadings with respect to piercing the corporate veil, the Westin Defendants cite to New Jersey law thereby indicating that New Jersey law should govern this question. (See Westin Br., p. 24 & n.6.) Plaintiff seemingly agrees. (See Pl. Res. Br. to Westin's M., pp. 11-12.)

Notwithstanding the general rule of limited liability, "courts may pierce the corporate veil by finding that a subsidiary was 'a mere instrumentality of the parent corporation.'" Id. (citations omitted). In order to state a claim for piercing the corporate veil, a complaint must contain factual assertions showing that: "(1) the parent corporation 'so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent,' and (2) 'the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.'" 10 *Ohai v. Verizon Commc'ns, Inc., Civil No. 05-0729, 2005 U.S. Dist. LEXIS 25703, at *23-24 (D.N.J. Oct. 28, 2005)* [*18] (quoting *Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 149 (3d Cir.1988)* (in turn quoting *Ventron, 468 A.2d at 164*)); see *Bd. of Tr. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002)*.

> 10    This framework also applies to natural persons because "'[p]arent' corporations . . . are not the only parties liable under a veil piercing theory. Shareholders have also been found liable when they have totally dominated the corporation, failed to maintain the corporate identity, and used the corporation to perpetrate fraud, injustice or

some other illegality." *Bd. of Tr. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.9 (3d Cir. 2002)* (citations omitted). Likewise, corporate officers are also potentially liable under a veil piercing theory where evidence is presented that shows the corporation was a "sham," and existed only so that the officers could avoid personal liability. See *N. J. Dep't of Env't Prot. v. Gloucester Env't Mgmt. Servs., Inc., 800 F. Supp. 1210, 1219-20 & n.9 (D.N.J. 1992).*

"To display the requisite 'control' over a subsidiary necessary to pierce the corporate veil, a corporate parent must have more than [*19] majority or complete stock control." *Ohai, 2005 U.S. Dist. LEXIS, at *24* (citing *Craig, 843 F.2d at 150*); see also *Ventron, 468 A.2d at 164.* Instead, the parent must "completely dominate the finances, policy, and business practice with respect to the subject transaction." Id. (citing *Craig, 843 F.2d at 150*). In other words, the subsidiary must have "no separate mind, will, or existence of its own." *Craig, 842 F.2d at 150* (citation omitted). Factors relevant to this inquiry include:

> gross undercapitalization . . . "failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders."

Id. (quoting *Am. Bell, Inc. v. Fed'n of Tel. Workers, 736 F.2d 879, 886 (3d Cir. 1984)*). Significantly, a parent's domination or control of its subsidiary cannot be established by the mere fact that the corporations' boards of directors or officers overlap. *Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 610 (D.N.J. 2004); [*20]* see *United States v. Bestfoods, 524 U.S. 51, 69, 118 S. Ct. 1876, 141 L. Ed. 2d 43, (1998)* ("It is a well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership.")

The Third Circuit recently evaluated the sufficiency of a plaintiff's dominance allegations in *Foodtown, 296 F.3d 164.* In that case, the plaintiff claimed that

> defendants failed to maintain formal barriers between the management structures of [two corporate entities]; failed to maintain formal barriers between [these entities] for purposes of legal representation; commingled funds and other assets; and failed to observe other corporate formalities. Furthermore, [the plaintiff] contends that [these entities] shared twelve of thirteen common directors and that at all times [the subservient entity's] Board of Directors was dominated and controlled by the [dominant entity]-affiliated Directors. [The plaintiff] also claims that all of [the dominant entity's] shareholder/members were also members of [the subservient entity] and that all the corporate defendants were common shareholder/members of [both [*21] entities]. [The plaintiff] also claims that [both entities] shared the same principal office and registered office.

*Id. at 172* (internal citations omitted). Viewed as true, the Court of Appeals found that these allegations supported the first prong of the veil piercing test, i.e., complete dominance. See id.

This Court reached a different result in *Ohai, 2005 U.S. Dist. LEXIS 25703.* There, the complaint did not sufficiently support the complete dominance prong because the only allegation pertaining to the dominance of the subsidiary by the parent corporations related to the parents' 55% and 45% stakes in the subsidiary. *2005 U.S. Dist. LEXIS 25703 at *26.* Critically, neither the complaint nor the plaintiff's opposition papers contained any claims that the parent companies influenced the subsidiary's finances, policy, or business practice related to the relevant transaction. *2005 U.S. Dist. LEXIS 25703 at *26-27.* The Court therefore held that the veil piercing allegations failed to state a claim. *2005 U.S. Dist. LEXIS 25703 at *28.*

In opposing the instant motion, Plaintiff argues that "the entire Amended Complaint and [the news paper

article attached thereto] is replete with detailed explanations of the corporate and Individual Defendants' disregard of the [*22] corporate entities." (Pl. Res. Br. to Westin M., p. 10.) For example, Plaintiff alleges that WPM is a subsidiary of Westin, Inc. (See Am. Compl., P 27.) Likewise, it claims that Brad Poppen was the chief financial officer of both CCC and Westin, Inc., as well as a "contractor" for WPM. (Id., P 11.) The Amended Complaint further alleges that Brett Elliot has a controlling interest in Flint Hills Foods, and was the president of both CCC and Anytime Foods, which is a joint venture between Flint Hills Foods and Westin, Inc. (Id., P 27 n.2.) Under cases like *Ventron* and *Seltzer,* however, these allegations are insufficient because the corporate form will normally be maintained even in the case of 100% ownership and notwithstanding an overlap in directors or officers.

As in *Ohai,* the critical allegations that are missing from the Amended Complaint in this case are those from which the Court could reasonably infer complete dominance of WPM by Westin, Inc, Poppen, or Elliot. For example, there are no allegations addressing whether and to what extent any defendant influenced the finances, policy, and business practice of WPM in relation to its acquisition [*23] in CCC's assets. Additionally, unlike Foodtown, Plaintiff makes no allegations concerning which, if any, corporate formalities were disregarded.

Because the Amended Complaint is totally devoid of allegations relating to the dominance of WPM, Plaintiff has failed to raise his right to pierce that company's corporate veil above the speculative level. See *Twombly, 127 S. Ct. at 1965.* Accordingly, Westin, Inc., Brett Elliot, and Brad Poppen cannot be held liable for any breach of contract attributed to WPM as the possible successor in interest to CCC. [11]

    11    Plaintiff similarly fails to state a claim for piercing the corporate veil to the extent that it attempts to do so in relation to any other cause of action asserted in the Amended Complaint.

2. Count II: The Packers and Stockyards Act

In Count II, Plaintiff asserts two claims based on the PSA. First, it contends that it is entitled to participate in the statutory trust created by *section 206* of the Act, under which proceeds for certain cash sales must be held in trust for unpaid sellers. (Am. Compl., P 37.) In essence, Plaintiff claims that, as an alleged trust

beneficiary, it has priority over LaSalle for CCC's liquidated assets and can hold the Westin Defendants [12] liable [*24] for CCC's failure to maintain those assets in the trust. Second, Plaintiff alleges that LaSalle and the Westin Defendants engaged in an "unfair practice" made unlawful by *section 202* of the Act insomuch as they delayed payment for the pork bellies Plaintiff delivered. (Id., P 41.) Notwithstanding these allegations, however, Plaintiff's PSA claims fail as a matter of law because the transactions at issue in this case involved pork bellies and not "livestock."

    12    Plaintiff alleges that all of the Westin Defendants are liable for its PSA claims, although it does not specify whether this liability is premised on a corporate veil piercing theory or some other theory. Ultimately, however, this omission is unimportant because Plaintiff's PSA claims fail as a matter of law against all defendants.

Among other reasons, the PSA was enacted to assure fair trade practices in the livestock marketing and meat-packing industries, thereby safeguarding farmers and ranchers against receiving less than the true market value of their livestock. *Bruhn's Freezer Meats, Inc. v. United States Dep't of Agric., 438 F.2d 1332, 1337 (8th Cir. 1971).* To this end, the Act provides several sources of protection for [*25] sellers of livestock. [13] For example, *section 206(b)* of the Act creates a statutory trust for the benefit of livestock sellers and provides, in relevant part:

    All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers[.]

*7 U.S.C. § 196(b).* This provision has been interpreted as granting trust beneficiaries priority over lenders who are given security interests in inventories or receivables that are subject to the trust. See, e.g., *First State Bank of Miami v. Gotham Provision Co., Inc. (In re Gotham Provision Co.), 669 F.2d 1000, 1010 (5th Cir. 1982).*

13  The Act also creates several protections for sellers of poultry. See *7 U.S.C. §§ 192, 197.* However, these protections are not at issue in this case and will therefore not be discussed in any detail.

Under *section 206*, an entity will be a trust beneficiary only if it is an "unpaid cash seller[] of . . . livestock . . . ." *7 U.S.C. § 196(b)*; see *Gotham Provision, 669 F.2d at 1004* [*26] (stating that Congress limited the applicability of the PSA's trust provision to transactions in which the commodities sold are "livestock"); *Hedrick v. S. Bonaccurso & Sons, Inc., 466 F. Supp. 1025, 1030 (E.D. Pa. 1978)* ("In 1976, the Act was amended to specifically create a statutory trust for the benefit of the unpaid cash seller of livestock delivered and proceeds therefrom until the packer pays for his purchases."). The Act defines "livestock" as "cattle, sheep, swine, horses, mules, or goats whether live or dead." *7 U.S.C. § 182(4).* Thus, a plaintiff must sufficiently allege that it is an unpaid seller of cattle, sheep, swine, horses, mules, or goats if it is "to raise a right to relief above the speculative level . . . ." See *Twombly, 127 S. Ct. at 1965.* In this case, however, the transactions at issue involved the sale of pork bellies. (See Am. Compl., PP 15, 33, 38.)

Plaintiff does not claim that pork bellies constitute livestock; instead, it concedes that pork bellies are "meat food products," (see Pl. Res. Br. to LaSalle M., pp. 3-4,) which are defined by the PSA as "all products and by-products of the slaughtering and meat-packing industry if edible," *7 U.S.C. § 182(3).* [*27] Notwithstanding cases like Gotham Provision and Hedrick, Plaintiff contends that PSA trust benefits unpaid sellers of meat and meat food products to the same extent that it benefits unpaid sellers of livestock. (See Pl. Res. Br. to LaSalle M., pp. 3-4.) However, it bases its argument on an erroneous construction of selectively quoted statutory text.

To support its position, Plaintiff quotes the following portion of *section 206*: "All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from *meat, meat food products* . . . shall be held in trust . . . ." (Id., p. 3 (emphasis and omissions in original).) The problem with Plaintiff's argument is manifest upon examining the statutory language it omitted. Again, *section 206* provides:

All *livestock* purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products *derived therefrom,* shall be held by such packer in trust for the benefit of all *unpaid cash sellers of such livestock* until full payment has been received by such unpaid sellers[.]

*7 U.S.C. § 196(b)* (emphasis added). The full statutory language and the previously cited [*28] cases interpreting it make clear that the trust protects only unpaid cash sellers of livestock. Meat and meat food products are relevant only insomuch as the property to be held in trust includes "all inventories of, or receivables or proceeds from meat[ or] meat food products" that are "derived" from the livestock initially sold to the packer by the "unpaid cash sellers of such livestock." See id.; see also *Gotham Provision, 669 F.2d at 1011* (indicating that inventories and receivables of meat products are subject to the trust if they are derived from livestock sold by an unpaid cash seller). Thus, because Plaintiff concedes that the relevant transactions involved only the sale of meat food products and not livestock, the Court concludes that Plaintiff is not entitled to participate in the statutory trust. 14

14  LaSalle and the Westin Defendants also argue that Plaintiff's statutory trust claim is defective because Plaintiff did not plead that it complied with certain notice requirements found is *section 206.* However, because the Court has determined that Plaintiff is not a trust beneficiary in the first place, there is no need to address this argument.

Plaintiff's unfair practice claim [*29] fails for the same reason. *Section 202* of the Act prohibits certain enumerated practices and provides, in relevant part:

It shall be unlawful for any packer or swine contractor with respect to livestock, meats, meat food products, or livestock products in unmanufactured form, or for any live poultry dealer with respect to live poultry, to: (a) Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device . . . .

*7 U.S.C. § 192.* In turn, *section 409* of the Act, which deals with payment for the purchase of livestock,

specifically declares:

> Any delay or attempt to delay by a market agency, dealer, or packer *purchasing livestock*, the collection of funds as herein provided, or otherwise for the purpose of or resulting in extending the normal period of payment *for such livestock* shall be considered an "unfair practice" in violation of this Act.

*7 U.S.C. § 228b(c)* (emphasis added).

In this case, Plaintiff alleges that "Defendants are also liable under the Act because they engaged in an 'unfair practice' . . . in an effort to delay making payments to [Plaintiff]." (Am. Compl., P 41.) In opposing the instant motions to dismiss, Plaintiff confirms that this claim is premised [*30] on *section 409* of the Act. (See Pl. Res. Br. to. LaSalle M., p. 4; Pl. Res. Br. to Westin M., pp. 14-15.) However, the quoted statutory text clearly indicates that *section 409* applies only to transactions involving the sale of livestock. Because Plaintiff concedes that it did not sell livestock, any delay in payment it endured cannot be deemed an "unfair practice" as defined in *section 409* and prohibited by *section 202*.

For these reasons, Plaintiff has failed to state a claim under the PSA. Accordingly, Count II will be dismissed as to LaSalle and all of the Westin Defendants.

### 3. Counts III and IV: Common Law Fraud

In Count III, Plaintiff asserts that all defendants, except LaSalle, committed common law fraud because Defendant Brett Elliot allegedly misrepresented that Plaintiff would receive payment for the pork bellies it shipped to CCC. In Count IV, Plaintiff alleges that all defendants, including LaSalle, are liable for common law fraud relating to the so-called "friendly foreclosure." The Westin Defendants argue that Counts III and IV must be dismissed because Plaintiff has failed to plead its fraud claims with sufficient particularity as required by *Rule 9(b) of the Federal Rules of Civil Procedure.* [*31] LaSalle echoes this argument with respect to Count IV. For the following reasons, the Court agrees that the pleadings in both counts are inadequate.

The general standard of review triggered by a defendant's motion to dismiss under *Rule 12(b)(6)* is altered by *Rule 9(b). In re Intelligroup Sec. Litig., 527 F.*

*Supp. 2d 262, 275 (D.N.J. 2007). Rule 9(b)* states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In other words, the rule requires plaintiffs to plead with particularity the facts supporting the elements of fraud. See *In re Suprema Specialties, Inc. Sec Litig., 438 F.3d 256, 270 (3d Cir. 2006).* The purpose of this heightened standard is to "give defendants 'notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements.'" Id. (alterations in original) (quoting *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)).*

In order to successfully plead fraud under *Rule 9(b)*, plaintiffs must offer "some precision and some measure of substantiation." *Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 257 (D.N.J. 1990).* [*32] Plaintiffs may satisfy the rule's requirement "by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004)* (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).* "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

Pleadings containing collectivized allegations against "defendants" as a group are insufficient under *Rule 9(b). Naporano Iron & Metal Co. v. American Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999);* see *Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 496 (D.N.J. 1998)* ("*Rule 9(b)* is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"). Instead, "[a] plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud." *Naporano, 79 F. Supp. 2d at 511.*

*Rule 9(b)* requires the identification of the elements of a fraud claim. *In re Craftmatic Sec. Litig., 890 F.2d 628, 645 (3d Cir. 1989).* [*33] To state a claim for common law fraud in New Jersey, [15] a plaintiff must allege: "'(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Delaney v.*

*Am. Express Co., Civil No. 06-5134, 2007 U.S. Dist. LEXIS 34699, at \*17 (D.N.J. May 11, 2007)* (alteration in original) (quoting *Wartsila NSD N. Am., Inc. v. Hill Intern., Inc., 342 F. Supp. 2d 267, 287-88 (D.N.J. 2004)).*

> 15  Both LaSalle and the Westin Defendants indicate that New Jersey law applies in considering their motions to dismiss the fraud claims, (LaSalle Br., p. 8 n.1; Westin Br., p. 22 n.5,) although LaSalle reserves the right to challenge the choice of law "should this case proceed beyond the pleading stage," (LaSalle Br., p. 8 n.1.) Plaintiff seemingly agrees as to the applicability of New Jersey law. (See Pl. Res. Br. to LaSalle M., p. 5; Pl. Res. Br. to Westin M., pp. 5-7.)

Importantly, "*Rule 9(b)* also requires that the detrimental reliance element of a fraud claim be pleaded with particularity." *Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 257 (D.N.J. 1990)* [*34] (citing *Learning Works, Inc. v. Learning Annex, Inc., 830 F.2d 541, 546 (4th 1987)).* That is, a "plaintiff must show that he or she acted upon the fraud or misrepresentation complained of." *Id. at 258.*

With these principles in mind, the Court finds that Counts III and IV are both deficient. In Count III, Plaintiff alleges that CCC, through Brett Elliot, misrepresented the fact that Plaintiff would be compensated for the pork bellies it supplied. (Am. Compl., P 43.) These misrepresentations allegedly occurred "over the course of business from August 2006 forward." (Id.) In this regard, Plaintiff has sufficiently identified who made an alleged misrepresentation, its content, and when it was made. However, this is true only with respect to a fraud claim against Brett Elliot, and not the other Westin Defendants. There are no allegations concerning whether Westin, Inc., WPM, or Brad Poppen made any misrepresentations. Perhaps recognizing this, Plaintiff alleges that the remaining Westin Defendants should be held liable under a corporate veil piercing theory. (See id., P 47.) However, as discussed in section II.B.1.b., *supra,* of this Opinion, Plaintiff has failed to state a claim for piercing [*35] the corporate veil.

Moreover, Count III is deficient as to all Westin Defendants, including Brett Elliot, because Plaintiff does not plead with particularity facts showing how it reasonably and detrimentally relied on the alleged misrepresentations. In other words, the allegations do not

show how Plaintiff acted on the alleged fraud. Instead, it merely states in a conclusory fashion that it "reasonably and justifiably relied on the intentional misrepresentations," (Am. Compl., P 45,) which is precisely the kind of generalized pleading *Rule 9(b)* prohibits, see *Learning Works, 830 F.2d at 546* (dismissing a fraud claim wherein the plaintiff alleged it detrimentally relied on the defendant's misrepresentations by ceasing its business operations, but provided no factual allegations supporting a conclusion that this reliance was reasonable).

With respect to Count IV, Plaintiff frequently states throughout the Amended Complaint that the auction of CCC's assets was "fraudulent." (See Am. Compl., PP 5, 6, 23, 26, 27, 28.) However, Plaintiff does not provide the requisite specificity to satisfy *Rule 9(b)* with respect to its common law fraud claim. For example, Plaintiff alleges that "misrepresentations [*36] and omissions were made intentionally and are material," (id., P 50,) but fails to identify even generally the content of the misrepresentations of which it speaks. For that matter, the Amended Complaint does not even allege that any specific defendant made any statement whatsoever to Plaintiff in connection with the auction.

Plaintiff attempts to rescue Count IV by arguing that it sufficiently alleged a material omission insomuch as it claims it "was never informed of the auction." (Pl. Res. Br. to LaSalle M., p. 5; see Pl. Compl., P 24.) However, this is a far cry from the kind of specificity required by *Rule 9(b)*. As an initial matter, merely alleging that one was "never informed" of a piece of information is not the same as alleging with particularity that a *specific defendant intentionally omitted* that information.

Moreover, Plaintiff does not allege that any defendant owed it a duty to disclose information about the auction. "[W]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube v. Witco Corp., 4 F.3d 1153, 1185 (3d Cir. 1993)* [*37] (citations omitted); see *Berman v. Gurwicz, 189 N.J. Super. 89, 458 A.2d 1311, 1313 (N.J. Super. Ct. Ch. Div. 1981).* There are only three types of relationships that give rise to a duty of disclosure:

> (1) fiduciary relationships, such as

principal and agent, client and attorney, or beneficiary and trustee; (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties.

*Lightning Lube, 4 F.3d at 1185* (citing *Berman, 458 A.2d at 1313*).

Additionally, under *section 9-611* of the Uniform Commercial Code ("U.C.C."), a secured creditor, such as LaSalle, that intends to sell the collateral of a defaulting party is required to provide notice to: (1) the debtor; (2) any secondary obligor; (3) any party that provided the secured creditor with an authenticated notification of a claim of interest in the collateral; (4) any other secured party who holds a security interest in the collateral perfected by filing a financial statement; and (5) any other secured party who holds a security interest in the [*38] collateral perfected by compliance with a statute or regulation. See *810 ILL. COMP. STAT. 5/9-611*; *N.J. STAT. ANN. § 12A:9-611*.

In this case, the Amended Complaint does not allege the existence of any kind of "special relationship" between Plaintiff and any defendant. Nor does it allege that Plaintiff was entitled to notice under the U.C.C. Nonetheless, Plaintiff argues in its brief that it is entitled to notice because it perfected a security interest in CCC's assets when it delivered pork bellies in compliance with the PSA. (See Pl. Res. Br. to LaSalle M, p. 5.) This argument fails, however, for two reasons. First, Plaintiff cannot defeat a motion to dismiss by raising new allegations, like its entitlement to notice under the U.C.C., for the first time in its brief. See *Town of Secaucus v. United States Dep't of Transp., 889 F. Supp. 779, 791 (D.N.J. 1995)* ("On a 12(b)(6) motion, the district court is limited to the facts alleged in the complaint, not those raised for the first time by counsel in its legal memorandum."). Second, the Court has already determined that Plaintiff is not an unpaid cash seller of livestock and is therefore not a beneficiary of the PSA's statutory trust. [*39] As such, Plaintiff cannot be said to have perfected a security interest as a trust beneficiary.

Furthermore, as with Count III, Plaintiff fails to

plead with particularity facts in Count IV showing how it reasonably and detrimentally relied on the alleged fraud connected with the auction. Instead, it again states in a conclusory fashion that it "reasonably and justifiably rel[ied] on the intentional misrepresentations and omissions." (Pl. Am. Compl., P 51.) Such generalized statements are insufficient under *Rule 9(b)*.

For these reasons, the Court concludes that Plaintiff has not sufficiently alleged the necessary elements to sustain a common law fraud claim against LaSalle or any Westin Defendant in either Count III or IV. Accordingly, these counts will be dismissed for failure to state a viable claim. However, the Court will order this dismissal without prejudice so that Plaintiff may attempt to cure its pleading defects. See *In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1435* (indicating that where a complaint is dismissed for failure to plead with particularity, leave to amend should typically be granted).

### 4. Count V: Unjust Enrichment

In Count V, Plaintiff asserts a claim [*40] for unjust enrichment. However, this claim must be dismissed as to LaSalle and each of the Westin Defendants.

"Under New Jersey law, [16] '[t]he constructive or quasi-contract is the formula by which enforcement is had of a duty to prevent unjust enrichment or unconscionable benefit or advantage.'" *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226 (3d Cir.1983)* (quoting *Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 138 A.2d 402, 412 (N.J. 1958))*. Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law. *Nat'l Amusements, Inc. v. N.J. Tpk. Auth., 619 A.2d 262, 267, 261 N.J. Super. 468 (N.J. Super. Ct. Law Div. 1992)*.

> 16    Both LaSalle and the Westin Defendants indicate that New Jersey law applies in considering their motions to dismiss the unjust enrichment claims, (LaSalle Br., p. 8 n.1; Westin Br., p. 25 n.7,) although LaSalle reserves the right to challenge the choice of law "should this case proceed beyond the pleading stage," (LaSalle Br., p. 8 n.1.) Plaintiff raises no objection to this assertion.

To establish unjust enrichment, "a plaintiff must show both that defendant received a benefit and that

retention of that benefit [*41] without payment would be unjust." *VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526, 135 N.J. 539, 554 (N.J. 1994)*. However, a defendant will be liable only if the plaintiff shows that it "expected remuneration from the defendant at the time it . . . conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* It has been observed that quasi-contract claims involve either some direct relationship between the parties or a mistake on the part of the person conferring the benefit. See *Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 219 A.2d 332, 335 (N.J. Super. Ct. App. Div. 1966)*.

"Quasi-contract liability will not be imposed, however, if an express contract exists concerning the identical subject matter." *Suburban Transfer, 716 F.2d at 226-27*; see also *Duffy v. Charles Schwab & Co., 123 F. Supp. 2d 802, 814 (D.N.J. 2000)* ("[R]ecovery based on a quasi-contract theory is mutually exclusive of a recovery based on a contract theory."). "The authority of an express contract will take precedent over a theory of unjust enrichment or quasi-contract liability concerning the identical subject matter since '[t]he parties are bound by their agreement, and there [*42] is no ground for implying a promise so long as a valid unrescinded contract governs the rights of the parties.'" *Dovale v. Marketsource, Inc., Civil No. 05-2872, 2006 U.S. Dist. LEXIS 57679, at *24 (D.N.J. Aug. 17, 2006)* (quoting *Suburban Transfer, 716 F.2d at 226-27*). Although litigants may plead alternative and inconsistent claims, *Fed. R. Civ. P. 8(d)(2) & (3)*, courts have on numerous occasions dismissed under *Rule 12(b)(6)* unjust enrichment claims that relate to the same subject matter as valid contracts. See, e.g., *Estate of Gleiberman v. Hartford Life Ins. Co., 94 Fed. Appx. 944, 947 (3d Cir. 2004)*; *Royale Luau Resort v. Kennedy Funding, Civil No. 07-1342, 2008 U.S. Dist. LEXIS 11902, at *30-31 (D.N.J. Feb. 19, 2008)*; *Kohn v. Haymount Ltd. P'ship, LP (In re Int'l Benefits Group, Inc.), Civil No. 06-2363, 2007 U.S. Dist. LEXIS 46889, at *11 (D.N.J. June 28, 2007)*; *Oswell v. Morgan Stanley Dean Witter & Co., Civil No. 06-5814, 2007 U.S. Dist. LEXIS 44315, at *29-30 (D.N.J. June 18, 2007)*.

With these principles in mind, the Court concludes that Count V fails to state a claim as to both LaSalle and the Westin Defendants. The Amended Complaint alleges that "Defendants had a benefit [*43] conferred upon them by [Plaintiff] in that [Plaintiff] has completed its

contractual obligations by shipping" certain pork bellies and preparing for shipment other pork bellies, the order for which was ultimately cancelled. (Am. Compl., P 54.) Further, Plaintiff contends "[i]t would be inequitable for Defendants to enjoy the benefits of [these pork bellies] without [Plaintiff] receiving the contracted for compensation that it is owed." (Id., P 55.) These allegations raise a number of problems.

Even if true, no allegation in Count V, or anywhere else in the Amended Complaint, gives rise to an unjust enrichment claim against LaSalle. Plaintiff nowhere alleges any facts from which the Court could reasonably infer any direct relationship between it and LaSalle, or that there was any mistake on its part in shipping, or preparing for shipment, the pork bellies at issue in this case. Moreover, while Plaintiff argues that LaSalle was unjustly enriched because it kept the proceeds from the sale of CCC's assets for itself, (Pl. Res. Br. to LaSalle M., p. 6-7,) Plaintiff nowhere alleges that it conferred a benefit on LaSalle with an expectation of remuneration from LaSalle. Finally, Plaintiff [*44] does not allege that LaSalle received any benefits, from any source, that exceeded its contractual rights. Indeed, Plaintiff concedes that the proceeds LaSalle received from the sale of CCC's assets was "money [CCC] owed LaSalle . . . ." (Id., p. 6.) Thus, the Court must dismiss the unjust enrichment claim as to LaSalle.

The claim is also defective as to the Westin Defendants. The only benefit allegedly conferred upon any defendant was Plaintiff's fulfillment of its "contractual obligations" to CCC. (See Am. Compl., P 54.) To the extent that WPM can be held liable as a successor to CCC, this means there is no allegation that WPM was enriched beyond its contractual rights. Likewise, Plaintiff's only allegation concerning whether this benefit's retention would be unjust is that Plaintiff has not received "the contracted for compensation that it is owed." (See id., P 55.) Thus, it is clear that Plaintiff's unjust enrichment claim against WPM relates to the exact same subject matter as the sales agreements at issue in its breach of contract claim. The unjust enrichment claim should accordingly be dismissed as to WPM.

Additionally, the Court fails to see how Plaintiff's fulfillment of its [*45] contractual obligations to CCC amounts to a benefit conferred upon the other Westin Defendants, *to wit,* Westin, Inc., Brad Poppen, and Brett Elliot. Even if it did, there are no allegations from which

the Court could reasonably infer that Plaintiff had an expectation of remuneration from these defendants at the time it conferred the alleged benefit. Nor are there any allegations suggesting that there was a direct relationship between Plaintiff and any of these defendants. As such, the unjust enrichment claim must also be dismissed as to the remaining Westin Defendants.

5. Count VI: Civil Conspiracy

In Count VI, Plaintiff alleges that, by agreeing to the so-called "friendly foreclosure," all defendants civilly conspired to "inflict a wrong against or injury upon Plaintiff . . . ." (Pl. Compl., P 59.) Given the Court's dismissal of Plaintiff's fraud claims, however, Count VI will also be dismissed without prejudice.

Under New Jersey law, [17] "a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury [*46] upon another, and an overt act that results in damage.'" *Banco Popular, 876 A.2d at 263, 184 N.J. 161* (quoting *Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993)*; see also *Eli Lilly, 23 F. Supp. 2d at 496.* The unlawful agreement need not be expressed and the participants need not know all the details of the plan designed to achieve the objective. *Weil v. Express Container Corp., 360 N.J. Super. 599, 824 A.2d 174, 183* (N.J. super. Ct. App. Div. 2003). Instead, "the plaintiff must demonstrate that there was one plan and that its essential scope and nature was known to each person who is charged with responsibility for its consequences." Id.

> 17  Both LaSalle and the Westin Defendants indicate that New Jersey law applies in considering their motions to dismiss the civil conspiracy claim, (LaSalle Br., p. 8 n.1; see Westin Br., p. 27,) although LaSalle reserves the right to challenge the choice of law "should this case proceed beyond the pleading stage," (LaSalle Br., p. 8 n.1.) Plaintiff raises no objection to this assertion.

This Court further elaborated upon the nature of a civil conspiracy in Eli Lilly:

> A civil action for conspiracy is

essentially a tort action. Therefore, [*47] to maintain an action for civil conspiracy, a plaintiff must also point to (1) an overt act of one or more of the conspirators in furtherance of the conspiracy; and (2) consequential damage to the rights of another, of which the overt act is the proximate cause. *[A p]laintiff cannot bring an action alleging civil conspiracy unless defendants committed an act which would be actionable even without the conspiracy.* Thus, "the conspiracy is not the gravamen of the charge, but merely a matter of aggravation, enabling the plaintiff to recover against all the defendants as joint tortfeasors." *The actionable element is the tort which the defendants agreed to perpetrate and which they actually committed.*

*Eli Lilly, 23 F. Supp. 2d at 496-97* (emphasis added) (internal citations omitted). Thus, the dismissal of a plaintiff's independent tort claims requires the dismissal of any corresponding conspiracy claims. See *Brown v. Philip Morris Inc., 228 F. Supp. 2d 506, 517 n.10 (D.N.J. 2002); Eli Lilly, 23 F. Supp. 2d at 497.*

In this case, the only actionable tort allegedly committed by all defendants was common law fraud in connection with the auction of CCC's assets. Because the Court has already dismissed [*48] Count IV, there no longer remains any underlying tort upon which to premise the civil conspiracy claim. Therefore, the Court will dismiss Count VI as to LaSalle and each of the Westin Defendants. This dismissal will be ordered without prejudice to the extent that Plaintiff cures the pleading defects in Count IV.

III. CONCLUSION

For the foregoing reasons, the Court will dismiss the Amended Complaint in its entirety as far as LaSalle is concerned. However, as previously stated, this dismissal will be ordered without prejudice insomuch as Plaintiff may attempt to cure the defects in Counts IV and VI with respect to LaSalle. Likewise, the Court will dismiss the Amended Complaint in its entirety as to Westin, Inc., Brad Poppen, and Brett Elliot. It will also dismiss Counts II, III, IV, V, and VI, but not Count I, of the Amended Complaint as to WPM. Again, the Court's dismissal of

2008 U.S. Dist. LEXIS 20532, *48

Counts III, IV, and VI will be ordered without prejudice as to each of the Westin Defendants. Plaintiff may attempt to cure the pleading defects in Counts III, IV, and VI by filing a Second Amended Complain as directed in the accompanying Order.

/s/ Joseph H. Rodriguez

JOSEPH H. RODRIGUEZ

United States District Judge

Dated:  [*49] March 17, 2008